# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter 11 |
| ICAP ENTERPRISES, INC., *et al.*, | Lead Case No. 23-01243-WLH11<br>Jointly Administered |
| Debtors.[1] | **FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) GRANTING SUPERPRIORITY CLAIMS; (IV) PROVIDING** |

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11) ; Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); and iCap Holding 6 LLC (23-01274-11).

BN 79085159v4

**ADEQUATE PROTECTION AND ADMINISTRATIVE EXPENSE CLAIMS; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>") of the above-captioned debtors and debtors in possession (the "<u>Debtors</u>"), in the above-captioned chapter 11 cases (the "<u>Bankruptcy Cases</u>"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 364(e) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the corresponding local rules of the United States Bankruptcy Court for the Eastern District of Washington (the "<u>Local Rules</u>"), seeking authorization for the Debtors to, among other things:

    i.    obtain post-petition loans, advances and other financial accommodations (the "<u>DIP Loans</u>") in an aggregate principal amount not to exceed $5,250,000, or up to $6,750,000, in the event the DIP Lender (as defined below) is granted a priming lien on the VH Collateral (as defined in the DIP Agreement) pursuant to the terms and conditions of the DIP Documents (as defined below) and this Order (the "<u>Final Order</u>")[2];

---

[2] Pursuant to the Interim Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Superpriority Claims; (IV) Providing Adequate Protection and Administrative Expense Claims; and (V) Granting Related Relief [Docket No. 68] (the "Interim Order"), Debtors were authorized to borrow up to $2,500,000.00 (the "Interim Borrowing Cap").

ii.    enter into, be bound by, and perform under (a) a debtor-in-possession credit facility (the "DIP Facility"), pursuant to an agreement dated as of October 3, 2023, by and among the Debtors and Serene Investment Management, LLC (the "DIP Lender", which agreement is attached hereto as **Exhibit 1** (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "DIP Agreement") and (b) the documents related to the DIP Agreement (together with the DIP Agreement, the "DIP Documents"), all of which were approved pursuant to this court's *Interim Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Superpriority Claims; (IV) Providing Adequate Protection And Administrative Expense Claims; (V) Scheduling a Final Hearing; and (V) Granting Related Relief* entered on October 5, 2023 [Docket No. 68] (the "Interim Order")*;*

iv.    grant to the DIP Lender First Priority DIP Liens (as defined below) on all of the DIP Collateral (as defined below) not subject to a lien of any third party to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Agreement, as applicable, and this Interim Order and the Final Order (as defined below), as applicable (collectively, the "DIP Obligations"), subject only to prior payment of the Carve-Out (as defined below), pursuant to section 364(c)(2) of the Bankruptcy Code;

v.    grant to the DIP Lender Second Priority DIP Liens (as defined below) on all Prepetition Collateral (as defined below) to secure the DIP

Facility and all DIP Obligations, subject only to (a) the First Priority Pledged Liens (as defined below) and (b) the Carve-Out, pursuant to section 364(c)(3) of the Bankruptcy Code;

vi. to the extent the Debtors request an additional $1,500,000 in financing from the DIP Lender on a final basis, in addition to the $5,250,000 in financing that the DIP Lender has agreed to provide pursuant to the DIP Agreement, and as described in i. (a) above, the DIP Lender will only be granted priming liens on the Prepetition Collateral consisting of the VH Collateral upon further order of this court after a new or supplemental noticed motion and hearing subsequent to this Final Order with all rights of senior lenders, including the Prepetition Mortgage Lenders as to the Prepetition Collateral, including the VH Collateral, being reserved pending the conclusion of any such hearing and further order of the court, to secure the DIP Facility and all DIP Obligations, subject only to the Carve-Out, pursuant to section 364(d) of the Bankruptcy Code. Further, any provision in the DIP Agreement related to priming liens shall have no force or effect unless and/or until further order of this court pursuant to such new or supplemental hearing on Debtors' request for the priming liens pursuant to section 364(d);

vii. grant to the DIP Lender allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all amounts advanced to the Debtors under the DIP Agreement;

viii. grant to the Prepetition Mortgage Lenders (as defined below) adequate protection in respect of their rights under the Prepetition Documents (as defined below) and their interests in the Prepetition Collateral;

BN 79085159v4

ix.	use the DIP Collateral and the Prepetition Collateral (the "<u>Cash Collateral</u>") in accordance with the Approved Budget (as defined below) for the Final Period (as defined below);

x.	use the proceeds of DIP Loans, subject to the terms, restrictions, and other conditions of the DIP Agreement and this Final Order, to (a) continue to accrue fees and expenses related to the DIP Agreement and the Cases, and (b) fund working capital in the ordinary course of the business of the Debtors and other general corporate purposes, in each case, to the extent set forth in the Approved Budget and permitted under the DIP Agreement;

xi.	vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Documents and this Final Order;

xii.	set a Final Hearing on the Motion; and

xiii.	waive, to the extent applicable, any stay of the immediate effectiveness of the Interim Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that the Interim Order was immediately effective upon its entry on the court's docket.

