Julian I. Gurule (CA SBN: 251260)*
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6067
Email: jgurule@omm.com

*Co-Counsel to Debtors and
Debtors in Possession*

Dakota Pearce (WSBA #57011)
BUCHALTER
1420 5th Avenue, Suite 3100
Seattle, Washington 98101
Telephone: (206) 319-7052
Email: dpearce@buchalter.com

Bernard D. Bollinger, Jr. (CA SBN:
132817)*
Khaled Tarazi (AZ SBN: 032446)*
BUCHALTER
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017
Telephone: (213) 891-0700
Email: bbollinger@buchalter.com
        ktarazi@buchalter.com

*Admitted *Pro Hac Vice*

*Counsel to Debtors and Debtors in
Possession*

HONORABLE WHITMAN L. HOLT

HEARING DATE: March 27, 2024
HEARING TIME: 10:00 A.M.
LOCATION:  Tower Bldg
                 2nd Floor Courtroom
                 402 East Yakima Avenue
                 Yakima, WA 98901

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:

ICAP ENTERPRISES, INC., et al.,

                              Debtors.[1]

Chapter 11

Lead Case No. 23-01243-WLH11
Jointly Administered

---

[1]  The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap

---

**DEBTORS' MOTION TO APPROVE
ENTRY INTO AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT**

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "Local Rules"), the above-captioned debtors and debtors in possession (the "Debtors") move (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") approving the Cooperation Agreement, dated February 6, 2024 (the "Cooperation Agreement")[2] by and among the Debtors and the unsecured creditors' committee appointed in these chapter 11 cases (as amended on November 9, 2023 [Dkt. No. 147], the "Committee"). A copy of the Cooperation Agreement is attached to the Proposed Order as **Exhibit 1**.

In support of this Motion, the Debtors contemporaneously submit the *Declaration of Lance Miller in Support of the Debtors' Motion to Approve the Cooperation Agreement* (the "Miller Declaration").

## I.   PRELIMINARY STATEMENT

1.    In order to maximize the recovery for the 1,800 investors owed approximately $250 million, the Debtors and the Committee have negotiated a joint approach to pursuit of claims against third parties. The Cooperation Agreement, when approved, will enable the Debtors and the Committee to jointly pursue claims against

---

Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Cooperation Agreement.

third parties with the goal of maximizing recoveries for creditors under a chapter 11 plan.

2.     From the outset of these cases, the Debtors, working collaboratively with the Committee, expended significant efforts to analyze the facts and circumstances surrounding the failure of the iCap business and potential causes of action related to such failure. The Debtors' investigation was overseen by their independent Board of Directors and spearheaded by Lance Miller, the Debtors' Chief Restructuring Officer ("CRO"), with substantial support from professionals at Paladin Management and counsel for the Debtors. The Debtors conducted the investigation in collaboration with the Committee and its advisors, including forensic accounting professionals at B. Riley, the Committee's financial advisor, and the Committee's lawyers. The investigation included an analysis of the Debtors' accounting platform, bank statements, financial statements, and other financial records, as well as interviews with former employees willing to speak to the Debtors. The Debtors' investigation was further supported by a forensic accounting professional, Jeffrey H. Kinrich of Analysis Group, who is a certified public accountant, with extensive experience investigating and testifying on financial and accounting issues related to distressed companies.

3.     Based on all the available information, the Debtors have concluded that for years during the prepetition period, iCap operated as a Ponzi scheme. The Debtors' business enterprise bears all the hallmarks of a Ponzi scheme. Significantly,

- iCap's businesses operated with negative cash flow since inception. For example, Fund 1's real estate investments lost approximately $38 million through 2021, and Fund 2's investments lost $18.5 million through 2021.
- The source of payments to initial iCap investors was from cash infused by new iCap investors. This is reflected in the declining returns for initial investors as compared to later investors.

ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT                3

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

- iCap's business revenue was not sufficient to continue operations and, accordingly, iCap relied upon increasing fundraising and commingling cash. Fundraising became the near-exclusive source for the Debtors' capital. Between October 2018 and September 2023, fundraising activities represented more than 75% of total receipts (excluding intercompany advances), and were almost 10 times greater than revenues from real estate activities.

- The vast majority of funds received by iCap were from investors and external lenders rather than generated through business operations. Deposits to iCap entities were largely comprised of money from investors (49.4%), intercompany transfers (34.9%), and third-party loans (9.6%), more so than from business operations (6.0%).

- To attract new investors, iCap management repeatedly disseminated false and misleading financial information through quarterly newsletters and investment calls.

- Rather than structure its real estate investments as equity investments, iCap chose to raise capital from investors through privately placed debentures under which investors were promised interest rates ranging from 6% to 15%.

- iCap consistently encouraged investors to "roll over" their investments, rather than be paid in full at maturity. For example, when Fund 1 and Fund 2 matured in December 2016 and December 2017, respectively, iCap was unable to repay either Fund's debentures. After several maturity date extensions, iCap gave investors the option to "roll over" their debentures into the newly created Fund 3.

