Jason Ayres, WSBA #39141
Tara J. Schleicher, WSBA #26884
FOSTER GARVEY PC
121 SW Morrison St.
Eleventh Floor
Portland, OR 97204
Tel: (503) 228-3939
jason.ayres@foster.com
tara.schleicher@foster.com

*Counsel to Umpqua Bank*

Hon. WHITMAN L. HOLT
HEARING DATE: March 27, 2024
HEARING TIME: 10:00 a.m.
LOCATION: Tower Bldg.
2nd Floor Courtroom
402 East Yakima Ave.
Yakima, WA 98901

## UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

In re:

iCAP ENTERPRISES, INC., *et al.*,

Debtors,

Case No. 23-01243 WLH11
[and jointly administered cases]

UMPQUA BANK'S OBJECTION TO JOINT MOTION OF THE DEBTORS AND COMMITTEE FOR ORDER AUTHORIZING THE DEBTORS TO OBTAIN SUPPLEMENTAL POSTPETITION SECURED FINANCING AND RELATED RELIEF

Umpqua Bank, through its undersigned counsel, hereby objects to the Joint Motion of the Debtors and Unsecured Creditors' Committee (the "**Committee**") to authorize Debtors to obtain supplemental secured financing for the purpose of funding litigation against third parties (Dkt. #467, 542) (the "**DIP Motion**"). Specifically, Umpqua Bank objects to the DIP Motion to the extent it requires the court to make "Ponzi Scheme" findings against Debtors that are intended to be binding on non-parties, including Umpqua Bank. Accordingly, to the extent the court makes any "Ponzi Findings" as requested by the Debtors and the Committee,

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 1

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1
23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 1 of 21

the Ponzi Findings should not be enforceable as to any potential claims asserted against Umpqua Bank or in any subsequent litigation proceeding against Umpqua Bank.

# I. <u>INTRODUCTION</u>

The DIP Motion is procedurally improper in this case and should be denied. This objection does not address the merits of Debtors' conduct or whether it satisfies the requirements of a Ponzi Scheme presumption, but rather concerns whether an order that is intended to be binding on third parties as to unidentified future claims may be issued at all through a contested matter.

Any judicial finding of the existence of a Ponzi Scheme should be determined through an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure. A motion in a contested matter based on self-serving declarations and other evidence left unchallenged by parties with an actual interest in the outcome is insufficient. To the extent the motion does not present a "case or controversy," jurisdiction also is lacking. This is the reason for the adversity requirement in such important matters: otherwise, unnamed third parties that are subjected to future claims may bear the consequences of a Ponzi Scheme designation without a meaningful chance to contest the matter as they do not have the requisite incentive or information necessary to prepare an adequate defense based on allegations contained in a motion.

To make a Ponzi Scheme designation with adverse consequences on unnamed parties to pursue unnamed and unidentified claims results in a lack of due process. Notice made through an electronic filing and a chance to be heard as a nonparty at an evidentiary hearing – with a potentially absent target – does not suffice. Moreover, the scope of the requested order containing Ponzi Scheme findings, which is intended to be binding in the future on all "parties in interest and

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 2

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

EG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 2 of 21

the respective successors and assigns… in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Case or Successor Case," (ECF #467, p. 48), is overbroad. The effect of the Ponzi Scheme findings on nonparties in "Successor Cases" -- as that term is defined in the Joint Motion and proposed order -- is unlikely to meet the requirements of issue preclusion for purposes of state law claims against future parties, including Umpqua Bank. Therefore, the court should require Debtors to bring a procedurally proper adversary proceeding to determine the existence of a Ponzi Scheme. If the court is otherwise inclined to grant Debtors' requested Ponzi Scheme relief at this stage, the court should limit the scope of its findings such that any Ponzi Scheme findings do not apply as to Umpqua Bank in any future proceeding.

## II. PROCEDURAL BACKGROUND

Lance Miller, as Chief Restructuring Officer, authorized and began filing the Chapter 11 cases on September 29, 2023. ECF #23 (Declaration of Lance Miller in Support of First Day Motions). ¶42. As part of their first day motions, Debtors moved the court to obtain debtor-in-possession financing from the Serene Investment Management in an amount not to exceed $5,250,000, or up to $6,750,000, if certain conditions were met. *Id.* ¶14; *see* ECF #33 (Emergency Motion to Authorize Postpetition Secured Financing). The purpose of the DIP financing with Serene was to fund administration of the bankruptcy and to fund working capital in the ordinary course of business of the Debtors and other general corporate purposes. ECF #33, p. 4. The court ordered the requested relief on an interim basis on October 5 and by Final Order dated November 13. *See* ECF #68 (Interim Order authorizing Debtors to obtain post-petition secured financing); ECF #154 (Final Order authorizing Debtors to obtain post-petition secured financing).

