**BORDE LAW PLLC**
Manish Borde
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722

HONORABLE WHITMAN L. HOLT
HEARING DATE: February 24, 2026
HEARING TIME: 10:00 a.m.
RESPONSE DEADLINE: February 6, 2026
LOCATION: Telephonic

**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello (admitted *Pro Hac Vice*)
*rmarticello@raineslaw.com*
Michael L. Simon (admitted *Pro Hac Vice*)
*msimon@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100/Facsimile: (310) 691-1943

Attorneys for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust and Lima One Capital, LLC

UNITED STATES BANKRUPTCY COURT FOR THE

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter: 11 |
| ICAP ENTERPRISES INC., *et al.* | Case No.: 23-01243-WLH11 |
| Debtors.[1] | Jointlv Administered |

[1] The "Debtors" (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250- 11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-

**NOTICE OF MOTION AND MOTION FOR ORDER INTERPRETING PLAN**

**[Index of Exhibits filed concurrently herewith]**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust ("**Wilmington**") and Lima One Capital, LLC ("**Lima**" and together with Wilmington, the "**Movants**") will and hereby do move this court (the "**Motion**") for entry of an order interpreting the *Second Modified Second Amended Joint Chapter 11 Plan of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors* (the "**Plan**"), which was confirmed by order entered on October 18, 2024 [Docket No. 1414] (the "**Confirmation Order**"). By the Motion, the Movants seek an order confirming that, under the Plan, VH 1121 14th LLC and VH Willows Townhomes LLC can be substantively consolidated *only* if there is a consensual resolution with Wilmington as expressly set forth in the Plan.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed index of exhibits, as well as all pleadings and papers on file with the court in this case, all other facts and matters of which this court may properly take judicial notice, and such other oral and written arguments that may be presented at any hearing on the Motion.

---

01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); and iCap Holding 6 LLC (23-01274-11).

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

PLEASE ALSO TAKE NOTICE that a hearing on the Motion will take place before the Honorable Whitman L. Holt on **February 24, 2026, at 10:00 a.m. PT** via teleconference as follows:

**Phone Number:** 1-877-402-9757

**Access Code:** 9960114

If you object the Motion being granted, you must file a written objection with the court **no later than February 6, 2026**. If you do not timely file an objection, the court may enter an order granting the Motion without further notice to you.

Respectfully submitted,

Dated: January 16, 2026

BORDE LAW PLLC

*/s/ Manish Borde*
MANISH BORDE (WSBA *#39503)*
1700 7TH Ave., Suite 2100
Seattle, WA 98101-1360
mborde@bordelaw.com

RAINES FELDMAN LITTRELL LLP

*Robert S. Marticello*
ROBERT S. MARTICELLO (*Pro Hac Vice)*
MICHAEL L. SIMON (*Pro Hac Vice)*

*Attorneys for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust and Lima One Capital, LLC*

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 5
A. The Original Disclosure Statement and Plan ........ 5
B. The First Amended Disclosure Statement and Plan ........ 6
C. The Second Amended Disclosure Statement and Plan, and the Modified Second Amended Disclosure Statement and Plan ........ 7
D. The Confirmed Plan ........ 10
E. Adversary Proceeding Background ........ 11
III. VH WILLOWS AND VH 1121 CANNOT BE SUBSTANTIVELY CONSOLIDATED WITHOUT WILMINGTON'S CONSENT ........ 13
A. The Plan Proponents' Judicial Admissions Preclude the Substantive Consolidation of the VH Debtors Without Wilmington's Consent . 14
B. The Trustees are Judicially Estopped From Asserting that the VH Debtors Can Be Substantively Consolidated Without Wilmington's Consent ........ 19
C. Under the Plan's Terms, the VH Debtors Cannot Be Substantively Consolidated Without Wilmington's Consent ........ 24
IV. CONCLUSION ........ 30

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

# **TABLE OF AUTHORITIES**

## **Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224, 226 (9th Cir. 1988)..............................................13, 14

*Berg. V. Hudesman*,
   115 Wn. 2d 657, 669 (1990) ......................................................25, 26

*Foothill Capital Corp. v. East Coast Bldg. Supply Corp.*,
   259 B.R. 840, 845 (E.D. Va 2001) ................................................. 20

*Forty-Eight Insulations, Inc. v. Aetna Cas. & Sur. Co.*,
   162 B.R. 143, 147 (N.D. Ill. 1993) ................................................. 20

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778, 782 (9th Cir. 2001)................................................... 20

*Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n.*,
   997 F.2d 581, 588 (9th Cir. 1993) ................................................. 24

*In re Consol. Pioneer Mortg. Entities*,
   248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001) 24

*In re L & J Anaheim Asscs.*,
   995 F.2d 940, 942 (9th Cir. 1993)................................................... 30

*In re Sanglier*,
   124 B.R. 511, 513 n.3 (Bankr. E.D. Mich. 1991) ........................... 14

*King v. Rice*, 146 Wash. App.
   662, 671 (2008) .............................................................................. 25

*Martinez v. Bally's Louisiana, Inc.*,
   244 F.3d 474, 477 (5th Cir. 2001)................................................... 14

*Miller v. U.S.*,
   363 F.3d 999, 1004 (9th Cir. 2004) ............................................... 24

*New Hampshire v. Maine*,
   532 U.S. 742, 750-51 (2001) ......................................................... 20

*Perez v. Discover Bank*,
   74 F.4th 1003, 1008 (9th Cir. 2023) ...................................20, 22, 23

*United States v. Bentson*,
   947 F.2d 1353, 1356 (9th Cir. 1991) ............................................. 14

## **Statutes**

11 U.S.C. § 1124 ................................................................................ 29

11 U.S.C. § 502 .................................................................................. 12

11 U.S.C. § 548 .................................................................................. 12

11 U.S.C. § 1123 ......................................................................... passim

11 U.S.C. § 1129 ......................................................................... passim

11 U.S.C. § 541 ........................................................................... passim

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

11 U.S.C. § 105(a) .............................................................................. passim

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

By this Motion, the Movants seeks to enforce the benefit of their bargain incorporated in the Plan.  The Movants objected to the proposed substantive consolidation of VH 1121 14th LLC and VH Willows Townhomes LLC (together, the "**VH Debtors**").  To resolve that objection and litigation thereon, the Plan Proponents agreed that neither Wilmington's claims nor the VH Debtors would be substantively consolidated without Wilmington's consent.  In fact, the operative terms in the Plan include specific modifications at this court's behest to memorialize the Plan Proponents' agreement.  Now, the Trustees, acting on behalf of the VH Debtors, are ignoring that agreement and the Plan's express terms.