The initial hearing on the Motion having been held by this court on October 4, 2023 (the "<u>Interim Hearing</u>"); and

It appearing that due and appropriate notice of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing was served by the Debtors in accordance with Bankruptcy Rule 4001(c) on (i) the DIP Lender, (ii) counsel to the DIP Lender, (iii) the Prepetition Mortgage Lenders, (iv) the Office of the United States Trustee for the Eastern District of Washington (the "<u>U.S. Trustee</u>"), (v) the holders of the thirty (30) largest unsecured claims against the Debtors' Estates (on a

consolidated basis), (vi) all of the Debtors' pre-petition secured creditors, (vii) the United States Attorney's Office for the Eastern District of Washington; (viii) the attorneys general in the states in which the Debtors conduct their business; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Noticed Parties"); and

This court having reviewed the Motion and any responses and objections thereto, the *Declaration of Lance Miller in Support of First Day Motions,* the *Declaration of Lance Miller in Support of Debtor in Possession Financing Motion,* the other filings made by the Debtors, the evidence and testimony presented at the Interim Hearing and the Final Hearing; and it appearing that granting the relief requested in the Motion on a final basis is necessary to avoid immediate and irreparable harm to the Debtors, and is otherwise fair and reasonable and in the best interests of the Debtors, their estates and their creditors, and is essential for the preservation of the value of the Debtors' property; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    Petition. On September 29 and 30, 2023 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors continue as debtors-in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Jurisdiction and Venue. The court has jurisdiction over this case and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

Venue in this court over the Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Notice</u>. Under the circumstances, the notice given by the Debtors of the Motion, the Interim Hearing, the Final Hearing and the relief granted under this Order constitutes due and sufficient notice thereof and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(c) and Local Rule 4001-2.

D. <u>Findings and Stipulation Regarding the DIP Lender and the Prepetition Mortgage Lenders</u>. In requesting the financing from DIP Lender and in exchange for and as a material inducement to DIP Lender to agree to provide the financing in accordance with the DIP Facility, the Debtors acknowledge, represent, stipulate and agree, for themselves and their estates, subject to the Challenge (as defined below) rights set forth in Section 9 of this Final Order, as follows:

(i) *Secured Note*. Debtors 725 Broadway, LLC and ICAP Campbell Way, LLC are parties to that certain Promissory Note in the aggregate principal amount of $500,000, dated September 13, 2023 (the "<u>Secured Note</u>"), proceeds of which were used by the Debtors to pay ordinary course expenses and prepare for this bankruptcy case. The Secured Note is secured by (the "<u>DIP Lender Prepetition Liens</u>"): (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of substantially even date herewith, made by and among the Broadway Borrower as "Grantor", in favor of Lender as "Beneficiary" and appointing Chicago Title Company as "Trustee" (the "<u>Broadway Deed of Trust</u>"), which encumbers certain real property in the City of Tacoma, County of Pierce, State of Washington as more particularly described in the Broadway Deed of Trust (the "<u>Broadway Real Property</u>") and (ii) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of substantially even date herewith, made by

and among the Campbell Way Borrower as "Grantor", in favor of Lender as "Beneficiary" and appointing Chicago Title Company as "Trustee" (the "Campbell Way Deed of Trust"; and together with the Broadway Deed of Trust, each a "Deed of Trust", and together the "Deeds of Trust"), which encumbers certain real property in the City of Bremerton, County of Kitsap, State of Washington as more particularly described in the Campbell Way Deed of Trust (the "Campbell Way Real Property"; and together with the Broadway Real Property, collectively referred to as the "DIP Prepetition Collateral"). The total balance outstanding under the Secured Note as of the Petition Date was not less than $500,000 plus accrued interest, fees, costs and expenses (the "Prepetition DIP Lender Obligations").

(ii) *Prepetition Mortgage Lenders*. As of the Petition Date, the following entities held first priority liens (the "Prepetition Liens") under their respective loan documents (the "Prepetition Documents") on certain of the Debtors' properties identified on <u>Schedule 1</u> to the DIP Agreement (the "Prepetition Collateral"): Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee of MFA 2022-RTL1 Trust; Lima One Capital, LLC as servicer (collectively "Wilmington"), Redmond Funding Group, Tritalent Funding Group, Inc., Socotra REIT 1, LLC, WE Alliance Secured Income Fund, LLC, and Jason Yelowitz, in his capacity as trustee 2006 Trust Dated March 31, 2006 (collectively, the "Prepetition Mortgage Lenders").