**ORDER APPROVING ENTRY INTO AND PERFORMANCE UNDER THE COOPERATION AGREEMENT**     4

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

23-01243-WLH11    Doc 470    Filed 02/23/24    Entered 02/23/24 19:54:56    Pg 4 of 29

- Fund 3 never owned or invested in real estate projects directly. Fund 3 was marketed as a "fund of funds" that owned equity interests in Funds 1 and 2 and would benefit from the income generated from those funds.

4.    Ultimately, iCap conducted minimal legitimate business operations, did not generate any profits on a standalone basis, and used new investors' money to pay returns to earlier investors.

5.    The Cooperation Agreement entered into between the Debtors and Committee provides a detailed framework to litigate claims against third parties arising out of the Ponzi scheme perpetrated by the Debtors' former management and other third parties. The Cooperation Agreement allocates responsibilities and work streams with respect to litigation efforts while ensuring the efficient use of estate resources in a manner acceptable to the Committee and beneficial to the Debtors' estates. The Debtors view investors as the ultimate economic stakeholders in these cases and having the Committee's support is critical to the successful prosecution and ultimate outcome of these cases.    Accordingly, the support of the Committee, as embodied in the Cooperation Agreement, represents a tremendous step forward.

6.    In brief, but subject to the terms of the Cooperation Agreement, this settlement provides for, among other things:

- The joint prosecution by the Debtors and the Committee of certain specified claims related to the Ponzi scheme, and the granting of derivative standing to the Committee for those purposes.
- The joint division and allocation of duties and responsibilities for pre-trial and trial activities in a cost-efficient manner.
- The Debtors and the Committee to work together in good faith with respect to any decisions relating to or otherwise impacting strategy, execution, and

**ORDER APPROVING ENTRY INTO AND PERFORMANCE UNDER THE COOPERATION AGREEMENT**

5

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

23-01243-WLH11    Doc 470    Filed 02/23/24    Entered 02/23/24 19:54:56    Pg 5 of 29

allocation of labor and resources for prosecuting and resolving the specified claims.

- The Debtors and the Committee to jointly move the court for entry of findings of fact and conclusions that during the prepetition period the Debtors operated a Ponzi scheme.

7.      In light of the Debtors' limited assets, the difficult legal and practical issues involved, and the desire of all parties to liquidate these claims as speedily as possible, the Cooperation Agreement represents an important step in the case in the efforts to ensure that the investor community is represented and involved in recovery efforts through the Committee. The resolution of these issues will facilitate the Debtors' ability to confirm a chapter 11 plan and achieve the Debtors' goal of maximizing recoveries to creditors. For all of these reasons, and for the reasons set forth below, the Debtors respectfully request that the Court grant the relief requested in this Motion and authorize the Debtors to enter into and consummate the Cooperation Agreement.

## II.      JURISDICTION AND VENUE

8.      The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105 and 363(b) of the Bankruptcy Code, Bankruptcy Rule 9019, and Local Rule 9019-1.

## III.      BACKGROUND

## A.      The Debtors and the Commencement of the Case

9.      The Debtors commenced their respective chapter 11 bankruptcy cases (the "Chapter 11 Cases") on September 29, 2023 (the "Petition Date").[3]  Since the

_____

[3] Certain of the Debtors filed their own chapter 11 cases on September 30, November 8, and November 14, 2023.  For purposes of this Motion, distinguishing between the Debtors' respective Petition Dates and Chapter 11 Cases is not relevant, and therefore "Petition Date" as used herein will refer to the earliest of the Debtors' respective filing dates, and

ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT                6

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

commencement of these Chapter 11 Cases, the Debtors continues to operate and manage their business and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

10.    On October 2, 2023, the court ordered the joint administration of the Chapter 11 Cases, which are now being administered under the lead case of iCap Enterprises, Inc. (Case No. 23-01243-WLH11).

11.    On October 20, 2023, the Office of the United States Trustee for the Eastern District of Washington appointed the Committee.

12.    On September 28, 2023, Mr. Christensen resigned all positions with the Debtors, and Lance Miller of Paladin Management Group was appointed Chief Restructuring Officer with full and exclusive control and authority over the Debtors and the prosecution of these Chapter 11 Cases.

13.    Additional information about the Debtors' historical business operations, capital structure, and the events leading up to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Lance Miller in Support of First Day Motions* [ECF No. 23].

**B.    The Cooperation Agreement**

14.    The Debtors and the Committee have agreed to the terms of the Cooperation Agreement to address pursuit of litigation claims in order to maximize the distribution to investors.

15.    Based on the Debtors' books and records, bank statements, financial statements, and interviews with individuals with personal knowledge of the facts and circumstances surrounding the failure of the Debtors' businesses, the Debtors and the Committee have determined that, during the period prior to the Petition Date, the

---

"Chapter 11 Cases" includes all of the Debtors' cases, irrespective of when they were filed.