On October 10, 2023, the court ordered the Debtors to close their accounts

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 3

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 3 of 21

with Umpqua Bank and transfer funds to open new accounts to be held by new post-petition accounts. ECF #76, p. 2. Debtors subsequently closed the Umpqua Bank deposit accounts, leaving Umpqua Bank with no property or assets of the bankruptcy estate.

On February 23, 2024, Debtors filed a Motion to Approve Entry Into and Performance Under the Cooperation Agreement between the Debtors and the Committee. "The Cooperation Agreement, when approved, will enable the Debtors and the Committee to jointly pursue claims against third parties with the goal of maximizing recoveries for creditors under a chapter 11 plan." ECF #470 ¶ 1. For perhaps the first time, Umpqua Bank was expressly listed in the bankruptcy proceedings as a target of potential future claims jointly by the Debtors and the Committee of the bankruptcy estate. *See, e.g., id.* ¶16 ("The Cooperation Agreement sets forth the terms under which the Debtors and the Committee will prosecute the Christensen Claims, the Sunset Terrace Claims, the Umpqua Claims, and any additional claims…"); p. 24 (defining "Umpqua Claims" in the proposed Cooperation Agreement as "Any and all claims held by the Debtors or that could be asserted by the Debtors against Umpqua Bank or any of its affiliates, officers, directors, or employees.").

Simultaneously with their cooperation motion, Debtors also requested court authority to obtain supplemental DIP financing of up to $5,000,000 for the purpose of funding the litigation of such third-party claims. *See* ECF #467, ¶20 ("The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Loan Facility is vital to the Debtors' ability to pursue claims arising out of the Ponzi scheme perpetrated by the Debtors' former management and other third parties.").

According to the DIP Motion, Debtors identified only one lender that

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 4

FOSTER GARVEY PC
*eleven th floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

EG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 4 of 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

provided an indication of interest towards providing supplemental DIP financing to Debtors. *Id., ¶*22. The identified lender of the proposed "DIP Loan Facility" also requires the anticipated third-party litigation to be streamlined and less costly before committing to making the loan to the Debtors.

> The DIP Loan Facility is expressly conditioned on the court finding and concluding that during the prepetition period the Debtors operated as a Ponzi scheme. Such findings and conclusions are well founded based on the exhaustive investigation conducted by the Debtors and the Committee and **are necessary and appropriate to quickly and efficiently pursue claims related to the Ponzi scheme**.

*Id.* ¶5 (emphasis added). Therefore, Debtors have requested – through their DIP Motion that the Court make a finding that "during the prepetition period, iCAP Enterprises, Inc.. . . operated as a Ponzi scheme." ECF #542 (Supplemental Brief (Mar. 1, 2024)), p. 1.

On March 11, 2024, counsel for the U.S. Trustee, Gary W. Dyer, filed an objection to the DIP Motion, citing various objections to having Ponzi Scheme findings made in the manner presented by Debtors. ECF #583. Debtors thereafter electronically filed a Notice of Debtors' Request for Findings That iCap Operated As A Ponzi Scheme on March 11, 2024. ECF #585. The Notice cited a hearing date of March 27, 2024, and a response deadline of March 18, 2024. *Id.*

Having appeared for the purpose of receiving notice on November 27, 2023 (ECF #190) and receiving Debtors' DIP Motion (ECF #467), Notice (ECF #585), and Supplemental Brief (#542), Umpqua Bank hereby objects to Debtors' request that Ponzi Scheme findings be made in this proceeding on procedural and due process grounds.

## III.   ARGUMENT

Ponzi Scheme findings entered for the purpose of Debtors securing litigation

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 5

FOSTER GARVEY PC
*eleven th floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

DIP financing could have an unknowable effect on non-parties such as Umpqua Bank as to future unnamed claims, particularly because of the broad and vague language of the proposed Ponzi Scheme order. No complaint has been filed against Umpqua Bank. For it to adequately respond on the merits to any complaint where the Ponzi Scheme conduct by Debtors is relevant, Umpqua Bank must know what what claims are being alleged and what remedies are being sought. Arguably, the proposed Ponzi Scheme findings could implicate not just fraudulent transfer and avoidance and recovery statutes, but could also implicate securities fraud causes of action, or any number of causes of action under an aiding and abetting theory. Making a blanket finding that a Ponzi Scheme existed in the absence of unnamed but bound parties violates due process and is contrary to the law of issue preclusion.