The Movants seek an order confirming that, under the Plan, the VH Debtors can be substantively consolidated *only* if there is a consensual resolution with Wilmington *as expressly set forth in the Plan*.  This interpretation would confirm that—in addition to the reasons set forth in the Movants' pending motion to dismiss—the counterclaims asserted by the VH Debtors against the Movants are futile and a waste of resources for all involved.  In short, due to the Plan's terms, the Trustees are pursuing claims against the Movants where the resulting proceeds will be paid back to the Movants as the only creditors of the VH Debtors.

The Plan reflects a compromise made by the Debtors, including the VH Debtors, to resolve the Movants' objection to the disclosure statement.  This compromise was stated on the record by their counsel as follows:

> Mr. Gurule:  I would say, Your Honor, that we'd *only*
> seek to consolidate those entities if we have a resolution
> with them, Your Honor.  Not[] – we're not –

MOTION FOR ORDER INTERPRETING PLAN – Page 1

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

> The court: [A] *consensual* [resolution] – a deal [basically].
>
> Mr. Gurule: [] Yes, Your Honor.

(*See* Ex. 2 at 32:9-15; Audio File of August 26, 2024 hearing, Docket No. 1240, at 41:38-42:57 (emphasis added).)

This agreement by the Debtors, including the VH Debtors, to secure approval of the disclosure statement is reflected in the Plan as follows:

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to the Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however,* that the Debtors and the iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C ***are consensually resolved with the Holders of such Claims*** upon filing notice with the Bankruptcy Court.

(*See* Ex. 1 at 107 of 135:13-17 (emphasis added).) This same language is found in the Confirmation Order as well. (*See id.* at 39 of 135:25 - 40 of 135:5.)

By their new counterclaim complaint, the Trustees, on behalf of the VH Debtors, assert a claim to avoid Wilmington's liens as constructive fraudulent transfers, which are encumbering approximately $5.2 million in sale proceeds. Other than Wilmington's claims, there are essentially no other claims, secured or unsecured, asserted against the VH Debtors.[2] Because Wilmington does not consent to the substantive consolidation of the VH Debtors, even if the Trustees

[2] VH 1121 has no other claims, secured or unsecured, scheduled or filed against it. (*See* Ex. 3 at 16-21 of 25.) Other than Wilmington's secured claim, the only other claims asserted against VH Willows total $3,444.01 in unsecured claims. (*See* Ex. 4 at 16-21 of 26.)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

prevailed on their constructive fraudulent transfer claim and avoided Wilmington's liens (they will not), essentially all of the sale proceeds would still flow back to Wilmington—the sole significant creditor of the VH Debtors. Thus, there is no benefit to be obtained by the Trustees' suit as they are now suing the sole creditor who will be paid any recoveries from their efforts.

The Trustees are precluded from substantively consolidating the VH Debtors without Wilmington's consent for three independent reasons. First, the Plan Proponents—which specifically included the VH Debtors—judicially admitted that, under the Plan, the VH Debtors cannot be substantively consolidated without Wilmington's consent. The court specifically asked whether the Plan Proponents were reserving the right to "forcible toggle [the VH Debtors] into sub con" or whether the VH Debtors would "only" be substantively consolidated if there was a "consensual" resolution. In direct response to that question, the Plan Proponents' counsel unequivocally stated that substantive consolidation of those entities would "only" be sought if there was a "consensual" resolution and the court suggested language to better effectuate such. (*See* Ex. 2 at 32:5-24.) This assertion regarding the meaning of the Plan's language and the Plan's impact constitutes a conclusive, binding statement that cannot be controverted or explained.

Second, judicial estoppel precludes the Trustees from asserting that the VH Debtors can be substantively consolidated without Wilmington's consent. The Plan Proponents offered a concession to secure the approval of the disclosure statement in the face of Wilmington's objection. The court accepted that concession. The court specifically concluded that incorporating the substantive consolidation language discussed at the hearing into the plan and disclosure statement would resolve Wilmington's objection, both as a substantive matter and as a disclosure

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

matter. The Plan Proponents then incorporated the language discussed at the hearing and the court approved the modified disclosure statement. Any position that Wilmington's consent is not required is inconsistent with the Plan Proponents' prior position, which this court accepted in overruling Wilmington's objection and approving the modified disclosure statement. The VH Debtors cannot renege the prior compromise, nor can they now re-write the Plan.

Third, the express terms of the Plan and the circumstances surrounding its making all point to the same inescapable conclusion—the only path to substantive consolidation of the VH Debtors is with Wilmington's consent. Applicable principles of contract interpretation under Washington law support the Movants' interpretation of the Plan. The Plan and the Confirmation Order expressly permit the substantive consolidation of the VH Debtors only *after* Wilmington's Claims are "consensually resolved[.]" (*See* Ex. 1 at 107 of 135:16; 40 of 135:4.) There is no other provision in the Plan that permits the substantive consolidation of the VH Debtors. Moreover, every relevant statement in the making of the Plan, *i.e.*, the Plan Proponents' pleadings, the statements of counsel in open court, and the additions to the Plan by the court, all support the interpretation that Wilmington's consent is required. Moreover, the Plan states that Wilmington's claims are unimpaired, which could be true only if the substantive consolidation of Wilmington's claims and the VH Debtors require Wilmington's consent.