(iii) *Validity, Perfection and Priority of DIP Lender Prepetition Liens and Prepetition DIP Lender Obligations*. As of the Petition Date, (a) the DIP Lender Prepetition Liens on the DIP Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the DIP Lender for fair consideration and reasonably equivalent value; (b) the DIP Lender Prepetition Liens were senior in priority over any and all other liens on the

DIP Prepetition Collateral, subject only to certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable and senior in priority to the DIP Lender Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) consisting solely of mechanic's lien and the Prepetition Liens; (c) the Prepetition DIP Lender Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the Secured Note and the Deeds of Trust and are not subject to any challenge or defense, including without limitation, respectively, avoidance, subordination, recharacterization, recovery, reduction, set-off, offset, attack, counterclaim, cross-claim or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Debtors have waived, discharged and released any right they may have to challenge the Prepetition DIP Lender Obligations and the DIP Lender Prepetition Liens on the DIP Prepetition Collateral and to assert any recoupments, offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the DIP Lender with respect to the Secured Note, the Deeds of Trust, the Prepetition DIP Lender Obligations, the DIP Lender Prepetition Liens or the DIP Prepetition Collateral; and (e) the Prepetition DIP Lender Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

E. <u>Findings Regarding the Post-Petition Financing</u>. Without prejudice to the rights of any other non-Debtor party in interest, the Debtors admit, stipulate, acknowledge and agree that:

(i)     The Debtors have requested from the DIP Lender, and the DIP Lender is willing to extend, the DIP Loans on the terms and conditions set forth in this Order and the DIP Agreement.

BN 79085159v4

(ii) *Need for Post-petition Financing*. The Debtors do not have sufficient available sources of working capital, including cash collateral, to pay administrative expenses and conclude a sale of their assets without the financing requested under the Motion. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the DIP Lender as set forth in this Order and the DIP Agreement is vital to the Debtors' ability to maximize the value of the assets of their bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates") through an orderly sale process. Accordingly, the Debtors have an immediate need to obtain the post-petition financing in order to, among other things, preserve and maximize the value of the assets of their Estates.

(iii) *No Credit Available on More Favorable Terms*. The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or solely based on the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable solely under section 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Lender pursuant to the DIP Agreement.

(iv) *Approved Budget*. The Debtors have prepared and delivered to the DIP Lender an itemized cash-flow forecast set forth on **Exhibit 2** attached hereto (as may be modified from time to time in accordance with the Final Order and the DIP Agreement, the "Approved Budget"). The Approved Budget has been approved by the DIP Lender pursuant to the terms of the DIP Agreement. The Approved Budget has been thoroughly reviewed by the Debtors and their management and sets forth,

23-01243-WLH11    Doc 149    Filed 11/10/23    Entered 11/10/23 12:00:02    Pg 10 of 31

among other things, projections for the periods covered thereby. The DIP Lender is relying upon the Debtors' compliance with the Approved Budget (as further described in <u>Section 2.3.1</u> of this Order) in accordance with the terms of the DIP Agreement, the Interim Order and this Final Order in determining to enter into the post-petition financing arrangements and consent to the use of Cash Collateral on a final basis provided for herein, subject to the restrictions set forth herein.

(v) *No Additional Post-Petition Borrowing.* Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time seek allowance of any administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113 and 1114 of the Bankruptcy Code that is superior to or *pari passu* with the Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out.

(vi) *No Priming of DIP Liens.* Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the DIP Lender by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral pursuant to section 364(d) of the Bankruptcy Code or otherwise, except with respect to the Carve-Out (as defined below)*;*

(vii) *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the DIP Facility and this Order reflect the Debtors' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Agreement and this Order have

been negotiated in good faith and at arms' length by and among the Debtors and the DIP Lender, with all parties being represented by counsel. Any credit extended under the terms of this Final Order shall be deemed to have been extended in good faith by the DIP Lender, as that term is used in section 364(e) of the Bankruptcy Code.

(viii)  *Good Cause*. The relief requested in the Motion and granted pursuant to the terms of this Order is necessary, essential, and appropriate, and is in the best interests of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and avoid immediate and irreparable harm to the Debtors, their creditors, and their assets.

(ix)  *Reservation of Rights*. Nothing herein shall (i) impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Mortgage Lenders hereunder is insufficient or (ii) prejudice or limit the rights of the Prepetition Mortgage Lenders to seek additional relief with respect to the use of Cash Collateral, to challenge the Debtors' valuation of the Prepetition Collateral or to seek relief for additional adequate protection.  The receipt by the Prepetition Mortgage Lenders of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Mortgage Lenders are adequately protected.