**ORDER APPROVING ENTRY INTO AND PERFORMANCE UNDER THE COOPERATION AGREEMENT**          7

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

Debtors operated as a Ponzi scheme. The Debtors' estates have limited resources available and, accordingly, must allocate necessary tasks and next-stage litigation as efficiently as possible.

16. The Cooperation Agreement sets forth the terms under which the Debtors and the Committee will prosecute the Christensen Claims, the Sunset Terrace Claims, the Umpqua Claims, and any additional claims (each as defined in the Cooperation Agreement and collectively, the "Specified Claims"). The material terms of the Cooperation Agreement are set forth below.

| | |
|---|---|
| *Joint Prosecution of Specified Claims* | The Parties will jointly prosecute the Specified Claims, and shall jointly defend the Debtors with respect to any counterclaims or defenses raised by defendants in the Specified Claims. The Parties will jointly divide and allocate duties and responsibilities for pre-trial activities (including discovery) as well as for trial and will do so, as much as possible, in a cost-efficient manner. The Parties will continue to explore and investigate efforts to arrange for contingent and/or hybrid contingent/hourly fee arrangements with counsel, when possible, to preserve the estates' assets and maximize distribution to creditors. |
| *Strategy Decisions* | The Parties will work in good faith to agree in all respects on any decisions relating to or otherwise impacting strategy, execution, and allocation of labor and resources for prosecuting the Specified Claims. The Debtors' professionals and Committee's professionals will consult on all strategy decisions. In the event, however, that following good faith discussions the Parties cannot agree on a strategic decision or other decision, the decision will be made by the Debtors' Board of Directors in consultation with the Committee's professionals. |
| *Resolution of Specified Claims* | The Parties will work in good faith to agree in all respects on any decisions to settle or otherwise consensually resolve a Specified Claim. In the event, however, that following good faith discussions the Parties cannot agree with respect to the foregoing, the Debtors may seek approval of such resolution from the court, and the Committee shall have all rights to object thereto. |
| *Joint Litigation Protections* | Joint Litigation Materials shall be subject to attorney-client privilege, common interest privilege, and work product protections pursuant to the terms of the Common Interest Agreement or as otherwise available under any applicable law, rule, or other authority. |
| *Ponzi Scheme Findings and Conclusions* | In conjunction with moving for approval of the Cooperation Agreement, the Parties will also cooperate and jointly move the court for entry of findings of fact and conclusions of law, as applicable, finding and concluding that during the prepetition period the Debtors |

ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT                    8

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

23-01243-WLH11    Doc 470    Filed 02/23/24    Entered 02/23/24 19:54:56    Pg 8 of 29

| | |
|---|---|
| | operated a "Ponzi scheme," including, without limitation, for purposes of Bankruptcy Code sections 544 and 548 and any other applicable fraudulent transfer, debtor/creditor law, avoidance and recovery statute or other cause of action, claim or argument (the "<u>Ponzi Scheme Findings and Conclusions</u>"). |
| **Committee Standing** | To the extent required to implement the terms of the Cooperation Agreement, the Committee shall have derivative standing to pursue the Specified Claims. For the avoidance of doubt, however, such standing shall not include the right to pursue Specified Claims or any other cause of action outside of the terms of the Cooperation Agreement and/or independent of cooperation with the Debtors. The Cooperation Agreement does not prevent the Committee from seeking derivative standing to pursue claims (other than the Specified Claims), as provided by law, if the Committee and Debtors are unable to reach agreement regarding such matters. |
| **Effectiveness, Cooperation, and Bankruptcy Court Approval** | The Cooperation Agreement and the terms thereof shall be subject in all respects to approval by the court of the Cooperation Agreement. The Debtors and the Committee will cooperate and jointly seek an order of the court approving the Cooperation Agreement. |
| | The Committee agrees to support in all respects, and not object to, the Debtors' request for approval by the court of additional debtor-in-possession financing secured by certain causes of action on the terms set forth on Exhibit ___ to the Cooperation Agreement (the "<u>DIP Litigation Financing</u>").[4] The DIP Litigation Financing shall have as a condition to effectiveness and funding that the court shall have entered the Ponzi Scheme Findings and Conclusions. |
| | The Debtors' and Committee's agreement to jointly seek entry of the Ponzi Scheme Findings and Conclusions and DIP Litigation Financing is integral to each party's decision to enter into the Cooperation Agreement, in order to cooperatively pursue recoveries from third parties in order to maximize the ultimate distribution to the investor creditors damaged by the Debtors' prepetition conduct. |

## IV.   RELIEF REQUESTED

17.    By this Motion, pursuant to sections 105 and 363(b) of the Bankruptcy Code, Bankruptcy Rule 9019, and Local Rule 9019-1, the Debtors request entry of the Proposed Order attached as **Exhibit A** to this Motion, approving the Cooperation Agreement.

---

[4] The execution version of the Cooperation Agreement does not include an Exhibit reflecting the terms of the DIP Litigation Financing, but, consistent with the Committee's obligations under the Cooperation Agreement, the Committee is supportive of and a co-movant with respect to the supplemental DIP Litigation Financing.