**A.  Ponzi Scheme Findings Should Only Be Found Through An Adversary Proceeding**

**1.  A Ponzi Scheme finding cannot be made through a contested matter motion.**

The relief requested in the DIP Motion must be sought in an adversary proceeding. The Court should not entertain the Debtors' and the Committee's unprecedented attempt to obtain a Ponzi Scheme finding through a "contested matter" motion; an attempt that is plainly contrary to federal bankruptcy procedure and applicable law. Indeed, the U.S. Trustee objected to the procedural mechanism by which this determination is sought, citing significant due process concerns and other irregularities that should be addressed. ECF #583. Umpqua Bank joins the U.S. Trustee's objection to the DIP Motion and incorporates it by reference herein.

"A matter qualifies as an 'adversary proceeding,' as opposed to a 'contested matter,' if it is included in the list given in Bankruptcy Rule 7001." *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1189 (9th Cir. 2011). It is well-established

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 6

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

EG: 102479158.1

that "Rule 7001 applies to proceedings brought to avoid transfers by the debtor under section 548 of the Bankruptcy Code" and proceedings to obtain a declaratory judgment relating thereto. *See Bear v. Coben (In re Golden Plan of California, Inc.)*, 829 F.2d 705, 711 (9th Cir. 1986) (citing Fed. R. Bankr. P. 7001 Advisory Committee Note (West 1984)); Fed. R. Bankr. P. 7001(1), 7001(9). "It is error to circumvent the requirement of an adversary proceeding by using a 'contested matter' motion under Federal Rule of Bankruptcy Procedure 9014." *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (B.A.P. 9th Cir. 2002) (citing *In re Golden Plan*, 829 F.2d at 711–12; *GMAC Mortgage Corp. v. Salisbury* (*In re Loloee*), 241 B.R. 655, 660 (B.A.P. 9th Cir. 1999); *In re Boni*, 240 B.R. 381, 385–86 (B.A.P. 9th Cir. 1999)).

The Ninth Circuit has consistently held that the failure to require an adversary proceeding in actions seeking to avoid transfers or recover property under 11 U.S.C. §§544 and 548 constitutes reversible error. *See In re Com. W. Fin. Corp.*, 761 F.2d 1329, 1331 (9th Cir. 1985); *In re Golden Plan of Cal., Inc.*, 829 F.2d at 711–12 ("Like the *Commercial Western* trustee, the trustee here initiated no adversary proceedings against the investors, but instead filed a request for special instructions. The trustee's failure to initiate adversary proceedings imposed on the investors the burden of challenging his actions and thus contravened Rule 7001."). *In re Commercial Western Finance Corporation*, 761 F.2d 1329, is illustrative. There,

Commercial Western Finance Corporation (CWF) arranged trust deed investments by soliciting money from individuals ("investors") and lending that money to other entities ("borrowers"). In exchange for the funds from CWF, the borrowers gave CWF promissory notes ("borrower notes") secured by deeds of trust on California real estate ("deeds of trust"). In exchange for the funds from the investors, CWF

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 7

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11     Doc 628     Filed 03/18/24     Entered 03/18/24 17:09:52     Pg 7 of 21

gave the investors its own promissory notes ("CWF notes") secured by partial assignments of the borrower notes and deeds of trust.

CWF usually recorded the partial assignments in the county where the property is located. CWF gave the investors copies of the partial assignment deeds of trust, the borrower notes, and borrower deeds of trust, but retained possession of the original borrower notes and deeds of trust.

*Id.* at 1331. The Chapter 13 Trustee sought to avoid the investors' security interests under 11 U.S.C. §544, arguing that the investors never perfected their security interests in the borrower notes under state law. *Id.* However, "[i]nstead of filing adversary actions against all of the investors to avoid their security interests, the Trustee proposed a compromise as part of the plan: the investors would be paid more than the general unsecured creditors, but would relinquish any claim to the borrower notes, deeds of trust, or the property secured by the deeds of trust." *Id.* at 1331–32.