Accordingly, and as further detailed below, the Motion should be granted.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## II. BACKGROUND

### A. The Original Disclosure Statement and Plan

On September 29, 2023 (and shortly thereafter for certain entities), the Debtors filed chapter 11 cases in the above-captioned court.

On July 16, 2024, the Debtors, jointly with the Official Committee of Unsecured Creditors (together with the Debtors, the "**Plan Proponents**"), filed the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1088] (the "**Original DS**") and the *Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1089] (the "**Original Plan**").

On July 19, 2024, the Plan Proponents filed the Motion for an Order Approving: (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Liquidation; and (IV) Granting Related Relief [Docket No. 1142].

On August 16, 2024, Wilmington filed an objection to the Original DS. (*See* Ex. 5.) Wilmington objected on the bases that (1) the Original DS did not describe how substantive consolidation under the Original Plan will impact creditors; and (2) that the Original Plan improperly classified Wilmington as unimpaired even though the Original Plan altered Wilmington's rights. (*See id.* at 11:20-12:3; at 13:4-15:3.) Wilmington specifically raised that it intended to conduct discovery related to substantive consolidation given that Wilmington was essentially the sole creditor of the VH Debtors. (*See id.* at 16:1-7.)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

**B. The First Amended Disclosure Statement and Plan**

On August 20, 2024, the Plan Proponents filed the *Plan Proponents' Omnibus Reply to Objections to Joint Motion for Approval of Disclosure Statement* [Docket No. 1185] (the "**Reply**"). Contemporaneously with the Reply, the Plan Proponents filed the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1221] (the "**FADS**") and the *First Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1222] (the "**FAP**"). The Reply explained the modifications to the Original DS and Plan, and responded to Wilmington's objections as follows in pertinent part:

- "Specifically, Article V F.4 clarifies that the substantive consolidation of the Debtors will not impact Wilmington's Claims." (Ex. 6 at 6:10-13) (emphasis in original.)[3]
- "[I]n response to Wilmington's Objection, the Plan Proponents have modified the provisions governing substantive consolidation of the Debtors under the Amended Plan to exclude Debtors VH 1121 14th LLC and VH Willows Townhomes, LLC. **Thus Wilmington's Claims will not be subject to the substantive consolidation provisions in the Amended Plan**." (*Id.* at 11:7-12 (emphasis added).)

[3] Under the Reply, capitalized terms not otherwise defined therein have the same definitions as set forth in the "Amended Plan." (*See* Ex. 6. at 2, n. 2.) The FAP [Docket No. 1089], *i.e.*, the "Amended Plan," contained the following definition for "Claim": "A claim is defined in Bankruptcy Code section 101(5)." (*See* FAP at 5:7.)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

- "Article V.F.4. of the Amended Disclosure Statement explains that the Debtors (other than the Excluded Debtors) will be substantively consolidated. . . ." (*Id*. at 12:20-23.)[4]
- "The Plan Proponents revised the Plan to provide that they will not effectuate substantive consolidation of the Debtors that Wilmington holds their liens against, subject to the ability to effectuate substantive consolidation after Wilmington's Claims are resolved (upon filing a notice with the court)." (*Id*. at 4-5.)

On August 20, 2024, the court held a hearing on the FADS. The court continued the hearing to August 26, 2024 to allow parties the opportunity to further review the modifications in the FADS and to allow the Plan Proponents to make certain additional modifications. The court authorized parties to file objections to the FADS by August 26, 2024, and the Plan Proponents to file a reply by August 26, 2024.

**C. <u>The Second Amended Disclosure Statement and Plan, and the Modified Second Amended Disclosure Statement and Plan</u>**

On August 26, 2024, Wilmington filed an objection to the FADS. (*See* Docket No. 1235, Ex. 10.) Wilmington specifically objected on the basis that it needed to know whether it needed to conduct discovery on and litigate substantive consolidation in connection with confirmation and that it was not clear when Wilmington's claims would be considered "resolved" for purposes of substantive consolidation. (*See id.* at 5:16-6:5.) Shortly thereafter, on August 26, 2024, the Plan Proponents filed the *Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors*

---

[4] The FAP defined "Excluded Debtors" as VH 1121 and VH Willows.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

*Proposed By the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1236] (the "**SADS**") and the *Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1237] (the "**SAP**").

On August 26, 2024, hours after the SADS and SAP were filed, the court held a hearing on the approval of the SADS. At the hearing, counsel for Wilmington objected on the basis that, under the SADS, it was not clear when substantive consolidation of VH Debtors would be litigated, determined and effectuated. (*See* Ex. 2 at 8:15-9:1; 30:8:15.) In response, the court and the Debtors' counsel engaged in the following exchange:

> THE COURT: So I guess – say things aren't resolved and that Wilmington's issues are litigated in the context of the adversary proceeding or otherwise, and there's – you know, what that result is, **are you reserving the right to, I guess, forcibly toggle them into sub con? Or would it only be if there's a broader resolution, which is always a good thing to shoot for, then in that consensual scenario, you'd flip the switch?**
>
> MR. GURULE: I would say, Your Honor, that we'd <u>only</u> seek to consolidate those entities if we have a resolution with them, Your Honor. Not[] – we're not –
>
> THE COURT: [A] consensual [resolution] – a deal [basically].
>
> MR. GURULE: [] Yes, Your Honor.
>
> THE COURT: Okay. Well, Mr. Simon should definitely like that answer, I think. So my drafting suggestion, just doing this on the fly, would be to right – reserve the right

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

> to effectuate without further motion practice substan[tive] consolidation after the claims, and then add, before[,] are resolved or consensually resolved. Maybe with – maybe with the holders of such – are consensually resolved with the holders of such claims.