(ix)  *Immediate Entry*. Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2). No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn or resolved) are overruled.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, THAT:**

**Section 1.**     <u>Authorization and Conditions to Financing.</u>

      1.1     <u>Motion Granted</u>. The Motion [ECF No. 33] is GRANTED in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Final Order. Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are denied and overruled on the merits.

      1.2     <u>Authorization to Borrow and Use Loan Proceeds</u>. To enable the Debtors to continue to preserve the value of their estates, and subject to the terms and conditions of the Interim Order, this Final Order, the Approved Budget and the DIP Documents, the Debtors are authorized to continue to be bound by, and perform under the DIP Documents and to borrow in an aggregate principal amount not to exceed $5,250,000, or $6,750,000, in the event the DIP Lender is granted a priming lien on the VH Collateral (as defined in the DIP Agreement) upon further noticed hearing and order of this court subsequent to this Final Order expressly granting such priming lien, provided that disbursements of such amount are in accordance with the Approved Budget, the DIP Agreement, and this Final Order. Upon the entry of this Final Order, the Debtors shall be authorized to continue to use the DIP Collateral (as defined below), including Cash Collateral, to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Documents, and to draw on the DIP Facility to make any disbursement as specifically provided in the Approved Budget (subject to the variances as set forth in the DIP Agreement and this Final Order), but solely in accordance with the terms and conditions set forth in this Final Order and the DIP Agreement.

      1.3     <u>DIP Agreement</u>.

23-01243-WLH11     Doc 149     Filed 11/10/23     Entered 11/10/23 12:00:02     Pg 13 of 31

1.3.1 <u>Approval</u>. On a final basis as set forth in this Final Order and to the extent not approved by the Interim Order, the DIP Agreement and each term, condition, and covenant set forth therein are approved. All of such terms, conditions, and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors and the DIP Lender, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the DIP Agreement for all purposes, including, without limitation, to the extent applicable, the payment when due of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, and fees and expenses, including, without limitation, all of the DIP Lender's consultant fees and professional fees (including attorney fees and expenses) as more fully set forth in the DIP Agreement and further provided below, are approved. Notwithstanding the foregoing any provision in the DIP Agreement related to any priming lien rights as to the VH Collateral is not enforceable absent further order of this court after further noticed hearing subsequent to this Final Order expressly granting such priming lien pursuant to Section 364(d).

1.3.2 <u>Amendment</u>. Subject to the terms and conditions of the DIP Agreement, the Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Agreement (an "<u>Amendment</u>") without further approval or order of the court, provided that any Amendment shall require advance notice and opportunity to object of no less than five (5) business days to the Prepetition Mortgage Lenders, the U.S. Trustee and the official Committee of Unsecured Creditors that has been appointed by the United States Trustee pursuant to the October 20, 2023 Appointment of Unsecured Creditors Committee (Dkt. 102) and the October 30, 2023 Amended Appointment of Unsecured Creditors Committee (Dkt. 112) (the "<u>Committee</u>"), and if any party objects to the Amendment

within the five (5) day notice period, the Debtors may not agree to the Amendment without further order of the court.

**Section 2.** <u>Authorization and Conditions to Financing</u>. The DIP Lender shall have no obligation to make any loans under the DIP Agreement unless the conditions precedent to making such loans under the DIP Agreement have been satisfied in full or waived by the DIP Lender in its sole discretion.

        2.1    <u>Priority and Liens</u>.

            2.1.1  <u>Lien Grant</u>. To secure the prompt payment and performance of any and all obligations of the Debtors to the DIP Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and was granted pursuant to the Interim Order, effective as of the Petition Date, valid and perfected (such liens, the "<u>DIP Liens</u>"):

        (i)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, first priority security interests and liens in and upon all of the DIP Collateral which, as of the Petition Date, was not encumbered (besides by DIP Lender) or subject to invalid, unperfected or avoidable liens (the "<u>First Priority DIP Liens</u>"). For the avoidance of doubt, the First Priority DIP Liens shall encumber the DIP Prepetition Collateral.

        (ii)    Pursuant to Section 364(c)(3) of the Bankruptcy Code, second priority security interests and liens in and upon all of the DIP Collateral which constitutes Prepetition Collateral, other than the DIP Prepetition Collateral and valid liens in existence as of the Petition Date that are (i) perfected subsequent to such date as permitted by Section 546(b) of the Bankruptcy Code and (ii) to the extent such Liens are expressly permitted in writing by the Lender in its sole and absolute discretion. (the "<u>Second Priority DIP Liens</u>").