**ORDER APPROVING ENTRY INTO AND PERFORMANCE UNDER THE COOPERATION AGREEMENT**              9

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

# V.  APPLICABLE AUTHORITY

## A.  The Cooperation Agreement is Fair, Equitable, and in the Best Interests of the Estates

18.  Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the [debtor in possession] and after hearing on notice to creditors . . . the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Bankruptcy Rule 9019(a) affords the Bankruptcy Court "great latitude in approving compromise agreements" proposed by a debtor and may approve a proposed compromise so long as it is fair and equitable. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1987). The statutory basis underlying Bankruptcy Rule 9019 is section 363(b)(1) of the Bankruptcy Code, which allows debtors to, *inter alia*, use property of their estates outside the ordinary course of business, following notice and a hearing. *See Foster v. First Interstate Bank (In re Shoot the Moon, LLC)*, Nos. 2:15-bk-60979-WLH11, 2:21-ap-02005-WLH, 2022 Bankr. LEXIS 117, at *11 (Bankr. D. Mont. Jan. 18, 2022); *In re Claar Cellars LLC*, Nos. 20-00044-WLH11, 20-00045-WLH11, 2020 Bankr. LEXIS 682, at *11 n.24 (Bankr. E.D. Wash. Mar. 13, 2020).

19.  "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986), *cert. denied sub nom.*, *Martin v. Robinson*, 479 U.S. 854 (1986). A "settlement is particularly valuable in bankruptcy;" it can facilitate "significant creativity in the negotiation and crafting of complex, multiparty settlements resolving what might otherwise be intractable disputes in nonbankruptcy contests." *Foster*, at *10–11 (footnotes omitted). A court should not substitute its own judgment for the judgment of the debtor in possession. *See Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984). Accordingly, in approving a settlement

ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT                     10

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA  98101-1337
TELEPHONE: 206.319.7052

agreement, the court need not conduct an exhaustive investigation of the claims sought to be compromised. *United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, it is sufficient that the court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *In re A & C Props.*, 784 F.2d at 1381.

20.     The Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable: (i) the probability of success; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of litigation involved, and the expense, inconvenience and delay in necessarily attending to it; and (iv) the paramount interests of creditors. *In re A & C Props.*, 784 F.2d at 1381 (the "A & C Factors"). In addition to the A & C Factors, it is also well established that the law favors compromise. *Blair*, 538 F.2d at 851.

21.     The settlement embodied in the Cooperation Agreement is reasonable, fair, equitable, and in the best interest of the Debtors' estates and stakeholders. The terms of the Cooperation Agreement were the product of substantial, arms'-length negotiations after investigation into the Specified Claims. The Cooperation Agreement does not provide for the specific settlement of any of the Specified Claims but rather a framework for resolving the Specified Claims as efficiently as possible to maximize recovery for creditors. Under the Cooperation Agreement, the Debtors and the Committee will cooperatively pursue recoveries from third parties to maximize the ultimate distribution to the investor creditors damaged by the Debtors' prepetition conduct.

22.     While not a condition to the Cooperation Agreement, the Ponzi Scheme Findings and Conclusions, which are essential for the Ponzi scheme presumption, are important to both the Debtors and the Committee. With the Ponzi Scheme Findings and

**ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT**                    11

BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052

23-01243-WLH11     Doc 470     Filed 02/23/24     Entered 02/23/24 19:54:56     Pg 11 of 29

Conclusions, fraudulent intent is demonstrated by the mere fact that the subject transfer was made as part of a Ponzi scheme. This presumption will simplify the litigation of the Specified Claims by allowing the parties to prosecute these claims without the risk of proving fraudulent intent. Similarly, the Ponzi Scheme Findings and Conclusions will also minimize the expense, delay, and costs associated with litigation of the Specified Claims.

23. Subject to the terms of the Cooperation Agreement, the joint prosecution of claims will save the Debtors substantial time and expense by dividing and allocating duties and responsibilities for pre-trial activities (including discovery) as well as for trial in a cost-efficient manner. And, in doing so, the estates can recover more value for the creditors. The Debtors believe that the expense, delay, and costs associated with litigating the Specified Claims without the cooperation and assistance of the Committee would significantly reduce any net recovery available to the Debtors' estates.

24. For the foregoing reasons, the Debtors believe that the terms of the Cooperation Agreement will maximize value for the Debtors' stakeholders and are, ultimately, in the best interest of the Debtors' estates and stakeholders. The A & C Factors weigh heavily in favor of this court's approval of the Cooperation Agreement. Under these circumstances, the Debtors believe that the terms of the Cooperation Agreement are appropriate, fair, equitable, and should be approved by this court.