In finding that this was an improper attempt by the Trustee to circumvent the bankruptcy rules of procedure, the Ninth Circuit noted that the applicable Code provisions and bankruptcy rules leads to the conclusion that the "the drafter's intent was to require use of the adversary proceedings rules whenever certain forms of property . . . were affected in certain ways," including by operation of 11 U.S.C. §544. *Id.* at 1337 (citing *In re McKay*, 732 F.2d 44, 48 (3d Cir. 1984)). Accordingly, the court held that the Trustee was required to file adversary proceedings to obtain the requested relief, specifically noting:

If the Trustee wants the benefit of avoiding valid security interests under the strongarm clause of the Bankruptcy Code, he must carry the burden of following the mandated procedures. Although the Code gives him powerful tools to benefit the estate, the accompanying Rules impose certain limitations on the manner in which he can use those

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 8

FOSTER GARVEY PC
eleventh floor
121 sw morrison street
portland, oregon 97204-3141
(503) 228-3939

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 8 of 21

> tools. If the Trustee wishes to exercise powers under the strongarm clause, the Rules require him to bring separate adversary actions and serve each investor with a copy of a complaint, a summons, and a notice of trial. It is only fair that he respect these limitations.

*Id.* at 1338. Instead, the "Trustee sought to place on the investors the burden of challenging the Trustee's ability to avoid their interests by requiring them to object to the plan," improperly shifting the burden of proof in an avoidance action to the creditors. *Id.*

The DIP Motion similarly amounts to an improper attempt by Debtors to circumvent the bankruptcy rules of procedure. While a motion for authority to obtain credit is typically a contested matter, Fed. R. Bankr. P. 4001(c), the DIP Motion is not simply that. Instead, as an "express condition" of the DIP Loan, Debtors request the Court make a factual finding that, during an unspecified prepetition time period, Debtors' business enterprise operated as a Ponzi scheme— a factual finding that has far reaching implications on the substantive rights of individuals that may not even have notice of this bankruptcy case. "[O]nce the existence of a Ponzi scheme is established, payments received by investors as purported profits—i.e., funds transferred to the investor that exceed that investor's initial 'investment'—are deemed to be fraudulent transfers as a matter of law." *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008). The "Ponzi scheme presumption," thus "conclusively establishes the debtor's fraudulent intent under 11 U.S.C. § 548(a)(1)(A) [and applicable state law] and precludes relitigation of that issue." *Id.* Accordingly, the mere existence of a Ponzi scheme relieves Debtors of the burden to prove all the statutory elements in an avoidance action by a preponderance of the evidence. *See In re Huber*, 493 B.R. 798, 811 (Bankr. W.D. Wash. 2013). Such a finding is not the proper subject of a contested matter and must be litigated in an adversary proceeding with notice and due process afforded to the proper parties.

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 9

FOSTER GARVEY PC
*eleven th floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

EG: 102479158.1

See Doc. 583, n.2.

Instead, the DIP Motion is a veiled request for a declaratory judgment relating to unfiled but anticipated proceedings involving unidentified claims for relief to recover money or property from victims of the alleged Ponzi scheme, Umpqua Bank, and/or others. Indeed, this is precisely the relief that Debtors seek. *See* Proposed Order (ECF #467), p. 44 (Section 3.1) ("Given that the Debtors' business enterprise operated as a Ponzi scheme, the Debtors (and any successor in interest, including any liquidating trustee appointed pursuant to a chapter 11 plan of liquidation or chapter 7 trustee), are entitled to the benefit of the Ponzi scheme presumption with respect to any avoidance and recovery actions related to the Debtors and the Chapter 11 Cases, including any causes of action asserted under sections 544 and 548 of the Bankruptcy Code and any other applicable fraudulent transfer, debtor/creditor law, avoidance and recovery statute or cause of action, claim, or argument."). Under the plain language of the Bankruptcy Code, rules of procedure, and applicable case law, Debtors are required to seek this relief in an adversary proceeding. *See* Fed. R. Bankr. P. 7001(1), 7001(9); *In re Golden Plan*, 829 F.2d at 712; *In re Com. W. Fin. Corp.*, 761 F.2d at 1338; *In re Brawders*, 503 F.3d 856, 873–74 (9th Cir. 2007).

## 2. Any procedural error caused by making premature Ponzi Scheme findings is not harmless.

To the extent that the court agrees to consider the DIP Motion as a contested matter motion, the procedural error is not harmless. On appeal, the bankruptcy court's decision not to require an adversary proceeding is generally subject to a harmless error analysis. *See, e.g., In re Munoz*, 287 B.R. 546, 551 (B.A.P. 9th Cir. 2002). Such an error may be harmless "when the record of the procedurally incorrect 'contested matter' is developed to a sufficient degree that the record of an

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 10

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 10 of 21

adversary proceeding likely would not have been materially different. In such circumstances, the error does not affect the substantial rights of the parties and is not inconsistent with substantial justice." *Id.* The Ninth Circuit B.A.P. has developed a list of factors that it considers in determining whether the bankruptcy court has committed reversible error in proceeding by contested matter rather than adversary proceeding:

> (1) the material facts were few and undisputed, (2) the dispositive issues were pure questions of law, (3) neither party expressed any discontent with the contested matter procedures the bankruptcy court utilized, and (4) this Panel was "satisfied that neither the factual record nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding."