(*See* Ex. 2 at 31:25-32:24; *see also* Audio File of August 26, 2024 hearing, Docket No. 1240, at 41:38-42:57 (emphasis added).)[5]

The court concluded that Wilmington's objection to the substantive consolidation provision would be resolved if the Plan Proponents made the changes discussed at the hearing as follows:

> I think with the additional language that Mr. Gurule and I discussed, that will clarify how the debtors intend that mechanic to work, both for as a substantive matter and as a disclosure matter. So I – if the debtors can make the changes discussed to both the plan and disclosure statements, the [c]ourt concludes that sufficiently resolves that objection.

(*See* Ex. 2 at 38:13-23.) At the conclusion of the hearing, the court further indicated that with the changes discussed on the record, the court would approve the SADS. (*See id.* at 45:11-19.)

On August 29, 2024, the Plan Proponents lodged a proposed order approving the SADS and the court entered the order. (*See* Docket Nos. 1243 and 1247.)

On August 30, 2024, the Plan Proponents filed the Modified Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors [Docket No. 1248] (the "**Modified**

[5] The bracketed language reflects counsel's modifications to the transcript based on counsel's review of the audio file for the hearing.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

**SADS**"), the Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors [Docket No. 1249] (the "**Modified SAP**"), and a notice of redline reflecting the modifications to the SADS and SAP. (See Docket No. 1250.) The Modified SADS, Modified SAP, and the redlines of each include the following modifications:

> [T]he Debtors or iCap Trustees, as applicable reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court.

(*See* Ex. 11, Modified SADS, at 78 of 209:6-8; Ex. 12, Modified SAP, at 41 of 69:14-17; Ex. 13, Notice of Redlines of Modified SADS and SAP, at 47 of 228:6-9; and 171 of 228:1-3; redlines in original.) The Modified SADS and SAP, and the redlines of each define "Excluded Debtors" as VH 1121 and VH Willows. (*See* Ex. 11 at 138 of 209:17; Ex. 12 at 8 of 69:17; Ex. 13 at 13 of 228:17.) The Modified SADS and SAP also provide that Wilmington is unimpaired and that Wilmington's legal, equitable, and contractual rights are unaltered by the Modified SAP. (*See* Ex. 11 at 72 of 209:3-6; Ex. 12 at 24 of 69:1-3.)

**D. <u>The Confirmed Plan</u>**

On October 18, 2024, the court entered the Confirmation Order confirming the Plan. A copy of the Plan is attached to the Confirmation Order. The Plan was submitted by Trustee Miller as CRO of the Debtors. (*See* Ex. 1 at 135 of 135:7-9.)

The Plan includes the same provision from the Modified SADS and SAP that is quoted above as follows:

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

> [T]he Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court.

(*See id.*, at 40:2-5.) Wilmington's claims are treated only in Classes 2B and 2C. The Plan also provides that Wilmington's claims are unimpaired and that Wilmington's legal, equitable, and contractual rights are unaltered by the Plan. (*See id.* at 90 of 135:1-3.)

**E. Adversary Proceeding Background**

On August 16, 2024, Wilmington and Lima filed a complaint for declaratory relief against the VH Debtors, commencing the above-captioned adversary proceeding. (*See* Docket No. 1.) Wilmington and Lima put a narrow issue before the court regarding the disposition of approximately $5.1 million in sale proceeds. On September 19, 2024, the VH Debtors filed an answer and counterclaims for fraudulent transfers (intentional and constructive), aiding and abetting, and unjust enrichment. (*See* Docket No. 4.) On January 15, 2025, Wilmington and Lima filed an answer to the counterclaims. (*See* Docket No. 17.)

On January 29, 2025, the parties participated in an all-day, in-person mediation before the Hon. Martin R. Barash, who this court appointed as a settlement judgment. (*See* Docket No. 16.) The mediation did not result in a resolution.

On July 31, 2025, the iCap Trust filed the *Amended Counterclaim Complaint* [Docket No. 33] (the "**FACC**"). Through the FACC, the iCap Trust asserted the same claims that were asserted in the original counterclaim complaint—claims for

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

fraudulent transfers (intentional and constructive), aiding and abetting, and unjust enrichment. (Docket No. 33.) The Trustees alleged that the claims for aiding and abetting and unjust enrichment were contributed to the iCap Trust by certain investors of the Debtors. In the FACC, the Trustees alleged that investors collectively "assert over $230 million in claims as a result of the Debtors' Ponzi scheme." (*See* FACC at ¶ 2.) The Trustees' intentional and constructive fraudulent transfer claims included claims to avoid and recover prior repayments on secured loans by Lima of approximately $21 million.

Wilmington and Lima responded to the FACC with a motion to dismiss. (Docket No. 38.) Wilmington and Lima asserted, among other arguments, that the facts alleged by the Trustees did not support their claims and that their claims ran afoul of controlling Ninth Circuit law in multiple respects. On October 15, 2025, the court granted the Wilmington and Lima's motion to dismiss the FACC and dismissed all of the iCap Trust's claims. (Docket No. 48.)

On November 17, 2025, the Trustees filed the Amended Complaint [Docket No. 52] whereby the Trustees only assert claims (1) to avoid Wilmington's liens as constructive fraudulent transfers pursuant to 11 U.S.C. § 548 (a)(1)(B), and (2) to disallow Wilmington's claims pursuant to 11 U.S.C. § 502 (d) until Wilmington has released its liens. Wilmington and Lima filed a motion to dismiss the Amended Complaint and the hearing on that motion is February 11, 2026.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

## III.   VH WILLOWS AND VH 1121 CANNOT BE SUBSTANTIVELY CONSOLIDATED WITHOUT WILMINGTON'S CONSENT

By this Motion, the Movants request that the court confirm that, under the Plan, VH Debtors can be substantively consolidated *only* if there is a consensual resolution with Wilmington.  The Plan provides as follows in pertinent part:

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however,* that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court.

(*See* Ex. 1 at 107 of 135:13-17.)  The court retained jurisdiction to interpret the Plan.  (*See id.* at 133 of 135:1-2.)