2.1.2 <u>DIP Collateral</u>. For purposes of this Final Order, the term "<u>DIP Collateral</u>" shall have the meaning ascribed to the term "Collateral" in the DIP Agreement, which term includes substantially all of the Debtors' real property assets.

2.1.3 <u>Superpriority Administrative Expense.</u> For all DIP Obligations now existing or hereafter arising pursuant to this Final Order, the DIP Agreement, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546, 726 or 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment (the "<u>Superpriority Claim</u>"); <u>provided</u>, <u>however</u>, that the Superpriority Claim shall be subject only to the payment of the Carve-Out. The Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, subject only to the Carve-Out and excluding proceeds of Avoidance Actions. Other than as expressly provided in the DIP Agreement and this Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 326, 328, 330, or 331 of the Bankruptcy Code,

or otherwise, that have been or may be incurred in these Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the Superpriority Claim or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

2.1.4  Nature of DIP Liens; Section 552(b); Section 506(c) Lien Priority. The DIP Liens shall be subject to the Carve-Out to the extent provided for in Section 2.2 of this Order and shall not attach to Avoidance Actions or the proceeds thereof.  The DIP Liens and the Superpriority Claim (a) shall not be subject to sections 510, 542, 549, 550, or 551 of the Bankruptcy Code, the "equities of the case" exception of section 552 of the Bankruptcy Code, or section 506(c) of the Bankruptcy Code, (b) shall be senior in priority and right of payment to (y) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise and (z) any intercompany or affiliate liens or claims of the Debtors, and (c) shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Cases, whether upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or appointed in these Cases prior to conversion, or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of any of the Cases or any Successor Case.

2.1.5  Enforceable Obligations. The DIP Agreement shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their Estates, and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms. No obligation, payment, transfer, or grant of security under the DIP Agreement or this Final Order shall be stayed, restrained, voidable, avoidable,

disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) or based on any Avoidance Actions), or subject to any avoidance, disallowance, impairment, reduction, setoff, offset, recoupment, recharacterization, disgorgement, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, surcharge, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity. All interest, fees paid or payable, and all reasonable costs and expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Facility and the DIP Lender's reasonable attorneys' fees and expenses), by the Debtors to the DIP Lender are approved.

2.1.6 <u>Post-Petition Lien Perfection</u>. This Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens and the AP Liens (as defined below), effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien (each, a "<u>Perfection Act</u>"). Notwithstanding the foregoing, if the DIP Lender shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, the DIP Lender is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or reasonably required by the DIP Lender, which act or acts shall be deemed to have been accomplished as of the Petition Date, notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. The DIP Lender may choose to file, record, or present a certified copy of this Order in

the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, and/or record such certified copy of this Order in accordance with applicable law. Should the DIP Lender so choose and attempt to file, record, and/or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Order.

      2.2    Carve-Out. The "Carve-Out" is an amount equal to the sum of (i) all fees required to be paid to the clerk of this court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) fees and expenses of up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (which is included in the notice set forth in (iii) below); and (iii) allowed and unpaid claims for unpaid fees, costs and expenses (the "Professional Fees") incurred by persons or firms ("Professional Persons") retained by the Debtors or the Committee whose retention is approved by this court pursuant to sections 327, 328 or 363 and 1103 of the Bankruptcy Code (all Professional Persons shall be paid pro rata from the Carve-Out), subject in all respects to the terms of and amendments set forth in this Final Order and any other interim or other compensation orders entered by this court that are incurred (A) at any time before delivery to the Debtors of a Carve-Out Trigger Notice (as defined below), whether allowed by this court prior to the delivery of a Carve-Out Trigger Notice, subject to any limits imposed by the Approved Budget and this Order; *provided* that after the occurrence and during the continuance of an Event of Default and delivery of written notice (the "Carve-Out Trigger Notice") thereof (which may be by email) to the Debtors, the Debtors' counsel, the United States Trustee, and lead counsel for the Committee, if any, in an

aggregate amount not to exceed $200,000; *provided further*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any grounds. The Carve-Out may be funded to an administrative reserve account (the "Carve-Out Account") on a weekly basis in an amount not to exceed the amount budgeted for such Professional Persons in the Approved Budget, which account shall be used to pay Professional Fees and any unpaid fees to the United States Trustee. As cash flow permits, and assuming no issuance of a Carve-Out Trigger Notice, the Debtors may pay the amounts set forth in the Approved Budget for Professional Fees into the Carve-Out Account. Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lender or any of its officers, directors and professionals; (b) attempts to modify any of the rights granted to the DIP Lender; (c) attempts to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization upon any DIP Collateral in accordance with the DIP Agreement, the Prepetition Documents or this Order (as applicable); *provided* that nothing in this section shall restrict the rights of parties in interest during the Remedies Notice Period (as defined below); (d) paying any amount on account of any claims arising before the commencement of the Bankruptcy Case unless such payments are approved by an order of the court; or (e) after delivery of a Carve-Out Trigger Notice, any success, completion, back-end or similar fees. For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims securing the DIP Loans, any adequate protection liens, if any, the Superpriority Claims and any and all other liens or claims existing pursuant to the DIP Facility.