**B.** **The Cooperation Agreement is Authorized by Section 363 as a Sound Exercise of the Debtors' Business Judgment**

25. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law throughout the country, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business

ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT                    12

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

23-01243-WLH11    Doc 470    Filed 02/23/24    Entered 02/23/24 19:54:56    Pg 12 of 29

judgment on part of the debtor, such use should be approved. *See*, *e.g.*, *In re Equity Funding Corp. of Am.*, 519 F.2d 1274, 1277 (9th Cir. 1975); *In re Claar Cellars LLC*, 2020 Bankr. LEXIS 682, at *9 (Bankr. E.D. Wash. Mar. 13, 2020) (the business judgment standard "is a 'deferential' standard pursuant to which a 'bankruptcy court will generally approve' a reasoned decision by the debtor") (citations omitted); *Myers v. Martin (In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363)(b)); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the actions were in the best interests of the company.'").

26.     Additionally, the court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Together, these sections of the Bankruptcy Code provide the court with authority to grant the relief requested in the Motion. *In re Walter*, 83 B.R. 14, 17 (9th Cir. BAP 1988) ("The bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification.").

27.     Here, the Debtors' determination to enter into and perform pursuant to the Cooperation Agreement easily satisfies the standards for use of estate property under the Bankruptcy Code as a sound exercise of the Debtors' reasonable business judgment.

ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT                    13

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

23-01243-WLH11    Doc 470    Filed 02/23/24    Entered 02/23/24 19:54:56    Pg 13 of 29

As discussed above, the Cooperation Agreement is the culmination of an arms'-length negotiation between the Debtors and the Committee to address investor claims that were outstanding and owed to individual investors as of the Petition Date. The Debtors and their legal and financial advisors have worked diligently, efficiently, and expeditiously to identify and pursue the liquidation of the Debtors' real property and other assets, but such assets will be far from sufficient to repay creditors in full. To pursue additional value for the estates' creditors, the Debtors and the Committee seek approval of the Cooperation Agreement.

28. For the foregoing reasons, the Debtors believe that their entry into the Cooperation Agreement is in the best interests of their estates and stakeholders, and is a sound exercise of their reasonable business judgment. Accordingly, the Debtors respectfully request the Court authorize the Debtors' entry into, and performance under, the Cooperation Agreement under sections 105(a) and 363(b) of the Bankruptcy Code.

## VI. __NOTICE__

Notice of this Motion is being given to the Limited Mailing List approved by this court [ECF Nos. 63 and 164]. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VII. __CONCLUSION__

WHEREFORE, for the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing regarding this Motion, the Debtors respectfully request that the court enter the Proposed Order approving the Cooperation Agreement and for such other and further relief as the court may deem just and proper under the circumstances.

DATED this 23rd day of February, 2024.

BUCHALTER
A Professional Corporation


By _____/s/ Dakota Pearce_____
     Dakota Pearce (WSBA 57011)

BERNARD D. BOLLINGER, JR. (Admitted *Pro Hac Vice*)
KHALED TARAZI (Admitted *Pro Hac Vice*)
BUCHALTER, a Professional Corporation
*Counsel to Debtors and Debtors in Possession*

And

JULIAN I. GURULE (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP

*Co-Counsel to Debtors and Debtors in Possession*

**ORDER APPROVING ENTRY INTO AND PERFORMANCE UNDER THE COOPERATION AGREEMENT**     15

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

23-01243-WLH11     Doc 470     Filed 02/23/24     Entered 02/23/24 19:54:56     Pg 15 of 29

**Exhibit A**

**DEBTORS' MOTION TO APPROVE**
**ENTRY INTO AND PERFORMANCE UNDER THE**
**COOPERATION AGREEMENT**

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

23-01243-WLH11    Doc 470    Filed 02/23/24    Entered 02/23/24 19:54:56    Pg 16 of 29

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

In re:

ICAP ENTERPRISES, INC., *et al.*,

Debtors.[1]

Chapter 11

Lead Case No. 23-01243-WLH11
Jointly Administered

**ORDER APPROVING ENTRY
INTO AND PERFORMANCE
UNDER THE COOPERATION
AGREEMENT**

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") pursuant to §§ 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9019-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "Local Rules"), for entry of an order approving entry into and performance under the Cooperation Agreement, dated February 6, 2024 (the "Cooperation Agreement") by and among the Debtors and the Committee, all as more fully set forth in the Motion; and the court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the court having found this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the court may enter a final order consistent with Article III of the United States Constitution; and the court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the court having considered the statements of counsel and the Miller Declaration in support of the Motion; and it further appearing that the relief requested in the Motion is in the best interests of the Debtors' bankruptcy estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion [ECF No. __] is **GRANTED**, as set forth below.

2.     The Cooperation Agreement attached hereto as **Exhibit 1** and the terms therein are hereby approved.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Cooperation Agreement, as applicable.

3.     The Debtors and the Committee are authorized to enter into and perform under the Cooperation Agreement and take any actions necessary to enter into and perform under the Cooperation Agreement.

4.     The Cooperation Agreement is approved in its entirety and, once effective, shall be binding and enforceable on the parties thereto in accordance with its terms.

5.     Notwithstanding anything in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

6.     The stay imposed pursuant to Bankruptcy Rule 6004(h) is waived.

7.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.     This Court shall retain jurisdiction and power to hear and determine all matters arising from or related to the implementation of this Order.