*In re Strata Title, L.L.C.*, No. BAP AZ-13-1291-PAKUD, 2014 WL 661174, at *9 (B.A.P. 9th Cir. Feb. 21, 2014) (quoting *In re Munoz*, 287 B.R. at 551).

Treating the DIP Motion as a contested matter would likely result in a materially different record from that created in an adversary proceeding and threatens substantial rights of parties and non-parties alike. As set forth in the Declaration of Lance Miller in Support of First Day Motions [Docket #23], the Debtors held deposit accounts at Umpqua Bank starting in approximately 2013, which the Debtors historically used to conduct their business in the ordinary course." Id. ¶14.. Umpqua Bank is not holding funds, nor did it lend funds to the Debtors for any of the alleged business transactions. Accordingly, Umpqua Bank – like any number of other unnamed targets of the Debtors' and Committee's litigation strategy – is left hypothesizing what claims and remedies may be sought by the Debtors and Committee and in what forum.

By treating the DIP Motion as a contested matter, the burden is improperly shifted to Umpqua Bank, victims of the alleged Ponzi scheme, and other unnamed

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 11

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 11 of 21

parties to object and participate in these proceedings.  While "courts have excused the lack of a formal adversarial proceeding to resolve disputed matters, these courts have only done so with respect to entities who were parties to the proceedings and thus had notice, participated in the hearings and otherwise had effective opportunity to be heard." *In re Altman,* 254 B.R. 509, 512 (D. Conn. 2000) (citing *In re Copper King Inn, Inc.*, 918 F.2d 1404 (9th Cir. 1990)).  Because there is no guarantee that the Ponzi allegations will be actually contested, subject to discovery, or fully litigated, the Court should require Debtors to file a procedurally proper adversary complaint.  This is especially true due to the highly fact-dependent nature of the Ponzi Scheme inquiry and where, as here, there have been no criminal convictions based on the underlying alleged conduct.  *See, e.g., In re LLS America*, *LLC*, No. 09-061940PCW11, 2013 WL 3305393, at *7 (July 1, 2013 Bankr. E.D. Wash.) (consolidating adversary proceedings to address Ponzi Scheme allegations where there had been a criminal indictment but no conviction).

Moreover, the "Notice of Debtors' Request for Findings that iCap Operated as a Ponzi Scheme; May Affect Your Rights; Consult an Attorney" (ECF #585) does not comport with due process. "An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id*. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any

FOSTER GARVEY PC
eleventh floor
121 sw morrison street
portland, oregon 97204-3141
(503) 228-3939

FG: 102479158.1

party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983).

Here, Debtors' Supplemental Certificate of Service (Doc. 593) indicates that the Notice was mailed to the three "Additional Affected Parties referenced in Service List Nos. 79854." The Notice provides that Debtors have "recently filed several motions and supporting papers (detailed below) in which the debtors seek findings that for many years the Debtors' business enterprise operated as a Ponzi Scheme," and directing those individuals to contact Debtors' counsel for copies. (Doc. 585). If such a finding is made, the Notice states that Debtors will be able to rely on the "Ponzi presumption" with respect to future avoidance and recovery actions, including "causes of actions asserted under Sections 544 and 548 of the Bankruptcy Code and any other applicable fraudulent transfer, debtor/creditor law, avoidance and recovery statutes or causes of actions, claims or arguments." *Id*. The Notice does not, however, identify any specific transfers that were allegedly fraudulent, leaving unnamed parties guessing as to whether a claim will be asserted against them and the nature of those claims. Nor have Debtors established that the Notice was sent to other individuals whom they are aware are potentially affected by a Ponzi Scheme designation. Accordingly, the Notice does not comport with due process. See *In re Golden Plan of California, Inc*., 829 F.2d at 712.