The Trustees are proceeding with claims on behalf of the VH Debtors as if they can distribute any resulting proceeds (should the Trustee be successful) to unsecured creditors of other Debtors on a consolidated basis.  However, this would be possibly only if either the VH Debtors were substantively consolidated or could be upon a non-consensual resolution, *i.e.*, litigation, neither of which is permitted by the Plan.   As further detailed below, the Trustees are precluded from substantively consolidating the VH Debtors without Wilmington's consent for three independent reasons: (1) the Plan Proponents' judicial admissions; (2) judicial estoppel; and (3) the Plan's terms.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

**A. The Plan Proponents' Judicial Admissions Preclude the Substantive Consolidation of the VH Debtors Without Wilmington's Consent**

"Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them." *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Concessions made by counsel in open court are also considered binding judicial admissions. *See In re Sanglier*, 124 B.R. 511, 513 n.3 (Bankr. E.D. Mich. 1991) ("A concession or a stipulation of fact made by counsel in open court is considered a judicial admission."); *see also United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (determining that defense counsel's statement in open court was a binding judicial admission).

Judicial admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Judicial admissions cannot be controverted or explained by the party who made them. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477 (5th Cir. 2001) ("Martinez may not explain or controvert a judicial admission.") In sum, a judicial admission is conclusive, binding, and may not be controverted or explained by the party who made it. *See Lacelaw Corp.*, 861 F.2d at 226; *see also Martinez*, 244 F.3d at 476-77.

The Plan Proponents, including the VH Debtors, judicially admitted that the VH Debtors cannot be substantively consolidated without Wilmington's consent. The Plan Proponents admitted such repeatedly in multiple plans, in pleadings in support of their plans, and in open court. Each judicial admission by the Plan Proponents is independently actionable and supports the ultimate conclusion that, as provided in the Plan, the VH Debtors cannot be substantively consolidated absent Wilmington's consent.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

In connection with the FADS and FAP, the Plan Proponents judicially admitted that, under the FAP, the VH Debtors would not be substantively consolidated. Through the FADS and FAP, the Plan Proponents amended Article V F.4 of the FAD and Article V.E of the FAP to provide as follows (the "**FAP Provision**"):

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) will be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes.

(*See* Ex. 9, Notice of Filing of Redlines of FADS and FAP, at 143 of 215:3-14 and 168 of 215:4-7 (modifications in blue and in original); Ex. 7, FADS, at 62 of 139:26 – 63: of 139:5; Ex. 8, FAP, at 41 of 69:2-8.). The FADS and FAP defined "Excluded Debtors" as VH 1121 and VH Willows. (*See* Ex. 7, FADS, at 11 of 139, n.2.; Ex. 8, FAP at 8 of 69:17-18.) Importantly, the FAP Provision remained in the version of the Plan that was confirmed, except the Plan Proponents modified

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

"resolved" to "consensually resolved with the Holders of such Claims" and made two other non-material modifications.[6] (*See* Plan at 41:13-17.)

By the Reply filed with the FADS and FAP and in response to Wilmington's objection, the Plan Proponents specifically admitted that the FAP Provision means *that the VH Debtors will not be substantively consolidated*. The Plan Proponents explained the meaning of the FAP Provision as follows:

> in response to Wilmington's Objection, the Plan Proponents have modified the provisions governing substantive consolidation of the Debtors under the Amended Plan to exclude VH 1121 14th LLC and VH Willows Townhomes, LLC. **Thus, Wilmington's Claims will not be subject to the substantive consolidation provisions in the Amended Plan.**

(*See* Ex. 6 at 11:7-12 (emphasis added); *see also id*. at 12:20-23, "Article V.F.4 of the Amended Disclosure Statement explains that the Debtors (other than the Excluded Debtors) will be substantively consolidated. . . .") The Reply also specified that Article V F.4—*the specific FADS section on substantive consolidation*—will not impact Wilmington's Claims. (*See id*. at 6:10-13, "**Article V F.4 clarifies that the substantive consolidation of the Debtors will not impact Wilmington's Claims."** (emphasis in original).) These factual assertions are conclusive and binding assertions regarding the meaning and impact of the FAP Provision that was included in the Plan.

---

6 The Plan Proponents (1) modified "will be substantively consolidated" to "shall be substantively consolidated" and (2) modified "*provided, however,* that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, substantive consolidation of the Excluded Debtors" to "*provided, however,* that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors. . . ." (modifications in blue).

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

In connection with the Modified SADS and SAP, the Plan Proponents judicially admitted that, under the Modified SADS and SAP, the VH Debtors cannot be substantively consolidated unless there is a consensual resolution with Wilmington.

Through the Modified SADS and SAP, the Plan Proponents amended Article V.F.4 of the Modified SADS and Article V.E. of the Modified SAP to provide as follows (the "**Modified SAP Provision**"):

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court.

(*See* Ex. 11, Modified SADS, at 62 of 209:26 – 63 of 209:3; Ex. 12, Modified SAP, at 41 of 69:13-17.) Importantly, the Modified SAP Provision remained verbatim in the version of the Plan that was confirmed. (*See* Ex. 1 at 107 of 135:13-17.)

The Modified SAP provision is the result of the additions required by the court to memorialize the admissions by the Debtors' counsel in open court and to resolve Wilmington's objection. In essence, the court seemed to require stronger language than found in the SADS and SAP to confirm that the VH Debtors could not be substantively consolidated upon any resolution of Wilmington's claims, but, rather, only upon a *consensual* resolution.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

In direct response to the court asking whether the Plan Proponents were reserving the right to "forcibly toggle [the VH Debtors] into sub con" or whether VH 1121 and VH Willows would "only" be substantively consolidated if there's a "consensual" resolution, the Debtors' counsel unequivocally stated that substantive consolidation of those entities would "only" be sought if there was a "consensual" resolution. (*See* Ex. 2 at 32:9-14; Audio File of August 26, 2024 hearing, Docket No. 1240, at 41:38-42:57). This statement in open court by the Debtors' counsel is a separate enforceable judicial admission that Wilmington's consent is required to substantively consolidate the VH Debtors.