2.3    Use of Cash Collateral; Adequate Protection.

2.3.1    Authorization to Use Cash Collateral. Subject to the terms and conditions of this Final Order and the DIP Agreement, the Debtors shall be and are authorized to use Cash Collateral (as defined in the Bankruptcy Code) in accordance with, and solely and exclusively for the disbursements set forth in, the Approved Budget.  The DIP Lender's and Prepetition Mortgage Lenders' consent to the use of Cash Collateral is subject to the Debtors' compliance with the Approved Budget, which budget shall depict, on a weekly basis and line item basis, (i) projected cash receipts, (ii) projected disbursements, and (iii) net cash flow, for the first thirteen (13) week period from the Petition Date, and in the event that any actual receipts are less than, or disbursements exceed, 10% of each such line item (with any excess collections in subparagraph (i) or unspent amounts in subparagraph (ii) being carried forward for the subsequent week), an "Event of Default" shall be deemed to have occurred.  The Debtors shall deliver to the DIP Lender and the Committee, by not later than Thursday of each week, a certificate (in form and substance acceptable to the DIP Lender) showing a reconciliation for the prior two-week cumulative period and certifying that the Debtors are in compliance with the Approved Budget.  The budget shall be updated, modified, or supplemented by the Debtors not less than one time in each four (4) consecutive week period with a copy provided to the Committee when provided to the DIP Lender, and each such updated, modified, or supplemented budget shall be approved in writing (including by email) by, and shall be in form and substance satisfactory to, the DIP Lender, and no such updated, modified or supplemented budget shall be effective until so approved. In the event the Debtors fail to update, modify or supplement the Budget during a four (4) consecutive week period, the Debtors' right to use Cash Collateral shall terminate.

2.3.2    <u>Adequate Protection Liens</u>.  As adequate protection of the interests of the Prepetition Mortgage Lenders in their respective Prepetition Collateral to the extent of any Diminution in value of such Prepetition Collateral, the Debtors grant to the Prepetition Mortgage Lenders continuing, valid, binding, enforceable and perfected security interests and liens (the "<u>AP Liens</u>") on such Prepetition Mortgage Lender's respective Prepetition Collateral (the "<u>AP Collateral</u>").   The AP Liens and the liens of the Prepetition Mortgage Lenders on their respective Prepetition Collateral (the "<u>Prepetition Mortgage Lenders Liens</u>") shall be senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or other applicable law; *provided*, *however*, that the Prepetition Liens shall be junior to the Superpriority Claims (as provided herein) and be subject to the Carve-Out to the extent provided for in Section 2.2 of this Final Order.

2.3.3    <u>Adequate Protection Payments</u>.  As additional adequate protection of the interests of the Prepetition Mortgage Lenders in their respective Prepetition Collateral to the extent of any Diminution in value of such Prepetition Collateral, the Debtors shall pay the Prepetition Mortgage Lenders interest payments required under any applicable agreement.  Such interest payments shall be at the contract rate.

2.3.4    <u>Adequate Protection Claims</u>. Effective as of the Petition Date, the Prepetition Mortgage Lenders are granted allowed superpriority administrative expense claims arising pursuant to section 507(b) of the Bankruptcy Code against each of the Debtors with priority over all other administrative claims (subject only to the Carve-Out and DIP Obligations, including the Superpriority

Claim), including all claims of the kind specified under sections 503(b) of the Bankruptcy Code (the "<u>Adequate Protection Claims</u>"), which administrative claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors, including any proceeds or property recovered in respect of any Avoidance Actions. Other than the Carve-Out and the Superpriority Claim, no cost or expense of administration of the Chapter 11 Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Claims.

**Section 3.**    <u>Default; Rights and Remedies; Relief from Stay.</u>

3.1    <u>Events of Default</u>. It shall be an "<u>Event of Default</u>" under this Final Order if an "Event of Default" as defined in the DIP Agreement occurs (together with the passage of any applicable cure period set forth therein).