///END OF ORDER///


PRESENTED BY:


By  */s/ Dakota Pearce*
DAKOTA PEARCE (WSBA 57011)

BERNARD D. BOLLINGER, JR. (Admitted *Pro Hac Vice*)
KHALED TARAZI (Admitted *Pro Hac Vice*)
BUCHALTER, a Professional Corporation

*Counsel to Debtors and Debtors in Possession*

1  By /s/ Julian I. Gurule

2
3  JULIAN I. GURULE (Admitted *Pro Hac Vice*)
   O'MELVENY & MYERS LLP

4  *Co-Counsel to Debtors and Debtors in Possession*

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**ORDER APPROVING ENTRY INTO
AND PERFORMANCE UNDER THE
COOPERATION AGREEMENT**                    4

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

1

**Exhibit 1**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**ORDER APPROVING ENTRY INTO**
**AND PERFORMANCE UNDER THE**
**COOPERATION AGREEMENT**

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

<b>EXECUTION VERSION</b>

# COOPERATION AGREEMENT

This COOPERATION AGREEMENT (this "<u>Agreement</u>") is made and entered into as of February 6, 2024, by and among the Debtors and the Committee (each as defined herein and, together, the "<u>Parties</u>").

<u>Recitals:</u>

**WHEREAS**, on September 29, 2023 and September 30, 2023, the Debtors commenced these Bankruptcy Cases before the Bankruptcy Court.

**WHEREAS**, on October 20, 2023, the Office of the United States Trustee appointed the Committee.

**WHEREAS**, on October 25, 2023, the Committee retained Bush Kornfeld LLP and John Bender/Corr Cronin LLP, as bankruptcy counsel and special litigation counsel, respectively, and B. Riley as financial advisor.

**WHEREAS**, prior to the Petition Date, the Debtors were subject to multiple lawsuits arising from the Debtors' failure to repay investor claims.

**WHEREAS**, the Parties agree that, as of the Petition Date and as determined based on the Debtors' books and records, in excess of $240 million in investor claims were outstanding and owed to approximately 1,800 individual investors.

**WHEREAS**, the Debtors and the Committee have each reached the determination that, during the period prior to the Petition Date, the Debtors operated as a Ponzi scheme. This determination is based on, *inter alia*, the Debtors' and the Committee's respective analyses of the Debtors' books and records, bank statements, financial statements, and interviews with individuals with personal knowledge of the facts and circumstances surrounding the failure of the Debtors' business. The Debtors' and the Committee's respective conclusions have been made with input from legal and financial advisors and experts in the field.

**WHEREAS**, the Parties agree that the Debtors and their legal and financial advisors have worked diligently, efficiently, and expeditiously to identify and pursue the liquidation of the Debtors' real property and other assets, but that such assets will be far from sufficient to repay creditors in full.

-1-

4886-7692-6114.1

**WHEREAS**, in light of the foregoing, the Debtors and the Committee acknowledge that the estates have limited resources available and, accordingly, must allocate necessary tasks and next-stage litigation as efficiently as possible.

**ACCORDINGLY**, the Debtors and the Committee enter into this Agreement with respect to the terms and conditions set forth herein, including the terms under which the Parties intend to pursue certain litigation going forward.

## Definitions:

| | |
|---|---|
| ***Bankruptcy Cases:*** | Those certain cases pending under chapter 11 of the U.S. Bankruptcy Code before the Bankruptcy Court and jointly administered under lead Case No. 23-01243, inclusive of any cases that may, in the future, be commenced and added to such joint administration. |
| ***Bankruptcy Court:*** | The United States Bankruptcy Court for the Eastern District of Washington. |
| ***Christensen Claims:*** | Any and all claims asserted or that could be asserted by the Debtors or their estates against Christopher Christensen, Deborah Christensen, or any of their assets or properties. |
| ***Committee:*** | The Official Committee of Unsecured Creditors formed and appointed in the Bankruptcy Cases. |
| ***CRO:*** | Lance Miller, in his capacity as Chief Restructuring Officer and/or Manager for the Debtors. |
| ***Debtors:*** | The debtors and debtors in possession in the Bankruptcy Cases. |
| ***Joint Litigation Materials:*** | Draft pleadings and memoranda, and other information that may or may not include factual analyses, mental impressions, reports of witness interviews, and other similar information, exchanged or to be exchanged by the Parties in connection with the Specified Claims. |
| ***Specified Claims:*** | The Christensen Claims, the Sunset Terrace Claims, the Umpqua Claims, and any additional claims, as agreed by the Parties. |
| ***Sunset Terrace Claims:*** | Any and all claims asserted or that could be asserted by the Debtors or their estates arising under or relating to the Debtors' pre-petition sale of the Sunset Terrace Project. |

4886-7692-6114.1

| | |
|---|---|
| ***Sunset Terrace Project:*** | That certain real estate development project previously owned by the Debtors and located at 2715 Sunset Lane, Renton, Washington. |
| ***Umpqua Claims:*** | Any and all claims held by the Debtors or that could be asserted by the Debtors against Umpqua Bank or any of its affiliates, officers, directors, or employees. |