**3.    The DIP Motion does not present a justiciable controversy.**

Although Debtors and the Committee have suggested they may pursue unspecified claims against Umpqua Bank at some unknown date in some unknown forum in the future, Debtors have not asserted any claims against Umpqua Bank, let alone identified any theories of liability for those claims.  Nor have Debtors filed any adversary proceedings seeking to avoid or recover any transfers made in

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 13

FOSTER GARVEY PC
eleventh floor
121 sw morrison street
portland, oregon 97204-3141
(503) 228-3939

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 13 of 21

connection with the alleged Ponzi Scheme. Because there are no pending claims to which the DIP Motion is tied, there is no case or controversy between Debtors and Umpqua Bank, or any proper adverse party, for the court to adjudicate.

The purpose of the case-or-controversy requirement is to "limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 382–83 (1980) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). "The clash of adverse parties sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." *Id.* at 382–83 (internal quotation marks and citations omitted). Thus, "Article III's 'case-or-controversy' requirement precludes federal courts from deciding "questions that cannot affect the rights of litigants in the case before them." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) (citation omitted). "[T]here is no Art. III case or controversy when the parties desire 'precisely the same result.'" *Id.* at 383 (quoting *Moore v. Charlotte-Mecklenburg Board of Ed.*, 402 U.S. 47, 48 (1971) (per curiam). "[W]hat makes [a declaratory judgment] a proper judicial resolution of a 'case or controversy' rather than an advisory opinion [is] the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1087 (9th Cir. 2022) (citation omitted).

Relying on the conditions of the DIP Loan, Debtors attempt to create a justiciable case or controversy where one does not exist. Indeed, there are no pending claims to which a Ponzi Scheme presumption may be applied. Instead, Debtors and the Committee seek "precisely the same result" in the joint DIP Motion—a finding that the Debtors operated a Ponzi Scheme. At this juncture, this

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 14

FOSTER GARVEY PC
*eleven th floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 14 of 21

finding does not settle any dispute between Debtors and/or the Committee with respect to Umpqua Bank because there is no dispute. Accordingly, Debtors seek what amounts to an impermissible advisory opinion that it may utilize in any future litigation against Umpqua Bank. This is not allowed under Article III of the Constitution. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (Federal courts may not "decide questions that cannot affect the rights of litigants in the case before them" or give "opinion[s] advising what the law would be upon a hypothetical state of facts.") (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).

To the extent that a Ponzi Scheme designation may affect certain rights of non-parties, such a finding is likewise premature. *See In re Loloee*, 241 B.R. at 660–61 ("The purpose of such notice is to apprise the affected party of, and permit adequate preparation for, an impending hearing."). There are no pending adversary proceedings seeking to avoid or recover any transfers made in connection with the alleged Ponzi Scheme. Thus, the DIP Motion cannot truly be "contested." Rather, the self-serving declarations, and other evidence upon which the DIP Motion relies, should be subject to discovery by parties with an actual interest in the outcome. Umpqua Bank takes no position as to whether Debtors should be able to obtain the post-petition financing sought. It only objects to the extent that a "condition" of that financing creates uncertainty surrounding the putative claims against it.

### 4. The DIP Motion does not require a finding of a Ponzi Scheme under § 364.

The DIP Motion seeks post-petition funding and a priming lien in favor of the proposed lender under 11 USC §364(d). When addressing such a motion, the court needs to determine whether (i) the debtor is unable to obtain credit without a priming lien, and (ii) whether there is adequate protection of the current

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 15

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 15 of 21

lienholder's interest in the property upon which the proposed priming lien is to be granted. 11 USC §364(d)(A) and (B).

The Debtor's requested Ponzi finding included within the DIP Motion is irrelevant and excessive to a motion to obtain credit under the Bankruptcy Code. The fact that the proposed lender is willing to extend the DIP loan with anticipated avoidance actions as collateral clearly indicates that they have analyzed these potential claims with the Debtors and the Committee and, thus, these parties must have a working knowledge of the claims to be brought. Allowing them all to short circuit the entire process of proving elements of claims they have identified but do not disclose to potential targets as part of a DIP lending motion that does not require any such findings under the applicable Bankruptcy Code section is not sanctioned.

### 5. Umpqua Bank is entitled to due process of law.

Any claims asserted against Umpqua Bank must be brought in a proper forum that allows for a meaningful opportunity to be heard. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Even assuming that the contested matter procedures being utilized herein provide Umpqua Bank with a meaningful opportunity to be heard, they do not do so at a meaningful time.