In accordance with the Plan Proponents' counsel's statements on the record and as instructed by the court, the Plan Proponents included the Modified SAP Provision, which modified the language from the SAP as follows:

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court.

(*See* Ex. 12, Modified SAP at 41 of 69:13-17; Ex. 13 at 47 of 228:6-9; and 171 of 228:1-3; redlines in original.) By the Modified SAP Provision, the Plan Proponents specifically adopted the court's instruction to add the language, "are consensually resolved with the holders of such claims." This provision appears verbatim in the Plan. (*See* Ex. 1 at 107 of 135:14-17.) The Plan Proponents' factual assertions regarding the meaning and impact of the Modified SAP Provision are conclusive

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

and binding assertions that the VH Debtors cannot be substantively consolidated without Wilmington's consent.

In summary, the Plan Proponents admitted, by the Reply, that pursuant to the FAP Provision, the VH Debtors would not be substantively consolidated and that their claims would not be impacted by the substantive consolidation of the Debtors. The Plan Proponents' counsel admitted in open court that the VH Debtors would not be consolidated without a consensual resolution with Wilmington. The court instructed the Plan Proponents to revise the FAP Provision to make the Plan Proponents' intention clearer. The Plan Proponents then modified the FAP Provision to the Modified SAP Provision, and admitted that under the Modified SAP Provision, a consensual resolution with Wilmington was required in order to substantively consolidate the VH Debtors.

**B. The Trustees are Judicially Estopped from Asserting that the VH Debtors Can Be Substantively Consolidated Without Wilmington's Consent**

The Ninth Circuit has explained judicial estoppel as follows:

> Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. . . . This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal citations omitted). "The central idea of the judicial estoppel doctrine is

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

that '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'" *Forty-Eight Insulations, Inc. v. Aetna Cas. & Sur. Co.*, 162 B.R. 143, 147 (N.D. Ill. 1993) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

A party is judicially estopped from making an argument when "1) its current position is 'clearly inconsistent' with its previous position; 2) 'the party has succeeded in persuading a court to accept that party's earlier position' and 3) the party, if not estopped, 'would derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Perez v. Discover Bank*, 74 F.4th 1003, 1008 (9th Cir. 2023) quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *see also Foothill Capital Corp. v. East Coast Bldg. Supply Corp.*, 259 B.R. 840, 845 (E.D. Va 2001) (applying judicial estoppel to preclude party from retracting its courtroom representation regarding certain contractual language).

**1. <u>Substantive Consolidation of VH 1121 and VH Willows Without Wilmington's Consent Would be Inconsistent with the Plan Proponents' Prior Position</u>**

The VH Debtors are not substantively consolidated. The VH Debtors cannot be substantively consolidated without Wilmington's consent, which has not been provided. Wilmington is the only creditor of significance of the VH Debtors. Avoidance of Wilmington's liens (even if possible) *would not change this unequivocal fact*. Yet, the Trustees are pursuing claims on behalf of the VH Debtors as if (and are apparently now taking the position that) the escrowed proceeds can be distributed to creditors other than Wilmington. This would be possible only if the VH Debtors were substantively consolidated. The Trustees'

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

present position is directly contrary to and in conflict with the position repeated by the Plan Proponents to resolve Wilmington's objection and to secure the court's approval of the disclosure statement.

The position that the VH Debtors can be substantively consolidated without Wilmington's consent, is inconsistent with the Plan Proponents' prior position. The Plan Proponents' prior position was that Wilmington's claims would not be substantively consolidated. (*See* Ex. 6 at 6 of 34:11-16.)

The Plan Proponents' prior position was also that the VH Debtors Trust could "***only***" be consolidated if there was a "consensual resolution" with Wilmington. (*See* Ex. 2 at 32:9-15; *see also* Audio File of August 26, 2024 hearing, Docket No. 1240, at 41:38-42:57.) The Plan Proponents stated this prior position following Wilmington's objection to the FADS and at the August 26, 2024 hearing that it was not clear, in the FADS and FAP as drafted, how substantive consolidation would be effectuated. The Plan Proponents stated this prior position in direct response to the court asking whether the Plan Proponents were reserving the right to "forcibly toggle [the VH Debtors] into sub con" or whether the VH Debtors would "only" be substantively consolidated if there's a "consensual" resolution. (*See* Ex. 2 at 31:25-32:8.)

The position that the VH Debtors can be substantively consolidated without Wilmington's consent cannot be reconciled with the prior position that VH 1121 and VH Willows could "only" be substantively consolidated if there was a "consensual" resolution. Accordingly, the Trustees' present position is clearly inconsistent for purposes of judicial estoppel. *See Perez*, 74 F.4th at 1009 ("A party's current position is clearly inconsistent with its previous position if the

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

current position contradicts the previous position." (quotations and brackets omitted)).

**2. The Plan Proponents Succeeded in Persuading the Court to Accept Its Position**

The Plan Proponents persuaded the court to accept their position that the VH Debtors can be substantively consolidated only if Wilmington consents. *See Perez*, 74 F.4th at 1009 ("A party successfully persuades a court to accept the party's earlier position when the court accepts and relies upon the position when making its ruling." (quotations and brackets omitted)).

The Plan Proponents' position was in direct response to the court asking whether the VH Debtors would "only" be substantively consolidated if there was a "consensual" resolution. The Plan Proponents answered in the affirmative and the court accepted the Plan Proponents' position, including by articulating the precise additional language to carry out the Plan Proponents' position. (*See* Ex. 2 at 32:16-24, "Okay. Well, Mr. Simon, should definitely like that answer, I think. So my drafting suggestion, just doing this on the fly, would be to [write] – reserve the right to effectuate without further motion practice substan[tive] consolidation after the claims, and then add, before [,] are resolved or consensually resolved. Maybe with – maybe with the holders of such – are consensually resolved with the holders of such claims.")