3.2    <u>Rights and Remedies Upon Events of Default</u>. Upon the occurrence and continuance of an Event of Default, (x) the DIP Lender may declare (i) the termination, reduction or restriction of any further commitment to the extent any such commitment remains, (ii) all obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (iii) the termination of the DIP Facility and the DIP Loans Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the liens or the obligations under the DIP Facility; (y) without further notice, motion or application to, order of, or hearing before, this court (other than such notice required by this Paragraph), the DIP Lender may terminate, revoke, reduce or restrict the ability of the Debtors to use Cash Collateral under this Order and the other DIP Loan Documents, and the Debtors' ability to use rental proceeds of the DIP Collateral shall automatically terminate, and, notwithstanding anything contained herein to the contrary, no further advances shall be made under the DIP Facility unless and until the court enters an order

directing otherwise; (z) upon the giving of five (5) business days' notice (the "<u>Remedies Notice Period</u>") to the Debtors, the U.S. Trustee and the Committee (the "<u>Notice Parties</u>"), the DIP Lender may exercise all other rights and remedies provided for in this Final Order or the applicable DIP Loan Documents and applicable law, free of the automatic stay of section 362 of the Bankruptcy Code. During the Remedies Notice Period, any party in interest shall be entitled to seek an emergency hearing with the court, for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing.

**Section 4.**     <u>Good Faith</u>. The terms of this Final Order were negotiated in good faith and at arm's length by and among the Debtors and the DIP Lender. The DIP Lender shall be entitled to the full protections of section 364(e) of the Bankruptcy Code.

**Section 5.**     <u>Collateral Rights</u>.

5.1     <u>Collateral Rights</u>. Until all of the DIP Obligations shall have been indefeasibly paid and satisfied in full: (i) no other party shall foreclose or otherwise seek to enforce any lien or claim in any DIP Collateral and (ii) upon and after the occurrence of an Event of Default, and subject to the DIP Lender providing five (5) Business Days prior written notice as set forth in <u>Section 3.2</u>, above, the DIP Lender (or any of its employees, agents, consultants, contractors, or other professionals) shall have the right, at the sole cost and expense of Debtors, to: (a) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by Debtors, and (b) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are or were used by any of the Debtors.

BN 79085159v4

5.2    No Marshaling. The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

**Section 6.**    Other Rights and Obligations.

6.1    No Modification or Stay of This Order.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Order, any of the DIP Loan Documents or any term hereunder or thereunder or (b) the dismissal or conversion of one or more of the Cases (each, a "Subject Event"), (i) the acts taken by the DIP Lender in accordance with this Final Order, and (ii) the DIP Obligations incurred or arising prior to the DIP Lender's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Order, and the acts taken by the DIP Lender  in accordance with this Final Order and the DIP Agreement, and the DIP Liens granted to the DIP Lender in the DIP Collateral, and the AP Liens granted to the Prepetition Mortgage Lenders in the AP Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Lender and the Prepetition Mortgage Lenders pursuant to this Final Order and the DIP Agreement, shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.

6.2    Power to Waive Rights; Duties to Third Parties. The DIP Lender, in its sole and absolute discretion, shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Order in respect of the

DIP Lender (the "<u>DIP Lender Rights</u>"), with any such waiver to be made in writing by the DIP Lender, and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights. Any waiver by the DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert a defense to any obligation owed by the Debtors to the DIP Lender.

6.3     <u>Reservation of Rights</u>. The terms, conditions, and provisions of this Final Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Agreement (with respect to the DIP Lender), or any other applicable agreement or law, including, without limitation, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtors' Estates.

6.4     <u>Binding Effect of Final Order</u>.

6.4.1 Immediately upon entry by this court, this Final Order shall be valid and binding upon and inure to the benefit of the DIP Lender, the Prepetition Mortgage Lenders, the Debtors, and the property of the Debtors' Estates, all other creditors of any of the Debtors, any Committee, and all other parties in interest and their respective successors and assigns (including any chapter 11 or

chapter 7 trustee or any other fiduciary hereafter appointed as a legal representative of the Debtors), in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

6.4.2 Any order dismissing one or more of the Cases or any Successor Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 the Bankruptcy Code) that (a) the Superpriority Claim and the DIP Liens shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full, (b) the AP Liens and the Prepetition Liens shall continue in full force and effective notwithstanding such dismissal until the obligations owing to the Prepetition Mortgage Lenders (the "Prepetition Lender Obligations") are indefeasibly paid and satisfied in full, and (c) this court shall retain jurisdiction to the greatest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim, the DIP Liens, the AP Liens and the Prepetition Mortgage Lenders Liens. In the event any court modifies any of the provisions of this Final Order or the DIP Loan Documents following the Final Hearing, (i) such modifications shall not affect the rights or priorities of the DIP Lender and the Prepetition Mortgage Lenders pursuant to this Final Order with respect to the DIP Collateral or any portion of the DIP Obligations which arise or are incurred or are advanced prior to such modifications, and (ii) this Final Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