**Key Terms:**

| | |
|---|---|
| ***Joint Prosecution of Specified Claims:*** | The Parties will jointly prosecute the Specified Claims, and shall jointly defend the Debtors with respect to any counterclaims or defenses raised by defendants in the Specified Claims. The Parties will jointly divide and allocate duties and responsibilities for pre-trial activities (including discovery) as well as for trial and will do so, as much as possible, in a cost-efficient manner. The Parties will continue to explore and investigate efforts to arrange for contingent and/or hybrid contingent/hourly fee arrangements with counsel, when possible, in order to preserve the estate's assets and maximize distribution to creditors. In connection with such joint prosecution, each Party's retained professionals will be named or listed on the caption for all pleadings associated with the Specified Claims and each Party's retained professionals will have the right to attend and participate in all depositions, hearings, and trials but the Parties will also take resource allocation and cost efficiencies into consideration. |
| | Unless otherwise agreed by the Parties, for purposes of allocating resources efficiently, professionals for the Committee will be first chair, and professionals for the Debtors will be second chair for the prosecution, through trial if necessary, of the Christensen Claims, and professionals for the Debtors will be first chair, and professionals for the Committee will be second chair for the prosecution, through trial if necessary, of the Sunset Terrace Claims. With respect to the Umpqua Claims, the Committee and Debtors will pursue any such claims jointly as co-plaintiffs, consistent with the terms of this Agreement, with John Bender/Corr Cronin serving as sole litigation counsel; provided that, in the event of a conflict between the Debtors and the Committee with respect to such litigation, John Bender/Corr Cronin shall solely represent the Debtors. |
| ***Discovery Coordination:*** | Except as required for compliance with professional ethics obligations (including with respect to conflicts), or to achieve cost savings or other efficiencies beneficial to the joint litigation efforts, the Parties will utilize a single vendor to be designated by the |

Debtors for retention, organization, maintenance, and review of any information pertaining to the Specified Claims, including any discovery, except with respect to the Umpqua Claims, for which Committee professionals will designate such vendor, with the Debtors' professionals being provided full access information related to the Umpqua Claims.

Except as required for compliance with professional ethics obligations (including with respect to conflicts), each Party will use commercially reasonable efforts to ensure that any and all summaries, reflections, notes, compilations, collections, or other work product derived or arising from prosecution of the Specified Claims shall be shared with the other Party.

*Strategy Decisions:*     The Parties will work in good faith to agree in all respects on any decisions relating to or otherwise impacting strategy, execution, and allocation of labor and resources for prosecuting the Specified Claims. The Debtors' professionals and Committee's professionals will consult on all strategy decisions. In the event, however, that following good faith discussions the Parties cannot agree on a strategic decision or other decision, the decision will be made by the Debtors' Board of Directors in consultation with the Committee's professionals.

*Resolution of Specified Claims:*     The Parties will work in good faith to agree in all respects on any decisions to settle or otherwise consensually resolve a Specified Claim. In the event, however, that following good faith discussions the Parties cannot agree with respect to the foregoing, the Debtors may seek approval of such resolution from the Bankruptcy Court, and the Committee shall have all rights to object thereto.

*Joint Litigation Protections:*     Joint Litigation Materials shall be subject to attorney-client privilege, common interest privilege, and work product protections pursuant to the terms of the Common Interest Agreement or as otherwise available under any applicable law, rule, or other authority.

*Committee Standing:*     To the extent required in order to implement the terms hereof, the Committee shall have derivative standing to pursue the Specified Claims. For the avoidance of doubt, however, such standing shall not include the right to pursue Specified Claims or any other cause of action outside of the terms of the Agreement and/or independent of cooperation with the Debtors. For clarification, this Agreement does not prevent the Committee from seeking derivative standing to pursue claims (other than the Specified Claims defined herein), as

-4-

provided for by law, if the Committee and Debtors are unable to reach agreement regarding such matters.