Umpqua Bank denies any liability in connection with the alleged Ponzi Scheme. However, Debtors and the Committee have agreed to jointly investigate and prosecute "[a]ny and all claims held by the Debtors or that could be asserted by Debtors against Umpqua Bank or any of its affiliates, officers, directors, or employees." See Proposed Order Approving Entry Into and Performance Under Cooperation Agreement, Exhibit 1, page 3 [Docket #470]. It is not clear what, if any, claims that Debtors can or will assert against Umpqua Bank or whether

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 16

FOSTER GARVEY PC
eleventh floor
121 sw morrison street
portland, oregon 97204-3141
(503) 228-3939

FG: 102479158.1

liability can even be predicated on transfers made to or out of Debtors' accounts. However, a Ponzi Scheme designation, and resulting presumption that the Debtors' conduct was done with fraudulent intent, has potential unknown impacts in any future litigation against Umpqua Bank. Umpqua Bank must be afforded a meaningful opportunity to be heard on the issues if and when those claims are asserted. Requiring Umpqua Bank to litigate these issues now— in a vacuum when no claims have been identified and regarding issues that may not even be relevant later—in a proceeding to which it is not a stakeholder, denies Umpqua Bank due process of law.

**B.  The DIP Motion Should Be Denied Because It Will Not Be Preclusive Over Third Parties.**

The Court should also refrain from entering Ponzi Scheme findings in the form requested by the Debtors and the Committee because it is overbroad and does not comply with rules of collateral estoppel under Washington law.

The Proposed Order submitted by Debtors and the Committee as part of their DIP Motion arguably provides that the proposed Ponzi Scheme findings will be binding on a wide range of unnamed and unknown parties in essentially any future action related to the Chapter 11 Cases. The proposed order states that Debtors and their successors in interest can use the Ponzi Scheme in a wide range of ancillary proceedings in an unlimited number of venues:

> Given that the Debtors' business enterprise operated as a Ponzi scheme, the Debtors (and any successor in interest, including any liquidating trustee appointed pursuant to a chapter 11 plan of liquidation or chapter 7 trustee), are entitled to the benefit of the Ponzi scheme presumption with respect to **any avoidance and recovery actions related to the Debtors and the Chapter 11 Cases, including any causes of action asserted under sections 544 and 548 of the Bankruptcy Code and any other applicable fraudulent transfer, debtor/creditor law,**

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 17

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

**avoidance and recovery statute or cause of action, claim, or argument.**

ECF #467, p. 44 (Section 3.1) (emphasis added). Section 7.4 further provides that the presumption will be binding on third parties:

> Immediately upon entry by this court, this Order shall be valid and binding upon and inure to the benefit of the DIP Lender, the Debtors, and the property of the Debtors' Estates, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns (including any chapter 11 or chapter 7 trustee or any other fiduciary hereafter appointed as a legal representative of the Debtors), in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

ECF #467, p. 48 (Section 7.4.1). Finally, "Successor Case" is defined broadly as "any other proceeding related to" any of the Chapter 11 Cases. *Id.,* p. 41. Arguably, the intended effect is to allow any Debtor, creditor or DIP Lender to take advantage of the Ponzi Scheme findings against any party as long as it is a claim related to Debtors or the Chapter 11 Cases. This is overly broad and would not be enforceable under the rules of collateral estoppel in the most likely venue for such actions – the State of Washington.

Issue preclusion, or collateral estoppel, applies to prevent the re-litigation of an issue in Washington if:

> (1) the issue decided in the earlier proceeding was identical to the issue in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) the application of issue preclusion does not cause an injustice to the party against whom it is applied.

*Dotson v. Pierce Cnty.*, 13 Wn. App. 2d 455, 466–67, 464 P.3d 563, 569–70 (2020), *as amended* (July 8, 2020) (*citing Christensen v. Grant County Hosp. Dist.*

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 18

FOSTER GARVEY PC
*eleven th floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 18 of 21

*No. 1*, 152 Wash.2d 299, 307, 96 P.3d 957 (2004)).

Even if all other factors are met in a future and hypothetical proceeding against it, Umpqua Bank is not a party or in privity with any of the parties in the Chapter 11 Cases and therefore would not be bound by a Ponzi Scheme finding against Debtors, especially one made essentially by consent by the Debtors under the control of its Chief Restructuring Officer.

For both collateral estoppel and res judicata, "a judgment is binding upon all parties to the litigation as well as upon all persons in privity with such parties. That one is aware of certain proceedings is not enough."  Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 Wash. L. Rev. 805, 819 (1985); *see Paradise Orchards Gen. P'ship v. Fearing*, 122 Wn. App. 507, 515, 94 P.3d 372, 377 (2004) (defendant not bound by ruling in previous case where he acted as a witness on behalf of his former employer where he "had no opportunity to litigate the meaning" of a contract on his own behalf).