The court concluded that Wilmington's objection to the substantive consolidation provision would be resolved if the Plan Proponents made the changes discussed at the hearing. (*See id.* at 38:13-23, "I think with the additional language that Mr. Gurule and I discussed, that will clarify how the debtors intend that mechanic to work, both for as a substantive matter and as a disclosure matter. So

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

I –if the debtors can make the changes discussed to both the plan and disclosure statements, the [c]ourt concludes that sufficiently resolves that objection."; *see also id.* at 45:11-19, concluding that with the changes discussed on the record, the court would approve the disclosure statement.) The Plan Proponents then modified the FAP Provision with the language suggested by the court and the court entered the order approving the Modified SADS.

**3. <u>If Not Estopped, the Trustees Would Derive an Unfair Advantage and Impose an Unfair Detriment on Wilmington</u>**

The substantive consolidation of the VH Debtors without a consensual resolution would allow the Trustees to obtain an unfair advantage and impose an unfair detriment on Wilmington. *See Perez*, 74 F.4th at 1009 ("A party derives an unfair advantage from taking two contradictory positions if invoking the new position creates the possibility of the party prevailing on the very position it successfully discredited.") (quotations and brackets omitted). The Plan Proponents prior position was used to overcome Wilmington's objection. The Plan Proponents clearly asserted that Wilmington's consent was required to substantively consolidate the VH Debtors. Wilmington's objection was resolved based on the Plan Proponents' assertion. (*See* Ex. 2 at 38:13-23.) Moreover, the Movants relied on the Plan Proponents' position in agreeing not to oppose confirmation. (*See* Docket No. 1330.) Absent estoppel, in the event the Trustees avoid Wilmington's liens and substantively consolidate the VH Debtors without Wilmington's consent, Wilmington would be forced to share its recovery *pro rata* with creditors who do not have allowed claims against the VH Debtors. This would unfairly prejudice Wilmington as it would subject Wilmington to extraordinary relief in a manner that is contrary to the Plan Proponents' position.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

**C. Under the Plan's Terms, the VH Debtors Cannot Be Substantively Consolidated Without Wilmington's Consent**

To the extent the Plan Proponents' judicial admissions and judicial estoppel do not preclude the Trustees from substantively consolidating the VH Debtors without Wilmington's consent, applicable principles of contract interpretation support the Movants' interpretation of the Plan.

"A Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts." *Miller v. U.S.*, 363 F.3d 999, 1004 (9th Cir. 2004). Courts interpreting plans apply contract principles under applicable state law. *See In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001). "It is a well-established maxim of contractual interpretation that a contract is ambiguous if it is 'capable of more than one reasonable interpretation.'" *See Miller v. U.S.*, 363 F.3d at 1004 (quoting *Badie v. Bank of Am.* 67 Cal.App.4th 779, (1988)). Where a plan is ambiguous, a court can consider extrinsic evidence to aid in the construction of the plan. *See Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n.*, 997 F.2d 581, 588 (9th Cir. 1993) ("but where such a document is ambiguous[,] resort can be had to extrinsic evidence, such as the record in the case in which the ambiguous order was entered, to aid in construction.").

According to the Washington Supreme Court, under Washington law, a court may consider extrinsic evidence when interpreting the meaning of a contract's language regardless of whether the contract's terms are ambiguous. *See Berg. V. Hudesman*, 115 Wn. 2d 657, 669 (1990) ("We thus reject the theory that ambiguity in the meaning of contract language must exist before evidence of the surrounding

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

circumstances is admissible.") "If extrinsic evidence does not resolve the ambiguity, the contract will be construed against the drafter." *King v. Rice*, 146 Wash. App. 662, 671 (2008).

Both the Plan and the Confirmation Order contain the Modified SAP Provision, which provides as follows in pertinent part:

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*¸ that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court.

(*See* Ex. 1 at 107 of 135:13-17.)

This language makes two key facts unequivocally clear. First, the Excluded Debtors are not being substantively consolidated on the Effective Date. Second, the Excluded Debtors could be substantively consolidated after the Effective Date *only* "after the Claims in Classes 2B and 2C [*i.e.*, Wilmington's Claims] are consensually resolved with" Wilmington. Again, this language was added to implement the Plan Proponents' position and commitment that Wilmington's claims would not be substantively consolidated and any substantive consolidation would occur *only if* a consensual resolution with Wilmington was reached. This language resolved any contested proceeding concerning the substantive consolidation of the VH Debtors.

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

The Plan does not contain any provisions describing how the "Excluded Debtors," *i.e.*, the VH Debtors, can be substantively consolidated without Wilmington's consent. As the context regarding the drafting of the Plan demonstrates, this omission was intentional as the parties' resolution was that substantive consolidation could occur only after a resolution with Wilmington. If the Trustees could substantively consolidate the Excluded Debtors without Wilmington's consent, then the language "other than the Excluded Debtors with respect to Claims in 2B and 2C" and "reserve the right to effectuate . . . substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims. . . ." would be meaningless.

Under Washington law, courts apply the "context rule" when interpreting the meaning of a contractual language. *See Berg. v. Hudesman*, 115 Wash. 2d 657 (1990). The Washington Supreme Court has explained the context rule as follows:

> Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

*See id.* at 668. In applying the context rule, courts consider extrinsic evidence when interpreting the meaning of a provision even if the provision at issue is unambiguous. *See id.* at 669.

The circumstances surrounding the making of the Plan make clear that Wilmington's consent is required to substantively consolidate the Excluded Debtors. These circumstances specifically include the statements by the Plan

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Proponents in their filings concerning the FADS and FAP, and at the hearing on the SADS. These statements set forth the intent behind the provisions included in the Plan and, in particular, the SAP Modified Provision.

By the Reply filed with the FADS and FAP, the Plan Proponents specifically explained the impact and meaning of the following language, *i.e.*, the FAP Provision:

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, will be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however,* that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court.