6.5 Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment. All postpetition advances and other financial accommodations under the DIP Agreement and the other DIP Loan Documents during the Final Period, and the use of Cash Collateral, are made in reliance on this Final Order and there shall not

at any time be entered in the Cases, or in any Successor Case, any order (other than the Final Order) which (a) authorizes the use of Cash Collateral (as defined in the Bankruptcy Code) of the Debtors in which the DIP Lender has an interest, or the sale, lease, or other disposition of property of any Debtor's Estate subject to a lien or security interest granted to the DIP Lender, except as expressly permitted hereunder or in the DIP Agreement, (b) authorizes the use of Cash Collateral of the Debtors, or the sale, lease, or other disposition of property of any Debtor's Estate subject to a lien or security interest granted to the DIP Lender, except as expressly permitted hereunder, or (c) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Lender hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lender, herein unless, in each instance (i) the DIP Lender shall have given its express prior written consent with respect thereto (such consent to be in the DIP Lender's absolute and sole discretion and no such consent being implied from any other action, inaction, or acquiescence by the DIP Lender) or (ii) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Agreement, including, without limitation, all debts and obligations of the Debtors to the DIP Lender which arise or result from the obligations, loans, security interests, and liens authorized herein, on terms and conditions acceptable to the DIP Lender. The security interests and liens granted to or for the benefit of the DIP Lender hereunder, the terms of the DIP Facility approved hereby and the rights of the DIP Lender pursuant to this Final Order shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of the Debtors without the express prior written consent

of the DIP Lender (such consent to be in the DIP Lender's absolute and sole discretion).

6.6    <u>Term; Termination</u>. Notwithstanding any provision of this Final Order to the contrary, the term of the DIP Agreement among the Debtors and the DIP Lender authorized by this Final Order may be terminated pursuant to the terms of the DIP Agreement.

6.7    <u>Objections Overruled</u>. All objections to the entry of this Final Order are, to the extent not withdrawn or resolved, overruled.

6.8    <u>No Liability to Third Parties</u>. With respect to any approval or disapproval of expenditures set forth in the Approved Budget, the DIP Lender shall not: (a) be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

6.9    <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Final Order, the DIP Agreement or any subsequent order of this court shall be received free and clear of any claim, charge, assessment, or other liability to the Debtors or the Debtors' Estates.

6.10    <u>Final Amount Notice Period</u>. The Debtors shall provide fourteen days' notice to the Committee prior to borrowing the Final Amount.

BN 79085159v4

**Section 7.**     <u>Findings and Conclusions</u>. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable, as of the Petition Date, immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

**Section 8.**     <u>Final Order Governs</u>. In the event that any provision of this Final Order conflicts with any term of the DIP Loan Documents, this Final Order shall govern.

**Section 9.**     <u>Effect of Stipulations on Third Parties</u>.  The admissions, stipulations, agreements and waivers set forth in Paragraph (D) of this Final Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, and other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including a Committee (if appointed), unless and to the extent that a party in interest has properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (other than the Debtors, as to which any Challenge (as defined below) is irrevocable waived and relinquished) and (i) has timely filed an appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a pleading or other contested matter, a "<u>Challenge</u>") by no later than the earlier of (A) for the Committee, sixty (60) days from the formation of the Committee, or (B) seventy-five (75) days following entry of the Interim Order for any other party in interest with requisite standing, (the occurrence of (A) or (B), as applicable, the "<u>Challenge Deadline</u>"), as such applicable date may be extended

BN 79085159v4

in writing from time to time in the sole discretion of the applicable holder of a Prepetition Lien, or by this court for good cause shown, and (ii) this court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and such judgment has become a final judgment that is not subject to any further review or appeal. To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive and final on any person, entity, or party in interest in the Bankruptcy Cases, and their successors and assigns, and in any Successor Case for all purposes.

**Section 10.** <u>Retention of Jurisdiction</u>. The court has and will retain jurisdiction to interpret and enforce the provisions of this Final Order.

///END OF ORDER///

PRESENTED BY:

/s/ *Dakota Pearce*_____
DAKOTA PEARCE (WSBA 57011)

BERNARD D. BOLLINGER, JR. (*pro hac vice* pending)
JULIAN I. GURULE (*pro hac vice* pending)
KHALED TARAZI (*pro hac vice* pending)
BUCHALTER, a Professional Corporation

*Counsel to Debtors and Debtors in Possession*