| | |
|---|---|
| ***Effectiveness, Cooperation, and Bankruptcy Court Approval:*** | The Agreement and the terms hereof shall be subject in all respects to approval by the Bankruptcy Court of this Agreement. The Parties will cooperate and jointly seek an order of the Bankruptcy Court approving this Agreement and in conjunction with moving for approval of this Agreement, the Parties will also cooperate and jointly move the Court for entry of the Ponzi Scheme Findings and Conclusions (as defined below).  For purposes of this Agreement, the term "Ponzi Scheme Findings and Conclusions" means entry by the Bankruptcy Court of findings of fact and conclusions of law, as applicable, finding and concluding that during the prepetition period the Debtors operated a "Ponzi scheme", including, without limitation, for purposes of Bankruptcy Code sections 544 and 548 and any other applicable fraudulent transfer, debtor/creditor law, avoidance and recovery statute or other cause of action, claim or argument.  The Debtors' and  Committee's agreement to jointly seek entry of the Ponzi Scheme Findings and Conclusions and the DIP Litigation Financing (as defined below) is integral to each party's decision to enter into this Agreement in order to cooperatively pursue recoveries from third parties in order to maximize the ultimate distribution to the investor creditors damaged by the Debtors' prepetition conduct. |
| | The Parties will cooperate and agree that they will timely seek approval of this Agreement, and will cooperate with respect to the submission of relevant evidence. |
| | The Committee agrees to support in all respects, and not object to, the Debtors' request for approval by the Bankruptcy Court of additional debtor-in-possession financing secured by certain causes of action on the terms set forth on the attached Exhibit __ (the "DIP Litigation Financing").  The DIP Litigation Financing shall have as a condition to effectiveness and funding that the Bankruptcy Court shall have entered the Ponzi Scheme Findings and Conclusions.  For clarity, this Agreement is not conditioned on the entry of the Ponzi Scheme Findings and Conclusions nor the DIP Litigation Financing. |
| ***Termination:*** | The Agreement may be terminated by (a) either Party upon ten (10) days written notice to the other Party, if either Party has breached the terms of this Agreement, as determined by the Bankruptcy Court, after notice and hearing and (b) the Debtors if they conclude in good |

-5-

faith and the Bankruptcy Court determines, after notice and hearing, that an unforeseeable material change in circumstances and/or other material events prevent arising after the approval of this Agreement prevent the Debtors from otherwise exercising their fiduciary duties. In addition, the Agreement shall terminate automatically and without notice in the event that the Committee terminates the representation of either Bush Kornfeld or John Bender/Corr Cronin. In the event John Bender should change law firms, this Agreement and the engagements for the Specified Claims to serve as counsel for the Committee and/or Debtors contemplated herein will continue with Mr. Bender and his new law firm, subject only to (a) the new firm being employed on the same terms and conditions as provided for herein with respect to John Bender/Corr Cronin and (b) compliance with all applicable professional standards, including the absence of any conflicts, and Bankruptcy Court approval.

Upon termination of this Agreement, any derivative standing afforded to the Committee under this Agreement shall be automatically withdrawn, unless Debtors' breach of the Agreement is the cause of the termination, in which case the Committee's derivative standing may continue on terms that may be set forth by the Court.

Termination shall not impact the confidentiality, privilege and other Joint Litigation Protections afforded to the Joint Litigation Materials.

*Amendment to Corr Cronin Retention Terms for Umpqua Claims:*

The Parties will cooperate in good faith to agree on terms for John Bender and his firm to serve as litigation counsel to both the Debtors and the Committee with respect to the Umpqua Claims, on a contingency or hybrid-contingency basis. If and to the extent the Parties agree on such terms (among themselves and with John Bender and his firm), the Committee shall seek approval from the Bankruptcy Court to amend and/or supplement John Bender and his firm's employment to incorporate such terms, and the Debtors shall also seek approval, as needed, to employ John Bender and his firm with respect to these matters. The terms and conditions for such amendment shall be agreeable to the Debtors in all respects.

*Miscellaneous Provisions:*

This Agreement shall be governed by the laws of the state of Washington. The Parties hereby irrevocably submit themselves to the jurisdiction of the Bankruptcy Court with respect to all issues and/or disputes arising under this Agreement.

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when

executed and delivered, shall be deemed to be an original and all of which, when taken together, shall constitute but one and the same Agreement.

This Agreement and the transaction documents related hereto represent the final agreement of the Parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the Parties. There are no unwritten oral agreements between the Parties. No modification or amendment of, or supplement to this Agreement, or to any of the transaction documents related hereto, will be valid or effective unless the same is in writing and signed by the Party against whom it is sought to be enforced.

Dated this 6th day of February, 2024.

**ICAP ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS**

By: _____
Lance Miller
Chief Restructuring Officer/Manager

**COMMITTEE CO-CHAIR**

**LILIAN TAN, as representative under Proxy
for CHUNYING TIAN**

By: Lilian Tian

**COMMITTEE COUNSEL
BUSH KORNFELD LLP**

By: Armand Kornfeld, Committee Counsel

**SPECIAL COUNSEL
CORR CRONIN LLP**

By: John Bender, Committee Special Litigation Counsel

-7-

4886-7692-6114.1

SUBJECT TO COMMON INTEREST PRIVILEGE
HIGHLY CONFIDENTIAL
PROFESSIONAL EYES ONLY

Dated this 6th day of February, 2024.

**ICAP ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS**

By: _____

Lance Miller
Chief Restructuring Officer/Manager

**COMMITTEE CO-CHAIR**

**LILIAN TAN, as representative under Proxy
for CHUNYING TIAN**

By:  Lilian Tan _____

**COMMITTEE COUNSEL
BUSH KORNFELD LLP**

By:  Armand Kornfeld, Committee Counsel _____

**SPECIAL COUNSEL
CORR CRONIN LLP**

By:  John Bender, Committee Special Litigation Counsel _____

-8-