The quality of the current parties to the Chapter 11 Cases lacks similarity to Umpqua Bank for purposes of adequately representing Umpqua Bank's interests in future ancillary proceedings.  *Compare Camer v. Seattle School Dist. No. 1,* 52 Wn. App. 531, 535, 762 P.2d 356, 359 (1988) (applying res judicata where "the quality of the plaintiff is the same in both cases") (citing *Rains v. State,* 100 Wash.2d 600, 664, 674 P.2d 165 (1983)).  "If we adopted the Camers' reasoning on this issue, each time another Camer child entered the Seattle school system, they would have the right to bring exactly the same complaint and have it heard through the judicial system."  *Id.*  There is currently no party to the Chapter 11 Cases who is incentivized to contest the proposed findings of a Ponzi Scheme. Even Mr. Christensen, the presumed perpetrator of Ponzi behavior on behalf of Debtors, may not be able to affirmatively defend himself as a non-party with

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 19

FOSTER GARVEY PC
eleventh floor
121 sw morrison street
portland, oregon 97204-3141
(503) 228-3939

FG: 102479158.1

potential criminal liability still a possibility.

Other bankruptcy and non-bankruptcy courts have been hesitant to make Ponzi Scheme or other binding determinations in one proceeding for the purpose of being applied in other ancillary proceedings involving nonparties because it would conflict with the law of issue preclusion. *See Commodity Futures Trading Commission v. Rust Rare Coin Inc.,* Case No. 2:18-cv-00892-TC-DBP, 2022 WL 2869717, *2 (D. Utah, Jul. 21, 2022) (receivership proceeding in which District Court refused to make a Ponzi Determination through a summary-disposition procedure for the purpose of precluding the re-litigation of the issue in "an untold number of future ancillary cases" because it would violate issue-preclusion principles).

In *In re Palm Beach Finance Partners, L.P.,* 568 B.R. 874, 891-93 (S.D. Fl. 2017), the Court in an adversary proceeding refused to apply affirmative collateral estoppel to preclude the re-litigation of a prior finding of fraud by another party. In a prior proceeding – an evidentiary hearing in support of a settlement motion – the court held that another party had committed common law fraud. However, in the second action, the Court held that the party sought to be precluded did not have the incentive to litigate the issue fully in the first proceeding, even though it was a party thereto, and therefore could not be bound.

> Moreover, it would be unfair under these circumstances and in a case in which GECC is potentially liable for hundreds of millions of dollars in damages to allow the Plaintiff to use offensive issue preclusion in order to assign preclusive effect to the PBF Authority Order, with respect to which GECC did not stand to gain or lose anything. For this reason and without addressing the remaining elements of issue preclusion, the Court will exercise its discretion and decline to assign preclusive effect to the PBF Authority Order in the context of this adversary proceeding.

UMPQUA BANK'S OBJECTION TO JOINT
MOTION - 20

FOSTER GARVEY PC
*eleven th floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 20 of 21

*Id.,* 568 B.R. at 893.

Likewise, Umpqua Bank is not a party to these proceedings, and a finding made for the purpose of Debtors being authorized to obtain DIP financing would have no impact on Umpqua Bank. Because Umpqua Bank is not a party and there are no definite claims against it – only potential and hypothetical claims mentioned in the proposed Cooperation Agreement – it has no incentive to put on an adequate defense to protect its interests in a future and unknown action.

For that reason, if the Court decides to enter Ponzi Scheme findings, the findings should be narrowly tailored and should not be enforceable as to any potential claims asserted against Umpqua Bank or in any subsequent litigation proceeding against Umpqua Bank.

## IV.   CONCLUSION

For the foregoing reasons, Umpqua Bank hereby objects to the DIP Motion and proposed Ponzi Scheme findings as requested by the Debtors and the Committee.

DATED this 18th day of March, 2024.

FOSTER GARVEY PC

By /s/ Jason M. Ayres

Jason M. Ayres, WSBA #39141
Tara J. Schleicher WSBA #26884
121 SW Morrison St., Eleventh Floor
Portland, OR 97204
(503) 228-3939
E-Mail: jason.ayres@foster.com
tara.schleicher@foster.com

UMPQUA BANK'S OBJECTION TO JOINT MOTION - 21

FOSTER GARVEY PC
*eleventh floor*
*121 sw morrison street*
*portland, oregon 97204-3141*
*(503) 228-3939*

FG: 102479158.1

23-01243-WLH11    Doc 628    Filed 03/18/24    Entered 03/18/24 17:09:52    Pg 21 of 21