(*See* Ex. 8, FAP, at 41 of 69:2-5 emphasis in original.) According to the Plan Proponents, this provision "modified the provisions governing substantive consolidation of the Debtors under the Amended Plan to exclude the VH Debtors. **Thus, Wilmington's Claims will not be subject to the substantive consolidation provisions in the Amended Plan**." (*See* Ex. 6. at 11:7-12 (emphasis added).) According to the Plan Proponents, by this language, the Plan Proponents "exclude[d]" the VH Debtors from the substantive consolidation of the Debtors. In addition, this language "**clarifies that the substantive consolidation of the Debtors will not impact Wilmington's Claims**." **(***See id.* at 12:20-24 and 6:11-13 (emphasis in original); *see also id.* at 32 of 34, "The Plan Proponents revised the Plan to provide that they will not effectuate substantive consolidation of the Debtors that Wilmington holds their liens against, subject to the ability to

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

effectuate substantive consolidation after Wilmington's Claims are resolved (upon filing a notice with the court).") As the vast majority of this language appears in Plan, these statements from its drafters are highly persuasive, if not controlling, as to provision at issue. These statements make clear the intent that *no* substantive consolidation was to occur until and unless Wilmington's claims were *consensually* resolved.

The statements of the Plan Proponents' counsel at the hearing on the SADS further confirmed the meaning of the provision at issue. The Plan Proponents' counsel unequivocally stated that the Trustees could "***only***" consolidate the VH Debtors if there is a "consensual resolution" with Wilmington. (*See* Ex. 2 at 32:5-15; *see also* Audio File of August 26, 2024 hearing, Docket No. 1240, at 41:38-42:57.)

Moreover, the circumstances surrounding the making of the Plan that support the Movants' view include the court's contribution. The court suggested certain language to the Plan Proponents, which was included in the Modified SAP Provision. This language was included to reinforce and strengthen the intended meaning of the Modified SAP Provision—that substantive consolidation of the VH Debtors could occur only after a consensual resolution.

Viewing the Plan as a whole supports the conclusion that Wilmington's consent is required.

First, the Modified SAP Provision is the only Plan provision that addresses how the VH Debtors can be substantively consolidated. Again, this was intentional. The Plan Proponents sought to avoid contested proceedings with respect to the consolidation of the VH Debtors, so the Plan does not permit such option. As demonstrated by the circumstances leading to the Modified SAP

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

23-01243-WLH11 Doc 1704 Filed 01/16/26 Entered 01/16/26 15:05:28 Pg 34 of 38

Provision, the only path to consolidation of the VH Debtors or Wilmington's claims was through Wilmington's consent.

Second, the Plan states that Wilmington's claims and legal, equitable, and contractual rights are unimpaired, which could not be true if its borrowers were being substantively consolidated at any point without Wilmington's consent. (*See* Ex. 1 at 90 of 135:1-3.)

Any alteration to Wilmington's rights, liens, or claims would constitute impairment. *See* 11 U.S.C. § 1124(1) ("a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan . . . leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest."); *In re L & J Anaheim Asscs.*, 995 F.2d 940, 942 (9th Cir. 1993) ("any alteration of the rights constitutes impairment even if the value of the rights is enhanced"). In *L & J Anaheim Asscs.*, the Ninth Circuit determined that, by doing away with the secured creditor's ability to exercise all rights and remedies available under the California Uniform Commercial Code as set forth in the applicable loan documents, the plan "altered [the secured creditor's] prepetition contract rights, leaving it impaired within the meaning of the Code." 995 F.2d at 943.

The Plan provides that Wilmington's legal, equitable, and contractual rights are unaltered by the Plan. (*See* Ex. 1 at 90 of 135:2-3, "the legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan. . . ."; *see also* Ex. 6. at 6:10-13, "**Article V F.4 clarifies that the substantive consolidation of the Debtors will not impact Wilmington's Claims.")** (emphasis in original.) If Wilmington's liens are avoided and they are forced to collect on their unsecured claims *pro rata* with all other unsecured claims against all Debtors

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

via substantive consolidation, this would alter their legal, equitable, and contractual rights. The classification of Wilmington as unimpaired would be inaccurate if the VH Debtors could be substantively consolidated without Wilmington's consent.

Accordingly, under Washington contract interpretation principles, the VH Debtors cannot be substantively consolidated without Wilmington's consent.

## IV. THE VH DEBTORS SHOULD BE DIRECTED TO DISTRIBUTE THE SALE PROCEEDS TO WILMINGTON

For the reasons set forth above, the pending counterclaims asserted by the VH Debtors against the Movants are futile and a waste of resources for all involved. As a result, there is nothing else to do to administer the VH Debtors and the VH Debtors should be ordered to distribute the sale proceeds to Wilmington.

## V. CONCLUSION

For the foregoing reasons, Wilmington and Lima request that the court enter an order confirming that, under the Plan, the VH Debtors cannot be consolidated without Wilmington's consent and order the VH Debtors to distribute the sale proceeds to Wilmington.

Respectfully submitted,

Dated: January 16, 2026 BORDE LAW PLLC

*/s/ Manish Borde*

MANISH BORDE (WSBA *#39503)*
1700 7TH Ave., Suite 2100
Seattle, WA 98101-1360
mborde@bordelaw.com

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

RAINES FELDMAN LITTRELL LLP

*/s/ Robert S. Marticello*
ROBERT S. MARTICELLO (*Admitted Pro Hac Vice)*
MICHAEL L. SIMON (*Admitted Pro Hac Vice)*

*Attorneys for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust and Lima One Capital, LLC*

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys who have appeared in the case.

DATED this 16th day of January, 2026.

*/s/ Manish Borde*
MANISH BORDE (WSBA *#39503)*
1700 7TH Ave., Suite 2100
Seattle, WA 98101-1360
mborde@bordelaw.com

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722