**BORDE LAW PLLC**
Manish Borde
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722

**RAINES FELDMAN LITTRELL LLP**
Robert S. Marticello (admitted *Pro Hac Vice*)
*rmarticello@raineslaw.com*
Michael L. Simon (admitted *Pro Hac Vice*)
*msimon@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone:  (310) 440-4100/Facsimile:  (310) 691-1943

Attorneys for Wilmington Savings Fund Society, FSB,
not in its individual capacity, but solely as Owner of
MFA 2022-RTL1 Trust and Lima One Capital, LLC

HONORABLE WHITMAN L. HOLT
HEARING DATE: February 24, 2026
HEARING TIME: 10:00 a.m.

## UNITED STATES BANKRUPTCY COURT FOR THE

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter:  11 |
| ICAP ENTERPRISES INC., *et al.* | Case No.:  23-01243-WLH11 |
| Debtors.[1] | Jointly Administered |

---

[1]   The "Debtors" (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250- 11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-

INDEX OF EXHIBITS IN SUPPORT OF
MOTION FOR ORDER INTERPRETING PLAN– Page 1

**INDEX OF EXHIBITS IN
SUPPORT OF MOTION AND
MOTION FOR ORDER
INTERPRETING PLAN**

**TO THE HONORABLE WHITMAN HOLT, UNITED STATES
BANKRUPTCY JUDGE, AND PARTIES IN INTEREST:**

Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust ("**Wilmington**") and Lima One Capital, LLC ("**Lima**" and together with Wilmington, the "**Movants**") hereby submit the following index of exhibits in support of their concurrently-filed *Motion for Order Interpreting Plan* (the "**Motion**").

| Exhibit No. | Title or Description of Exhibit |
|:---:|:---|
| 1 | The Confirmation Order and Plan [Docket No. 1414] |
| 2 | Transcript of August 26, 2024 hearing on approval of the Plan Proponents' proposed disclosure statement |
| 3 | Relevant excerpts of the *Schedules of Assets and Liabilities of VH 1121 14th, LLC* |
| 4 | Relevant excerpts of the *Schedules of Assets and Liabilities of VH Willows Townhomes, LLC* |
| 5 | The Movants' *Opposition to Motion for an Order Approving (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Liquidation; and (IV) Granting Related Relied* [Docket No. 1182] |
| 6 | *Plan Proponents' Omnibus Reply to Objections to Joint Motion for Approval of Disclosure Statement* [Docket No. 1185] |
| 7 | Relevant excerpts of the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of* |

01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); and iCap Holding 6 LLC (23-01274-11).

INDEX OF EXHIBITS IN SUPPORT OF

MOTION FOR ORDER INTERPRETING PLAN– Page 2

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

| | | |
|---|---|---|
| | | *iCap Enterprises, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1221] |
| | 8 | Relevant excerpts of the *First Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1222] |
| | 9 | Relevant excerpts of the *Notice of Filing of Redlines of the First Amended Disclosure Statement and First Amended Chapter 11 Plan* [Docket No. 1223] |
| | 10 | The Movants' *Objection to First Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1235] |
| | 11 | Relevant excerpts of the *Modified Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1248] |
| | 12 | Relevant excerpts of the *Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [Docket No. 1249] |
| | 13 | Relevant excerpts of the *Notice of Filing of Redlines of the Modified Second Amended Disclosure Statement and Modified Second Amended Chapter 11 Plan* [Docket No. 1223] |

INDEX OF EXHIBITS IN SUPPORT OF

MOTION FOR ORDER INTERPRETING PLAN– Page 3

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

<div style="text-align: right">

Respectfully submitted,

</div>

Dated: January 16, 2026      BORDE LAW PLLC

*/s/ Manish Borde*
MANISH BORDE (WSBA #39503)
1700 7TH Ave., Suite 2100
Seattle, WA 98101-1360
mborde@bordelaw.com


RAINES FELDMAN LITTRELL LLP

*Robert S. Marticello*
ROBERT S. MARTICELLO (*Pro Hac Vice*)
MICHAEL L. SIMON (*Pro Hac Vice*)

*Attorneys for Wilmington Savings Fund Society,*
*FSB, not in its individual capacity, but solely as*
*Owner of MFA 2022-RTL1 Trust and Lima One*
*Capital, LLC*

INDEX OF EXHIBITS IN SUPPORT OF

MOTION FOR ORDER INTERPRETING PLAN– Page 4

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

# EXHIBIT 1

**Dated: October 18th, 2024**



Whitman L. Holt
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re:

ICAP ENTERPRISES, INC., *et al.*,

Debtors.[1]

Chapter 11

Lead Case No. 23-01243-WLH11
Jointly Administered

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF ICAP ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

iCap Enterprises, Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 bankruptcy cases (the "Chapter 11 Cases"), having

    a. commenced, on September 29, 2023 (the "Petition Date"),[2] the Chapter 11 Cases by filing voluntary petitions in the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 *et seq.* (the "Bankruptcy Code");

    b. filed, on July 16, 2024, the (i) *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1088] and (ii) *Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1089];

    c. filed, on July 19, 2024, the *Motion For an Order Approving (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Liquidation; and (IV) Granting Related Relief* [ECF No. 1142];

    d. filed, on August 20, 2024, the (i) *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1221] and (ii) *First Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated*

---

[2] Certain of the Debtors filed their own chapter 11 cases on September 30, November 8, and November 14, 2023. For purposes of this Confirmation Order, "Petition Date" as used herein will refer to the earliest of the Debtors' respective filing dates and "Chapter 11 Cases" includes all of the Debtors' cases, irrespective of when they were filed.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

2

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

1       *Debtors Proposed by the Debtors and Official Committee of Unsecured*

2       *Creditors* [ECF No. 1222];

3       e.   filed, on August 26, 2024, the (i) *Second Amended Disclosure Statement*

4       *for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and*

5       *its Affiliated Debtors Proposed by the Debtors and Official Committee of*

6       *Unsecured Creditors* [ECF No. 1236] and (ii) *Second Amended Joint*

7       *Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated*

8       *Debtors Proposed by the Debtors and Official Committee of Unsecured*

9       *Creditors* [ECF No. 1237];

10      f.   obtained, on August 29, 2024, the *Order Approving: (I) Proposed*

11      *Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice*

12      *and Objection Procedures for Confirmation of Joint Plan of Liquidation;*

13      *and (IV) Granting Related Relief* [ECF No. 1247] (the "Solicitation

14      Order"), which, among other things (i) approved the Disclosure Statement

15      (as defined below) as having adequate information, as required under

16      section 1125(a) of the Bankruptcy Code, (ii) authorized the Debtors to

17      solicit votes with regard to the acceptance or rejection of the Plan (as

18      defined below), and (iii) approved the Debtors' related notices, forms, and

19      ballots to be submitted to parties in interest in connection with voting on

20      the Plan and the Debtors' voting procedures (the "Voting Procedures");

21      g.   filed, on August 30, 2024, the *Modified Second Amended Disclosure*

22      *Statement for the Joint Chapter 11 Plan of Liquidation of iCap*

23      *Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and*

24      *Official Committee of Unsecured Creditors* [ECF No. 1248] (the

25      "Disclosure Statement");

26

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION**

3

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

h. filed, on August 30, 2024, the *Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1249];

i. caused, on August 29, 2024 and September 4, 2024, the Solicitation Order to be distributed consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Solicitation Order, as evidenced, by among other things, the *Certificate of Service* [ECF No. 1261] (the "Solicitation Affidavit") filed by BMC Group, Inc. ("BMC"), the Debtors' court-approved noticing, claims, and balloting agent, on September 6, 2024;

j. caused, on September 4, 2024, the solicitation materials and notice of the deadline for voting on the Plan and objecting to confirmation of the Plan to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, as evidenced, by among other things, the Solicitation Affidavit filed by BMC on September 6, 2024;

k. caused notice of the hearing to consider confirmation of the Plan (the "Confirmation Hearing") to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, as evidenced, by among other things, the Solicitation Affidavit filed by BMC, on September 6, 2024, and the *Certificate of Service* [ECF No. 1394] filed by BMC, on October 15, 2024;

l. filed, on September 6, 2024, the *Amended Supplemental Declaration of Jeffrey H. Kinrich in Support of the Ponzi Findings and Confirmation of the Plan* [ECF No. 1262] (the "Kinrich Declaration");

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

4

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

m. filed, on September 18, 2024, the *Notice of Filing of Plan Supplement Pursuant to Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1270] (the "Plan Supplement");

n. filed, on October 9, 2024, the *Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1360] (attached hereto as **Exhibit A**, and including all exhibits thereto and as the same may be amended, modified, or supplemented from time to time pursuant to the terms thereof, the "Plan");[3]

o. filed, on October 9, 2024, the *Declaration of Brad Daniel of BMC Group Regarding Voting and Tabulation of Ballots for Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1356] (the "Voting Declaration");

p. filed, on October 9, 2024, the *Memorandum of Law (A) In Support of Confirmation of the Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors; and (B) In Response to Pending Objections Thereto* [ECF No. 1362] (the "Confirmation Brief");

---

[3] Unless otherwise noted herein, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order" or this "Order") shall have the meanings ascribed to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

5

q. filed, on October 9, 2024, the *Declaration of Lance Miller in Support of the Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1363] (the "Miller Declaration");

r. filed, on October 9, 2024, the *Notice of Filing Proposed Findings of Fact, Conclusions of Law, and Order Confirming the Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1364];

s. filed, on October 10, 2024, the *Supplemental Declaration of Lance Miller in Support of Ponzi Findings and Plan Confirmation* [ECF No. 1370] (the "Miller Ponzi Declaration");

t. filed, on October 10, 2024, the *Declaration of Stanley Ho in Support of the Ponzi Findings and Confirmation of the Plan* [ECF No. 1369] (the "Ho Declaration");

u. filed, on October 10, 2024, the *Declaration of Nickisha Haine in Support of Ponzi Findings and Plan Confirmation* [ECF No. 1368] (the "Haine Declaration"); and

v. filed, on October 10, 2024, the *Supplemental Brief Regarding Ponzi Findings in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Liquidation* [ECF No. 1371] (the "Ponzi Brief").

The Bankruptcy Court having:

a. set October 16, 2024, at 1:00 p.m. (prevailing Pacific Time) as the date and time for the commencement of the Confirmation Hearing, pursuant to

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

6

23-01243-WLH11    Doc 1404-1    Filed 10/18/24    Entered 10/18/24 15:20:28    Pg 6 of 185
335

Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

b. reviewed the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Brief, the Ponzi Brief, the Voting Declaration, the Miller Declaration, the Kinrich Declaration, the Miller Ponzi Declaration, the Ho Declaration, the Haine Declaration, and all pleadings, exhibits, statements, responses, and comments filed in the Chapter 11 Cases regarding confirmation of the Plan ("Confirmation") and making of the Ponzi Findings (as defined below), including any objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c. held the Confirmation Hearing, including hearing the live testimony of Jeffrey H. Kinrich, Stanley Ho, and Nickisha Haine in support of Confirmation and the making of the Ponzi Findings;

d. heard the statements and arguments made by counsel with respect to approval of the Plan and Ponzi Findings and Confirmation and the objections, if any, thereto;

e. considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding the Plan, the Ponzi Findings, and Confirmation and the objections, if any, thereto;

f. overruled any and all objections (to the extent not withdrawn) to the Plan, Confirmation, the Plan Supplement, the Ponzi Findings, and this Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

7

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

g. taken judicial notice of all pleadings and other documents filed, all orders entered, all evidence proffered or adduced, and all arguments presented, in the Chapter 11 Cases.

**NOW THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to the Plan, Confirmation, and the Ponzi Findings having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions and settlements contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, the Confirmation Brief, the Voting Declaration, the Miller Declaration, the Kinrich Declaration, the Miller Ponzi Declaration, the Ho Declaration, the Haine Declaration, and the Ponzi Brief establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.** **Findings of Fact and Conclusions of Law**.

1. The findings of fact and conclusions of law set forth in this Confirmation Order and on the record at the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation and the Ponzi Findings are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. To the extent any of the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

8

following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.**     <u>**Jurisdiction, Venue, and Core Proceeding**</u>.

2.     The Bankruptcy Court has subject matter jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue in the Bankruptcy Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the Constitution.

**C.**     <u>**Eligibility for Relief**</u>.

3.     The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

4.     The Debtors and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (as amended on November 9, 2023 [ECF No. 147], the "<u>Committee</u>" and, together with the Debtors, the "<u>Plan Proponents</u>") are proper plan proponents under section 1121 of the Bankruptcy Code.

**D.**     <u>**Commencement and Joint Administration of the Chapter 11 Cases**</u>.

5.     On the Petition Date, the Debtors filed voluntary petitions with this Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code. On October 2, 2023, the Bankruptcy Court entered an order [ECF No. 9] authorizing the joint administration and procedural consolidation of the Chapter 11 Cases under the lead case *In re iCap Enterprises, Inc.*, Case No. 23-01243-WLH11, in accordance with Bankruptcy Rule 1015(b). On November 16, 2023, the Bankruptcy Court granted the motion for the subsequently filed Debtors, Colpitts Sunset, LLC, CS2 Real Estate Development LLC, and iCap International Investments, LLC to be jointly administered

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

9

under the lead case: *In re iCap Enterprises, Inc.*, Case No. 23-01243-WLH11. *See* ECF No. 164. Since the Petition Date, the Debtors have operated their business and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

**E.     Appointment of the Committee.**

6.     On October 20, 2023, the Office of the United States Trustee for the Eastern District of Washington (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [ECF No. 102] and amended such appointment on October 30, 2023 [ECF No. 112].

**F.     Judicial Notice.**

7.     The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of the Chapter 11 Cases, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases, including the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

**G.     Plan Supplement.**

8.     On September 18, 2024, the Debtors filed the Plan Supplement. The Plan Supplement complies and is consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the Plan Supplement was good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "Local Rules"), the Solicitation Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

10

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

by reference into the Plan. All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement and this Confirmation Order. Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules, *provided*, that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the terms of the Plan.

**H.** **Transmittal and Mailing of Solicitation Materials; Notice.**

9. As evidenced by the Solicitation Affidavit and the Voting Declaration, the Disclosure Statement, the Plan, the Solicitation Order, the ballots for voting on the Plan (the "Ballots"), the notice of the Confirmation Hearing, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the procedures set forth in the Solicitation Order.

10. Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases. The transmittal and service of the Confirmation Materials complied with the procedures set forth in the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, and were in compliance with the provisions of the Bankruptcy Court's orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) were given due, proper, timely, and adequate notice in accordance with the procedures set forth in the Solicitation Order. Because

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

11

23-30233-WLH11    Doc 1704    Filed 10/08/26    Entered 10/08/26 13:05:28    Pg 16 of 335

such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**I.**   <u>**Voting**</u>.

11.     Prior to the Confirmation Hearing, the Debtors filed the Voting Declaration. As set forth in the Voting Declaration, the procedures used to solicit votes on the Plan and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12.     As set forth in the Plan, Holders of Claims in Classes 3 and 4 (collectively, the "<u>Voting Classes</u>") were eligible to vote on the Plan pursuant to the Voting Procedures. In addition, Holders of Claims in Classes 1 and 2 are unimpaired and conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims in Class 5 and Holders of Equity Interests in Class 6 (collectively, the "<u>Deemed Rejecting Classes</u>") are impaired under the Plan and have been deemed to reject the Plan. As evidenced by the Voting Declaration, the statements made on the record at the Confirmation Hearing, and this Confirmation Order, Class 3 and Class 4 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.

**J.**   <u>**Good-Faith Solicitation (11 U.S.C. § 1125(e)).**</u>

13.     Based on the record before the Bankruptcy Court in the Chapter 11 Cases, the Plan Proponents and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Rules, the Solicitation Order, the Voting Procedures, and any other applicable rules, laws, and regulations in connection with all of their respective activities relating to the solicitation of votes on the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code, and therefore, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**K.** **Burden of Proof.**

14. The Plan Proponents as proponents of the Plan, have met their burden of proving the applicable elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. Further, the Plan Proponents have proven the elements of section 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

**L.** **Bankruptcy Rule 3016.**

15. The Plan is dated and identifies the Plan Proponents as the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan Proponents appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The Plan and Disclosure Statement describe in specific and conspicuous language all acts and actions to be enjoined and identify the Persons that would be subject to injunctions, thereby satisfying Bankruptcy Rule 3016(c).

**M.** **Objections.**

16. To the extent that any objections (including any reservations of rights) to Confirmation of the Plan or the Ponzi Findings have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, or are not otherwise resolved under this Confirmation Order or as stated by the Debtors and/or the Committee on the record of the Confirmation Hearing, all such objections are overruled on the merits. Any

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

13

23-30233-WLH11   Doc 1704-1   Filed 10/08/26   Entered 10/08/26 13:05:28   Pg 18 of 335

resolutions of objections to entry of this Confirmation Order explained on the record at the Confirmation Hearing are hereby incorporated by reference.

**N.  Conduct of a Ponzi Scheme.**

17.    The evidence detailed above demonstrates, and the Bankruptcy Court hereby finds (the "Ponzi Findings"), that (i) beginning no later than October 2018 (the "Ponzi Start Date") through the conclusion of the prepetition time period analyzed by the CRO and his advisors (which, for the avoidance of doubt, ended prior to the retention of new counsel and financial advisors by the Debtors in July 2023), the principals operated the iCap enterprise as a Ponzi scheme raising approximately $230 million from over 1,800 investors in the United States and abroad; (ii) the Ponzi scheme involved the use of funds provided by new investors to the iCap enterprise to make payments to already-existing investors and other creditors; and (iii) the iCap enterprise did not operate as a legitimate profit-making business. *See In re EPD Inv. Co.,* 114 F.4th 1148, 1162–63 (9th Cir. 2024).

**O.  Modifications or Alterations to the Plan.**

18.    To the extent the Plan has been modified, supplemented, or altered between solicitation and the date of entry of this Confirmation Order (collectively, the "Modifications"), such Modifications made to the Plan constitute clarifications or technical changes, and do not materially and adversely affect or change the treatment of any Claims against, or Equity Interests in, the Debtors and comply in all respects with section 1127 of the Bankruptcy Code. All such Modifications are incorporated by reference herein and approved. Accordingly, pursuant to Bankruptcy Rule 3019, such Modifications, if any, do not require (a) additional or further disclosure with respect to the Modifications under section 1125 of the Bankruptcy Code and/or (b) either resolicitation of votes on the Plan or affording Holders of Claims in the Voting Classes

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

14

the opportunity to change a previously cast Ballot under section 1126 of the Bankruptcy Code.

**P.** **Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

19.    As detailed below, the Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**1.** **Compliance With Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

20.    The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**(i)** **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

21.    The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. Except with respect to Administrative Expense Claims, Priority Tax Claims, and Supplemental DIP Claims, which need not be classified, Article III of the Plan classifies all Claims against, and Equity Interests in, the Debtors into six (6) separate Classes based on the characteristics of those Claims and Equity Interests. Valid business, factual, and legal reasons exist for the separate classification of the various Classes created under the Plan, the classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests. Each Class of Claims or Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

**(ii)** **Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**

22. Article III of the Plan specifies that Claims in Class 1 (Priority Claims) and Class 2 (Secured Claims) are unimpaired under the Plan. Additionally, Administrative Expense Claims, Priority Tax Claims, and Supplemental DIP Claims are not classified under, and are unimpaired by, the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**(iii)** **Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

23. Article III of the Plan specifies that Claims in Class 3 (Investor Claims) and Class 4 (General Unsecured Claims) are impaired and entitled to vote on the Plan, while Claims and Equity Interests in Class 5 (Subordinated Claims) and Class 6 (Equity Interests) are impaired and deemed to reject the Plan. In addition, Article III describes the treatment of the Claims and Equity Interests in such Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

**(iv)** **No Discrimination (11 U.S.C. § 1123(a)(4)).**

24. Article III of the Plan provides for the same treatment of each Claim and Equity Interest in a particular Class, unless the Holder of a particular Claim or Equity Interest agrees to less favorable treatment of such Claim or Equity Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**(v)** **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**

25. Article V and various other provisions of the Plan provide in detail adequate and proper means for the Plan's implementation, including, but not limited to, (as more fully described in Article V of the Plan): (a) the authorization to undertake all corporate actions necessary to effectuate the Plan under Article V.B of the Plan; (b) the dissolution of the Debtors under Article V.B.3 of the Plan; (c) the cancellation of indebtedness under Article V.C of the Plan; (d) the appointment of the iCap Trustees

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

16

23-01243-WLH11 Doc 1704 Filed 10/08/24 Entered 10/08/24 18:05:28 Pg 21 of 335

under Article V.D.1 of the Plan; (e) the creation of the iCap Trust under Article V.D.2 of the Plan; (f) the vesting of all iCap Trust Assets in the iCap Trust under Article V.D.3 of the Plan; (g) the sources of cash for Distributions under the Plan under Article V.D.11; (h) the substantive consolidation of the Debtors as provided in Article V.E of the Plan; (i) the preservation of all Causes of Action and Avoidance Actions under Article V.F of the Plan; (j) the effectuating of exit financing documents and an exemption from registration under the Securities Act under Articles V.D.13, and V.G of the Plan, and (k) the abandonment of certain Estate Assets under Article V.H of the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### (vi) Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

26. The Debtors are not issuing any non-voting equity securities of any corporation, and each of the Debtors will eventually be dissolved under the Plan. Accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable to the Plan.

### (vii) Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

27. The Plan provides for the dissolution and winding down of the Debtors' business and appointment of the iCap Trustees as the managers, officers, and representatives of the iCap Trust. Article V.D of the Plan provides for the creation of the iCap Trust and for the appointment of the initial iCap Trustees and the initial iCap Trust Supervisory Board to serve in accordance with the terms of the Plan and the iCap Trust Agreement. The iCap Trustees' shared compensation terms are set forth in Article V.D.1 of the Plan. These designations under the Plan are consistent with the interests of Creditors and Holders of Equity Interests and with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

17

23-01243-WLH11    Doc 1704-1    Filed 08/26/26    Entered 08/26/25 18:05:28    Pg 22 of 335

**(viii) <u>Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).</u>**

28.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.

**(a)     <u>Impairment/Unimpairment of Classes (11 U.S.C. § 1123(b)(1)).</u>**

29.     As contemplated by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan: (i) impairs Investor Claims (Class 3), General Unsecured Claims (Class 4), Subordinated Claims (Class 5), and Equity Interests (Class 6), and (ii) leaves unimpaired Priority Claims (Class 1) and Secured Claims (Class 2).

**(b)     <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).</u>**

30.     Any and all executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors pursuant to the provisions of section 365 of the Bankruptcy Code. The Debtors, in rejecting the contracts and leases under the Plan, utilized their sound business judgment and complied with the Bankruptcy Code, as contemplated by section 1123(b)(2) of the Bankruptcy Code.

**(c)     <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Equity Interests (11 U.S.C. § 1123(b)(3)).</u>**

31.     <u>Compromise and Settlement</u>. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies resolved pursuant to the Plan and in these Chapter 11 Cases.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

18

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Such compromise and settlement is fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, creditors, and parties in interest.

32. <u>Subordinated Claims</u>. The allowance, classification, and treatment of all Allowed Claims and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

33. <u>Release</u>. The releases (the "<u>Release</u>") of the Debtors; the Committee and its current and former members (in their capacities as such); the CRO; the DIP Parties; and the preceding's respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person; *provided, however*, that the Debtors' Related Parties will be limited to the following Persons: the directors, officers, attorneys, accountants, consultants, professionals, and employees who (i) are employed by the Debtors on the Effective Date or (ii) whose employment was approved by the Bankruptcy Court (collectively, the "<u>Released Parties</u>"), are essential and critical provisions of the Plan. The Release, which includes by reference each of the related provisions and definitions contained in the Plan, is (a) within the jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. § 1334; (b) fully consensual; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of such claims; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

19

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

34. The Release was a necessary inducement to the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan. Specifically, the Released Parties, individually and collectively, made significant contributions to the Chapter 11 Cases, including funding the Chapter 11 Cases, and otherwise actively supporting the negotiation and prosecution of the Plan. The Release therefore appropriately offers protection to parties who actively and constructively participated in and contributed to the Debtors' Chapter 11 Cases and without whom Confirmation could not have been achieved.

35. The scope of the Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Release. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Release to the Plan, the Release is approved.

36. <u>Exculpation</u>. The exculpation provision set forth in Article X.H of the Plan (the "<u>Exculpation</u>") is approved, *provided* that the term Exculpated Parties as used in this Confirmation Order and Article X.H of the Plan with respect to the CRO's Related Parties shall be limited to only the Related Parties that participated in these Chapter 11 Cases. The Exculpation is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good faith, arm's length negotiations with key constituents, is a key element of the Plan, and is appropriately limited in scope, as it will have no effect of the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted fraud, willful misconduct, gross negligence, or malpractice. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of, and Distributions under, the Plan, and therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

20

law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. Accordingly, the Exculpation is approved.

37.    _Injunctions_. The injunctive provisions set forth in Articles X.I and X.J of the Plan (collectively, the "Injunctions") are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Release and the Exculpation in Article X of the Plan. Such Injunctions are appropriately tailored to achieve those purposes. Accordingly, the Injunctions are approved.

38.    _Preservation of Estate Causes of Action_. The provisions regarding the preservation of all of the Debtors' and Estates' Causes of Action in the Plan, Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, including Article V.F of the Plan, are appropriate and are in the best interests of the Debtors, their respective Estates, and their Creditors. Without in any way limiting the iCap Trust's and the iCap Trustees' rights to pursue claims against third parties, Article V.F.3 provides illustrative categories of claims that are preserved under the Plan and will be transferred and conveyed to the iCap Trust as provided for in the Plan and as authorized by this Confirmation Order.

### (d)    **Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).**

39.    The Plan contains other appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code, as contemplated by section 1123(b)(6) of the Bankruptcy Code.

### 2.    **The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

40.    As detailed below, the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

21

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

(i) The Debtors and the Committee, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1127, 1128, and 1129 of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3016, 3017, 3018, and 3019, the Local Rules, the Solicitation Order, and any applicable nonbankruptcy laws, rules, and regulations in transmitting the Disclosure Statement, the Plan, the Plan Supplement, and any related documents and notices.

(ii) The votes to accept or reject the Plan were solicited by the Plan Proponents and their agents after the Bankruptcy Court approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and entered the Solicitation Order.

(iii) The Plan Proponents and their agents (a) have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and (b) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article X.H of the Plan.

(iv) The Plan Proponents and their agents and professionals have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering,

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION

22

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

23-30244-dwh11   Doc 1704   Filed 10/08/26   Entered 10/08/26 13:05:28   Pg 27 of 335

issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such Distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made thereunder, so long as such Distributions are made consistent with and pursuant to the Plan.

### 3. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

41. The Plan (including all documents and agreements necessary to effectuate the Plan) and the transactions and settlements contemplated in the Plan have been proposed in good faith and not by any means forbidden by law, with the legitimate and honest purpose of maximizing recoveries to parties in interest. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Plan Proponents' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan, the record of the Confirmation Hearing, the Miller Declaration, and all other proceedings held in the Chapter 11 Cases. The Plan is the product of arm's length negotiations between the Debtors, the Committee, and other parties in interest. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of Holders of Claims and Equity Interests. Consistent with the overriding purpose of chapter 11, the Debtors commenced the Chapter 11 Cases, and proposed the Plan, with the legitimate purpose of maximizing the value of the ultimate recoveries to all creditor groups on a fair and equitable basis. The Plan's classification, indemnification, exculpation, release, and injunction provisions were negotiated in good faith and at arm's length, are consistent

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

23

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

with sections 105, 1122, 1123, 1129, and 1142 of the Bankruptcy Code, and are each necessary for implementation of the Plan.

42. The Plan Proponents and each of the constituents who negotiated the Plan, including, but not limited to, each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person (a) acted in good faith in negotiating, formulating, and proposing the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and this Confirmation Order and (ii) take any actions authorized and directed or contemplated by this Confirmation Order. Accordingly, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

**4.** **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

43. The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees, costs, and expenses to be paid by the Debtors, or the iCap Trustees, as applicable, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**5.** **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

44. Article V.B.2 of the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code because the Debtors have disclosed that, on the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

24

have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided, however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets. The Debtors have also disclosed that the CRO, Lance Miller, and Seth Freeman will serve as the initial iCap Trustees and the nature of their compensation for their role as the iCap Trustees. The appointment of the iCap Trustees was, is, and will be consistent with the interests of Holders of Claims and Equity Interests and public policy. Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

6. **No Rate Changes (11 U.S.C. § 1129(a)(6)).**

45. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

7. **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

46. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, including the Miller Declaration, the liquidation analysis attached to the Disclosure Statement as <u>Exhibit B</u>, the recovery analysis attached to the Disclosure Statement as <u>Exhibit C</u>, and the facts and circumstances of the Chapter 11 Cases: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) provides a reasonable estimate of the liquidation values of the Debtors upon

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

25

23-01243-WLH11   Doc 1704   Filed 06/06/26   Entered 06/06/26 13:05:28   Pg 30 of 335

hypothetical conversion to cases under chapter 7 of the Bankruptcy Code; and (e) establishes that Holders of Allowed Claims or Equity Interests will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**8.**     **<u>Acceptance of the Plan by Certain Classes (11 U.S.C. § 1129(a)(8)).</u>**

47.     Classes 1 and 2 are each Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Declaration, Classes 3 and 4 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. The Deemed Rejecting Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to the Deemed Rejecting Classes, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

**9.**     **<u>Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).</u>**

48.     The treatment of Administrative Expense Claims and Priority Tax Claims under Article III.A the Plan, and of Priority Claims under Article III.B.1 of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Notwithstanding anything to the contrary set forth in the Plan, the Debtors agree that any reference to consent to treatment that differs from the treatment permitted by section 1129(a)(9) of the Bankruptcy Code shall require actual consent and failure to object to Confirmation of the Plan shall not be deemed to be consent to receive treatment by a Holder of a Claim other than as provided for under section 1129(a)(9) of the Bankruptcy Code.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

26

**10.** <u>**Acceptance of the Plan by at Least One Impaired Class**</u>
   <u>**(11. U.S.C.§ 1129(a)(10)).**</u>

49.    All Voting Classes are impaired and, as indicated in the Voting Declaration and this Confirmation Order, Classes 3 and 4 have voted to accept the Plan by the requisite number and amount of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code). Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**11.** <u>**Feasibility (11 U.S.C. § 1129(a)(11)).**</u>

50.    The Plan proposes a liquidation of all Estate Assets and the Distribution of Cash and/or iCap Trust Interests to Holders of Allowed Claims in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan, thereby satisfying section 1129(a)(11) of the Bankruptcy Code.

**12.** <u>**Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**</u>

51.    The Plan requires that all fees payable by the Debtors pursuant to section 1930 of title 28 of the United States Code have been paid or will be paid, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

**13.** <u>**Non-Applicability of Certain Bankruptcy Code Sections**</u>
   <u>**(11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**</u>

52.    The Debtors (a) do not provide or pay any "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code, (b) are not obligated to pay any domestic support obligations, (c) are not individuals, and (d) are not a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are, therefore, inapplicable to the Chapter 11 Cases.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

27

**14.** **Confirmation of the Plan Over Non-Acceptance of Impaired Classes. (11 U.S.C. § 1129(b)).**

53.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed because the evidence proffered or adduced at the Confirmation Hearing (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered, (b) utilizes reasonable and appropriate methodologies and assumptions, (c) has not been controverted by other evidence, and (d) establishes that the Plan does not discriminate unfairly, and is fair and equitable, with respect to Classes 5 and 6, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because (i) no Class of Claims or Equity Interests that is junior to the Claims and Equity Interests in Classes 5 and 6 will receive distributions or retain any property under the Plan on account of such junior Claim or Equity Interest and (ii) the Claims and Equity Interests in Classes 5 and 6 are "dissimilar" from the Claims and Equity Interests in all other Classes and the Plan does not provide any distributions to similarly situated Holders of Claims or Equity Interests.

**15.** **Only One Plan (11 U.S.C. § 1129(c)).**

54.     The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan (including previous versions thereof) is the only chapter 11 plan filed in the Chapter 11 Cases.

**16.** **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

55.     The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

28

**17.** **Small Business Case (11 U.S.C. § 1129(e)).**

56.     The Chapter 11 Cases are not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is not applicable.

**Q.** **Satisfaction of Confirmation Requirements.**

57.     Based upon the foregoing, the Plan Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, the Plan satisfies all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and the Plan should be confirmed.

**R.** **Substantive Consolidation.**

58.     All of the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, as set forth in the Plan, and such substantive consolidation is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and the Holders of Claims and Equity Interests. Although Creditors generally may not have treated all of the Debtors as one legal entity, there is substantial commingling of assets and liabilities among the Debtors. *See In re Bonham*, 229 F.3d 750, 764-65 (9th Cir. 2000). It is impossible to trace the flow of funds with respect to the Debtors' prepetition transactions since the majority of the proceeds received were commingled and distributed without regard to corporate formalities, which entanglement warrants substantive consolidation of all the Debtors. Moreover, the Chapter 11 Cases are unique—the perpetration of a fraudulent scheme by a common corporate enterprise, one that in the process did not keep accurate records of the multitude of intercompany transactions that have occurred, making an unscrambling of the enterprise's accounts impossible—but that has justified substantive consolidation in other cases. *See, e.g.*, *In re Bonham*, 229 F.3d at 764-65 (consolidating entities in Ponzi

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

29

scheme case); *In re DBSI, Inc.*, Case No. 08-12687, ECF No. 5924 (Bankr. D. Del. Jan. 19, 2010) (same); *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789, ECF No. 252 (Bankr. S.D.N.Y. June 10, 2009) (same). Substantive consolidation results in equitable treatment to all creditors and was not used to disadvantage a particular creditor group. Accordingly, the requirements of substantive consolidation are satisfied and the substantive consolidation of the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, in accordance with the Plan is hereby approved. *See In re Bonham*, 229 F.3d at 764-65; *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005).

**S.   Disclosure of Facts.**

59.    The Debtors have disclosed all material facts, to the extent applicable, regarding the Plan and the adoption, execution, and implementation of the other matters provided for under the Plan, including, without limitation, (a) the establishment of the iCap Trust and the execution and entry into the iCap Trust Agreement; (b) the identity of the iCap Trustees and their proposed compensation; (c) the adoption and making of the Ponzi Findings; (d) the method and manner of Distributions under the Plan; (e) the winding down of the Debtors' business and dissolution of the Debtors; (f) the exemption under section 1146(a) of the Bankruptcy Code; (g) the Releases, Exculpation, Injunctions, and preservation of Debtors' or Estates' Causes of Action and Avoidance Actions; and (h) the adoption, execution, and delivery of all contracts, leases, instruments, releases, and other agreements related to any of the foregoing.

**T.   iCap Trust Agreement.**

60.    The iCap Trust Agreement, and the iCap Trust to which it relates, are, individually and collectively, essential elements of the Plan, and entry into the iCap Trust Agreement is in the best interests of the Debtors, their Estates, and the Holders of Claims and Equity Interests and is necessary and appropriate for consummation of the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

30

23-30244-WLH11  Doc 1704-1  Filed 10/08/26  Entered 10/08/26 13:05:28  Pg 30 of 335

Plan. The Debtors have exercised sound business judgment in determining to enter into the iCap Trust Agreement and have provided adequate notice thereof. The terms of the iCap Trust Agreement set forth in the Plan Supplement have been negotiated in good faith and at arm's length among the Debtors and the Committee and are deemed to have been made in good faith and for legitimate business purposes. The terms and conditions of the iCap Trust Agreement set forth in the Plan Supplement are fair and reasonable and are approved.

**U.** **<u>Exit Financing</u>.**

61.    The terms and conditions of the Exit Financing (which term, for the avoidance of doubt, shall include the (1) Exit Loan and Security Agreement with Keith Holdings LLC and iCap DIP Finance Group LLC, which contemplates a commitment fee of $150,000.00 to be paid by the iCap Trust upon approval of the Exit Financing; (2) Exit Loan and Security Agreement with Redmond Funding Group, LLC; and (3) Exit Loan and Security Agreement with Tritalent Funding Group, LLC (collectively, the "<u>Exit Financing Documents</u>")) and all of the transaction documents governing the Exit Financing and the fees to be paid thereunder (a) are fair and reasonable, (b) reflect the Debtors' exercise of prudent judgment, (c) are supported by reasonably equivalent value and fair consideration, (c) are proposed in good faith, (d) are critical to the success and feasibility of the Plan, (e) are in the best interests of the Debtors, their Estates, and their Creditors, and (f) were negotiated in good faith, without fraud or collusion and at arm's length among the parties, without the intent to hinder, delay, or defraud any Creditor of the Debtors.

**V.** **<u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u>.**

62.    Without limiting or modifying the rights of the Debtors, each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

31

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

**W.   Implementation.**

63.    All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including, without limitation, the iCap Trust Agreement and any documents and agreements with respect to the Exit Financing) have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, and in accordance with the terms and conditions thereof, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been and are continuing to be negotiated in good faith, at arm's length, are fair and reasonable, and are approved. The Debtors are authorized, without any further notice to or action, order, or approval of the Bankruptcy Court to finalize and execute and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

**X.   Retention of Jurisdiction.**

64.    Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Plan, this Confirmation Order, and the Chapter 11 Cases, to the fullest extent permitted by law, as set forth in Article XIII of the Plan.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

32

23-01243-WLH11   Doc 1704-1   Filed 06/06/26   Entered 06/06/26 13:05:28   Pg 37 of 335

65. Given the facts and circumstances of the Chapter 11 Cases, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACTS AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, THAT:**

**A.** **Approval of the Plan**.

66. The Plan, attached hereto as **Exhibit A**, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order (whether or not such terms are expressly referenced or described herein). The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto), and the execution, delivery, and performance thereof, are authorized and approved as finalized, executed, and delivered. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document or exhibit are approved and confirmed in their entirety. The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

**B.** **Objections**.

67. To the extent that any objections (including any reservation of rights) to Confirmation have not been withdrawn, waived, or settled prior to entry of this

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

33

Confirmation Order, or otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections are denied and overruled on the merits and in their entirety.

## C. **Approval of Plan Modifications**.

68. The Modifications are approved in all respects pursuant to sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019(a). The Plan (as modified by this Confirmation Order) is deemed accepted by all Holders of Claims that voted to accept or were deemed to have accepted any prior iteration of the Plan, and no other or further disclosure or solicitation of votes is required. For the avoidance of doubt, all references to the Plan herein shall mean the Plan as modified by the Modifications.

## D. **Amendment of the Plan**.

69. Subject to the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors may alter, amend, or modify the Plan at any time prior to the Effective Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification complies with the requirements of this paragraph 69 and Article XII of the Plan, and does not materially and adversely change the treatment of the Claim of such Holder; *provided*, *however*, that any Holders of Claims that were deemed to have accepted the Plan because such Claims were unimpaired shall continue to be deemed to have accepted the Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

## E. **Plan Classification**.

70. The Plan's classification scheme is approved. The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder. The classifications set forth on the Ballots tendered

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

34

to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or the iCap Trust except for voting purposes.

**F.**    **Information Requests to Investors.**

71.    Upon request, Investors must, within twenty-one (21) calendar days of receipt of such request, respond to requests for information by the iCap Trustees with respect to Investor Claims. Failure to respond to a request for information may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion, subject to the following:

a.    Any request to an Investor for information pursuant to this paragraph shall include a clear statement that failure to provide the information may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion;

b.    The iCap Trustees may provide additional time to respond, if reasonably necessary and requested within the twenty-one (21) day period;

c.    An Investor shall have the right to seek Bankruptcy Court determination on the reasonableness of the information requested; *provided, however*, that in the event the court determines that the request is reasonable, the Investor's Claim shall be subject to reduction in an amount sufficient (as determined by the iCap

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

35

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

23-01243-WLH11   Doc 1704   Filed 10/08/25   Entered 10/08/25 13:05:28   Pg 40 of 335

Trustees) to recover attorneys fees and costs incurred by the iCap Trust in addressing the request for determination;

d.  If a timely determination is requested, the Investor shall not be subject to forfeiture of the Investor's Claim until a resolution by the Bankruptcy Court and a reasonable amount of time to comply with the determination of the Bankruptcy Court; and

e.  Any Personally Identifiable Information, as that term is defined in section 101(41A) of the Bankruptcy Code, provided by an Investor to the iCap Trust shall be safeguarded and held confidential in accordance with reasonable commercial standards.

**G.  Claims Paid by Third Parties.**

72.  Except as otherwise set forth herein or in the Plan, and specifically Article III.C.2.a of the Plan, governing payments received by an Investor on account of Individual Investor-Specific Claims, to the extent a Holder of a Claim receives a Distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or the iCap Trustees on account of such Claim, such Holder shall, within thirty (30) days of receipt thereof, repay or return the Distribution to the applicable Debtor or the iCap Trustees, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such excess Distribution shall result in the Holder owing the iCap Trust annualized interest at the Federal Judgment Rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the thirty-day grace period specified above until the amount is repaid. For the avoidance of doubt, only prior Distributions are required to be returned or paid to the iCap Trust, and no

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

36

forfeiture of an Investor's Claim shall result unless the Investor fails to comply with Article III.C.2.a of the Plan.

**H.** **Comprehensive Settlement of Claims and Controversies.**

73. Pursuant to sections 1123(a)(5), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor. The entry of this Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

74. The entry of this Confirmation Order constitutes Ponzi Findings that (i) beginning no later than the Ponzi Start Date through the conclusion of the prepetition time period analyzed by the CRO and his advisors (which, for the avoidance of doubt, ended prior to the retention of new counsel and financial advisors by the Debtors in July 2023), the iCap enterprise operated as a Ponzi scheme raising approximately $230 million from over 1,800 investors in the United States and abroad; and (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors. The Ponzi Findings are not binding on any other court or governmental or regulatory authority. The Ponzi Findings contained in this

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

37

23-01243-WLH11    Doc 1704-1    Filed 10/08/26    Entered 10/08/26 15:05:28    Pg 42 of 335

Confirmation Order constitute and satisfy the Ponzi finding condition set forth in the Exit Financing.

75.     Any Ponzi Finding by the Bankruptcy Court, including any finding of a Ponzi scheme or a Ponzi Start Date, shall not be preclusive nor binding on Umpqua Bank in any other court or governmental or regulatory authority, and neither the Debtors, the Committee, the iCap Trust, nor the iCap Trustees will seek to enforce the same against Umpqua Bank in this Bankruptcy Court. In addition, to the extent the Debtors are substantively consolidated as of the Effective Date, such substantive consolidation shall not affect or diminish any defenses or rights of Umpqua Bank with respect to any claims associated with the Debtors or any individual Debtor, including any deposit accounts held by a Debtor at Umpqua Bank. The Plan Proponents acknowledge and agree that: Umpqua Bank is not a Creditor or party to this proceeding, that Umpqua Bank has not had a full or fair opportunity to litigate any Ponzi Findings to a final order or judgment, and that no claims have been specifically asserted against Umpqua Bank, or otherwise adjudicated in any manner in relation to the Plan or through Confirmation of the Plan.

76.     In accordance with the terms of the *Stipulation Resolving Christopher Christensen's Objection to Confirmation of the Plan* [ECF No. 1266] (the "Christensen Stipulation"), any finding of fact or conclusion of law by the Bankruptcy Court or any appellate court in connection with the confirmation of the Plan relating to any finding of a Ponzi scheme, a Ponzi start date, or any fraud or misconduct by or on behalf of the Debtors or Christensen shall have no preclusive effect on Christensen and shall not be binding on Christensen in any future litigation or proceeding against Christensen in any tribunal. Neither the Debtors, the Committee, the iCap Trust, nor the iCap Trustees will pursue any action in the Bankruptcy Court against Christensen, nor seek to enforce any such findings against Christensen or contend that Christensen is bound by any such

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

38

findings; *provided* that, in the event Christensen files a motion or complaint in the Bankruptcy Court asserting a monetary claim or seeking affirmative recovery of funds from the Debtors' Estates or the iCap Trust based on any activity that occurred before the date of the Christensen Stipulation, the Debtors, the Committee, the iCap Trust, or the iCap Trustees (as applicable) will be permitted to respond to such action and seek to enforce the findings.

77.     In accordance with the *Stipulation Resolving Wilmington's Objection to Confirmation of the Plan* [ECF No. 1338], any finding of fact or conclusion of law by the Bankruptcy Court or any appellate court in connection with the confirmation of the Plan relating to any finding of a Ponzi scheme (inclusive of the Ponzi Finding), a Ponzi start date, any fraud or misconduct by or on behalf of the Debtors, or any element of any claim or cause of action asserted against Wilmington, shall have no preclusive effect on Wilmington and shall not be binding on Wilmington in any future litigation or proceeding against Wilmington in any tribunal (including the pending Wilmington Adversary Proceeding). Neither the Debtors, the Committee, the iCap Trust, nor the iCap Trustees will seek to enforce any such findings against Wilmington or contend that Wilmington is bound by any such findings. Any and all rights and defenses of Wilmington to defend the claims and causes of action against it are preserved.

78.     This comprehensive compromise and settlement, including the Ponzi Findings, is a critical component of the Plan and is designed to provide a resolution of the innumerable disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

**I.      Substantive Consolidation of Debtors.**

79.     On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

39

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

23-01243-WLH11   Doc 1704   Filed 10/08/25   Entered 10/08/25 13:05:28   Pg 44 of 335

sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

80.     Entry of this Confirmation Order shall constitute the approval, pursuant to sections 105(a), 541, 1123, and 1129 of the Bankruptcy Code, of the substantive consolidation of the Debtors in the manner set forth herein; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503-224-5560

40

23-01243-WLH11    Doc 1704-1    Filed 10/08/26    Entered 10/08/26 18:05:28    Pg 45 of 335

81. Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

82. Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided, however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien.

## J. Sources of Cash for Plan Distributions.

83. The Debtors shall fund Distributions under the Plan with: (a) Available Cash on hand; (b) the Exit Financing; and (c) all other proceeds, if any, generated from the liquidation of the iCap Trust Actions.

## K. Vesting of iCap Trust Assets.

84. On the Effective Date, the iCap Trust will be automatically vested with all the Debtors' and the Estates' respective rights, title, and interest in and to all iCap Trust Assets. Except as specifically provided in the Plan or this Confirmation Order, the iCap Trust Assets shall automatically vest in the iCap Trust free and clear of all Claims, Liens, or interests subject only to the iCap Trust Interests and the iCap Trust Expenses, as provided for in the iCap Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The iCap Trustees shall be the exclusive trustee of the iCap Trust Assets for

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

41

purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3) of the Bankruptcy Code regarding all iCap Trust Assets. The iCap Trust shall hold and distribute the iCap Trust Assets in accordance with the provisions of the Plan and the iCap Trust Agreement.

85.     Notwithstanding the foregoing or any other provision in the Plan, in the event that the iCap Trust receives any monies from the United States or any other Governmental Unit, obtained as forfeited assets (or otherwise) by the Governmental Unit for the benefit of the Investor victims of the Debtors' prepetition Ponzi scheme, all such monies shall not constitute Estate Assets or iCap Trust Assets, and the iCap Trustees are authorized to and shall distribute all such monies only to Investors who are Holders of Class A iCap Trust Interests or Class B iCap Trust Interests on account thereof, subject to the Plan and the iCap Trust Agreement; *provided* that the iCap Trustees and their agents will be reimbursed from such monies for reasonable costs and expenses incurred by said parties related to the iCap Trust's collection, administration, and distribution of such monies to the applicable Investors.

86.     Except as otherwise provided in the Plan or this Confirmation Order, the iCap Trust, as a successor in interest to the Debtors, the Estates, and the Contributing Claimants will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all iCap Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement. From and after the Effective Date, the iCap Trust, in accordance with section 1123(b)(3) of the Bankruptcy Code, shall serve as a representative of the Estates with respect to any and all iCap Trust Actions that were Estate Assets and shall retain and possess the right to institute,

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

42

23-01243-WLH11   Doc 1704-1   Filed 10/08/24   Entered 10/08/24 18:05:28   Pg 47 of 335

commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all iCap Trust Actions in any court or other tribunal.

87. No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Avoidance Action, Causes of Action, or Contributed Claims against them as any indication that the iCap Trust will not pursue any and all available Avoidance Actions, Causes of Action, or Contributed Claims against such Person. The Debtors and the iCap Trust expressly reserve all rights to prosecute any and all Avoidance Actions, Causes of Action, or Contributed Claims against any Person other than the Released Parties, in accordance with the Plan.

88. Notwithstanding anything to the contrary in the Plan, the transfer of the iCap Trust Assets in Article V of the Plan shall not be free and clear of the Supplemental DIP Claims, the Obligations (as defined in the Supplemental DIP Credit Agreement), or the liens, claims, and interests granted to the DIP Parties by the Debtors pursuant to the Supplemental DIP Credit Agreement. The iCap Trust assumes and remains bound by the Supplemental DIP Credit Agreement and all Obligations (as defined in the Supplemental DIP Credit Agreement) thereunder and the Bankruptcy Court's order approving the Supplemental DIP Credit Agreement. The iCap Trust Assets shall be encumbered by the liens, claims, obligations, and security interests granted to the DIP Parties under the Supplemental DIP Credit Agreement and the Bankruptcy Court's order approving the Supplemental DIP Credit Agreement, and the iCap Trust shall not distribute collateral (or proceeds thereof) of the DIP Parties until the Obligations (as defined in the Supplemental DIP Credit Agreement) under the Supplemental DIP Credit Agreement are satisfied in full.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

43

23-01243-WLH11    Doc 1704-1    Filed 06/26/26    Entered 06/26/25 18:05:28    Pg 48 of 335

**L.  Abandonment of Certain Estate Assets**.

89.  On the Effective Date, and without the need for further action, the following Estate Assets shall be abandoned by the Debtors and their Estates pursuant to section 554 of the Bankruptcy Code and shall not be considered iCap Trust Assets: (i) the real property commonly known as 715–775 Broadway, Tacoma, WA; and (ii) the Debtors' interests in Airlink Holdings, LLC's ("Holdings") and Airlink Markets, LLC ("Markets" and, together with Holdings, "Airlink") (which entities shall be dissolved by the Debtors in accordance with this Confirmation Order) including, without limitation, Holdings' membership interests in Markets (the "Airlink Membership Interests").

90.  Upon the Effective Date, any of the Debtors' remaining interests in Airlink including, without limitation, the Airlink Membership Interests, shall be abandoned. In addition, the Debtors and/or the iCap Trustees, as applicable, are authorized to shut down Airlink, notify all regulators, and file any applications or documents to effectuate such abandonment and shutdown.

**M.  Termination of Directors and Officers**.

91.  On the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided, however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

44

23-01243-WLH11  Doc 1704  Filed 06/06/26  Entered 06/06/26 13:05:28  Pg 49 of 335

**N.    Appointment of iCap Trustees.**

92.    The appointment of Lance Miller and Seth Freeman as the iCap Trustees to perform the functions of the iCap Trustees as set forth in Article V.D of the Plan and the iCap Trust Agreement is hereby approved. The iCap Trustees shall have the rights, powers, and obligations set forth in, and shall be entitled to reimbursement of their costs and expenses incurred in connection with exercising their functions under, the Plan in accordance with Article V.D of the Plan and the iCap Trust Agreement.

**O.    Corporate Action.**

93.    On the Effective Date, all matters under the Plan involving or requiring action of the directors, members, managers, or officers of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by this Confirmation Order and to have occurred and be in effect from and after the Effective Date, without any further action by the Bankruptcy Court or the directors, members, managers, or officers of the Debtors.

94.    Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (a) any existing director, manager, or officer of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (b) the iCap Trustees shall be deemed the manager, officer, and representative of the iCap Trust to exercise the rights, power, and authority of the iCap Trust under applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (c) all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. This Confirmation Order modifies the Debtors' constituent documents such that the provisions of the Plan can be effectuated. The Plan shall be administered by the iCap Trustees, and all actions

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

45

taken thereunder in the name of the iCap Trust shall be taken through the iCap Trustees. All corporate governance activities of the iCap Trust shall be exercised by the iCap Trustees in their discretion, subject to the terms of the Plan.

**P.** **Closing of the Chapter 11 Cases.**

95.     As soon as practicable after the iCap Trustees exhaust substantially all of the iCap Trust Assets by making the final Distributions under the Plan, the iCap Trustees shall, at the expense of the iCap Trust, (a) abandon, destroy, or otherwise dispose of any books and records of the Debtors that the iCap Trustees deem not necessary for the continued administration of the Plan or required to be retained under applicable law (as determined by the iCap Trustees in good faith), without the need for any order of the Bankruptcy Court, *provided, however*, that such right shall be limited in accordance with paragraph 97 of this Confirmation Order, (b) file a motion for entry of a final decree closing the Chapter 11 Cases that have not been already closed in accordance with the Bankruptcy Code and the Bankruptcy Rules and stating that the assets of the iCap Trust have been exhausted and final Distributions have been made under the Plan, (c) file the necessary paperwork in the respective jurisdictions to effectuate the dissolution of the Debtors in accordance with the laws of such jurisdiction, and (d) resign as the officer, director, and manager, as applicable, of the Debtors. Upon the Bankruptcy Court's entry of a Final Order granting the motion described in clause (b) of the preceding sentence, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith, and the remaining Chapter 11 Cases shall be closed on the date that the Bankruptcy Court has entered such Final Order.

96.     Notwithstanding the immediately preceding paragraph, if the iCap Trustees deem it appropriate, the iCap Trustees may seek authority from the Bankruptcy

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

46

Court to close any of the Chapter 11 Cases and dissolve or merge any of the Debtors prior to all final Distributions having been made under the Plan.

**Q.** **Books and Records.**

97.    On the Effective Date, the Debtors' books and records shall be transferred to the iCap Trustees. The iCap Trustees shall be free, in their discretion to abandon, destroy, or otherwise dispose of the books and records in compliance with applicable non-bankruptcy law, or any other order of the Bankruptcy Court, at any time on and after the Effective Date, without the need for any other or further order; *provided, however*, that neither the Debtors nor the iCap Trustees shall destroy or otherwise abandon any books, records, electronically stored information, or other documents without providing advance notice to the SEC (c/o William M. Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV), which shall have seven (7) days to object to any proposed destruction or abandonment, and with authorization from the Bankruptcy Court; *provided further* that, nothing in the Plan or this Confirmation Order shall affect the obligations of the Debtors, the iCap Trust, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

**R.** **Dissolution of the Debtors.**

98.    Upon the Distribution of all iCap Trust Assets, the Debtors shall be dissolved for all purposes by the iCap Trustees without the necessity for any other or further actions to be taken by or on behalf of any Debtors or payments to be made in connection therewith; *provided*, *however*, that, without the need of any further approval, the iCap Trustees in their discretion may execute and file documents and take all other actions as they deem appropriate relating to the dissolution of the Debtors under

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

47

applicable law, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of any certificates.

**S.    Cancellation of Indebtedness.**

99.    Except as otherwise provided in the Plan, on the Effective Date, except for the purpose of evidencing a right to Distribution under the Plan, any Notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtors, except assumed executory contracts and assumed unexpired leases, and/or such Notes or other instruments evidencing indebtedness or obligations of the Debtors that are unimpaired, reinstated, assumed, or amended and restated under the Plan, shall be cancelled and terminated and of no further force or effect.

**T.    Exit Financing.**

100.    The Debtors or the iCap Trust, as applicable, are hereby authorized to enter into, execute, deliver, file, record, and issue the Exit Financing Documents and to incur the obligations under the Exit Financing, including the granting of liens thereunder, the payment of all fees, expenses, indemnities, and other amounts provided for in each Exit Financing and the other instruments, agreements, and documents entered into in connection therewith, all of which are hereby approved. The Debtors or the iCap Trust, as applicable, are authorized and empowered to incur and to perform their obligations in accordance with, and subject to, the Exit Financing Documents and to perform all acts, and make, execute, and deliver all instruments and documents that may be required for the performance by the Debtors or the iCap Trust, as applicable, under the Exit Financing Documents and the creation and perfection of the liens described in and provided for by the Exit Financing Documents.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

48

23-01243-WLH11    Doc 1704    Filed 10/08/25    Entered 10/08/25 13:05:28    Pg 53 of 335

101.   Upon the Effective Date, the Exit Financing Documents shall constitute legal, valid, binding, and authorized debt obligations of each of the Debtors or the iCap Trust, as applicable, and the terms and provisions set forth in the Exit Financing Documents shall be enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the Exit Financing Documents shall be deemed to have been extended in good faith, for legitimate business purposes, are reasonable, and are for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder.

102.   On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable liens on, and security interests in, the applicable collateral granted thereunder in accordance with the terms of the Exit Financing Documents, (c) shall be deemed automatically perfected and non-avoidable on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Financing Documents, (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever, and (e) shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

**U.      Effectuating Documents; Further Transactions.**

103.   On and after the Effective Date, the iCap Trustees are authorized to, and may issue, execute, deliver, file, or record, such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

49

23-01243-WLH11   Doc 1704   Filed 10/08/26   Entered 10/08/26 13:05:28   Pg 54 of 335

104. Issuance of the iCap Trust Interests in accordance with the Plan is approved. The iCap Trust is authorized and empowered, without further approval of this Bankruptcy Court or any other Person, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the iCap Trust Interests in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificate relating thereto.

105. The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors or the iCap Trustees, as applicable, to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all document or transactions contemplated by the Plan or this Confirmation Order.

## V. Section 1146 Exemption.

106. In accordance with section 1146 of the Bankruptcy Code and Washington Administrative Code 458-61A-207, no stamp tax, conveyance fee, real estate, excise, or other transfer tax, mortgage tax, mortgage recording tax, Uniform Commercial Code filing or recording filing fee, or similar tax shall apply to (a) the sale or transfer of iCap Trust Assets to the iCap Trust; (b) the issuance, Distribution, transfer, or exchange of Notes or equity securities under the Plan; (c) the establishment of any mortgage, deed of trust, Lien, pledge, or other security interest, or the execution or delivery of any lease, sublease, deed, or other transfer instrument related to or in support of the Plan; or (d) the sale of any real estate by the iCap Trust. Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

50

**W.**    **Preservation of Rights of Action.**

107.   Except as otherwise provided in the Plan or this Confirmation Order (including in the Investor Claims Special Provisions), in accordance with section 1123(b) of the Bankruptcy Code, from and after the Effective Date, the iCap Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as iCap Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the iCap Trust Agreement. The iCap Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the iCap Trust Actions without notice to or approval from the Bankruptcy Court, subject to the iCap Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the iCap Trust may compromise and settle iCap Trust Actions, subject to the iCap Trust Agreement. For the avoidance of doubt, nothing in the Disclosure Statement or the Plan shall require the iCap Trust to commence or pursue litigation concerning any iCap Trust Action.

108.   The failure to specifically identify in the Disclosure Statement (including its exhibits and schedules) or the Plan any potential or existing Avoidance Actions or Causes of Action as an iCap Trust Action is not intended to and shall not limit the rights of the iCap Trust to pursue any such Avoidance Actions or Causes of Action. Unless a iCap Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including this Confirmation Order), the Debtors

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

51

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

expressly reserve such iCap Trust Action for later resolution by the iCap Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the iCap Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any iCap Trust Actions upon, after, or as a consequence of the confirmation of the Plan.

## X.   Releases, Exculpation, and Injunctions.

109.    The following release, exculpation, and injunction provisions set forth in Article X of the Plan are hereby approved and authorized in their entirety.

110.    **Releases and Related Matters. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed, to the fullest extent permitted under applicable law, to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors'**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

52

**businesses, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined by Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in Article X.G of the Plan shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.**

**111.   Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in Article X.G of the Plan; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.**

112.   For the avoidance of doubt, the Release does not apply to Christopher Christensen and/or Jim Christensen. The Released Parties shall not include any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors (the "Excluded Parties"). Excluded Parties shall not include any consultant retained or engaged by the Debtors during the Chapter 11 Cases except for Christopher Christensen and Jim Christensen.

113.   **Exculpation. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent**

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

53

permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any postpetition act or omission occurring from the Petition Date to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, Confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any other act taken or omission originating or occurring after the Petition Date but before the Effective Date in connection with or in contemplation of the restructuring, sale, or liquidation of the Debtors; *provided, however*, that nothing in Article X.H of the Plan shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order, including with respect to the Supplemental DIP Credit Agreement; and *provided, further*, that the exculpation provisions of Article X.H of the Plan shall not apply to acts or omissions constituting actual fraud, willful misconduct, gross negligence, or malpractice by such Exculpated Party as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting the Exculpated Parties from liability. This Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by Article X.H of the Plan. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the scope of the CRO's Related Parties are limited to only the Related Parties that participated in these Chapter 11 Cases.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

54

23-32457-dwh11   Doc 1704   Filed 08/26/25   Entered 08/26/25 13:05:28   Page 59 of 335

114.  **Injunction**. Except as otherwise expressly provided in the Plan, and except in connection with the enforcement of the Plan or any documents provided for or contemplated in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or the Estates that (i) have been released pursuant to Article X.G of the Plan or (ii) are subject to exculpation pursuant to Article X.H of the Plan, are permanently enjoined from and after the Effective Date from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due to the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Without limiting the foregoing, the automatic stay provided under section 362(a) of the Bankruptcy Code shall remain in effect until the Chapter 11 Cases are closed. Nothing contained in Article X.I of the Plan shall prohibit the Holder of a Filed proof of Claim from litigating its right to seek to

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

55

have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Equity Interest of any of the obligations of the Debtors or the iCap Trustees under the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in Article X.I of the Plan.

115. **Injunction Against Interference with the Plan**. Upon entry of this Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions of any kind against the iCap Trustees, the iCap Trust, or any of the iCap Trust Assets that interfere with the implementation or consummation of the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in Article X.J of the Plan.

**Y.** **Provisions Governing Distributions.**

116. The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety. The iCap Trustees shall make all Distributions under the Plan to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan and the iCap Trust Agreement, as applicable.

**Z.** **Administration of the iCap Trust.**

117. The iCap Trust Agreement, substantially in the form filed with the Plan Supplement, as such Plan Supplement may be amended in accordance with the Plan and this Confirmation Order is approved.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

56

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

## AA. Post-Confirmation Notices, Professional Compensation, and Bar Dates.

### 1. Notice of Entry of the Confirmation Order and Occurrence of the Effective Date.

118.    In accordance with Bankruptcy Rules 2002 and 3020(c), promptly after the occurrence of the Effective Date, the Debtors shall promptly cause notice of confirmation of the Plan and the occurrence of the Effective Date (the "Notice of Effective Date"), to be served by e-mail or United States first class mail to all parties served with the notice of the Confirmation Hearing; *provided*, that the Debtors are excused from distributing the Notice of Effective Date to those addresses from which one or more prior notices served in these Chapter 11 Cases were returned as undeliverable unless the Debtors are provided with updated addresses for such entities before the Effective Date. Mailing of the Notice of Effective Date in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

119.    The Notice of Effective Date will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

### 2. Final Administrative Claims Bar Date.

120.    The provisions governing the treatment of Allowed Administrative Expense Claims set forth in Article III.A.1 of the Plan are approved in their entirety. Administrative expense requests asserting Administrative Expense Claims arising from the Petition Date through and including the Effective Date, excluding (a) Claims of Professional Persons in the Chapter 11 Cases and (b) claims arising in the ordinary course of business, must be filed no later than thirty (30) days after the Notice of Effective Date is filed with the Bankruptcy Court or such later date as may be

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

57

established by order of the Bankruptcy Court (the "<u>Administrative Expense Claims Bar Date</u>"). Holders of Administrative Expense Claims who are required to file a request asserting Administrative Expense Claims and who do not file such request by the Administrative Expense Claims Bar Date, may not receive or be entitled to receive any payment or Distribution of property from the Debtors or their successors or assigns with respect to such Administrative Expense Claim in the Chapter 11 Cases. Notwithstanding the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no Governmental Unit shall be required to file a request for payment of any Administrative Expense Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed.

**3.  <u>Professional Fees</u>.**

121.  The provisions governing compensation or reimbursement of Professional Persons set forth in Article III.A.1.b of the Plan are approved in their entirety. All final requests for compensation or reimbursement of Professional Persons retained in these Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be filed and served on: (a) the iCap Trustees, (i) Pivot Management Group, LLC, 1230 Rosecrans Ave., Suite 530, Manhattan Beach, CA 90266 (Attn: Lance Miller (Lance.miller@pivotgrp.com)) and (ii) B. Riley Advisory Services, 19800 MacArthur Boulevard, Suite 820, Irvine, CA 92612 (Attn: Seth Freeman (SFreeman@brileyfin.com)); (b) counsel to the Debtors, O'Melveny & Myers LLP (i) 400 South Hope Street, Suite 1900, Los Angeles, CA 90071 (Attn: Julian Gurule (jgurule@omm.com)) and (ii) 1301 Avenue of the Americas, Suite 1700, New York, NY 10019 (Attn: Diana Perez (dperez@omm.com)); (c) counsel to the Unsecured Creditors' Committee, (i) Bush Kornfeld LLP, 601 Union Street, Suite 5000, Seattle, WA 98101 (Attn: Armand J. Kornfeld (jkornfeld@bskd.com) and Aimee S. Willig (awillig@bskd.com)) and (ii) K&L Gates, 925 Fourth Avenue, Suite 2900, Seattle, WA

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

58

98104 (Attn: John T. Bender (John.Bender@klgates.com)); (d) the Office of the United States Trustee, United States Department of Justice, 920 West Riverside Avenue, Room 593, Spokane, WA 99201 (Attn: Gary W. Dyer (Gary.W.Dyer@usdoj.gov)); and (e) such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, by no later than sixty (60) days after the Effective Date, unless otherwise agreed by the Debtors or the iCap Trustees, as applicable. Objections to any Claims of Professional Persons must be filed with the Bankruptcy Court and served on the iCap Trustees and the applicable Professional Person no later than fourteen (14) days after service of such applicable final fee application, unless otherwise ordered by the Bankruptcy Court. After Notice and Hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Claims shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in Cash.

### 4. **Bar Date for Rejection Damages Claims.**

122. Proofs of Claim asserted in connection with any executory contracts or unexpired leases rejected under the Plan must be filed so that they are actually received by BMC no later than thirty (30) days after service of the notice of Effective Date. Any proofs of Claim not filed and served within such time period shall not receive or be entitled to receive any payment or Distribution from the Debtors or the iCap Trust with respect to such Claim in the Chapter 11 Cases.

### 5. **Notice of Subsequent Pleadings.**

123. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the iCap Trustees (as set forth in the iCap Trust Agreement);

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

59

(b) the U.S. Trustee; and (c) any Person that files a renewed request for notice under Bankruptcy Rule 2002 after the Effective Date.

**BB.** **Payment of Statutory Fees.**

124. The Debtors shall timely make all payments required under the Plan. Without limiting the generality of the foregoing, the iCap Trust shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation until the Case Closing Date. After Confirmation, the iCap Trust shall serve on the U.S. Trustee quarterly a financial report for each quarter (or portion thereof) the Chapter 11 Cases remain open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**CC.** **Effectiveness of All Actions.**

125. All actions authorized to be taken pursuant to the Plan, including, without limitation, entry into the iCap Trust Agreement and the Exit Financing, shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or the iCap Trustees and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

126. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, the iCap Trust Agreement, and any

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**
60

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

other documents, instruments, securities, or agreements, and any amendments or modifications thereto, including with respect to the Exit Financing.

**DD.** <u>**Conflicts**</u>.

127. Except as set forth in the Plan, to the extent that any provision of the Plan, the Plan Supplement, or any other document (but excluding, for the avoidance of doubt, this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan (without reference to the Plan Supplement), the Plan (without reference to the Plan Supplement) shall govern and control; *provided*, *however*, that notwithstanding anything herein or the Plan to the contrary, in the event of a conflict between this Confirmation Order, on the one hand, and any of the Plan or the Plan Supplement on the other hand, this Confirmation Order shall govern and control in all respects.

**EE.** <u>**SEC Rights**</u>.

128. Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, and/or this Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor Person or non-Debtor entity in any forum.

**FF.** <u>**Reservation of Rights**</u>.

129. Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter this Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by any Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests before the Effective Date.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

61

**GG. Severability.**

130.  In the event the Bankruptcy Court determines, before Confirmation, that any provision in the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors; and (c) nonseverable and mutually dependent.

**HH. Non-Occurrence of Effective Date Conditions.**

131.  If the conditions necessary for the Effective Date are not met or duly waived as outlined in Articles IX.A and B of the Plan, upon notification filed by the Debtors with the Bankruptcy Court, the following shall occur: (i) this Confirmation Order will be vacated; (ii) no Distributions will be made; (iii) the Debtors, the Estates, the Committee, and all Creditors will revert to the status quo as of the day immediately preceding the Confirmation Hearing as if the Confirmation Order had not been entered; and (iv) all obligations of the Debtors and the Estates regarding Claims will remain unchanged. Nothing in the Plan will constitute a waiver or release of any Claims by or

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

62

against the Debtors, the Estates, or any other Person, nor will it prejudice the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

## II.    Retention of Jurisdiction.

132.   Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including the jurisdiction and power related to those matters set forth in Article XIII of the Plan.

## JJ.    Dissolution of Committee.

133.   Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (a) obligations arising under confidentiality agreements, which shall remain in full force and effect, (b) applications for allowance and payment of the fees of Professional Persons, and (c) any pending motions or other actions seeking enforcement or implementation of the provisions of the Plan).

## KK.    Final Order.

134.   This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon entry hereof.

## LL.    Enforceability of Plan.

135.   Pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code, the Plan and all Plan-related documents shall be, and hereby are, valid, binding, and enforceable. Upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on the

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

63

Debtors, all Creditors and Holders of Equity Interests, and all other Persons in accordance with their respective terms.

**MM.  Substantial Consummation.**

136.  "Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

**NN.  Immediate Binding Effect.**

137.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, and any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Persons and Entities that are party, or subject, to the settlements, compromises, releases, and injunctions described in the Plan, each Person and Entity acquiring property under the Plan, and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, with respect to the foregoing.

///End of Order///

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND MODIFIED SECOND AMENDED PLAN OF LIQUIDATION**

64

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

PRESENTED BY:

By:  /s/ Oren B. Haker
OREN B. HAKER (WSBA No. 48725)
BRITTA E. WARREN, WSBA No. 43329
BLACK HELTERLINE LLP

*Co-Counsel to Debtors and Debtors in Possession*

By:  /s/ Julian I. Gurule
JULIAN I. GURULE (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS, LLP

*Co-Counsel to Debtors and Debtors in Possession*

By:  /s/ Armand J. Kornfeld
ARMAND J. KORNFELD, WSBA No. 17214
AIMEE S. WILLIG, WSBA No. 22859
JASON WAX, WSBA No. 41944
BUSH KORNFELD LLP

*Counsel for the Official Committee of
Unsecured Creditors*

And

JOHN T. BENDER, WSBA No. 49658
K&L GATES LLP

*Special Litigation Counsel for the Official
Committee of Unsecured Creditors*

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER CONFIRMING SECOND MODIFIED SECOND
AMENDED PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

65

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Exhibit A**

HONORABLE WHITMAN L. HOLT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>iCap ENTERPRISES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Lead Case No. 23-01243-WLH11<br>Jointly Administered<br><br>**SECOND MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF iCap ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# INTRODUCTION[2]

iCap Enterprises, Inc. and its affiliated debtors propose this Plan, which resolves the outstanding Claims and Equity Interests that have been asserted against the Debtors. The court has approved the Disclosure Statement filed by the Debtors and it contains a detailed discussion of the Debtors' historical operations and assets; a summary of this Plan; and a discussion of risk factors and uncertainties associated with the Plan that may impact both consummation of the Plan as well as any Distributions projected to be made under the Plan.

YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY TO DETERMINE HOW THEY MAY IMPACT YOUR CLAIM BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Definitions**

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules, as applicable. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

1.    <u>Administrative Expense Claim</u>:  A Claim entitled to priority under Bankruptcy Code section 507(a)(2), including (a) claims incurred by the Debtors since the Petition Date and allowed by the Court of a type described in Bankruptcy Code section 503(b); (b) all Allowed Claims of Professional Persons pursuant to Bankruptcy Code sections 330 and 331 and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

2.    <u>Allowed Claim</u>:  Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the

---

[2] Capitalized terms in the Introduction have the meanings set forth in Article I below.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Chapter 11 Cases, or in the absence of such proof, as set forth in the Schedules filed in the Chapter 11 Cases, unless:

(i) with respect to a Scheduled Claim that is not otherwise the subject of a proof of Claim, such Claim has been (a) listed in the Schedules as disputed, contingent, or unliquidated or (b) objected to or is objected to after Confirmation, in which case such Claim shall be allowed only in such amount and such classification as is either agreed to by the iCap Trust or as otherwise authorized by Final Order of the Bankruptcy Court;

(ii) with respect to a Filed Claim, such Claim has been objected to or is objected to after Confirmation, in which case such claim shall be allowed only in such amount and such classification as is either agreed to by the iCap Trust or as otherwise authorized by Final Order of the Bankruptcy Court; or

(iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

3.    Available Cash: All Cash held by the Debtors on the Effective Date or by the iCap Trust on or after the Effective Date, after accounting for the Senior Claims Reserve and the Secured Claims Reserves. Available Cash shall be determined after payment, allocation, or reserve in accordance with the Plan for unpaid or unutilized amounts for iCap Trust Funding.

4.    Avoidance Actions:  Any and all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

5.    Ballot:  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan. Any Ballot that is executed by the Holder of an Allowed Claim but that does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6. <u>Bankruptcy Code or Code</u>: The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

7. <u>Bankruptcy Court or Court</u>: The United States Bankruptcy Court for the Eastern District of Washington at Yakima, before which the Chapter 11 Cases are pending, or if that Court ceases to exercise jurisdiction over the Chapter 11 Cases, the Court that does exercise jurisdiction.

8. <u>Bankruptcy Rules</u>: The Federal Rules of Bankruptcy Procedure and any applicable Local Rules of the Bankruptcy Court, as amended from time to time.

9. <u>Broker Settlement</u>: Any settlement between the iCap Trust and any "broker," registered investment advisor, salesperson, consultant, affiliated entity, or professional who is not an Excluded Party and was involved in any way in the marketing or sale of any products offered by any of the Debtors.

10. <u>Business Day</u>: Any day except Saturday, Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

11. <u>Case Closing Date</u>: The date on which all Chapter 11 Cases have been closed.

12. <u>Cash</u>: Legal tender of the United States of America or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

13. <u>Causes of Action</u>: Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise, including any and all claims that

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

constitute property of the Estates pursuant to Bankruptcy Code section 541. For the avoidance of doubt, "Causes of Action" include: (a) the right to object to Claims or Equity Interests; (b) any claim pursuant to Bankruptcy Code section 362; (c) any counterclaim or defense, including fraud, mistake, duress, usury, or recoupment; and (d) any Avoidance Actions.

14.     <u>Chapter 11 Cases</u>: The chapter 11 bankruptcy cases commenced by the Debtors, which are being jointly administered under the case caption In re iCap Enterprises, Inc., et al., Case No. 23-01243-WLH.

15.     <u>Claim</u>:  A claim as defined in Bankruptcy Code section 101(5).

16.     <u>Claim Objection Deadline</u>: The first Business Day that is on or before (a) the 180th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim, or (b) such later date as may be fixed in accordance with the terms of the Plan.

17.     <u>Claims Agent</u>: BMC Group, Inc., the Debtors' court-appointed claims, noticing, and balloting agent.

18.     <u>Claims Bar Date</u>: July 10, 2024, the deadline for filing proofs of Claim in the Chapter 11 Cases by non-Governmental Units, and March 27, 2024 for Governmental Units.

19.     <u>Class</u>:  A class of Claims or Equity Interests as defined in Article II of this Plan.

20.     <u>Class A iCap Trust Interests</u>: The iCap Trust Interests to be distributed to the Holders of Allowed Investor Class A Claims and Allowed General Unsecured Class A Claims under the Plan.

21.     <u>Class B iCap Trust Interests</u>: The iCap Trust Interests to be distributed to the Holders of Allowed Investor Class B Claims and Allowed General Unsecured Class B Claims under the Plan.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

22. **Collateral**: Any Estate asset that is subject to a Lien to secure the payment or performance of an Allowed Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable nonbankruptcy law.

23. **Collateral Source Recoveries**: Any recoveries from other sources (other than those pursuant to the Plan) that an Investor receives or has ever received on account of losses represented by its Investor Claim, including, without limitation, proceeds of insurance, litigation, or settlements.

24. **Confirmation**:  The entry of the Confirmation Order by the Bankruptcy Court.

25. **Confirmation Hearing**: The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a).

26. **Confirmation Order**: The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

27. **Contingent Claim**: Any Claim that is Scheduled or Filed as contingent.

28. **Contributed Claims**: All Causes of Action that a Creditor has against any Person that is not a Released Party and that are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, excluding any Individual Investor-Specific Claims.

29. **Contributing Claimants**: The Creditors that elect on their Ballots to contribute Contributed Claims to the iCap Trust.

30. **Contributing Claimants Enhancement Multiplier**: The Claim of a Contributing Claimant shall be multiplied by 1.10.

31. **Creditor**:  A "creditor" within the meaning of Bankruptcy Code section 101(10).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

32.     <u>CRO</u>: Lance Miller solely in his capacity as the Chief Restructuring Officer of the Debtors.

33.     <u>D&O Insurance</u>: All primary and excess insurance polices that provide coverage for the Debtors' former and current directors and officers, including any "tail" or "runoff" coverage for such policies.

34.     <u>Debtor</u> or <u>Debtors</u>:  Individually and collectively, iCap Enterprises, Inc., and each of the entities listed in footnote 1 on page 1 of this Plan.

35.     <u>DIP Parties</u>: The banks and other financial institutions party to the Supplemental DIP Credit Agreement from time to time, in their capacities as lenders thereunder.

36.     <u>Disclosure Statement</u>: That certain disclosure statement relating to the Plan, including all referenced exhibits and schedules, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as it subsequently may be amended, modified, or supplemented by the Plan Proponents.

37.     <u>Disputed Claim</u>:  With respect to a Scheduled Claim, a Claim that (a) was listed in a Debtor's Schedules as "disputed," and that has not subsequently been Allowed or (b) is the subject of a timely Filed objection that has not been resolved. With respect to a Filed Claim, a Claim that is the subject of a timely Filed objection that has not been resolved.

38.     <u>Distribution</u>: Any payment or transfer of consideration made pursuant to the Plan or the iCap Trust Agreement.

39.     <u>Distribution Agent</u>: (i) The persons or entities serving as the iCap Trustees, but solely in their separate capacity as distribution agent under the Plan with respect to Distributions to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Claims in Classes 1 and 2 on account of such Allowed Claims, or (ii) any party designated by the iCap Trustees to serve in such capacity.

40.     <u>Distribution Date</u>: The date on which the iCap Trustees determine, in their sole discretion, to make a Distribution.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union Street, Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

41.     Distribution Record Date: The Effective Date.

42.     Distribution Reserve: One or more reserves related to Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for iCap Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved iCap Trust Interests.

43.     Document Destruction Notice Parties: As defined in Article X.M of the Plan.

44.     Effective Date:  The first Business Day upon which all provisions, terms, and conditions to the Effective Date set forth in Article IX have been satisfied or waived pursuant to the terms set forth therein.

45.     Equity Interest:  An equity interest in the Debtor.

46.     Estate Assets: Any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including, but not limited to, all Avoidance Actions and Causes of Action as of the Effective Date, and any assets contributed to or recovered by or for the iCap Trust on or after the Effective Date, unless such interest is later disclaimed by the iCap Trustees after consultation with the iCap Trust Supervisory Board.

47.     Estates: The Estates created for the Debtors pursuant to Bankruptcy Code section 541(a).

48.     Excluded Debtors: VH 1121 14th LLC and VH Willows Townhomes, LLC.

49.     Excluded Parties: Any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

of the Debtors. For the avoidance of doubt, Excluded Parties shall not include any consultant retained or engaged by the Debtors during the Chapter 11 Cases except for Christopher Christensen and Jim Christensen.

50.　Exculpated Parties: The Debtors; the Unsecured Creditors Committee and its current and former members (in their capacities as such); the CRO; and the preceding's respective Related Parties, *provided*, *however*, that the Exculpated Parties shall not include any Excluded Party.

51.　Exit Financing: Financing comprised of amounts loaned pursuant to (a) the First Lien Exit Loan Facility and (b) the Tritalent Exit Loan Facility to fund the iCap Trust Expenses, plus such amounts as necessary to make payments required to made in connection with the Plan . The material terms of the Exit Financing will be included in the Plan Supplement.

52.　Federal Judgment Rate: The rate of interest in effect as of the Effective Date provided for under 28 U.S.C. § 1961 for postjudgment interest in federal court proceedings.

53.　File, Filed, or Filing: Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases, except with respect to proofs of Claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official claims register maintained by the Claims Agent.

54.　Final Order:　An order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay, or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay, or rehearing is pending or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay, or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal further or seek certiorari, further review, reargument, stay, or

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to Bankruptcy Code sections 502(j) or 1144, rules 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 and 9024 may be filed with respect to such order or judgment.

55. <u>First Lien Exit Loan Facility</u>: That certain senior term loan in the aggregate principal amount of five million and 00/100 Dollars ($5,000,000.00) provided by iCap DIP Finance Group LLC. The material terms of the First Lien Exit Loan Facility will be included in the Plan Supplement.

56. <u>General Unsecured Claim</u>: A Claim that is (a) based upon (i) a proof of Claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in the Debtors' Schedules as other than disputed, contingent, or unliquidated, and (b) not a Secured Claim, Administrative Expense Claim, Priority Tax Claim, Supplemental DIP Claim, Priority Claim, Subordinated Claim, or Investor Claim.

57. <u>General Unsecured Class A Claim</u>: A General Unsecured Claim equal to the Outstanding Principal Amount for each particular Holder of a General Unsecured Claim.

58. <u>General Unsecured Class B Claim</u>: A General Unsecured Claim comprised of any Claim for prepetition interest, which Claim shall be subordinated to Investor Class A Claims and General Unsecured Class A Claims under the Plan (but *pari passu* with Investor Class B Claims and senior in priority to Subordinated Claims). Such Claim shall equal the accrued prepetition interest at the applicable contract rate. The calculation and allowance of General Unsecured Class B Claims shall be determined in accordance with the procedures established in the reasonable judgment of the iCap Trustees.

59. <u>Governmental Unit</u>: A "governmental unit" as defined in Bankruptcy Code section 101(27).

60. <u>Holder</u>: A holder of a Claim or Equity Interest as the case may be.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

61.     iCap Trust: A trust established on the Effective Date for the benefit of the iCap Trust Beneficiaries in accordance with the terms of the Plan and the iCap Trust Agreement.

62.     iCap Trust Actions: Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates and any Causes of Action that are contributed to the iCap Trust as Contributed Claims, in each case as against any Person that is not a Released Party.

63.     iCap Trust Agreement: The agreement substantially in the form Filed in the Plan Supplement and reasonably acceptable to the Debtors and the Unsecured Creditors' Committee establishing and delineating the terms and conditions of the iCap Trust, including the rights and duties of the iCap Trustees and the iCap Trust Supervisory Board.

64.     iCap Trust Assets: Collectively, (a) the iCap Trust Actions; (b) the iCap Trust Funding; (c) 100% of the ownership interests in the Debtors (and all assets, proceeds, and distributions from such entities); (d) Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the iCap Trust after the Effective Date; and (e) other assets that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtors (after the Petition Date but before the Effective Date) or the iCap Trust (on or after the Effective Date) by any Person.

65.     iCap Trust Beneficiary: Each Holder of an iCap Trust Interest.

66.     iCap Trust Expenses: Any and all reasonable fees, costs, and expenses incurred by the iCap Trustees in managing and operating the iCap Trust not inconsistent with the Plan or the iCap Trust Agreement, including the maintenance or disposition of the iCap Trust Assets (including iCap Trustee fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the iCap Trustees, personnel-related expenses, and any taxes imposed on the iCap Trust, in respect of the iCap Trust Assets), and any other expenses incurred or otherwise payable in accordance with the iCap Trust Agreement.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

67.     iCap Trust Funding: Any Cash or reserves existing as of the Effective Date, and all Cash required (a) to make payments in accordance with the Plan to Administrative Expense Claims, Priority Tax Claims, Priority Claims, and Secured Claims; or (b) to fund any other unfunded post-Confirmation reserve requirements of the iCap Trust in connection with the Plan, any agreements, or any Bankruptcy Court orders.

68.     iCap Trust Interests: Collectively, the Class A iCap Trust Interests and the Class B iCap Trust Interests. All iCap Trust Interests will be evidenced by entry into the Distribution Agent's books and records, without a separate certificate of interest.

69.     iCap Trust Interests Waterfall: On each Distribution Date, the iCap Trust shall distribute its Available Cash as follows:

a.     The iCap Trust shall distribute Available Cash to each Holder of a Class A iCap Trust Interest on a Pro Rata basis (based on such Holder's number of Class A iCap Trust Interests), after accounting for any Disputed Claims, until all Allowed Investor Class A Claims and Allowed General Unsecured Class A Claims have been paid in full without post-petition or post-Confirmation interest;

b.     Thereafter, the iCap Trust shall distribute Available Cash to each Holder of a Class B iCap Trust Interest on a Pro Rata basis (based on such Holder's number of Class B iCap Trust Interests), after accounting for any Disputed Claims, until all Allowed Investor Class B Claims and Allowed General Unsecured Class B Claims have been paid in full without post-petition or post-Confirmation interest.

70.     iCap Trust Supervisory Board: A three-person supervisory board for the iCap Trust, whose initial members shall be Lilian Tan, Thomas Temple, and Jay Kornfeld of the firm Bush Kornfeld LLP. In the event of a vacancy or resignation of a board member, such board seat will remain vacant.

71.     iCap Trustees: Lance Miller and Seth Freeman; and any successor appointed pursuant to the terms of the iCap Trust Agreement.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

72. <u>Insider</u>: Any "insider," as defined in Bankruptcy Code section 101(31), and with respect to a limited liability company, any director, officer, person in control, or relative of any of the foregoing.

73. <u>Intercompany Claim</u>: A Claim of one Debtor against another Debtor.

74. <u>Intercompany Lien</u>: Any lien securing or purporting to secure an Intercompany Claim.

75. <u>Investor</u>: A Person or entity that purchased an investment product (including any debentures, promissory notes, or other debt securities issued by the Debtors) or made an investment offered by any Debtor pursuant to an offering memorandum or private placement memorandum that was issued by a Debtor.

76. <u>Investor Avoidance Settlement</u>: Any settlement between the iCap Trust and one or more Investors related to a potential or actual Avoidance Action against the Investors.

77. <u>Investor Claims</u>: Any and all Claims of an Investor against any Debtor, which shall be composed of (i) an Investor Class A Claim and (ii) an Investor Class B Claim.

78. <u>Investor Claims Special Provisions</u>: As defined in Article III.C.1 of the Plan.

79. <u>Investor Class A Claim</u>: An Investor Claim for restitution of an Investor to be treated *pari passu* with General Unsecured Class A Claims. Such Claim shall equal the total Outstanding Principal Amount for each particular Investor. For avoidance of doubt, an Allowed Investor Class A Claim shall be reduced dollar for dollar on account of any Collateral Source Recoveries the Investor receives on account of the losses represented by its Investor Claim, and if such Allowed Investor Class A Claim is reduced to zero, the Investor's Allowed Investor Class B Claim will be reduced dollar for dollar on account of any additional Collateral Source Recoveries that may be received by the Investor.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

80.     Investor Class B Claim: An Investor Claim comprised of any Claim by the Investor for prepetition interest in connection with such Investor's principal investment in a Debtor, which Claim shall be subordinated to Investor Class A Claims and General Unsecured Class A Claims under the Plan (but *pari passu* with General Unsecured Class B Claims and senior in priority to Subordinated Claims). Such Claim shall equal the accrued interest from the time of the Investor's principal investment to the Petition Date at a rate of seven percent (7%), compounded annually. The calculation and allowance of Investor Class B Claims shall be determined in accordance with the procedures established in the reasonable judgment of the iCap Trustees.

81.     Lien: Has the meaning ascribed in Bankruptcy Code section 101(37), including any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, deed of trust, assignment of rents, assignment or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

82.     Net Prepetition Investor Recovery: With respect to a specific Investor, (a) the total Cash value remitted to the Investor from the Ponzi Start Date until the Petition Date (whether the payment was considered a return on the investment, interest, a referral fee, or a repayment of principal), minus (b) the total Cash value invested prepetition as principal by the Investor, (provided that the value of (a) is greater than the value of (b)), capped by the amount of total Cash value remitted to the Investor.

83.     Notes: Any and all investments, interests, or other rights with respect to any of the Debtors that were referred to, marketed, or sold as "notes," "loans," or "mortgages."

84.     Notice and Hearing:  Proceedings as contemplated under Bankruptcy Code section 102(1).

85.     Outstanding Principal Amount: An amount equal to the aggregate principal balance outstanding as of the Petition Date, excluding any purportedly accrued prepetition interest.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

86.	Person: Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

87.	Petition Date:  September 29, 2023, the date upon which the lead Debtor commenced its Chapter 11 Cases.

88.	Plan:  This Joint Plan of Liquidation, all exhibits to the Plan, and the Plan Supplement, as such may be amended from time to time in the reasonable discretion of the Plan Proponents.

89.	Plan Proponents: The Debtors and the Unsecured Creditors' Committee.

90.	Plan Supplement: The supplementary documents regarding the implementation and effectuation of the Plan, to be filed on or before the date that is eleven (11) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented from time to time prior to the Confirmation Hearing in the reasonable discretion of the Plan Proponents.

91.	Ponzi Finding: A finding by the Bankruptcy Court that the Debtors' prepetition operations constituted a Ponzi scheme, as set forth more fully in Article III.C of the Plan.

92.	Ponzi Start Date: No later than October 2018.

93.	Priority Claim: A Claim entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Expense Claim or a Priority Tax Claim.

94.	Priority Tax Claims:  Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of Bankruptcy Code section 507(a)(8), and statutory interest accruing thereon prior to the Petition Date.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

95. <u>Professional Person</u>:  A person, including a trustee (if one is appointed), retained or to be compensated pursuant to Bankruptcy Code sections 326, 327, 328, 330, and/or 1103.

96. <u>Pro Rata</u>: Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim or iCap Trust Interest to (b) the amount or number of that Allowed Claim or iCap Trust Interest, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included or all applicable iCap Trust Interests to (y) as applicable, the amount of all Allowed Claims in that Class or the number of applicable iCap Trust Interests.

97. <u>Related Parties</u>: Collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professional Persons, representatives, and successors of the referenced Person; *provided, however*, that the Debtors' Related Parties will be limited to the following Persons: the directors, officers, attorneys, accountants, consultants, professionals, and employees who (a) are employed by the Debtors on the Effective Date or (b) whose employment was approved by the Bankruptcy Court.

98. <u>Released Parties</u>: The Debtors; the Unsecured Creditors' Committee and its current and former members (in their capacities as such); the CRO; the DIP Parties; and the preceding's respective Related Parties, *provided*, *however*, that the Released Parties shall not include any Excluded Party.

99. <u>Releasing Parties</u>: The Debtors; the Estates; and any Person exercising or seeking to exercise any rights of the Estates (but solely in that capacity), including the Unsecured Creditors' Committee (but not its current or former individual members), the iCap Trustees, and any other successor to the Debtors or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

100. <u>Scheduled</u>: As set forth in the Schedules.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

101.    Schedules:  The schedules of assets, liabilities, and executory contracts and the statement of financial affairs filed on behalf of each Debtor pursuant to Bankruptcy Code section 521, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

102.    SEC:  The United States Securities and Exchange Commission.

103.    Secured Claim:  A Claim that is a secured Claim against a Debtor determined in accordance with Bankruptcy Code section 506(a).

104.    Securities Act: The Securities Act of 1933, as amended.

105.    Secured Claims Reserves: Individual reserves of Cash in respect of each Holder of a Secured Claim (including such Secured Claims that are Contingent Claims, Disputed Claims, or Unliquidated Claims), comprised of the proceeds of the Collateral securing such Secured Claim, to be established by the iCap Trustees on or as soon as reasonably practicable after the Effective Date, out of which the Distribution Agent will make Distributions to the Holders of Secured Claims (if and to the extent Allowed) from the applicable reserve for such Holder in accordance with the Plan.

106.    Senior Claims Reserve: One or more reserves of Cash in respect of, as applicable, Administrative Expense Claims, Priority Tax Claims, and Priority Claims (including such Claims that are Contingent Claims, Disputed Claims, or Unliquidated Claims), in amounts to be established by the iCap Trustees on or as soon as reasonably practicable after the Effective Date, out of which (i) the Distribution Agent will make Distributions to the Holders of the foregoing Claims (if and to the extent Allowed) in accordance with the Plan, and (ii) the iCap Trustees and their agents, including the Distribution Agent (if not the iCap Trustees), will be reimbursed from such monies for reasonable costs and expenses incurred by said parties (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims, or Unliquidated Claims, and administer and make Distributions out of the Senior Claims Reserve and the Secured Claims Reserves).

107.    Subordinated Claim: Any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Creditor holding such Claim, but not any Investor Class B Claims.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

108.   Supplemental DIP Claim: Any Claim arising under or relating to the Supplemental DIP Credit Agreement.

109.   Supplemental DIP Credit Agreement: That certain *Debtor-In-Possession Loan and Security Agreement* dated as of July 18, 2024, by and among, the Debtors, Socotra REIT I, LLC; WE Alliance Secured Income Fund, LLC; Jason Yelowitz, in his capacity as trustee of the Jason Yelowitz 2006 Trust Dated March 31, 2006; and Keith Holdings, LLC; as the same may have been further amended, modified, ratified, extended, renewed, restated, or replaced, and any other agreements and documents related thereto.

110.   Tritalent:  Tritalent Funding Group and Halton Co.

111.   Tritalent Exit Loan Facility:  That certain junior term loan in the aggregate principal amount of five hundred thousand and 00/100 Dollars ($500,000.00) provided by Tritalent. The material terms of the Tritalent Exit Loan Facility will be included in the Plan Supplement.

112.   Unliquidated Claim: Any Claim that is Scheduled as unliquidated or Filed in an unliquidated amount.

113.   Unsecured Creditors' Committee: The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102.

114.   Voting Deadline: The deadline by which all Ballots to accept or reject the Plan must be received in order to be counted.

**B.     Rules of Interpretation**

The rules of construction set forth in Bankruptcy Code section 102 shall apply to the Plan. For purposes of the Plan and unless otherwise specified herein: (i) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (ii) each pronoun stated in the masculine, feminine, or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (iii) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (iv) the words "include" and

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

"including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (v) all references to articles or Articles are references to the Articles hereof; (vi) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (vii) any reference to a Person as the Holder of a Claim or Equity Interest includes that Person's successors and assigns; (viii) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, restated, modified, or supplemented; (ix) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (x) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; and (xii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims against the Debtors are classified as set forth below. A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

Class 1: Priority Claims
Class 2: Secured Claims
Class 3: Investor Claims
Class 4: General Unsecured Claims
Class 5: Subordinated Claims
Class 6: Equity Interests

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# ARTICLE III.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Equity Interests shall be as follows:

## A.    Unclassified Claims

1.    <u>Administrative Expense Claims</u>. Administrative Expense Claims incurred in the ordinary course of the Debtors' business following the Petition Date (including fees owed to the CRO and/or either of Paladin Management Group, LLC and Pivot Management Group, LLC) shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations (as such terms were modified by any orders approving such agreements), or on such other terms as the Holder of such Claim and the Debtors (prior to the Effective Date) or the iCap Trustees (from the Effective Date forward) shall agree to in writing. All other Administrative Expense Claims, including Claims of Professional Persons, shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim or on such other terms as the Holder of such Claim and the Debtors (prior to the Effective Date) or the iCap Trustees (from the Effective Date forward) shall agree to in writing. Claims arising under 28 U.S.C. § 1930 shall be paid as required by that statute.

   a.   <u>Administrative Expense Claims Bar Date</u>. Administrative expense requests asserting Administrative Expense Claims arising from the Petition Date through and including the Effective Date, excluding (a) Claims of Professional Persons in the Chapter 11 Cases and (b) claims arising in the ordinary course of business, must be filed no later than 30 days after the notice of the Effective Date is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.

   b.   <u>Final Fee Applications</u>. All final requests for compensation or reimbursement of Professional Persons retained in these Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be filed and served on: (a) the iCap Trustees, (i) Pivot Management Group, LLC, 1230 Rosecrans Ave.,

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Suite 530, Manhattan Beach, CA 90266 (Attn: Lance Miller (Lance.miller@pivotgrp.com)) and (ii) B. Riley Advisory Services, 19800 MacArthur Boulevard, Suite 820, Irvine, CA 92612 (Attn: Seth Freeman (SFreeman@brileyfin.com)); (b) counsel to the Debtors, O'Melveny & Myers LLP (i) 400 South Hope Street, Suite 1900, Los Angeles, CA 90071 (Attn: Julian Gurule (jgurule@omm.com)) and (ii) 1301 Avenue of the Americas, Suite 1700, New York, NY 10019 (Attn: Diana Perez (dperez@omm.com)); (c) counsel to the Unsecured Creditors' Committee, (i) Bush Kornfeld LLP, 601 Union Street, Suite 5000, Seattle, WA 98101 (Attn: Armand J. Kornfeld (jkornfeld@bskd.com) and Aimee S. Willig (awillig@bskd.com)) and (ii) Corr Cronin LLP, 1015 Second Ave., Floor 10, Seattle, WA 98104 (Attn: John T. Bender (jbender@corrcronin.com)); (d) the Office of the United States Trustee, United States Department of Justice, 920 West Riverside Avenue, Room 593, Spokane, WA 99201 (Attn: Gary W. Dyer (Gary.W.Dyer@usdoj.gov)); and (e) such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, by no later than sixty (60) days after the Effective Date, unless otherwise agreed by the Debtors or the iCap Trustees, as applicable. Objections to any Claims of Professional Fees must be filed with the Bankruptcy Court and served on the iCap Trustees and the applicable Professional Person no later than fourteen (14) days after service of such applicable final fee application, unless otherwise ordered by the Bankruptcy Court. After Notice and Hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Claims shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in Cash.

2.  Priority Tax Claims. Allowed Priority Tax Claims shall be paid, at the iCap Trust's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty);

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the iCap Trust shall have agreed upon in writing.

3.     <u>Supplemental DIP Claims</u>. On the Effective Date, (a) all obligations of the Debtors under the Supplemental DIP Credit Agreement shall be assumed by the iCap Trust; (b) all Liens and security interests granted to secure the Debtors' obligations under the Supplemental DIP Credit Agreement shall remain in place and shall be otherwise subject to the terms and conditions of the Supplemental DIP Credit Agreement and any related subordination terms; and (c) the legal, equitable, and contractual rights of the parties under the Supplemental DIP Credit Agreement shall be unaltered by the Plan.

## B.     Classified Claims and Interests

### 1.     Class 1: Priority Claims

Class 1 consists of Priority Claims. Class 1 is unimpaired and deemed to accept the Plan.

On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Priority Claim becomes an Allowed Priority Claim, the Holder of such Allowed Priority Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, either (a) Cash from the iCap Trust equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing.

### 2.     Class 2: Secured Claims

Class 2 consists of the following sub-classes of Secured Claims:

a.  **Class 2A: UW 17th Ave, LLC Secured Claims**
    (i)   Class 2A.1 Studio 19 Architects Secured Claim
    (ii)  Class 2A.2 UW 17th Davido Consulting Group
    (iii) Class 2A.3 Dhillon Secured Claim

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

b. **Class 2B: VH 1121 14th LLC Secured Claims**
   (i) Class 2B.1 14th Wilmington Savings Fund Secured Claim

c. **Class 2C: VH Willows Townhomes, LLC Secured Claims**
   (i) Class 2C.1 Willows Wilmington Savings Secured Claim

d. **Class 2D: VH Senior Care, LLC Secured Claims**
   (i) Class 2D.1 Redmond Funding Group Secured Claim

e. **Class 2E: 725 Broadway, LLC Secured Claims**
   (i)   Class 2E.1 Christopher Jones Architects Secured Claim
   (ii)  Class 2E.2 Broadway Davido Consulting Secured Claim
   (iii) Class 2E.3 Malsam Tsang Engineering Secured Claim
   (iv)  Class 2E.4 Broadway Davido Consulting Secured Claim
   (v)   Class 2E.5 Broadway Oak Hills Construction LLC

f. **Class 2F: Senza Kenmore, LLC Secured Claims**
   (i)  Class 2F.1 Van Hoof Construction Secured Claim
   (ii) Class 2F.2 T.S. Dance Construction Secured Claim

g. **Class 2G: iCap Campbell Way, LLC Secured Claims**
   (i)  Class 2G.1 Campbell Davido Consulting Secured Claim
   (ii) Class 2G.2 Deed of Trust of Pacific NW Opportunity & Income Fund, LLC

h. **Class 2H: VH Pioneer Village, LLC Secured Claims**
   (i) Class 2H.1 Tritalent Funding Group Secured Claim

i. **Class 2I: CS2 Real Estate Development Secured Claims**
   (i)   Class 2I.1 BRMK Management Secured Claim
   (ii)  Class 2I.2 United Rentals Secured Claim
   (iii) Class 2I.3 Sunbelt Rentals Secured Claim
   (iv)  Class 2I.4 CS2 Oak Hills Construction Secured Claim
   (v)   Class 2I.5 Rexel USA, Inc. dba Platt Electric Supply Claim

j. **Class 2J: Secured Real Property Tax Claims**

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Class 2 is unimpaired and deemed to accept the Plan.

Except as explicitly provided for in the Plan, the legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan, and, notwithstanding substantive consolidation of the Debtors and vesting of the iCap Trust Assets in the iCap Trust, the Liens of the Holders of Allowed Secured Claims will continue to attach to their respective Collateral, *provided* that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Secured Claim becomes an Allowed Secured Claim, the Holder of such Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Secured Claim, at the option of the Debtors or the iCap Trust, either (a) the net proceeds from the sale of the Collateral securing such Allowed Secured Claim; *provided, however*, that if the sale of the Collateral securing an Allowed Secured Claim closes after the occurrence of the Effective Date, the payment of the net proceeds shall be delivered to the Holder of the Allowed Secured Claim within thirty (30) calendar days of the closing of such sale, (b) the surrender of the Collateral securing such Allowed Secured Claim, or (c) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing. Pending allowance of a Secured Claim, the Debtors or the iCap Trust, as applicable, will segregate the proceeds from the sale of the Collateral securing such Secured Claim in the individual Secured Claims Reserve for the Holder of such Claim.

**3.    Class 3: Investor Claims**

Class 3 consists of Investor Claims, as more particularly described below. Class 3 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Investor Claims will receive (i) on the later of the Effective Date and thirty (30) calendar days following the date on which such Investor Claim becomes an Allowed Investor Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed Investor Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed Investor Class B Claims held by the applicable Investor (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

such iCap Trust Interest), and (ii) the other consideration provided for in the Investor Claims Special Provisions set forth in Article III.C.1 of the Plan. All Distributions of Cash on account of the iCap Trust Interests will be made by the iCap Trust in accordance with the iCap Trust Interests Waterfall.

For clarity, the practical effect of the above is the following:

Class A iCap Trust Interests, which consist of Investors' principal balance owed on the Petition Date, will be paid through Distributions by the iCap Trust until fully satisfied. Once all of the Class A iCap Trust Interests are paid in full, then Distributions will be made to Class B iCap Trust Interests, which consist of Investors' accrued interest due as of the Petition Date.

As an example, if Investor X invested $100,000 one year before the Petition Date with the Debtors, under the Plan, Investor X will receive (i) a $100,000 Investor Class A Claim (*i.e.*, the original principal investment of $100,000); and (ii) a $7,000 Investor Class B Claim (representing 7% per annum interest on the $100,000 investment).

The treatment of any and all Investor Claims under the Plan is not intended to and will not reduce, impair, satisfy, limit, or otherwise affect any rights that any Investor may have against any Person that is not a Released Party (including those rights that may be included in the Contributed Claims and contributed to the iCap Trust by making the Ballot election described below).

Each Holder of an Investor Claim may agree by electing on its Ballot to contribute its Contributed Claims to the iCap Trust. By electing such option on its Ballot the Investor agrees that, subject to the occurrence of the Effective Date and the formation of the iCap Trust, it will be deemed, without further action, (i) to have contributed its Contributed Claims to the iCap Trust and (ii) to have agreed to execute any documents reasonably requested to memorialize its contribution. The relative share of iCap Trust recoveries for any electing Investor will be enhanced by having the amounts that otherwise would be its Allowed Investor Class A Claim and its Allowed Investor Class B Claim each increased by the Contributing Claimants' Enhancement Multiplier – *i.e.*, **10%**.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**4. Class 4: General Unsecured Claims**

Class 4 consists of General Unsecured Claims, as more particularly described below. Class 4 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed General Unsecured Claims will receive on the later of the Effective Date and thirty (30) calendar days following the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed General Unsecured Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed General Unsecured Class B Claims held by the applicable Holder (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of such iCap Trust Interest). All Distributions of Cash on account of the iCap Trust Interests will be made by the iCap Trust in accordance with the iCap Trust Interests Waterfall.

**5. Class 5: Subordinated Claims**

Class 5 consists of all Subordinated Claims. Class 5 is impaired under the Plan and deemed to reject the Plan.

The Holders of Allowed Subordinated Claims will retain a residual right to receive Available Cash that remains in the iCap Trust after the final administration of all iCap Trust Assets, and the complete satisfaction of all senior payment rights within the iCap Trust Interests Waterfall, including satisfaction of all Investor Class B Claims and General Unsecured Class B Claims. The Plan Proponents have decided not to solicit the votes of the Holders of any Subordinated Claims, and such Holders are therefore deemed to have rejected the Plan.

**6. Class 6: Equity Interests**

Class 6 consists of all Equity Interests and purported Equity Interests in the Debtors. Class 6 is impaired under the Plan and deemed to reject the Plan.

On and after the Effective Date, (a) Holders of Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property under the

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan on account of such Equity Interests and (b) the Equity Interests shall be deemed to be held by the iCap Trust under applicable non-bankruptcy law and the iCap Trustees shall be authorized to exercise all of the rights and powers of a sole member as provided by the Plan.

Any purported Equity Interests or Liens on Equity Interests held by an Investor in any Debtor will be considered void, cancelled, and of no further force and effect. These Claims will be regarded as Class 3 Investor Claims in accordance with the Plan, irrespective of any labels used by the Debtors and/or Investors prior to the Petition Date.

## C. Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against any Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims, Intercompany Liens, and Causes of Action against any Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

The Plan Proponents will also seek findings in the Confirmation Order (the "**Ponzi Findings**") that (i) beginning no later than the Ponzi Start Date through the conclusion of the prepetition time period analyzed by the CRO and his advisors (which, for the avoidance of doubt, ended prior to the retention of new counsel and financial advisors by the Debtors in July 2023), the iCap enterprise operated as a Ponzi scheme raising approximately $230 million from over 1,800 investors in the United States and abroad; and (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors. The Plan Proponents shall not seek Ponzi Findings that would be binding on any other court or governmental or regulatory authority.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 27

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of the innumerable disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

1. **Special Provisions Relating to Investor Claims.** The following provisions apply to Investor Claims (the "**Investor Claims Special Provisions**"):

a. The Holders of Allowed Investor Claims will receive the treatment provided for such Holders under the Plan. For the avoidance of doubt, any and all purported Equity Interests of an Investor in any Debtor shall be deemed and treated as Investor Claims of the Investor pursuant to the Plan, regardless of the prepetition designations used by the Debtors and/or Investors.

b. The iCap Trust will be created to pursue the iCap Trust Actions for the benefit of all the iCap Trust Beneficiaries; to establish and hold the Distribution Reserves; and to receive and distribute to the holders of iCap Trust Interests the net proceeds of the monetization or other disposition of the iCap Trust Assets in accordance with the Plan and the iCap Trust Agreement.

c. The iCap Trustees shall have discretion, subject to the iCap Trust Agreement, to determine whether and how to make demand upon, or sue, Investors liable for a Net Prepetition Investor Recovery, including, but not limited to, the discretion not to bring suit or make a demand because of the Investor's financial hardship. That discretion shall be exercised in accordance with guidelines developed by the iCap Trustees in consultation with the iCap Trust Supervisory Board subject to the iCap Trust Agreement. No party should assume that they will be entitled to the exercise of such discretion.

d. In the event that an Investor Claim has been transferred or assigned, all Collateral Source Recoveries that were received by a prior Holder of the Claim shall be included for purposes of determining the Allowed amount of an Investor Claim as if such transferee or assignee had received such distribution or recovery.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

e.  Upon request, Investors must, within twenty-one (21) calendar days of receipt of such request, respond to requests for information by the iCap Trustees with respect to Investor Claims. Failure to respond to a request for information may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion.

f.  At the end of each quarter, beginning with the first full quarter after the iCap Trust is established, the iCap Trustees will provide a report to the Investors summarizing the recovery actions the iCap Trust has engaged in during the quarter and detailing whether the iCap Trust is abandoning any specific Avoidance Actions or Causes of Action that it has determined it will not pursue, thus allowing Investors to pursue such actions, at their option.

**2.  Special Provisions Relating to Individual Investor-Specific Claims.** Investors retain the right to independently pursue any claims against third parties where they have independent legal standing, and where such claims are **not** owned by the iCap Trust under this Plan, specifically claims owned by the iCap Trust and defined in the Plan as Causes of Action and Avoidance Actions ("**Individual Investor-Specific Claims**"). Examples of such claims include, but are not limited to: loss of lien or lien priority; claims against the investor's own professional advisors; claims against retirement service providers; and other claims arising from an investor's specific situation. For the avoidance of doubt, Individual Investor-Specific Claims do not encompass claims shared by all Investors or claims to recover commissions or referral fees paid by the Debtors to third parties in relation to an Investor's investment with the Debtors. The Plan will not interfere with an Investor's right to pursue these Individual Investor-Specific Claims, except as required (as determined by the iCap Trustees) to preserve iCap Trust Assets.

a.  Any recovery by an Investor on an Individual Investor-Specific Claim shall reduce that Investor's entitlement to receive Distributions from the iCap Trust as follows:

(1)  Any recovery, net of reasonable fees and expenses actually incurred by or on behalf of the Investor, shall be first applied to reduce the applicable Investor Class A Claim, if any, and then after the Investor Class A Claim is reduced to $0, shall be applied to reduce the applicable Investor Class B Claim.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 29

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

b.     Each Investor must promptly notify the Debtors or the iCap Trustees, as applicable, in writing, if such Investor receives any consideration on account of an Individual Investor-Specific Claim. This notification must be submitted within thirty (30) days of receiving said consideration and must detail the total amount recovered, along with any associated fees and expenses incurred. Failure to adhere to this reporting obligation may subject the Investor's Claim to disallowance in the iCap Trustees' full discretion, and the clawback of any Distributions previously received under the Plan.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

### A.     Impaired Claims Entitled to Vote

The Plan Proponents shall only solicit the votes of Holders of Allowed Claims in Class 3 (Investor Claims) and Class 4 (General Unsecured Claims).

### B.     Acceptance by an Impaired Class

Pursuant to Bankruptcy Code section 1126(c), except as provided in Bankruptcy Code section 1126(e), acceptance of the Plan by Holders of Claims in any Class eligible to vote on it occurs when the Plan receives approval from Holders representing at least two-thirds (⅔) in dollar amount and over one-half (½) in number of the Allowed Claims in that Class who have duly voted to accept or reject the Plan within the stipulated timeframe.

### C.     Presumed Acceptance by Unimpaired Classes

Class 1 (Priority Claims) and Class 2 (Secured Claims) are unimpaired under the Plan. Pursuant to Bankruptcy Code section 1126(f), Holders of unimpaired Claims are presumed to have accepted the Plan and the Plan Proponents therefore will not solicit their votes.

### D.     Certain Impaired Classes Deemed to Reject the Plan

The Plan Proponents have decided not to solicit the votes of Holders of any Claims in Class 5 (Subordinated Claims) and Holders of those Claims will therefore be

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 30

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

deemed to have rejected the Plan and will not be entitled to vote on the Plan. Holders of Class 6 Equity Interests are not entitled to receive or retain any property or interests in property under the Plan and are therefore deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). They are not entitled to vote on the Plan and their votes will not be solicited by the Plan Proponents.

**E.    Modification of Votes Already Cast**

After the Voting Deadline, Creditors eligible to vote on the Plan cannot modify their cast votes or any related elections without obtaining written consent from the Plan Proponents. Such consent is subject to the reasonable discretion of the Plan Proponents.

**F.    Vacant Classes Eliminated**

Any Class that does not contain a Holder of an Allowed Claim, or a Holder of a Claim that is temporarily allowed under Bankruptcy Rule 3018, measured as of the date on which the Confirmation Hearing begins, shall be deemed deleted from the Plan for the purpose of determining whether the Plan was accepted by that Class pursuant to Bankruptcy Code section 1129(a)(8).

<div align="center">

**ARTICLE V.**
**<u>IMPLEMENTATION OF THE PLAN</u>**

</div>

**A.    Overview**

As detailed below, the Plan will be implemented through, among other things, the establishment of the iCap Trust and the appointment of the iCap Trustees and the iCap Trust Supervisory Board. The iCap Trust will make Distributions in accordance with the Plan.

**B.    Streamlining the Debtors' Structure and Governance**

**1.    Corporate Action.** On the Effective Date, all matters under the Plan involving or requiring action of the directors, members, managers, or officers of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 31

BUSH KORNFELD LLP
LAW OFFICES
601 Union St, Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

and after the Effective Date, without any further action by the Bankruptcy Court or the directors, members, managers, or officers of the Debtors.

**2. Debtors' Existing Directors and Officers.** On the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided, however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets.

**3. Dissolution of the Debtors.** On and as of the earlier of the Case Closing Date and the date on which the iCap Trustees File with the Bankruptcy Court a notice of dissolution as to a Debtor, such Debtor will be dissolved automatically without the need for any further action, including the filing of any corporate or limited liability company filings; *provided, however*, that the iCap Trust may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of any Debtor. All applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of any certificates.

**4. Corporate Documents and Corporate Authority.** On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors and the iCap Trustees, as applicable, to take or cause to be taken all actions (including, if applicable, corporate actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 32

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

without further approval, act, or action under any applicable law, order, rule, or regulation.

## C. Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under this Plan, any Notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtors, except assumed executory contracts and assumed unexpired leases, and/or such Notes or other instruments evidencing indebtedness or obligations of the Debtors that are unimpaired, reinstated, assumed, or amended and restated under this Plan, shall be cancelled and terminated and of no further force or effect.

## D. iCap Trust

**1. Appointments.** On and after the Effective Date, the initial iCap Trustees shall become and serve as iCap Trustees. The iCap Trustees' shared compensation will be set at five percent (5%) of the iCap Trust's gross recoveries, the payment terms and timing of which will be set forth in the iCap Trust Agreement and the Plan Supplement.

On and after the Effective Date, the initial iCap Trust Supervisory Board shall begin to serve without further action consistent with the terms of the Plan and iCap Trust Agreement. The purpose of the iCap Trust Supervisory Board is to oversee the performance of the iCap Trustees' duties and to otherwise carry out and serve the functions described in the Plan and in the iCap Trust Agreement. Compensation for the iCap Trust Supervisory Board will be set forth in the iCap Trust Agreement and the Plan Supplement.

At the time of Confirmation of the Plan and formation of the iCap Trust, John Bender shall serve as litigation counsel to the iCap Trust and Bush Kornfeld LLP shall serve as restructuring counsel to the iCap Trust.

**2. Creation and Governance of the iCap Trust.** On the Effective Date, the iCap Trustees shall execute the iCap Trust Agreement and shall take any other steps necessary to establish the iCap Trust in accordance with the Plan. For federal income tax purposes, the transfer of the assets to the iCap Trust will be treated as a sale or other

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 33

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

disposition of assets to the iCap Trust Beneficiaries in exchange for their Claims in the Chapter 11 Cases. Any income or loss from the transfer of assets to the iCap Trust shall flow through to the ultimate taxpaying member of each Debtor who will be responsible to pay the tax liability. For federal income tax purposes, the iCap Trust Beneficiaries shall be treated as the grantors of the iCap Trust and deemed to be the owners of the assets of the iCap Trust. The transfer of the iCap Trust Assets to the iCap Trust shall be deemed a transfer to the iCap Trust Beneficiaries by the Debtors, followed by a deemed transfer by such iCap Trust Beneficiaries to the iCap Trust. The Debtors, the iCap Trust Beneficiaries, and the iCap Trust will consistently report the valuation of the assets transferred to the iCap Trust. Such consistent valuations and revised reporting will be used for all federal income tax purposes. Income deductions, gain, or loss from the iCap Trust shall be reported to the beneficiaries of the iCap Trust in conjunction with the filing of the iCap Trust's income tax returns. Each iCap Trust Beneficiary shall report income, deductions, gain, or loss on such iCap Trust Beneficiary's income tax returns. The iCap Trust shall be governed by the iCap Trust Agreement and administered by the iCap Trustees and the iCap Trust Supervisory Board. The powers, rights, and responsibilities of the iCap Trustees shall be specified in the iCap Trust Agreement.

     **3.**     **Vesting of iCap Trust Assets.**   On the Effective Date, the iCap Trust will be automatically vested with all the Debtors' and the Estates' respective rights, title, and interest in and to all iCap Trust Assets. Except as specifically provided in the Plan or the Confirmation Order, the iCap Trust Assets shall automatically vest in the iCap Trust free and clear of all Claims, Liens, or interests subject only to the iCap Trust Interests and the iCap Trust Expenses, as provided for in the iCap Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The iCap Trustees shall be the exclusive trustee of the iCap Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all iCap Trust Assets. The iCap Trust shall hold and distribute the iCap Trust Assets in accordance with the provisions of the Plan and the iCap Trust Agreement.

     Notwithstanding the foregoing or any other provision in the Plan, in the event that the iCap Trust receives any monies from the United States or any other Governmental Unit, obtained as forfeited assets (or otherwise) by the Governmental

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 34

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Unit for the benefit of the Investor victims of the Debtors' prepetition Ponzi scheme, all such monies shall not constitute Estate Assets or iCap Trust Assets, and the iCap Trustees are authorized to and shall distribute all such monies only to Investors who are Holders of Class A iCap Trust Interests or Class B iCap Trust Interests on account thereof, subject to the Plan and the iCap Trust Agreement; *provided* that the iCap Trustees and their agents will be reimbursed from such monies for reasonable costs and expenses incurred by said parties related to the iCap Trust's collection, administration, and distribution of such monies to the applicable Investors.

**4.     Sales of Estate Assets.**  In accordance with Bankruptcy Code section 1146(a), no stamp tax, conveyance fee, real estate, excise, or other transfer tax, mortgage tax, mortgage recording tax, Uniform Commercial Code filing or recording filing fee, or similar tax shall apply to (1) the sale or transfer of iCap Trust Assets to the iCap Trust; (2) the issuance, Distribution, transfer, or exchange of Notes or equity securities under the Plan; or (3) the establishment of any mortgage, deed of trust, Lien, pledge, or other security interest, or the execution or delivery of any lease, sublease, deed, or other transfer instrument related to or in support of the Plan. Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

As part of implementation of the Plan, following Confirmation, the iCap Trustees will sell iCap Trust Assets. No further order of the court will be necessary to sell iCap Trust Assets. All sales of real property contemplated by the Plan shall be free and clear of all Liens, claims, encumbrances, and/or interests of any kind pursuant to Bankruptcy Code Sections 1123(a)(5)(D) and 1141(c), with the proceeds of such sales being paid pursuant to the terms of the Plan. Pursuant to Washington Administrative Code 458-61A-207, the iCap Trust will be exempt from the imposition of real estate excise taxes that would otherwise be payable under Revised Code of Washington 82.45.060 and/or other applicable law as to any sale of the iCap Trust Assets at any time following Confirmation. Pursuant to Bankruptcy Code section1146, the iCap Trust's making or delivery of an instrument of transfer as to any iCap Trust Assets following Confirmation may not be taxed under any law imposing a stamp tax or similar tax.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 35

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**5.     Purpose of the iCap Trust.** The iCap Trust shall be established for the purpose of pursuing or liquidating the iCap Trust Assets and making Distributions to the iCap Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d) and the terms of the Plan.

**6.     Authority.** Subject to the supervision of the iCap Trust Supervisory Board as set forth in the iCap Trust Agreement, the iCap Trustees shall have the authority without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

a.     review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan;

b.     assert and enforce all legal or equitable remedies and defenses belonging to the Debtors or their Estates, including setoff, recoupment, and any rights under Bankruptcy Code section 502(d);

c.     calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

d.     retain, compensate, and employ professionals and other Persons to represent the iCap Trustees with respect to and in connection with their rights and responsibilities; e.     establish, maintain, and administer documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

f.     maintain, conserve, collect, settle, and protect the iCap Trust Assets, including, but not limited to, pursuing, engaging in, and consummating any Investor Avoidance Settlements and/or Broker Settlements;

g.     pursue, prosecute, settle, or abandon any iCap Trust Actions, including, but not limited to, Investor Avoidance Settlements and/or Broker Settlements;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 36

BUSH KORNFELD LLP
LAW OFFICES
601 Union St, Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

h.    act on behalf of the Debtors in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere;

i.    proceed with and employ all discovery devices permitted under applicable law, including Bankruptcy Rule 2004, in order to investigate any Claims, iCap Trust Actions, or iCap Trust Assets;

j.    sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the iCap Trust Assets or any part thereof or interest therein upon such terms as the iCap Trustees determine to be necessary, appropriate, or desirable;

k.    negotiate, incur, and pay the iCap Trust Expenses;

l.    prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any Governmental Unit, or by applicable law;

m.    compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

n.    take such actions as are necessary or appropriate to wind-down and dissolve the Debtors;

o.    effect all actions and execute all agreements, instruments, and other documents, and take all actions, necessary to consummate the Plan;

p.    comply with the Plan, exercise the iCap Trustees' rights, and perform the iCap Trustees' obligations; and

q.    exercise such other powers as deemed by the iCap Trustees to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to their administrative rights and duties under the Plan, the iCap Trustees shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or limited liability company

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 37

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

officer or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under Bankruptcy Code sections 704 and 1106. The iCap Trust Supervisory Board will have all rights and powers of a corporate board appointed under Washington law.

7. **Limitation of Liability.** The iCap Trustees and the iCap Trust Supervisory Board shall enjoy all the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The iCap Trustees may, in connection with the performance of their functions, in their sole and absolute discretion, consult with their attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the iCap Trustees shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and their determination not to do so shall not result in the imposition of liability on the iCap Trustees unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the iCap Trustees shall look only to the iCap Trust Assets to satisfy any liability incurred by the iCap Trustees to such Person in carrying out the terms of the Plan or the iCap Trust Agreement. No recourse will ever be had, directly or indirectly, against the iCap Trustees or their members, officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the iCap Trustees under the Plan or by reason of the creation of any indebtedness by the iCap Trustees under the Plan.

8. **Indemnification.** The iCap Trust Agreement will include customary indemnification provisions.

9. **Insurance.** The iCap Trustees shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the iCap Trust's sole expense, for themselves, the iCap Trustees, and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the iCap Trustees, which insurance coverage may, at the sole discretion of the iCap Trustees, be extended for a reasonable period after the termination of the iCap Trust.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 38

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**10.    Tax Reporting.** The iCap Trust shall timely file tax returns for the iCap Trust treating the iCap Trust as a grantor trust pursuant to Treasury Regulation section 1.671- 4(a).

The iCap Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the iCap Trust, the Debtors, or any iCap Trust Assets.

The iCap Trust shall distribute such tax-related notices, beneficiary statements, and informational returns, as applicable, to the applicable Holders of Allowed Claims as are required by applicable law or that the iCap Trustees determine are otherwise necessary or desirable.

The iCap Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

**11.    Distributions to iCap Trust Beneficiaries.** After payment of or reserve for all senior claims (including without limitation, Administrative Expense Claims, Priority Claims, Priority Tax Claims, and Secured Claims) in accordance with the Plan and the iCap Trust Agreement, the iCap Trust shall make Distributions to iCap Trust Beneficiaries pursuant to the iCap Trust Interests Waterfall.

The iCap Trust, in the iCap Trustees' sole discretion, may make periodic Distributions to the iCap Trust Beneficiaries at any time following the Effective Date; *provided* that such Distributions are otherwise permitted under, and not inconsistent with, the iCap Trust Interests Waterfall, the other terms of the Plan, the iCap Trust Agreement, and applicable law.

**12.    Cash Investments.** The iCap Trustees may invest Cash of the iCap Trust, including any earnings or proceeds from such investment, and such investments will not be required to comply with Bankruptcy Code section 345(b); *provided, however,* that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.

**13.    Securities Act Exemption.** To the extent the iCap Trust Interests are deemed to be "securities," the issuance of those interests under the Plan is exempt

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 39

BUSH KORNFELD LLP
LAW OFFICES
601 Union St, Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

from registration under the Securities Act and any applicable state and local securities laws pursuant to Bankruptcy Code section 1145.

**14.** **Contribution of Contributed Claims.** On the Effective Date, all Contributed Claims are irrevocably contributed to the iCap Trust and shall thereafter be iCap Trust Actions for all purposes. No Person may rely on the absence of a specific reference in the Plan, the Confirmation Order, the iCap Trust Agreement, or the Disclosure Statement to any Contributed Claims against such Person as any indication that the iCap Trust will not pursue any and all available Contributed Claims against such Person. The objection to the Allowance of any Claims will not in any way limit the ability or the right of the iCap Trust to assert, commence, or prosecute any Contributed Claims. Nothing contained in the Plan, the Confirmation Order, the iCap Trust Agreement, or the Disclosure Statement will be deemed to be a waiver, release, or relinquishment of any Contributed Claims that the Contributing Claimants had immediately prior to the Effective Date. The iCap Trust shall have, retain, reserve, and be entitled to assert all Contributed Claims fully as if the Contributed Claims had not been contributed to the iCap Trust in accordance with the Plan and the iCap Trust Agreement.

**15.** **Authority to Pursue and Resolve iCap Trust Actions.** The iCap Trust, as a successor in interest to the Debtors, the Estates, and the Contributing Claimants will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all iCap Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement. From and after the Effective Date, the iCap Trust, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as a representative of the Estates with respect to any and all iCap Trust Actions that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all iCap Trust Actions in any court or other tribunal.

**16.** **Termination.** The iCap Trustees and the iCap Trust shall be discharged or terminated, as the case may be, at such time as: (a) the iCap Trustees determine that the pursuit of additional iCap Trust Actions is not likely to yield sufficient additional

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 40

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

proceeds to justify further pursuit of such iCap Trust Actions and (b) all Distributions required to be made by the iCap Trust to Holders of Allowed Claims and to the iCap Trust Beneficiaries under the Plan and the iCap Trust Agreement have been made, but in no event shall the iCap Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the iCap Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the iCap Trust Assets. Upon termination of the iCap Trust, any remaining iCap Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the iCap Trustees to a non-profit organization of their choice.

**17.** **Interpretation.** To the extent there is any inconsistency between the Plan and the iCap Trust Agreement, the Plan shall control.

**E.** **Substantive Consolidation**

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 41

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in this Article; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided, however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien.

The Disclosure Statement and the Plan together form a request for the Bankruptcy Court's approval of the substantive consolidation outlined in the Plan. Unless a Creditor, purportedly impacted by this consolidation, submits a written objection before the Plan's confirmation objection deadline, the consolidation described in the Plan may receive approval during the Confirmation Hearing. Should objections be filed within the specified timeframe, the Bankruptcy Court will address such objections at the Confirmation Hearing.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 42

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

If the Bankruptcy Court determines that substantive consolidation of any given Debtor is not appropriate, then the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis. Furthermore, the Debtors reserve their rights (i) to seek confirmation of the Plan without implementing substantive consolidation of any given Debtor, and, in the Debtors' reasonable discretion after consultation with the Unsecured Creditors' Committee, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (ii) after consultation with the Unsecured Creditors' Committee, to seek to substantively consolidate all Debtors into iCap Enterprises, Inc. if all impaired Classes entitled to vote on the Plan vote to accept the Plan.

## F. Preservation of Rights of Action

**1. Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order (including in the Investor Claims Special Provisions), in accordance with Bankruptcy Code section 1123(b), from and after the Effective Date, the iCap Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as iCap Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the iCap Trust Agreement. The iCap Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the iCap Trust Actions without notice to or approval from the Bankruptcy Court, subject to the iCap Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the iCap Trust may compromise and settle iCap Trust Actions, subject to the iCap Trust Agreement. It is anticipated that the iCap Trust will pursue iCap Trust Actions primarily under alternate fee arrangements and not a typical hourly fee structure, employing the services of professionals selected by (i) the Debtors, in

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 43

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

consultation with the Unsecured Creditors' Committee, prior to the Effective Date or (ii) the iCap Trustees, as provided in the iCap Trust Agreement, on and after the Effective Date. For the avoidance of doubt, nothing in the Disclosure Statement or this Plan shall require the iCap Trust to commence or pursue litigation concerning any iCap Trust Action.

**2.     Preservation of All iCap Trust Actions Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement (including its exhibits and schedules) or the Plan any potential or existing Avoidance Actions or Causes of Action as an iCap Trust Action is not intended to and shall not limit the rights of the iCap Trust to pursue any such Avoidance Actions or Causes of Action. Unless a iCap Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such iCap Trust Action for later resolution by the iCap Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the iCap Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any iCap Trust Actions upon, after, or as a consequence of the confirmation of the Plan.

**3.     Categories of Preserved Claims.** The Plan specifically preserves the right for the iCap Trust and iCap Trustees to pursue any and all claims that the Debtors and/or their Estates have the right to pursue, including **all** Causes of Action and Avoidance Actions. Without in any way limiting the iCap Trust's and the iCap Trustees' rights to pursue claims against third parties, the following are illustrative categories of claims that the iCap Trust will have the right to pursue:

(a) Insider and non-Insider preference actions arising under bankruptcy and/or state law;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 44

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(b) Fraudulent transfer actions arising under bankruptcy and/or state law;

(c) Turnover actions under bankruptcy law;

(d) Any and all other rights and/or claims arising under the bankruptcy laws;

(e) Claims against third parties that aided and abetted the Debtors' conduct;

(f) Intentional and unintentional tort claims against third parties, including professional firms and former iCap principals and employees;

(g) Claims against third parties that may arise out of or relate to the conduct of an alleged Ponzi scheme;

(h) Breach of contract claims;

(i) Employment claims against former iCap employees, including breach of duties and breach of non-compete agreements and/or other agreements;

(j) Claims against third parties for return of commissions paid;

(k) Claims against former principals, directors, and officers for breach of fiduciary duties, breach of duty of loyalty, and similar claims; and

(l) All other claims not included in these categories that are Causes of Action and Avoidance Actions.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 45

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## G.    Exit Financing

On the Effective Date, without the need for further action, the iCap Trust shall enter into the Exit Financing, including the First Lien Exit Loan Facility and the Tritalent Exit Loan Facility.

## H.    Abandonment of Certain Estate Assets

Unless previously sold or disposed of, on the Effective Date, and without the need for further action, the following Estate Assets shall be deemed abandoned by the Debtors and their Estates pursuant to Bankruptcy Code section 554 and shall not be considered iCap Trust Assets:

- the real property commonly known as 715-775 Broadway, Tacoma, WA; and
- the Debtors' interests in Airlink Holding, LLC and Airlink Markets, LLC (which entities shall be dissolved by the Debtors under the Confirmation Order) including, without limitation, Airlink Holding, LLC's membership interests in Airlink Markets, LLC.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions to Senior Claims and Establishment of Senior Claims Reserve

On or as soon as reasonably practicable after the Effective Date, the iCap Trustees will establish the Senior Claims Reserve out of Available Cash, and the Distribution Agent shall make Distributions out of the Senior Claims Reserve to Holders of, as applicable, Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims in accordance with the Plan. After the payment of all such Claims in accordance with the Plan and the payment of all related reasonable costs and expenses of the iCap Trustees and the Distribution Agent (including fees and costs to litigate and otherwise resolve Contingent Claims, Disputed Claims, or Unliquidated Claims, and administer and make Distributions), any remaining Cash in the Senior Claims Reserve will be promptly remitted to the iCap Trust to be used for any purposes subject to the Plan and the iCap Trust Agreement. The iCap Trustees or their designee

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 46

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

shall not be required to give any bond or surety or other security for the performance of any duties as the Distribution Agent.

**B.     Distributions to Secured Claims and Establishment of the Secured Claims Reserves**

On or as soon as reasonably practicable after the Effective Date, the iCap Trustees will establish the Secured Claims Reserves. Upon the sale or refinancing of any Collateral subject to a Lien of a Holder of an Allowed Secured Claim, such Claim shall be paid from the applicable Secured Claims Reserve or treated as otherwise provided in Article III.B.2. After the payment of all such Claims in accordance with the Plan, any remaining Cash in the Secured Claims Reserves will be promptly remitted to the iCap Trust to be used for any purposes subject to the Plan and the iCap Trust Agreement.

**C.     Calculating Distributions**

The iCap Trust shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Investor Claims, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the iCap Trust or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the iCap Trust, and may establish and hold back from Distributions reasonable reserves for other contingencies. When calculating Distributions (and amounts to hold in Distribution Reserves) with respect to Investor Claims, the Outstanding Principal Amounts to be utilized by the iCap Trust shall be determined in accordance with the procedures established by the iCap Trustees.

**D.     Interest and Other Charges**

Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 47

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## E. Means and Methods of Payment

All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

Cash payments under the Plan shall be made, at the option and in the sole discretion of the iCap Trustees, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the iCap Trustees, by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance. Requests for reissuance of any check within 180 calendar days of the date of the issuance shall be made directly to the iCap Trustees.

## F. Fractional Distributions

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

## G. No Distributions with Respect to Certain Claims

Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of a Claim that is not an Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim, including rights conferred by Bankruptcy Code section 506(b), which shall continue to apply until Distribution to the Holders of Secured Claims (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the iCap Trustees),

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 48

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

except that if the Holder of such Claim and the iCap Trustees otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number shall be used with respect to such Claim. For purposes of calculating and making Distributions pursuant to the Plan, the iCap Trustees shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed Claims and Disputed Claims, inclusive of Contingent Claims or Unliquidated Claims in a particular Class. The iCap Trustees also shall be entitled to seek one or more estimation orders from the Bankruptcy Court for such purposes, which requests may be joined with objections to the Claims that are subject to any such request. Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.

The iCap Trust may establish a Distribution Reserve on account of Disputed Claims, Contingent Claims, or Unliquidated Claims. The iCap Trust may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Distribution Reserve as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the Distribution Reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the Distribution Reserve as, when, and to the extent, such Disputed Claims cease to be Disputed Claims, Contingent Claims, or Unliquidated Claims, whether by virtue of becoming Allowed or otherwise resolved. The iCap Trust Beneficiaries shall be bound by such election, if made by the iCap Trustees, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

## H. Delivery of Distributions

Distributions in respect of iCap Trust Interests shall be made to Holders of iCap Trust Interests as of the Distribution Record Date. The iCap Trustees shall have no obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. Distributions to Holders of iCap Trust Interests or Allowed Claims that have not been converted to iCap Trust Interests shall be made (a) at the addresses set forth in the proofs of Claim Filed by such Holders; (b) at the

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 49

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

addresses reflected in the Schedules if no proof of Claim has been Filed; or (c) at the addresses set forth in any written notices of address changes delivered to the Claims Agent or the iCap Trustees. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the iCap Trustees are notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the iCap Trustees with a current address of a Holder of iCap Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the iCap Trustees shall be held in trust on behalf of the Holder of the iCap Trust Interest or Claim to which they are payable by the iCap Trustees until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

## I. Withholding, Payment, and Reporting Requirements for Distributions

All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The iCap Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the iCap Trust, requiring each Holder of an iCap Trust Interest or Claim to provide a duly completed and properly executed current Form W-9, Form W-8 (if the payee is a foreign entity), or similar tax form as a prerequisite to receiving a Distribution. If a Holder of an iCap Trust Interest or Claim does not provide an appropriate Form W-9, Form W-8 (if the payee is a foreign entity), or similar tax form or documents reasonably requested by the iCap Trust within 90 days of written request, the iCap Trust will be required to back up withholding amounts due to such Holder and/or take such other action as it deems reasonably appropriate.

Notwithstanding any other provision of the Plan, (a) each Holder of a iCap Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 50

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

would be imposed on the iCap Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the iCap Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

## J. Defense and Setoff Rights

On and after the Effective Date, the iCap Trust shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Nothing in the Plan shall affect the rights and defenses of the Debtors, the Estates, or the iCap Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims. Accordingly, the iCap Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the iCap Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

## K. Allocation of Distributions

Distributions received under the Plan by Holders of iCap Trust Interests and Claims shall be allocated first to the principal amount of such Claim, and then to accrued interest, if any, with respect to such Claim.

## L. Joint Distributions

The iCap Trustees may, in their sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the iCap Trustees have determined to have an interest in such Claim.

## M. Forfeiture of Distributions

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Article VI.E, fails to claim an undeliverable Distribution within the time limit set forth in Article VI.H, or fails to complete and return to the iCap Trustees the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Article VI.I (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 51

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## N.    Claims Paid by Third Parties

Except as otherwise set forth herein, and specifically Article III.C.2.a. governing payments received by an Investor on account of Individual Investor-Specific Claims, to the extent a Holder of a Claim receives a Distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or the iCap Trustees on account of such Claim, such Holder shall, within thirty (30) days of receipt thereof, repay or return the Distribution to the applicable Debtor or the iCap Trustees, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such excess Distribution shall result in the Holder owing the iCap Trust annualized interest at the Federal Judgment Rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the thirty-day grace period specified above until the amount is repaid. For the avoidance of doubt, only prior distributions are required to be returned or paid to the iCap Trust, and no forfeiture of an Investor's Claim shall result unless the Investor fails to comply with Article III.C.2.a.

## ARTICLE VII.
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

## A.    Disputed Claims Resolution

From and after the Effective Date, the iCap Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement, and any agreement entered into by the iCap Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim; *provided, however*, that, under the Plan, all Claims asserted by any of the Excluded Parties are Disputed Claims in their entirety and will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order. Notwithstanding anything else to the contrary

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 52

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

herein, and as provided in Bankruptcy Code section 502(d), the iCap Trustees are not required to make any Distributions to Holders of Allowed Claims, and no such Claims shall be deemed Allowed, unless and until such Holder has paid the Net Prepetition Investor Recovery, or such portion thereof as agreed to as a compromise and settlement, to the iCap Trust or until any iCap Trust Action seeking recovery of the Net Prepetition Investor Recovery is disallowed in its entirety by a Final Order.

## B. Claim Objections

All objections to Claims shall be Filed by the iCap Trust on or before the Claim Objection Deadline, which date may be extended (a) by sixty (60) days in the discretion of the iCap Trustees without further order of the Bankruptcy Court after notice to parties who have Filed requests for notice and (b) beyond the first sixty-day extension by order of the Bankruptcy Court upon motion Filed prior to the expiration of such period and notice to parties who have Filed requests for notice. If a timely objection has not been Filed to a proof of Claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim.

## C. No Distribution on Disputed Claims

Notwithstanding any provision of the Plan specifying the time for payment of Distributions to Holders of Claims, no payment or Distribution shall be made to the Holder of a Disputed Claim until the time such Claim has been determined to be an Allowed Claim. Notwithstanding the existence of a Disputed Claim in a Class to which a Distribution under this Plan is due, such Distribution to other Holders in such Class shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the Holder shall be paid the amount that such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

## D. Disposition of Reserves After Disallowance

After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 53

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan and any reserved iCap Trust Interests shall be cancelled.

<div align="center">

**ARTICLE VIII.**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

</div>

The Debtors have no executory contracts or unexpired leases within the meaning of Bankruptcy Code section 365.

<div align="center">

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

</div>

**A.    Occurrence of Effective Date**

The Effective Date shall not occur and the Plan shall not be considered consummated until each of the following conditions has either been satisfied or waived as set forth below in Article IX.B:

1.    Entry of the Confirmation Order by the Bankruptcy Court in a form reasonably acceptable to both the Debtors and the Unsecured Creditors' Committee, and no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made, or, if made, shall remain pending;

2.    The Confirmation Order shall have become a Final Order in full force and effect and shall not be subject to any stay of effectiveness;

3.    The iCap Trustees shall be duly appointed, qualified, and acting in that capacity;

4.    The iCap Trust shall have access to funding under the Exit Financing;

5.    There shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan; and

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 54

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6. All necessary actions, agreements, instruments, or other documents to implement the terms and provisions of the Plan have been completed or executed and delivered, as required.

**B.      Waiver of Conditions**

The conditions set forth in Article IX.A of the Plan may be waived, in whole or in part, in writing by agreement of the Debtors, at any time, without notice or further order of the Bankruptcy Court.

**C.      Non-Occurrence of Effective Date Conditions**

If the conditions necessary for the Effective Date are not met or duly waived as outlined in Articles IX.A and B of the Plan, upon notification filed by the Debtors with the Bankruptcy Court, the following shall occur: (i) the Confirmation Order will be vacated; (ii) no Distributions will be made; (iii) the Debtors, the Estates, the Unsecured Creditors' Committee, and all Creditors will revert to the status quo as of the day immediately preceding the Confirmation Hearing as if the Confirmation Order had not been entered; and (iv) all obligations of the Debtors and the Estates regarding Claims will remain unchanged. Nothing in the Plan will constitute a waiver or release of any Claims by or against the Debtors, the Estates, or any other Person, nor will it prejudice the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

**D.      Effective Date Notice**

Following the Effective Date, the iCap Trust or its representatives will promptly send notices to all Creditors and the United States Trustee. These notices will include information regarding: (i) the Confirmation Order and the Plan's Confirmation; (ii) the Effective Date; (iii) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, if any, along with the deadline for filing any Claims resulting from such rejection; (iv) the deadline set forth in the Plan for filing Administrative Expense Claims; (v) the deadline by which Professional Persons must file and serve any requests for payment of professional fees; and (vi) any other pertinent matters deemed appropriate by the iCap Trustees.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 55

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# ARTICLE X.
## MISCELLANEOUS PROVISIONS

**A.    Mailing List**

The official listing of Creditor identities and mailing addresses is maintained by the Claims Agent (the "Official Mailing List"). It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such person or entity.

**B.    Employment of Professional Persons**

The Debtors shall be authorized to employ and compensate Professional Persons following Confirmation upon such terms as the Debtors deem reasonable and appropriate without further notice or order of the Court.

**C.    Payments Shall Be Timely**

The Debtors shall timely make all payments required under this Plan. Without limiting the generality of the foregoing, the iCap Trust shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation until the Case Closing Date. After Confirmation, the iCap Trust shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the Chapter 11 Cases remain open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**D.    Treatment of Negotiable Instruments**

Any negotiable instrument held by the Holder of a Claim shall be deemed exchanged, canceled, or satisfied, as the case may be, on the Effective Date.

**E.    Stay of Confirmation Order Shall Not Apply**

The stay of enforceability of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the Confirmation Order shall be enforceable according to its terms absent further order of the Bankruptcy Court.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 56

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

## F.    Preservation of Privileges and Defenses

The actions taken by the Debtors, the iCap Trust, or any of their respective Related Parties in connection with the Plan shall not be a waiver of any privilege or defense of the Debtors or the iCap Trust. Notwithstanding any Debtors providing any privileged information related to any iCap Trust Actions to the iCap Trustees, the iCap Trust, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the iCap Trust Actions and shall remain privileged. The iCap Trust shall retain the right to waive its own privileges. Only the iCap Trustees shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors and the iCap Trust.

## G.    Releases and Related Matters

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed, to the fullest extent permitted under applicable law, to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined by Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in this Article X.G shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.

Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 57

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

## H.    Exculpation

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any postpetition act or omission occurring from the Petition Date to the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, Confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any other act taken or omission originating or occurring after the Petition Date but before the Effective Date in connection with or in contemplation of the restructuring, sale, or liquidation of the Debtors; *provided*, *however*, that nothing in this Article X.H shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order, including with respect to the Supplemental DIP Credit Agreement; and *provided*, *further*, that the exculpation provisions of this Article X.H shall not apply to acts or omissions constituting actual fraud, willful misconduct, gross negligence, or malpractice by such Exculpated Party as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting the Exculpated Parties from liability. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Article X.H of the Plan.

## I.    Injunction

Except as otherwise expressly provided in the Plan, and except in connection with the enforcement of the Plan or any documents provided for or contemplated in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or the Estates that (i) have been released pursuant to Article X.G of this

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 58

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Plan or (ii) are subject to exculpation pursuant to Article X.H of this Plan, are permanently enjoined from and after the Effective Date from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due to the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Equity Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Without limiting the foregoing, the automatic stay provided under Bankruptcy Code section 362(a) shall remain in effect until the Chapter 11 Cases are closed. Nothing contained in this Article X.I shall prohibit the Holder of a Filed proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Equity Interest of any of the obligations of the Debtors or the iCap Trustees under the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in this Article X.I.

## J.      Injunction Against Interference with the Plan

Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions of any kind against the iCap Trustees, the iCap Trust, or any of the iCap Trust Assets that interfere with the implementation or consummation of the Plan. The iCap Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the iCap Trust to address any violation of the injunction contained in this Article X.J.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 59

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**K.    SEC Rights**

Notwithstanding any language to the contrary in the Disclosure Statement, this Plan, and/or the Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, Causes of Action, proceeding, or investigations against any non-Debtor Person or non-Debtor entity in any forum.

**L.    Insurance Policies**

Nothing in the Plan or the Confirmation Order shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the rights and obligations of the Debtors (and their Estates), third party beneficiaries or named insureds, and the Debtors' insurers (and third-party claims administrators) under any of the Debtors' insurance policies (including any D&O Insurance) or modify the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the insurance policies. For all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Debtors' insurance policies shall control. For the avoidance of doubt, nothing herein (a) constitutes a rejection of any insurance policy (including the D&O Insurance) or (b) relieves any party from any injunction or stay created or preserved under the Plan.

**M.    Books and Records**

On the Effective Date, the Debtors' books and records shall be transferred to the iCap Trustees. The iCap Trustees shall be free, in their discretion to abandon, destroy, or otherwise dispose of the books and records in compliance with applicable non-bankruptcy law, or any other order of the Bankruptcy Court, at any time on and after the Effective Date, without the need for any other or further order; *provided, however,* that neither the Debtors nor the iCap Trustees shall destroy or otherwise abandon any books, records, electronically stored information, or other documents without providing advance notice to the SEC (c/o William M. Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Road, NE, Suite 900, Atlanta, GA 30326, UptegroveW@SEC.GOV), which shall have seven (7) days to object to any proposed

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 60

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

destruction or abandonment, and with authorization from the Bankruptcy Court; *provided further* that, nothing in the Plan or the Confirmation Order shall affect the obligations of the Debtors, the iCap Trust, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

In the event that the iCap Trust becomes the subject of a directive or requirement to retain any books and records, the iCap Trust may provide notice to the parties who requested or obtained such directive or requirement (the "**Document Destruction Notice Parties**") of an intent to destroy such documents. In the event a Document Destruction Notice Party objects to the destruction, it shall provide the iCap Trust with a written agreement and assurance, each of which is reasonably acceptable to the iCap Trust, providing for the reimbursement and payment of all costs and expenses associated with the continued maintenance of such documents and records by the iCap Trust. Such costs and expenses shall include, but may not be limited to, third party fees and expenses, storage device costs, copying fees, the fees and expenses of counsel or other professionals to address any subpoenas or document production demands, and, if such extended maintenance precludes entry of the final decree, any fees (including U.S. Trustee fees) associated with such delay.

## N. Severability

In the event the Bankruptcy Court determines, before Confirmation, that any provision in the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors; and (c) nonseverable and mutually dependent.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 61

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

,

## O. Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan before Confirmation and to file a subsequent plan. If the Debtors revoke or withdraw the Plan before Confirmation, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors or to prejudice in any manner the rights of the Debtors in any further proceedings involving the Debtors.

## P. Notices

All notices, requests, and demands to or upon the iCap Trustees or the Debtors, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered and addressed as follows:

If to the Debtors, to:

    iCap Enterprises, Inc. *et al.*
    c/o Pivot Management Group, LLC
    1230 Rosecrans Ave., Suite 530
    Manhattan Beach, CA 90266
    Attn: Lance Miller (Lance.miller@pivotgrp.com)

With copies to:

    O'Melveny & Myers LLP
    400 South Hope Street, Suite 1900
    Los Angeles, CA 90071
    Attn: Julian Gurule (jgurule@omm.com)

    and

    O'Melveny & Myers LLP
    1301 Avenue of the Americas, Suite 1700

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 62

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

New York, NY 10019
Attn:  Diana Perez (dperez@omm.com)

If to the Unsecured Creditors' Committee, to:

Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Attn:  Armand J. Kornfeld (jkornfeld@bskd.com)
        Aimee S. Willig (awillig@bskd.com)
        Jason Wax (jwax@bskd.com)

and

Corr Cronin LLP
1015 Second Ave., Floor 10
Seattle, WA 98104
Attn:  John T. Bender (jbender@corrcronin.com)

If to the iCap Trustees, to:

Pivot Management Group, LLC
1230 Rosecrans Ave., Suite 530
Manhattan Beach, CA 90266
Attn:  Lance Miller (Lance.miller@pivotgrp.com)

and

B. Riley Advisory Services
19800 MacArthur Boulevard, Suite 820
Irvine, CA 92612
Attn:  Seth Freeman (sfreeman@brileyfin.com)

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 63

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**Q.     Exhibits/Schedules**

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein. After the exhibits and documents are filed, copies of such exhibits and documents shall be available free of charge on the Debtors' case website at: https://cases.creditorinfo.com/icap/documents/docket. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan shall control.

**R.     Successors and Assigns**

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Person.

**S.     Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by any Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interest before the Effective Date.

**T.     Dissolution of the Unsecured Creditors' Committee**

Upon the occurrence of the Effective Date, the Unsecured Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (a) obligations arising under confidentiality agreements, which shall remain in full force and effect, (b) applications for allowance and payment of the fees of Professional Persons, and (c) any pending motions or other actions seeking enforcement or implementation of the provisions of the Plan).

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 64

BUSH KORNFELD LLP
LAW OFFICES
601 Union St, Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**U.     Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e), the CRO, the Debtors, the Unsecured Creditors' Committee, and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes the Plan.

<div align="center">

**ARTICLE XI.**
**SATISFACTION OF INDEBTEDNESS; PLAN IS BINDING**

</div>

Except as specifically provided in this Plan or in the Confirmation Order the Distributions made to the various Classes of Creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Equity Interests. The terms of this Plan and the Confirmation Order shall be binding on all parties regardless of whether or not (a) the party's Claim was Scheduled, (b) a proof of Claim was filed, (c) the Claim is an Allowed Claim, or (d) the Holder thereof voted to accept the Plan.

<div align="center">

**ARTICLE XII.**
**MODIFICATIONS OF THE PLAN**

</div>

Pursuant to the provisions of Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Plan Proponents reserve the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

<div align="center">

**ARTICLE XIII.**
**RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT**

</div>

**A.     Scope**

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 65

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including the jurisdiction and the power to do the following:

1. Except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims;

2. Hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4);

3. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

4. Effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

5. Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the iCap Trust Actions, and with respect to the Plan; *provided* that, for the avoidance of doubt, the iCap Trust shall be entitled to file and prosecute any litigation in any other court of competent jurisdiction;

6. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 66

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Case 23-01243-WLH11   Doc 1741   Filed 01/16/26   Entered 01/16/26 15:05:58   Pg 137 of 335

7. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements (including, without limitation, the iCap Trust Agreement), documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

8. Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

9. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11. Hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

12. Enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

13. Except as otherwise limited herein, recover all Estate Assets, wherever located;

14. Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 67

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

15.     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

16.     Enter and enforce any order and related agreements for the sale or transfer of property and obligations thereunder pursuant to, *inter alia*, Bankruptcy Code sections 363, 1123, or 1146(a);

17.     Enforce all orders previously entered by the Bankruptcy Court;

18.     Resolve any cases, controversies, suits, or disputes related to the iCap Trust, the iCap Trust Supervisory Board, or the iCap Trustees;

19.     Hear and determine all matters in connection with the iCap Trust Assets, including, without limitation, any disputes with respect to the sale of any iCap Trust Assets; and

20.     Enter a final decree closing the Chapter 11 Cases of the Debtors.

**B.      Right to Seek Bankruptcy Court Approval**

Notwithstanding any provision in the Plan permitting actions without the approval of the Bankruptcy Court, the iCap Trustees retain the authority to present to the Bankruptcy Court any questions for explicit approval regarding specific actions proposed by the iCap Trust, including the management, distribution, or potential sale of iCap Trust Assets. The Bankruptcy Court retains jurisdiction and authority for such matters and shall approve or reject any proposed action upon motion filed by the iCap Trust.

**C.      Non-Exercise of Bankruptcy Court Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XIII of the Plan, the provisions of this Article shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 68

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The Bankruptcy Court shall not retain exclusive jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

RESPECTFULLY SUBMITTED this 9th day of October, 2024.

ICAP ENTERPRISES, INC., ET AL.

By /s/ *Lance Miller*
Name: Lance Miller
Title: Chief Restructuring Officer
     Pivot Management Group, LLC


OFFICIAL UNSECURED CREDITORS' COMMITTEE

By /s/ *Lilian Tan*
Name: Lilian Tan
Title: Co-Chair of the Committee

By /s/ *Thomas Temple*
Name: Thomas Temple
Title: Co-Chair of the Committee

SECOND MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 69

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT 2



Transcript of File:

MOTION TO APPROVE PROPOSED DISCLOSURE STATEMENT

CONTINUED HEARING

IN THE MATTER OF ICAP ENTERPRISES, INC.

CASE NUMBER: 23-01243

AUGUST 26, 2024


Video/Audio Runtime: 1 Hour 3 Minutes 53 Seconds


JOB NO.: 122123

**First Legal Depositions - Calendar@firstlegal.com**
**855.348.4997**

```
1              THE REPORTER:  This is a time set on a
2     continued hearing related to the disclosure statement in
3     the matter of iCAP Enterprises, Inc., case number 23-
4     01243.
5              On the line on behalf of the debtors, we have
6     Julian Gurule.
7              MR. GURULE:  Good afternoon, Your Honor.
8              THE REPORTER:  And Diana Perez.
9              MS. PEREZ:  Good afternoon, Your Honor.
10             THE REPORTER:  Jay Kornfeld on behalf of the
11    Committee of the -- of Unsecured Creditors.
12             MR. KORNFELD:  Good afternoon, Your Honor.
13             THE REPORTER:  Special Counsel, John Bender.
14             MR. BENDER:  Good afternoon, Your Honor.
15             THE REPORTER:  Assistant U.S. Trustee, Gary
16    Dyer.
17             MR. DYER:  Good afternoon, Your Honor.
18             THE REPORTER:  Michael Sperry on behalf of the
19    iCAP equity noteholders.
20             MR. SPERRY:  Good afternoon, Your Honor.
21             THE REPORTER:  Matthew Lesnick on behalf of
22    Christopher Christensen.
23             MR. LESNICK:  Good afternoon, Your Honor.
24             THE REPORTER:  Michael Simon on behalf of
25    Wilmington Savings Fund.
```

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 143 of
335

1          MR. SIMON:  Good afternoon, Your Honor.

2          THE REPORTER:  Jason Ayers on behalf of Umpqua

3     Bank.

4          MR. AYERS:  Good afternoon, Your Honor.

5          THE REPORTER:  And Yen Lam on behalf of Man Mo

6     and Dylan, et al.

7          MS. LAM:  Good afternoon, Your Honor.

8          THE REPORTER:  Is there anyone else on this

9     line that I did not identify?

10          Thank you.  This hearing is being recorded.

11     Please proceed.

12          THE COURT:  Good afternoon, everyone.  I hope

13     you're doing well today.  So we're here for the

14     continued hearing relating to the Chapter 11 debtors and

15     the Committee's joint plan proponents' motion to approve

16     the proposed disclosure statement.  We had an initial

17     hearing last week at which the Court directed the plan

18     proponents to make a handful of discrete changes to the

19     documents and also indicated that we have a further

20     hearing to discuss new issues that were directly related

21     to the amended documents that had been filed last week,

22     just the evening before or afternoon or evening before

23     the disclosure statement hearing.

24          I've reviewed -- there was a supplemental

25     objection filed by Wilmington Savings Fund Society.  The

1  debtors have filed, or the plan proponents have filed a

2  second amended disclosure statement, a second amended

3  plan, and redlines of both of those documents, which

4  appear to encapsulate the changes that the Court had

5  discussed with those parties.

6        The plan proponents have also filed a proposed

7  revised form of disclosure statement order and redline.

8  I didn't see anything relating to Mr. Christensen, had

9  been provided the opportunity to draft an insert or a

10 letter or an attachment to the disclosure statements

11 setting forth his position on some of the statements

12 contained in the disclosure statement.  I did not see

13 anything relating to that document, so I'm not sure the

14 precise status.

15       I think -- why don't I hear at the top from

16 Mr. Gurule, just the case status generally.  Then I'd

17 like to hear further from Mr. Simon about the issues

18 raised in the Wilmington Savings Fund Society additional

19 objection.  And then from Mr. Lesnick, and I'll allow

20 the debtors and the committee the last word after Mr.

21 Simon and Mr. Lesnick have had a chance to comment.

22       So, Mr. Gurule, if you'd like to start just

23 looking at the forest, be happy to do that and then

24 we'll get a little more in the weeds as we proceed this

25 afternoon.

1          MR. GURULE:  Thank you.  Absolutely.  For the

2   record, Your Honor, Julian Gurule, of O'Melveny & Myers

3   for the debtors.  Your Honor, just a minute or two to

4   set the table.  Your Honor, following last week's

5   hearing, the plan proponents, the debtors, and the

6   creditors committee worked through the end of the week

7   and over the weekend to try to address input from the

8   Court at Wednesday's hearing and to work with the two

9   real objecting parties still outstanding to the

10  disclosure statements of Mr. Christensen and Wilmington.

11          Your Honor, that included emails and calls,

12  including, as I said, through the weekend, traded some

13  draft language with the parties.  Unfortunately, Your

14  Honor, more or less, and we -- I think we'll get into

15  some of those obviously at today's hearing.  We did not

16  get fully there with Mr. Christensen or Wilmington, but,

17  Your Honor, I think today's hearing hopefully will be

18  just focused on a few discrete remaining issues that

19  certainly the plan proponents take away coming out of

20  Wednesday's hearing.

21          As Your Honor noted shortly before the

22  hearing, the plan proponents filed the second amended

23  disclosure statement and second amended plan and a

24  notice with redlines attached at Docket number 1238.

25  That document, Your Honor, the plan proponents submit

23-01243-WLH11   Doc 1704-1   Filed 01/16/26   Entered 01/16/26 15:05:28   Pg 146 of
335

1    incorporates the changes requested by the Court and

2    discussed at last week's hearing.  Very briefly, just to

3    highlight it, it includes a description of the impact of

4    the Ponzi finding that the proposed -- excuse me, that

5    the plan proponents will be requesting.  That's in the

6    disclosure statement at Article 5(B)(2).

7            The second amended disclosure statement also

8    contains a description of how allowed secured claims

9    will continue to have liens on the collateral once the

10   collateral is transferred to the trust.  Your Honor,

11   that's in Article 5(D)(2), D as in David.  Your Honor,

12   in response to the Court's request in Article 3(F) of

13   the disclosure statement, there is a new chart that

14   summarizes the requested fees for estate professionals.

15   So that's debtor professionals and committee

16   professionals and the amounts paid to date.

17           I think that largely summarizes those changes

18   in response to the Court's topics from last week's

19   hearing.  I would point out, and Mr. Lesnick is on the

20   line, my understanding, Your Honor, in terms of other

21   takeaways from last week, Mr. Christensen has withdrawn

22   his request for an insert in the disclosure statement.

23   But as I said, Mr. Lesnick is on the line and can

24   provide his comments.

25           In addition, Your Honor, one other topic in

1 addition to the disclosure statement order and the

2 redline form of order shows it.  Your Honor, following

3 last week's hearing, when the Court assigned October

4 16th through 18th as our in-person confirmation hearing

5 trial dates, we obviously filled in those dates and

6 proposed in the disclosure statement order in Section 3

7 and Section 4, charts that outline various deadlines,

8 objection deadlines, discovery dates, and the like, for

9 a schedule that the debtors and the committee think

10 makes sense to try to get these cases to an efficient

11 confirmation hearing on the timeline outlined by the

12 Court.  And just a note, Your Honor, the plan proponents

13 shared those scheduling dates with Mr. Lesnick and Mr.

14 Simon on, I believe, late over the weekend, maybe Sunday

15 evening.

16          And so with that, Your Honor, the plan

17 proponents submit that the Second Amended Disclosure

18 Statement at -- is ready for approval, and we would

19 request that the Court approve it today so that we could

20 start soliciting votes.  Thank you.

21          THE COURT:  Very good.  Thank you, Mr. Gurule.

22 All right.  Why don't I next hear from Mr. Simon and Mr.

23 Lesnick about the specifics of any open issues?  I may

24 have some questions for each of them and then allow the

25 debtors and the committee a chance to just address point

1  by point any open issues.  And then to the extent there
2  are unresolved issues, the Court will rule on each of
3  them this afternoon.
4        So, Mr. Simon, I did read the additional
5  objection that you filed.  It looks like there were four
6  points plus the discovery timing issue.  I think I
7  generally understand each of the four points, but if
8  you'd like to elaborate or address any or all of them,
9  either supplementing or expanding on what was in the
10  papers, which again, I've read, I'd be happy to hear
11  from you today.
12        MR. SIMON:  Thank you, Your Honor.
13        For the record, Michael Simon, on behalf of
14  Wilmington Savings Fund.
15        I'll just jump into it with respect to the
16  first issue, which relates to substantive consolidation
17  relative to the original disclosure statement.  Both the
18  first and second amended disclosure statements add new
19  language concerning substantive consolidation of the
20  debtors who Wilmington has claims against.  The new --
21  the new language from the plan proponents provides that
22  the debtors or iCAP trustees can effectuate substantive
23  consolidation on filing a notice after Wilmington's
24  claims are resolved.  And it's not clear to me how and
25  when such consolidation would be litigated, determined,

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 149 of
335

1    and effectuated.

2        To me, the language is vague and not clear to

3    me whether consolidation would be determined as part of

4    confirmation or after confirmation.  I believe we should

5    have a clear understanding of that timing and process in

6    order to understand the scope of issues to conduct

7    discovery on and litigate in connection with

8    confirmation.  We provided proposed language that I

9    believe would resolve those issues by providing that the

10    iCAP trust can seek substantive consolidation by filing

11    a regularly noticed motion after Wilmington's claims are

12    resolved by a final order.  I believe that language is

13    appropriate and should be included and would ask that it

14    be included.

15        The second issue relates to the Ponzi findings

16    language.  We were not able to reach an agreement with

17    the plan proponents regarding the proposed modified

18    language on that point.  I believe the Court requested

19    that the plan proponents revise that language to

20    specifically disclose their intent with the preclusive

21    effect of the findings.  I don't believe that that

22    language that they included addresses their intent.  I

23    think the language that we proposed in our objection is

24    more appropriate as it discloses the intent of the

25    preclusive effect, that it may be and intended to be

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 150 of 335

1 binding in subsequent litigation in this bankruptcy

2 court. I think the language they proposed is vague by

3 not specifically describing the period of time that the

4 findings would apply to.

5 And I believe that our language better makes

6 clear to investors that by voting to accept the plan,

7 investors are voting in favor of this Court making the

8 Ponzi findings, which I think is particularly important

9 in these circumstances. I believe that the plan

10 proponents previously described some investors as

11 unsophisticated. And if investors are voting for a

12 determination that -- or for a legal presumption that

13 transfers they were received, were made with actual

14 fraudulent intent, it should be clear. And I can't

15 think of a good reason not to include our language.

16 The third issue relates to the liquidation

17 analysis that was first attached with the first amended

18 disclosure statement. I believe it should be revised to

19 add liquidation analyses on an estate-by-estate basis.

20 The current analysis only analyzes recoveries assuming

21 the estates are substantively consolidated in a Chapter

22 7. Consolidation will necessarily create winners and

23 losers, and creditors and investors might receive larger

24 recoveries in a Chapter 7 without substantive

25 consolidation. And I believe they should be informed of

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 151 of 335

1  their potential recoveries in that scenario without an

2  estate-by-estate analysis, and investors would be asked

3  to vote on consolidation without the information to

4  understand and analyze whether consolidation is

5  beneficial to them.  And I believe this is a change that

6  should not take a lot of time.  It's information that

7  the debtors have and analysis that they should have

8  performed.

9           Additionally, the liquidation analysis that is

10  included currently, I believe, should be revised to

11  expressly disclose that it assumes the cases are

12  converted and substantively consolidated.  Right now, it

13  just, essentially, says, this is what we estimate you

14  would recover in a Chapter 7 without explicitly

15  informing creditors, investors, that it's assuming all

16  of the debtors are substantively consolidated in a

17  Chapter 7.  I think it's a little misleading in that

18  respect and should be revised to make that assumption

19  clear.

20           The fourth issue that I have goes to

21  impairment.  Yesterday, I was informed by the plan

22  proponents that they intended to add certain language

23  concerning the impairment of secured creditor claims.

24  That language has been included in the debtor's recent

25  filings today.  I believe that language demonstrates

1    impairment.  It provides that the legal, equitable, and
2    contractual rights of the holders of allowed secured
3    claims will not be altered, except as provided in the
4    plan.  And if the plan wasn't altering our rights, it
5    would say -- as -- except as provided in the plan, it
6    would say, notwithstanding anything to the contrary in
7    the plan.
8              And to be clear, the plan alters our rights.
9    Wilmington's claims are deemed allowed under 502A.  And
10   if they were truly treated as allowed under the plan,
11   they'd be paid the sale proceeds upon the effective
12   date.  Instead, under the plan, a trust can
13   theoretically wait years post-effective date without
14   filing a claim objection, hold onto the proceeds, not
15   make a single payment to my client, and they're saying
16   that we're not entitled to vote on that.  And I don't
17   think that's right, especially when you consider the
18   case law that provides that Congress defines impairment
19   in the broadest possible terms and that any alteration
20   of rights constitutes impairment.  And so I believe we
21   should be treated as impaired so that we can vote on the
22   plan.
23             Those, I think -- I think that summarizes my
24   four issues with respect to modifications.  I did have
25   some concerns about the current discovery and

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 153 of
335

1  confirmation schedule, but it seems to me it might make

2  sense to address that later in the hearing if the Court

3  would like.  And if so, I would -- I would reserve the

4  opportunity to address that, if that's okay with the

5  Court.

6         THE COURT:  Okay.  Thank you, Mr. Simon.  All

7  right.  Just a few questions on each of your points.  So

8  I understand, and I think I agree with you about the

9  ambiguity of exactly when and how the effectuated sub-

10 con under the proviso that the debtor's out of work, I

11 guess, but your addition, I suspect is going to be

12 problematic for the debtors, because aren't you, kind

13 of, answering that ambiguity in a way that you -- what

14 your client wants to be the answer?

15        I mean, should -- shouldn't the plan

16 proponents get to answer and just elaborate on how they

17 think that should work?  So you've got a notice motion

18 and this is going to be litigated down the road.  That

19 is -- that is an answer, but maybe the debtors have a

20 different answer, right?

21        MR. SIMON:  They might.  I haven't -- I

22 haven't been provided with one that clarifies exactly

23 what they want.  And given that their language says

24 that, you know, the debtors that my client has claims

25 against aren't being substantively consolidated on the

1    effective date, I thought my language was consistent

2    with that.  But again, I don't know exactly what their

3    intent was and it wasn't expressly made clear to me.

4           THE COURT:  Okay.  But your answer kind of

5    assumes the answer is without -- assumes that your

6    answer is the right answer; is that fair?

7           MR. SIMON:  That is fair, Your Honor.

8           THE COURT:  Okay.  So 0.2, so on the Ponzi

9    shop, I'm looking on Page 146 of 216 on the red line

10   compilation file, that ECF number 1238.  I'm not sure it

11   -- so kind of focusing very specifically on the

12   additions, so the first sentence says, "The Ponzi

13   findings may have a preclusive effect in future

14   proceedings before the bankruptcy court."

15          I think that's true.  They may, they may not.

16   I think I'll decide that.  And Litigation number 2 is

17   what I described at the prior hearing.  Then it says,

18   "The plan proponents fully reserve the ability to

19   advance that legal position in subsequent litigation."

20   So that -- that's their intent.

21          They're reserving the right to argue there is

22   preclusive effect and, like any argument, that's

23   probably waivable.  And if they don't -- you know, and a

24   particular -- say there's a defendant who everyone could

25   see didn't receive notice of anything, I think the plan

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 155 of
335

1  proponents could -- or the liquidation trustee could

2  say, well, we're not arguing that entity's bound.  We're

3  just dropping the argument.

4         Then it says, "Moreover, the bankruptcy court

5  is determining that the iCAP Enterprise operated as a

6  Ponzi scheme."  That's what the plan proposes.

7  Therefore, the Ponzi findings, if asserted and relied

8  upon, may create a legal presumption.  I mean, I think,

9  if anything, that's soft, because, as of Friday, we now

10 have a precedential Ninth Circuit Court of Appeals

11 updating that.

12        It doesn't say, may.  It says, does, like,

13 repeatedly.  So accordingly, any such transfer could be

14 avoided and recovered as an actual fraudulent transfer.

15 I think that's -- that is completely true, particularly

16 in light of the EPD investment opinion from Friday.

17        So I just -- getting buried in the weeds, why

18 is this insufficient, this paragraph?

19        MR. SIMON:  Because I believe --

20        THE COURT:  What's missing from this?  I mean,

21 I guess the voting point that that -- I mean, anyone

22 who's going to vote is going to understand this is part

23 of the plan.  So I -- I'm just at -- kind of at a loss

24 about -- like, it says what could happen.  I mean, if

25 anything, it soft pedals the law on the presumption,

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 156 of 335

1   given EPD investment.  And it, I think, very clearly
2   reserves the right to argue there's preclusion.  So I --
3   I'm just kind of at a loss about what more would be
4   needed in this particular paragraph.
5        MR. SIMON:  I thought that the plan proponents
6   were to specifically describe their intent regarding the
7   preclusive effect.  And I think the language, that they
8   fully reserve the ability to advance that position, is a
9   little soft, and it would be better for investors to
10  understand strong -- with stronger language that they --
11  that the plan proponents intend such preclusive effect.
12  And I also just believe that it's meaningful to
13  hypothetical investors who have been described -- some
14  of who have been described as unsophisticated -- to
15  understand that by voting to accept the plan, they're
16  voting in favor of the Court making the Ponzi findings.
17       And I think some express language to that end,
18  which was included in our objection, would be helpful.
19  I just think the language that we included would be
20  helpful and it -- see no reason why -- you know, why it
21  wouldn't be included or why it would be worse than what
22  the plan proponents have been -- have proposed.
23       THE COURT:  Okay.  I understand.  Thank you,
24  Mr. Simon.  So on the liquidation analysis issue, I
25  understand your point about, if the liquidation analysis

1   is predicated on a Chapter 7 trustee also seeking sub-
2   con, maybe just a sentence that discloses that
3   assumption would be helpful.
4        What I'm not following as well is the notion
5   that we need this in a state-by-state liquidation
6   analysis.  And, I guess, isn't that kind of inconsistent
7   with the predicate of sub-con?  So sub-con says, we've
8   got a big plate of spaghetti all over the floor, right?
9   And dividing it on a precise -- a state-by-state basis
10  would be unduly complicated.  There's intertwining of
11  affairs of the various estate.
12       And, you know, this is a Ninth Circuit
13  decision In re:  Bonham that it's more efficient to
14  every -- and doing it that way kind of assumes the
15  answer and we haven't answered that question yet.  But
16  the debtor's position is that the standards for sub-con
17  are met, which requires some intermingling and some
18  complexity, in terms of breaking things out on a state-
19  by-state basis.
20       And here, you know, there may be, for some
21  debtors, title to property in particular names, but
22  there's lots of intercompany claims and a state-by-state
23  analysis would need to figure out which intercompany
24  claims should be given respect in what happens in terms
25  of distributions on those intercompany claims, which

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 158 of 335

1  could be kind of complicated.

2  So it seems to me that doing -- do -- saying

3  they need to do it in a state-by-state liquidation

4  analysis, is -- this -- deeply inconsistent with the

5  very idea of sub-con, which is, again, we've got the

6  plate of space spaghetti on the floor and can't really

7  sort it out.

8  So how do you reconcile those two things?

9  MR. SIMON:  I start with the standard under

10  1125(a), that we're looking at what information a

11  hypothetical investor would want to make an informed

12  judgment.  And it seems to me that a hypothetical

13  investor would want to know whether they would do better

14  under sub-con versus the plan.

15  And it seems to me that the debtors have this

16  information and would've performed this analysis, that

17  they would've performed the analysis of, these are the -

18  - you know, the assets and the claims of each estate

19  with respect to intercompany transactions.  I would

20  think that they would've done sources and uses analysis

21  --

22  THE COURT:  But -- so -- Mr. Simon, can I just

23  -- can I stop you?  Is -- isn't the whole cost of that

24  exercise, which is not free -- I mean, isn't avoiding

25  that cost part of the reason we do sub-con?  Is that,

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 159 of 335

1    like, going through that exercise would be extremely

2    laborious and costly.  Really, no one benefits.

3    Everyone loses, because it's just like the forensic

4    analysis, if it can even be completed at all, it has to

5    be paid for.  And we do sub-con, in part, to just avoid

6    the difficulty of that exercise, right?

7          So you're saying they should have done this,

8    but part of the reason for sub-con is we may literally

9    be unable to do it, but if we could do it, it would cost

10   hundreds of thousands of dollars, and that would deplete

11   recoveries for everyone, so let's just sidestep that,

12   right?

13         MR. SIMON:  I thought the analysis would be

14   done on the front end in order to determine that it --

15   who would benefits and that it benefits all creditors,

16   which I believe is something that substantive

17   consolidation considers.  And, I mean, I would love to

18   know if the debtors did that analysis, because if they

19   did, it should be easy to include.

20         THE COURT:  Okay.  That's -- that -- that's a

21   fair point and I'll hear from the debtors on that.

22   Okay.  So next on the impairment issue, I see your point

23   about the language.  We might be overreading what the

24   debtors intend by that language.  It does seem to me

25   like there's a substantive issue that's probably a

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 160 of
335

1    confirmation issue.  And I'm just curious -- and maybe
2    I'll end up writing about this -- so your basic argument
3    is that, well, the plan defines what's allowed, so no
4    one gets paid until we have a capital-A-allowed claim,
5    and there's a claim objection period that needs to run
6    before we have a capital-A-allowed claim, and
7    distributions are only made on capital-A-allowed claims.
8         So therefore, by requiring that a plan -- that
9    a particular claim meet the criteria to be the defined
10   term, "allowed claim," the plan in impairing that claim.
11   I don't know that I've ever seen, particularly in any
12   sizeable Chapter XI case, a case that didn't limit
13   distributions to capital-A, defined-term-allowed claims.
14   And I'm just curious if you have any authority that,
15   like, that's impairment.
16        Because if that's impairment, a whole lot of
17   plans for years have been impairing classes of claims
18   and everyone's kind of been doing it wrong if that's the
19   law.  So I'm -- and maybe that is in the Ninth Circuit.
20   And I know the threshold for impairment is very low, but
21   I -- I'm not aware of any authority that -- requiring
22   that the conditions for a capital A allowed claim be
23   satisfied, constitutes impairment.  So do you have a
24   case that says that?
25        MR. SIMON:  I think it fits under the Ninth

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 161 of
335

1    Circuit.  I don't have the case right in front of me,

2    but I know the Ninth Circuit has been clear that any

3    alteration of the rights constitutes impairment, and if

4    the Court would just bear with me one second while I

5    look for another set --

6              THE COURT:  Right.  I know there's L&J Anaheim

7    which says that.

8              MR. SIMON:  Yes.

9              THE COURT:  I'm definitely aware of that.  I

10   just -- I don't think I've ever seen a case where

11   someone's argued that the restriction on distributions

12   until the capital A allowance occurs is impairment under

13   the plan.  Like, that's an interesting concept.  And

14   again, if that's -- if that's right, I mean, that's

15   almost every plan, right?  I think 90 percent of plans

16   do things that way.  So I -- that's a remarkable -- and

17   maybe that's right.  I just don't know.  Like, I don't

18   know that I've ever seen a case on either side of that

19   issue, so I'm just curious if you've seen a case

20   specifically dealing with that.  That argument.

21             MR. SIMON:  I haven't seen -- oh.  I haven't

22   seen a case specifically dealing with that argument,

23   Your Honor.  But I would like to just note one important

24   nuance, which is that the definition of allowed claim

25   under the plan is different from the definition of

23-01243-WLH11   Doc 1704-1   Filed 01/16/26   Entered 01/16/26 15:05:28   Pg 162 of
335

1    allowed claim under the code.  And so I believe that

2    constitutes impairment and an alteration of rights.

3            And to take a step back, I hear the Court

4    about this these types of provisions often being

5    included in plans, and I'm not suggesting that the claim

6    objection process is somehow inappropriate.  I'm just

7    merely saying it constitutes an alteration of rights,

8    and therefore where impaired, we should be allowed to go

9    on the plan.

10            THE COURT:  Okay.  I understand that.

11    Finally, just so I -- you put a pin on the timing issue,

12    but since I've got you, I want to cover that as well.

13    So this Ninth Circuit decision from Friday In re:  EPD

14    investments, the two-one panel holds that there is no

15    subjective element associated with the Ponzi scheme

16    determination.  A fact finder here, me, deciding whether

17    there is a Ponzi scheme, that there's no mens rea

18    element.  There's no requirement of proving intent, ill

19    intent, by the founder of the company.  And instead the

20    circuit holds that the fact finder can possibly just

21    rely on what it calls objective factors.

22            And on Page 18 of the Fifth opinion, the Ninth

23    Circuit produces this, quote, two essential elements.

24    One, the funneling of money from new investors to pay

25    old investors.  And two, no legitimate profit making

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 163 of
335

1   business opportunity exists for investors.

2        So of those two, I mean, point one seems like

3   you just have bank records.  Like, the money moves

4   however it moved, right.  And if the debtors have

5   documents that indicate the funneling of money to new

6   investors to pay old investors, that again is an

7   objective factor.  It is easy to establish.

8        Two is probably a little softer, but the EPD

9   investment opinion does have quite a lot of discussion

10  about what it means for there to be no legitimate profit

11  making business opportunity for investors.  But given

12  now that the Ninth Circuit has provided some very

13  important clarification on the elements to find a Ponzi

14  scheme, what sort of discovery do you think you need

15  about either of those two considerations?

16       MR. SIMON:  Well, not having reviewed that

17  case off the top of my head.

18       THE COURT:  Yeah.  You definitely should.  I

19  think this is a -- I think it's an important -- I mean,

20  it's binding on this Court, so I have to follow it.

21       MR. SIMON:  Understood.  I mean, it seems to

22  me that those elements would need to be analyzed, and

23  discovery would need to be obtained on those elements as

24  they apply to the specific debtors that my client has

25  claims against.  The disclosure statement and the expert

1    report that was previously provided by the debtors just

2    generally lumps all 34 states together, and I believe

3    does not contain a lot of specifics on the two debtors

4    that my clients have claims against, and against a lot

5    of the individual debtors.  It really kind of lumps a

6    lot of them together and doesn't give specifics about a

7    lot of individual debtors.

8            So certainly I would want to do discovery

9    related to, you know, those elements as to the debtors

10   that my client has claims against.  But to take a step

11   back, I -- it's important for me to note that we

12   recently filed an adversary complaint for declaratory

13   relief that I believe puts the stuff at issue.  And it

14   seems to me it would be appropriate for those Ponzi

15   issues as to my client to be dealt with in the adversary

16   proceeding instead of on this, you know, truncated

17   discovery and confirmation schedule.

18           THE COURT:  Okay.  So you -- your discovery is

19   kind of similar to what Redmond Funding has been doing

20   through the 2004 request.  Just seeking debtor specific

21   -- you -- your borrower entity specific information

22   relating to the -- those entities, and how did money

23   flow through those entities, and was there -- in the

24   Ninth Circuit were -- Ninth Circuits   were there

25   legitimate profit making business opportunity at the

1   level of those particular debtor entities?

2            MR. SIMON:  Yes, Your Honor.

3            THE COURT:  Okay.  Okay.  I understand.  Thank

4   you, Mr. Simon.

5            Mr. Lesnick, I didn't see any further filings,

6   and according to Mr. Gurule, Mr. Christensen no longer

7   wants to have the insert, but I haven't had a chance to

8   read anything, obviously, but I'd be happy to hear from

9   you if you've issues you'd like to address today.

10           MR. LESNICK:  Thank you, Your Honor.  Matthew

11  Lesnick for Chris Christensen.  Mr. Gurule is correct.

12  After some back and forth about potential language for

13  an insert with the planned proponent, Mr. Christensen

14  has elected to not include an insert into the disclosure

15  statement.  So that issue is no longer an issue.

16           The -- as to the only other issue I think that

17  we have a concern about is the discovery schedule, and

18  as Mr. Gurule pointed out, or informed the Court, the

19  proponents circulated their proposed discovery schedule.

20  I think it was Sunday.  We emailed over the weekend to

21  arrange and meet and confer, as the Court suggested last

22  week, and we set up the time at 4:30 this afternoon to

23  meet and confer about the discovery schedule.  So I'd

24  like an opportunity to discuss that with the plan

25  proponents.  But I share some of the same concerns that

1    Wilmington's -- Wilmington does about the discovery

2    schedule.

3            And just as an example, under the proposed

4    schedule, the -- this is just one example.  The parties,

5    and particularly the debtors, their deadline to complete

6    production of documents would be September 13th.  And

7    we're expecting that there will be probably access to a

8    data room or something of that sort, and we're expecting

9    it to include hundreds of thousands of documents I would

10   expect, or at least pages of documents.  May -- maybe

11   more.  And the deadline to complete fact depositions

12   would be seven days after that, and so it is not

13   possible to review the documents that could be witnesses

14   for the depositions and conduct any depositions we need

15   to do within a seven-day period.  That's just -- it --

16   it's impracticable.

17           And to address the question that the Court has

18   for Wilmington's Counsel about what sort of discovery in

19   light of the Ninth Circuit opinion, would we even need.

20   Some example.  I guess some examples would be this.  I

21   believe Your Honor said that the Ninth Circuit opinion,

22   which I don't have in front of me, that one of the

23   factors had something to do with whether there was a

24   realistic possibility of investors making a profit on

25   the -- or something to that effect, on the venture.

 1          And so in order to determine that you need to
 2     look at each investment individually.  What the
 3     investment was in, the real estate project, the prospect
 4     for making a profit on that project, and the types of
 5     information that would be relevant to that would be all
 6     the information about the costs of acquisition, the
 7     costs of development, the projected appraised value of
 8     the project, and things of that nature.  There's
 9     probably expert testimony required on valuation from
10     appraisers.  There's probably expert testimony required
11     possibly on construction issues, and certainly on real
12     estate investment issues.  And there will be fact
13     witnesses who will be able to testify about what people
14     at iCAP knew and believed about each of these projects.
15          And so it's a tremendous amount of information
16     and the tremendous number of issues that have nothing to
17     do even with intent, but do have to do with projections,
18     and what was, you know, realistic or what could be
19     expected.  So I don't see how that type of discovery can
20     be done on that type of time period.  And I appreciate
21     the Court's comments last week about the need for
22     expediency here, but this just does not seem practical
23     to me.
24          THE COURT:  Okay.  Thank you.  Mr. Lesnick.
25          Would other Counsel on the phone like to be

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 168 of 335

1    heard about anything relating to the disclosure

2    statement, the schedule and the order for related

3    matters, before I turn things back to the debtors and

4    the attorney?

5         Okay.  Mr. Gurule?

6         MR. GURULE:  Thank you, Your Honor.  For the

7    record, Julian Gurule for the debtors.  And I'll just

8    tick through the list I have in response.

9         Your Honor, on the description of subcon as it

10   relates to the, what we call the excluded debtors, the

11   Wilmington debtors.  Our intention, Your Honor, we'd be

12   interested if the Court has any sort of drafting

13   suggestions, but our overriding intent here was actually

14   to sidestep the issue and accommodate the Wilmington's

15   position with respect to subcon for its debtors.  And,

16   as always, we're balancing competing interests, in

17   Chapter 11 especially, as the debtors, and we're looking

18   for an efficient way, if the Wilmington issues are

19   resolved with respect to those debtors, to bring those

20   estates, essentially, Your Honor, into the -- into the

21   subcon without having to notice it, you know,

22   potentially litigate it, and other things.

23        That was the -- that was the intent of being

24   able to just file a notice and then bring those in.  If

25   the Wilmington issues were resolved, as a -- as our

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 169 of 335

1  proposed language states.  But, Your Honor, that --

2  that's our position with respect to that one.

3          Your Honor, on the --

4          THE COURT:  Okay.  I --

5          MR. GURULE:  Yeah.

6          THE COURT:  Can I -- so I'd like to just stop

7  each -- on each one particularly.

8          MR. GURULE:  That makes sense.

9          THE COURT:  So on that, you know, I thought

10 about drafting.  So it sounds like the plan proponent's

11 intent is not to do the answer that Mr. Simon drafted in

12 his proposed insert is not the same answer that the plan

13 proponents have.  So just would it work if -- so I'm

14 looking at the language.  As applicable, reserve the

15 right to effectuate and just insert.  And I think both

16 the plan and the disclosure statement without the need

17 for further motion practice.  And then it's clear what

18 the intent is, and if Wilmington believes it should

19 object.

20         MR. GURULE:  Yes.

21         THE COURT:  Then it should object.  Would that

22 work?

23         MR. GURULE:  Perfect.  Yes, Your Honor.

24         THE COURT:  Okay.  Okay.  I think that clears

25 that up, and that -- that's what I heard you say.  If

23-01243-WLH11   Doc 1704-1   Filed 01/16/26   Entered 01/16/26 15:05:28   Pg 170 of
335

1  so, that eliminates the ambiguity.  It might not be the

2  answer Mr. Simon had, but it is an answer, and if that's

3  the answer, maybe we just say it expressly so.

4          MR. GURULE:  Okay.

5          THE COURT:  Okay.  With --

6          MR. SIMON:  Your Honor, I'm --

7          THE COURT:  Please go ahead, Mr. -- Mr. Simon.

8          MR. SIMON:  Pardon the interruption.  I'm

9  Michael Simon on behalf of Wilmington Savings Fund.  I'm

10  not -- I'm not clear if under the Court's proposal, the

11  plan proponents would essentially be getting a finding

12  of substantive consolidation when the plan is confirmed

13  such that they could later file a notice to effectuate

14  it, such that we would have to do discovery on it before

15  the confirmation hearing.

16          Could --

17          THE COURT:  I think that's -- I think that's

18  what Mr. Gurule said.  So I don't know, and it's not my

19  proposal, it's the plan proponent's proposal.  I don't

20  have a proposal.  I'm just trying to help.  But it --

21  what I hear -- heard Mr. Gurule say is, yes, that they'd

22  be litigating sub con presumptively.  The excluded

23  debtors would be excluded, but the debtors or the

24  liquidation trust, whoever takes over the estate post

25  confirmation, would have the ability to come back later

23-01243-WLH11   Doc 1704-1   Filed 01/16/26   Entered 01/16/26 15:05:28   Pg 171 of
335

1  and essentially flip them into the sub con.  Which --

2  without relitigating, without reopening the door on

3  this.  So I think -- not saying today whether that works

4  or that -- that's the right answer, but I think that is

5  exactly what they -- Mr. Gurule was saying they'd like

6  to do.

7          So if --

8          MR. SIMON:  Understood.

9          THE COURT:  -- if your client opposes that, I

10  think you need to do what you need to do to either say

11  that's a bad mechanic or substantively that doesn't

12  work.

13          MR. SIMON:  Understood.  Thank you, Your

14  Honor.

15          THE COURT:  Okay.

16          MR. GURULE:  Your Honor, (inaudible).  I think

17  for the record, Your Honor, if I may.  Julian Gurule.

18  Your Honor, I -- our intention was, if we resolve, this

19  is to leave open the potential, hopefully, and we

20  welcome these discussions with Wilmington.  Just to be

21  clear, if we can consensually resolve Wilmington's

22  objection we can bring those debtors in, and sort of in

23  that sense, like a toggle into the sub con.  If that

24  makes sense, Your Honor.  But I --

25          THE COURT:  So I guess -- say things aren't

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 172 of
335

1   resolved and that Wilmington's issues are litigated in

2   the context of the adversary proceeding or otherwise,

3   and there's -- you know, whatever that result is, are

4   you still reserving the right to, I guess, forcibly

5   toggle them into sub con?  Or would it only be if

6   there's a broader resolution, which is always a good

7   thing to shoot for, then in that consensual scenario,

8   you'd flip the switch?

9           MR. GURULE:  I would say, Your Honor, that

10  we'd only seek to consolidate those entities if we have

11  a resolution with them, Your Honor.  Not -- we're not --

12          THE COURT:  I -- (inaudible) consensual -- a

13  deal.

14          MR. GURULE:  (inaudible) resolution.  Yes,

15  Your Honor.

16          THE COURT:  Okay.  Well, Mr. Simon should

17  definitely like that answer, I think.  So my drafting

18  suggestion, just doing this on the fly, would be to

19  right -- reserve the right to effectuate without further

20  motion practice substance consolidation after the

21  claims, and then add, before are resolved or

22  consensually resolved.  Maybe with -- maybe with the

23  holders of such -- are consensually resolved with the

24  holders of such claims.

25          So Mr. Simon, that should be an answer I would

1   think you'd like a lot.

2          MR. SIMON:  I appreciate it.  Thank you, Your

3   Honor.

4          THE COURT:  Okay.

5          Does that language work, Mr. Gurule?

6          MR. GURULE:  Yes, Your Honor.  Thank you.

7   Appreciate it.

8          THE COURT:  Okay.  Okay.  So the next point is

9   the Ponzi findings?

10          MR. GURULE:  Ponzi finding.  Your Honor, we

11   submit that if the Court walked through the additions on

12   the -- on the intent of the plan proponents.  Only thing

13   I would add, Your Honor -- well, a couple of things.

14   One is in Wilmington's latest objection, they say that

15   we did not provide this language.  We did, in fact.  Ms.

16   Perez emailed it to Mr. -- Mr. Simon on August 23rd at

17   12:21 Pacific Time.

18          Your Honor, I think in terms of the substance

19   of our language, as Your Honor read it in the record, it

20   provides a pretty clear statement about what our

21   assertions are going to be with respect to the Ponzi

22   finding of what we're looking for.  And I would -- I

23   would only add, Your Honor, that just to clarify, and

24   part of the reason we drafted it the way we did, is

25   ultimately it's going to be right the trust and the co-

1   trustees that really assert these types of claims.  So

2   they do need some flexibility, and we are not them, in

3   terms of the views that they're going to take on the

4   presumption.  If that makes sense, Your Honor.

5           THE COURT:  It does.  Thank you, Mr. Gurule.

6   I don't have any questions you about --

7           MR. GURULE:  Okay.

8           THE COURT:  -- this sentence.

9           MR. GURULE:  Okay.  Your Honor, with respect

10  to the liquidation analysis, I -- Your Honor, I think I

11  heard you say, and this makes sense to me, that we can

12  include an additional sentence just making clear that

13  the Chapter 7 scenario was done on a -- assuming a sub

14  con in the Chapter 7.  But that's fine.

15          Your Honor, with respect to the rest of it, I

16  think there was a question to us.  We have not done,

17  Your Honor, and we submit that it would be enormously

18  burdensome, delay expense and the like for the plan

19  proponents to do an entity-by-entity analysis for a

20  liquidation analysis to compare it to compare it to the

21  liquidating plan -- liquidation -- excuse me.  The

22  liquidating plan analysis.

23          Your Honor, I think it is also overly

24  confusing for investors if we were to do it, outstanding

25  the expense, and moreover, Your Honor, I think it's much

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 175 of 335

1   more of a apples-to-apples comparison, I submit, to do a

2   sub con plan with a plan analysis, recovery analysis,

3   and a sub con liquidation analysis on that topic.

4           And then finally, Your Honor, impairment.  I

5   was struggling a bit with exactly what Wilmington's

6   point is when it comes to impairment.  I think the

7   discussion with the Court made it a bit clearer to me,

8   Your Honor, consistent with the Court statements.  We're

9   -- I think this comes down to capital A allowed claims

10  and the ability of Chapter 11 debtors, plan

11  administrators, liquidating trustees, to do ordinary,

12  you know, 90-plus percent of cases claims reconciliation

13  and objection processes.

14          Your Honor, I submit that if capital -- so if

15  the capital A allowance constitutes impairment then

16  we're all in a lot of trouble, because I don't know how

17  you'll ever reconcile claims in a Chapter 11 case.  So

18  that I think our language works, and I think substance

19  of impairment anyway, Your Honor, is a confirmation

20  issue.  I think the disclosure statement adequately

21  describes our approach.

22          THE COURT:  And so on that point, Mr. Gurule,

23  can I ask you.  So I think you're right this is a

24  confirmation issue.  Wilmington in its papers filed

25  earlier today makes the argument, which I do understand

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 176 of
335

1  that, well, this affects whether we vote or not.  And

2  essentially, if we don't decide this now, and the

3  disclosure statement goes out, and there's not a broader

4  resolution, and Wilmington wins, and is impaired,

5  arguably there's a little bit of a do-over.  And I guess

6  my question for you is, do the debtors kind of

7  understand, and are you -- I -- I'll hear from Mr.

8  Kornfeld too, but do the plan proponents understand and

9  are you willing to proceed with the risk that could

10  happen?  I mean, that's -- I think that's always a risk

11  whenever a class is designated on impaired.  I mean,

12  maybe you're wrong, right, and then you kind of --

13          MR. GURULE:  Yeah.

14          THE COURT:  -- have to start over as to that

15  class.

16          MR. GURULE:  Your Honor, I understand the

17  question.  I -- my thinking, Your Honor, is we would not

18  -- I know it's seen this in other plans in other

19  contexts.  Even if it was found that that class was

20  impaired, I think we could meet the cram down

21  requirements with respect to it.

22          Is that responsive, Your Honor?

23          THE COURT:  It is.  Yes.  Right.  Okay.  So

24  that would be our -- we don't need to resolution,

25  because just assume they vote no.

1          MR. GURULE:  I -- they are not ever going to

2     be my impaired consenting class, so I'll just cram down.

3          THE COURT:  Okay.  Yes.  Got you.  Okay.  I

4     understand.  Okay.  And then the finally, if you want to

5     talk about the timing issues of both Mr. Simon and Mr.

6     Lesnick, re.

7          MR. GURULE:  Yes.  Thank you, Your Honor.  We

8     submit that the confirmation schedule in light of the

9     Court setting the October 16th date works.  I think,

10    Your Honor, coming out of the hearing last week, I think

11    we will have at a -- well, not to prejudge, Your Honor.

12    We request a disclosure statement order so that we can

13    get soliciting and lay out our sort of Section 3

14    disclosure statement dates, dealing with the

15    confirmation hearing, confirmation objection deadlines,

16    Your Honor, voting record date, and the like.

17          Your Honor, I hear Mr. Lesnick on an

18    opportunity to meet and confer on the discovery issues.

19    We have not had a chance to do that yet, and as he

20    mentioned, we're doing that in about an hour.  So Your

21    Honor, if we could get the confirmation hearing and the

22    DS order, assuming the Court is going to grant it today,

23    locked in and out so we could start the soliciting, I

24    think we could address scheduling issues in a -- in a

25    scheduling order after we meet and confer.

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 178 of
335

1          THE COURT:  Okay.  Thank you, Mr. Gurule.  I

2   understand.

3          Mr. Kornfeld.  Anything -- and I just

4   apologize for always overlooking the committee as co-

5   plan proponent, which you are in this case.  So I'd be

6   happy to hear anything else you'd like to add or expand

7   on regarding any of these issues today.

8          MR. KORNFELD:  Thank you, Your Honor.  Jay

9   Kornfeld for the committee.  I really have nothing to

10   add.  I appreciate the Court's approach, and support

11   what Mr. Gurule has had to say to you.

12          THE COURT:  Okay.  Thank you, Mr. Kornfeld.

13          All right.  So the Court will just address in

14   order the issues that have been raised this afternoon,

15   first relating to Wilmington's concerns about the sub

16   con language and the exclusion.  I think with the

17   additional language that Mr. Gurule and I discussed,

18   that will clarify how the debtors intend that mechanic

19   to work, both for as a substantive matter and as a

20   disclosure matter.  So I -- if the debtors can make the

21   changes discussed to both the plan and disclosure

22   statements, the Court concludes that sufficiently

23   resolves that objection.

24          I'm going to overrule the objection as it

25   relates to the Ponzi findings.  The Paragraph I

1  referenced from the redline is consistent with what the

2  Court contemplated last week when we discussed this

3  issue.  I think this adequately discloses the risk of

4  possible preclusive effect.  I think it adequately

5  discloses a reservation of rights.  As Mr. Gurule said,

6  the intention really would be a liquidating trustee's

7  intention that that doesn't exist, but I think the

8  reservation of rights puts everyone who's receiving the

9  disclosure statement on notice that that could be the

10  legal position taken down the road.  And I think if

11  anything, the disclosure statement is slightly soft in

12  terms of the consequences of the presumption in light of

13  Friday's decision by the Ninth Circuit Court of Appeals.

14  So taken as a whole, that added paragraph, I think,

15  sufficiently addresses this issue, so the objection will

16  be overruled.

17            As it relates to the liquidation analysis, I

18  would like if the plan proponents can add just a

19  sentence directly and expressly disclosing that the

20  Chapter 7 liquidation analysis was prepared.  Making an

21  assumption that the Chapter 7 trustee would seek

22  substance consolidation as the plan proposes.  I think

23  that point's well taken.  If that's what's happening,

24  let's just say that's what -- what's happening.

25            I disagree with the suggestion that the state-

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 180 of
335

1   by-state liquidation analysis is necessary in this

2   context.  If the debtors had already done the work on

3   that, that would be a different story, but I accept Mr.

4   Gurule's representation that the work has not been done

5   on that point.  And it's the Court's view understanding

6   that part of the reason the Court -- that work hasn't

7   been done is it would be extremely difficult, if

8   feasible or possible at all, and that one of the major

9   benefits to stakeholders collectively of substance

10   consolidation is to avoid the attendant professional

11   fees.  So I do not think that's required and am not

12   going to require that be included in the liquidation

13   analysis.

14         As it relates to impairment, Mr. Simon's

15   argument is very interesting about the mechanism of

16   allowance, and that may be worth an opinion if that

17   issue remains open when we get to confirmation.  I think

18   it's ultimately a confirmation issue that debtors

19   understand that they're taking the risk that I later

20   find that the class is impaired.  It sounds like the

21   debtors will argue, well, that doesn't really matter

22   because we have an impaired consenting class and we

23   satisfy cramdown anyway and don't need to resolicit.

24         The Court has seen that argument made in other

25   cases.  I'm not going to decide definitively today

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 181 of
335

1    whether that works or not, but I ultimately think this

2    is a confirmation issue that's best addressed at the

3    confirmation stage.  I think the plan adequately

4    discloses what the debtor's intentions are with respect

5    to this point, which satisfies the 1125 standards.

6                 Finally, as it relates to timing, the Court is

7    not prepared at this point to move the October 16th

8    confirmation hearing begin date as proposed by

9    Wilmington Trust.  The Court continues to believe that's

10   an appropriate deadline in the context of these cases.

11   Sounds as though the parties will be meet -- meeting and

12   conferring about the specific mile posters in between

13   today and October 16th, which sounds like a good idea.

14   I was going to propose some language in that paragraph

15   of the disclosure statement that might allow some

16   flexibility here.  So given that I don't have specifics

17   about individual dates before me yet, now the parties do

18   intend to meet and confer, I'll let that process play

19   out.  Again, it needs to fit within the broader confines

20   of we're starting a confirmation hearing on October

21   16th.

22                 Okay.  I had some very minor edits I'd like

23   made to the proposed disclosure statement order and

24   perhaps one slightly more substantive thing.  And

25   unfortunately, I'm working off the redline that was

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 182 of
335

1  attached to today's filing, so the pagination might be
2  slightly different in the final document, but I'll just
3  click through, again, very minor drafting comments.  In
4  findings and conclusions, this Paragraph A, Jurisdiction
5  and Venue, it looks like there's, at least on the
6  redline, some stray spaces between on the third line in
7  the reference to Judicial Code Section 152(b), there's
8  some stray spaces between the two, and then between the
9  two and the big A that can get closed up.
10         Ordering paragraphs.  I'm -- again, I'm on
11  Page 30 of 45 on the redline.  It's just Paragraph 1.
12  The motion is granted.  I always prefer to have just a
13  specific ECF docket number reference in bracket right
14  after the motion, so it'd be the motion, bracket, ECF
15  number, insert the applicable docket reference, close
16  bracket, is granted.
17         Final non-substance comments.  Paragraph 32,
18  at the very end, "The Court shall retain jurisdiction,"
19  can just be, "The Court retains jurisdiction."  So I
20  really don't like the word shall, and we can have a
21  little more declarative sentence.
22         My thought on the schedule is -- in Paragraph
23  4 of the redline, is I was going to suggest that we add
24  a sentence indicating that the plan proponents can agree
25  to modify or extend any of these dates and deadlines as

1  to any particular counterparty by written agreement,

2  which I really just contemplated confirming email, with

3  such counterparty without the necessity of a further

4  order.  I absolutely recognize with any discovery

5  process, you know, there may be extensions by a couple

6  of days.  Deposition schedules may slip.  So my intent

7  definitely is not to freeze any of this in stone, and I

8  think the plan proponents should have the flexibility to

9  modify those dates.

10        And then I also was going to suggest a

11  sentence to the effect of the schedule does not preclude

12  any party from filing a motion for an extension or

13  continuance upon sufficient cause shown.  I -- Mr.

14  Simon, Mr. Lesnick, I don't want to get that motion

15  tomorrow.  I think we need to start getting down the

16  road, but if it's clear down the road that it's just

17  absolutely impossible to get done what needs to be done,

18  I did want to leave that valve for the parties to come

19  back to the Court.

20        So, Mr. Gurule, I don't know if those

21  additions are helpful in terms of the maintenance

22  control process you mentioned or whether it would be

23  better just to strip this out, but if the debtors would

24  like to at least have that discovery schedule fleshed

25  out, and maybe you can tweak it in the meet and confer

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 184 of
335

1   this afternoon, and then have some -- two sentences

2   allowing some flexibility for the parties to just

3   amongst themselves tweak the dates if necessary, and

4   then reserving other party's rights to come back to

5   court if we have a problem with the schedule.  I -- I'd

6   be prepared to sign that order.

7         MR. GURULE:  Thank you, Your Honor.  So just

8   for clarity, so it's Number 4 of the redline that I'm

9   looking at, the chart confirmation discovery schedule.

10   That stays in, but with the clarification that you just

11   added on the record in addition?

12         THE COURT:  Yeah.  Yeah.  And if you get off

13   the hearing with me and have your meet and confer, and,

14   you know, maybe September, Friday the 13th, it's a bad

15   day to do anything, becomes, you know, Saturday the 14th

16   or whatever, if everyone on the meet and confer is in

17   agreement, you can just change that date now if it -- if

18   it is -- if it is moving in a way that is helpful to

19   your adverse parties.

20         I don't want moving backwards, right?  Would

21   be bad.  But if Mr. Lesnick convinces you to move things

22   forward, that kind of benefits everyone, and then I am

23   granting now the ability of the plan proponents to agree

24   down the road with specific parties, be it Mr. Lesnick,

25   Mr. Simon, whomever, to further refine the schedule

23-01243-WLH11   Doc 1704-1   Filed 01/16/26   Entered 01/16/26 15:05:28   Pg 185 of 335

1   without needing to come see me.

2           MR. GURULE:  Right.  And they can, of course,

3   as you said, bring up -- ask the Court to move the dates

4   themselves.

5           THE COURT:  Yes.  And I'd like just a sentence

6   saying that expressly, so --

7           MR. GURULE:  Okay.  Okay.  So we'll go with

8   these dates unless in the meet and confer we can get to

9   something different that works for the parties.  Okay.

10  Thank you, Your Honor.

11          THE COURT:  So with those that -- a handful of

12  additional changes discussed on the -- discussed on the

13  record today being made to the plan and disclosure

14  statement is applicable, and then those handful of

15  revisions to the order, the Court is prepared to grant

16  the motion to approve the disclosure statement,

17  solicitation, voting procedures, objection procedures,

18  and related relief and enter a revised order once that

19  gets emailed and uploaded with the Court.

20          Anything further to cover today, Mr. Gurule?

21          MR. GURULE:  No.  Thank you, Your Honor.

22          THE COURT:  Okay.  Mr. Kornfeld?

23          MR. KORNFELD:  No.  Thanks, Your Honor.

24          THE COURT:  Okay.  Mr. Simon?

25          MR. SIMON:  No.  Thank you, Your Honor.

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 186 of 335

1          THE COURT:  Okay.  Mr. Lesnick?

2          MR. LESNICK:  Well, Your Honor, I guess may --

3    may I be heard briefly on the -- on the scheduling?

4          THE COURT:  You may.

5          MR. LESNICK:  Since we haven't had a -- thank

6    you.  Since we haven't had an opportunity to meet and

7    confer yet, if the Court rules in the way that it just

8    indicated it's inclined to, I'm not sure how productive

9    the meet and confer process is going to be, since the

10   burden -- the burden is now much more of an uphill

11   battle on my client and other parties looking to conduct

12   discovery to try to convince the Court at some point

13   later to modify the deadlines, it sounds like, slightly.

14   Whereas I was hoping to have kind of a big picture of

15   structural discussion about how the discovery should

16   proceed with the plan proponents before anything is

17   signed off on by the Court.

18          So I don't know if there's a way to submit the

19   discovery schedule in a separate order after we've had

20   an opportunity to meet and confer and before the burden

21   has been shifted.

22          THE COURT:  I hear what you're saying, Mr.

23   Lesnick, and if I did that to you, I apologize if I took

24   a little bit of wind out of your sails.

25          So I -- as I said, I'm not moving that

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 187 of 335

1    confirmation date.  I have not gone, and I was hoping to

2    avoid this afternoon, particularly given that there

3    hasn't been a meet and confer going line-by-line through

4    the entire chart.  So I was not intending to put a thumb

5    on the scale against you out of the box on any of those

6    dates.

7          So I trust that Mr. Gurule, Mr. Kornfeld, and

8    their colleagues were all experienced counsel, hear what

9    I'm saying, and will be reasonable with you about the

10   specific dates on the chart.  And they should be

11   reasonable.  And again, I have not ruled that any of

12   those work at -- big picture, it seems consistent with

13   the October 16th date, which, again, I'm not moving, but

14   they should have a good faith, candid discussion with

15   you about individual mileposts along that road.

16         MR. LESNICK:  Thank you, Your Honor.  That's

17   helpful.

18         THE COURT:  Okay.  And again, if I -- I didn't

19   intend to posture that against you, so I hope I haven't

20   done so.  And I, again, trust experienced counsel will -

21   - he -- will understand what I'm saying now.  So --

22   okay.

23         Anything further from anyone else on the phone

24   today?  Okay.  Well, I thank everyone for your time and

25   efforts.  Again, just some very minor changes before we

1  have the final documents, and the plan proponents can

2  begin soliciting.  Keep it --

3          I don't know, Mr. Gurule, if you need to call

4  them third amended or just call them -- I've seen

5  revised second amended.  Just as -- or just as long as

6  the solicitation versions of the documents are filed on

7  the docket and clearly available, I think that's

8  sufficient.  We definitely don't need another hearing on

9  these changes.  So --

10          MR. GURULE:  Thank you, Your Honor.

11  Appreciate it.

12          THE COURT:  Okay.  Thank you, everyone, for

13  your efforts.  I hope the meet and confer session goes

14  well.  I hope everyone has a great rest of the week.

15          We're adjourned.

16          (Hearing concluded.)

17

18

19

20

21

22

23

24

25

1

CERTIFICATE OF TRANSCRIPTIONIST

2

3

4

I, DALLAS RICH, do hereby certify:

5

6

That the foregoing is a complete and

7

accurate transcript of the digital audio recording of

8

the testimony and proceedings captured in the

9

above-entitled matter, all to the best of my skills

10

and ability.

11

12

I further certify that I am not related to

13

any of the parties to this action by blood or marriage

14

and that I am in no way interested in the outcome of

15

this matter.

16

17

IN WITNESS THEREOF, I have hereunto set my hand this

18

18th of November, 2025.

19

20

21

22

*Dallas Rich*

23

DALLAS RICH

24

25

**0**

**0.2**
14:8

**01243**
2:4

**1**

**1**
42:11

**11**
3:14 28:17
35:10,17

**1125**
41:5

**1125(a)**
18:10

**1238**
5:24 14:10

**12:21**
33:17

**13th**
26:6 44:14

**146**
14:9

**14th**
44:15

**152(b)**
42:7

**16th**
7:4 37:9 41:7,
13,21 47:13

**18**
22:22

**18th**
7:4

**2**

**2**
14:16

**2004**
24:20

**216**
14:9

**23-**
2:3

**23rd**
33:16

**3**

**3**
7:6 37:13

**3(F)**
6:12

**30**
42:11

**32**
42:17

**34**
24:2

**4**

**4**
7:7 42:23
44:8

**45**
42:11

**4:30**
25:22

**5**

**5(B)(2)**
6:6

**5(D)(2)**
6:11

**502A**
12:9

**7**

**7**
10:22,24
11:14,17 17:1
34:13,14
39:20,21

**9**

**90**
21:15

**90-plus**
35:12

**A**

**ability**
14:18 16:8
30:25 35:10
44:23

**able**
9:16 27:13
28:24

**absolutely**
5:1 43:4,17

**accept**
10:6 16:15
40:3

**access**
26:7

**accommodate**
28:14

**according**
25:6

**accordingly**
15:13

**acquisition**
27:6

**actual**
10:13 15:14

**actually**
28:13

**add**
8:18 10:19
11:22 32:21
33:13,23
38:6,10 39:18
42:23

**added**
39:14 44:11

**addition**
6:25 7:1
13:11 44:11

**additional**
4:18 8:4
34:12 38:17
45:12

**Additionally**
11:9

**additions**
14:12 33:11
43:21

**address**
5:7 7:25 8:8
13:2,4 25:9

26:17 37:24
38:13

**addressed**
41:2

**addresses**
9:22 39:15

**adequately**
35:20 39:3,4
41:3

**adjourned**
48:15

**administrators**
35:11

**advance**
14:19 16:8

**adversary**
24:12,15 32:2

**adverse**
44:19

**affairs**
17:11

**affects**
36:1

**after**
4:20 8:23 9:4,
11 25:12
26:12 32:20
37:25 42:14
46:19

**afternoon**
2:7,9,12,14,
17,20,23 3:1,
4,7,12,22
4:25 8:3
25:22 38:14
44:1 47:2

**against**

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 191 of 335

8:20 13:25 23:25 24:4,10 47:5,19

**agree** 13:8 42:24 44:23

**agreement** 9:16 43:1 44:17

**ahead** 30:7

**allow** 4:19 7:24 41:15

**allowance** 21:12 35:15 40:16

**allowed** 6:8 12:2,9,10 20:3,10,22 21:24 22:1,8 35:9

**allowing** 44:2

**alteration** 12:19 21:3 22:2,7

**altered** 12:3

**altering** 12:4

**alters** 12:8

**ambiguity** 13:9,13 30:1

**amended** 3:21 4:2 5:22, 23 6:7 7:17

8:18 10:17 48:4,5

**amongst** 44:3

**amount** 27:15

**amounts** 6:16

**Anaheim** 21:6

**analyses** 10:19

**analysis** 10:17,20 11:2,7,9 16:24,25 17:6,23 18:4, 16,17,20 19:4,13,18 34:10,19,20, 22 35:2,3 39:17,20 40:1,13

**analyze** 11:4

**analyzed** 23:22

**analyzes** 10:20

**answer** 13:14,16,19, 20 14:4,5,6 17:15 29:11, 12 30:2,3 31:4 32:17,25

**answered** 17:15

**answering** 13:13

**anyone** 3:8 15:21 47:23

**anything** 4:8,13 12:6 14:25 15:9,25 25:8 28:1 38:3,6 39:11 44:15 45:20 46:16 47:23

**apologize** 38:4 46:23

**Appeals** 15:10 39:13

**appear** 4:4

**apples-to-apples** 35:1

**applicable** 29:14 42:15 45:14

**apply** 10:4 23:24

**appraised** 27:7

**appraisers** 27:10

**approach** 35:21 38:10

**approval** 7:18

**approve** 3:15 7:19 45:16

**arguably** 36:5

**argue** 14:21 16:2 40:21

**argued** 21:11

**arguing** 15:2

**argument** 14:22 15:3 20:2 21:20,22 35:25 40:15, 24

**arrange** 25:21

**Article** 6:6,11,12

**ask** 9:13 35:23 45:3

**asked** 11:2

**assert** 34:1

**asserted** 15:7

**assertions** 33:21

**assets** 18:18

**assigned** 7:3

**Assistant** 2:15

**assume** 36:25

**assumes** 11:11 14:5

17:14

**assuming** 10:20 11:15 34:13 37:22

**assumption** 11:18 17:3 39:21

**attached** 5:24 10:17 42:1

**attachment** 4:10

**attendant** 40:10

**attorney** 28:4

**August** 33:16

**authority** 20:14,21

**avoid** 19:5 40:10 47:2

**avoided** 15:14

**avoiding** 18:24

**aware** 20:21 21:9

**Ayers** 3:2,4

---

**B**

**back** 22:3 24:11 25:12 28:3 30:25 43:19

23-01243-WLH11      Doc 1704-1      Filed 01/16/26      Entered 01/16/26 15:05:28      Pg 192 of 335

44:4

**backwards**
44:20

**bad**
31:11 44:14,
21

**balancing**
28:16

**bank**
3:3 23:3

**bankruptcy**
10:1 14:14
15:4

**basic**
20:2

**basis**
10:19 17:9,19

**battle**
46:11

**bear**
21:4

**before**
3:22 5:21
14:14 20:6
28:3 30:14
32:21 41:17
46:16,20
47:25

**begin**
41:8 48:2

**behalf**
2:5,10,18,21,
24 3:2,5 8:13
30:9

**believe**
7:14 9:4,9,12,
18,21 10:5,9,
18,25 11:5,

10,25 12:20
15:19 16:12
19:16 22:1
24:2,13 26:21
41:9

**believed**
27:14

**believes**
29:18

**Bender**
2:13,14

**beneficial**
11:5

**benefits**
19:2,15 40:9
44:22

**best**
41:2

**better**
10:5 16:9
18:13 43:23

**between**
41:12 42:6,8

**big**
17:8 42:9
46:14 47:12

**binding**
10:1 23:20

**bit**
35:5,7 36:5
46:24

**Bonham**
17:13

**borrower**
24:21

**both**
4:3 8:17
29:15 37:5

38:19,21

**bound**
15:2

**box**
47:5

**bracket**
42:13,14,16

**breaking**
17:18

**briefly**
6:2 46:3

**bring**
28:19,24
31:22 45:3

**broader**
32:6 36:3
41:19

**broadest**
12:19

**burden**
46:10,20

**burdensome**
34:18

**buried**
15:17

**business**
23:1,11 24:25

**by-state**
17:19 40:1

**C**

**call**
28:10 48:3,4

**calls**
5:11 22:21

**can**

6:23 8:22
9:10 12:12,21
18:22,23 19:4
22:20 27:19
29:6 31:21,22
34:11 35:23
37:12 38:20
39:18 42:9,
19,20,24
43:25 44:17
45:2,8 48:1

**can't**
10:14 18:6

**candid**
47:14

**capital**
20:22 21:12
35:9,14,15

**capital-a**
20:13

**capital-a-
allowed**
20:4,6,7

**case**
2:3 4:16
12:18 20:12,
24 21:1,10,
18,19,22
23:17 35:17
38:5

**cases**
7:10 11:11
35:12 40:25
41:10

**certain**
11:22

**certainly**
5:19 24:8
27:11

**chance**
4:21 7:25
25:7 37:19

**change**
11:5 44:17

**changes**
3:18 4:4 6:1,
17 38:21
45:12 47:25
48:9

**Chapter**
3:14 10:21,24
11:14,17 17:1
20:12 28:17
34:13,14
35:10,17
39:20,21

**chart**
6:13 44:9
47:4,10

**charts**
7:7

**Chris**
25:11

**Christensen**
2:22 4:8 5:10,
16 6:21 25:6,
11,13

**Christopher**
2:22

**circuit**
15:10 17:12
20:19 21:1,2
22:13,20,23
23:12 24:24
26:19,21
39:13

**Circuits**
24:24

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 193 of 335

circulated
25:19

circumstances
10:9

claim
12:14 20:4,5,
6,9,10,22
21:24 22:1,5

claims
6:8 8:20,24
9:11 11:23
12:3,9 13:24
17:22,24,25
18:18 20:7,
13,17 23:25
24:4,10
32:21,24 34:1
35:9,12,17

clarification
23:13 44:10

clarifies
13:22

clarify
33:23 38:18

clarity
44:8

class
36:11,15,19
37:2 40:20,22

classes
20:17

clear
8:24 9:2,5
10:6,14 11:19
12:8 14:3
21:2 29:17
30:10 31:21
33:20 34:12

43:16

clearer
35:7

clearly
16:1 48:7

clears
29:24

click
42:3

client
12:15 13:14,
24 23:24
24:10,15 31:9
46:11

clients
24:4

close
42:15

closed
42:9

co-
33:25 38:4

code
22:1 42:7

collateral
6:9,10

colleagues
47:8

collectively
40:9

comment
4:21

comments
6:24 27:21
42:3,17

committee
2:11 4:20 5:6

6:15 7:9,25
38:4,9

Committee's
3:15

company
22:19

compare
34:20

comparison
35:1

competing
28:16

compilation
14:10

complaint
24:12

complete
26:5,11

completed
19:4

completely
15:15

complexity
17:18

complicated
17:10 18:1

con
13:10 17:2
30:22 31:1,23
32:5 34:14
35:2,3 38:16

concept
21:13

concern
25:17

concerning
8:19 11:23

concerns
12:25 25:25
38:15

concluded
48:16

concludes
38:22

conclusions
42:4

conditions
20:22

conduct
9:6 26:14
46:11

confer
25:21,23
37:18,25
41:18 43:25
44:13,16 45:8
46:7,9,20
47:3 48:13

conferring
41:12

confines
41:19

confirmation
7:4,11 9:4,8
13:1 20:1
24:17 30:15,
25 35:19,24
37:8,15,21
40:17,18
41:2,3,8,20
44:9 47:1

confirmed
30:12

confirming
43:2

concerns
12:25 25:25
38:15

confusing
34:24

Congress
12:18

connection
9:7

consensual
32:7,12

consensually
31:21 32:22,
23

consenting
37:2 40:22

consequences
39:12

consider
12:17

considerations
23:15

considers
19:17

consistent
14:1 35:8
39:1 47:12

consolidate
32:10

consolidated
10:21 11:12,
16 13:25

consolidation
8:16,19,23,25
9:3,10 10:22,
25 11:3,4
19:17 30:12
32:20 39:22
40:10

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 194 of
335

constitutes
12:20 20:23
21:3 22:2,7
35:15

construction
27:11

contain
24:3

contained
4:12

contains
6:8

contemplated
39:2 43:2

context
32:2 40:2
41:10

contexts
36:19

continuance
43:13

continue
6:9

continued
2:2 3:14

continues
41:9

contractual
12:2

contrary
12:6

control
43:22

converted
11:12

convince
46:12

convinces
44:21

correct
25:11

cost
18:23,25 19:9

costly
19:2

costs
27:6,7

could
7:19 14:24
15:1,13,24
18:1 19:9
26:13 27:18
30:13,16
36:9,20
37:21,23,24
39:9

counsel
2:13 26:18
27:25 47:8,20

counterparty
43:1,3

couple
33:13 43:5

court
3:12,17 4:4
5:8 6:1 7:3,
12,19,21 8:2
9:18 10:2,7
13:2,5,6 14:4,
8,14 15:4,10,
20 16:16,23
18:22 19:20
21:4,6,9 22:3,
10 23:18,20
24:18 25:3,
18,21 26:17
27:24 28:12

29:4,6,9,21,
24 30:5,7,17
31:9,15,25
32:12,16
33:4,8,11
34:5,8 35:7,8,
22 36:14,23
37:3,9,22
38:1,12,13,22
39:2,13 40:6,
24 41:6,9
42:18,19
43:19 44:5,12
45:3,5,11,15,
19,22,24
46:1,4,7,12,
17,22 47:18
48:12

Court's
6:12,18 27:21
30:10 38:10
40:5

cover
22:12 45:20

cram
36:20 37:2

cramdown
40:23

create
10:22 15:8

creditor
11:23

creditors
2:11 5:6
10:23 11:15
19:15

criteria
20:9

curious
20:1,14 21:19

current
10:20 12:25

currently
11:10

___

**D**

___

data
26:8

date
6:16 12:12,13
14:1 37:9,16
41:8 44:17
47:1,13

dates
7:5,8,13
37:14 41:17
42:25 43:9
44:3 45:3,8
47:6,10

David
6:11

day
44:15

days
26:12 43:6

deadline
26:5,11 41:10

deadlines
7:7,8 37:15
42:25 46:13

deal
32:13

dealing
21:20,22
37:14

dealt
24:15

debtor
6:15 24:20
25:1

debtor's
11:24 13:10
17:16 41:4

debtors
2:5 3:14 4:1,
20 5:3,5 7:9,
25 8:20,22
11:7,16
13:12,19,24
17:21 18:15
19:18,21,24
23:4,24 24:1,
3,5,7,9 26:5
28:3,7,10,11,
15,17,19
30:23 31:22
35:10 36:6
38:18,20
40:2,18,21
43:23

decide
14:16 36:2
40:25

deciding
22:16

decision
17:13 22:13
39:13

declarative
42:21

declaratory
24:12

deemed
12:9

deeply
18:4

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 195 of 335

defendant
14:24

defined
20:9

defined-term-
allowed
20:13

defines
12:18 20:3

definitely
21:9 23:18
32:17 43:7
48:8

definition
21:24,25

definitively
40:25

delay
34:18

demonstrates
11:25

deplete
19:10

Deposition
43:6

depositions
26:11,14

describe
16:6

described
10:10 14:17
16:13,14

describes
35:21

describing
10:3

description

6:3,8 28:9

designated
36:11

determination
10:12 22:16

determine
19:14 27:1

determined
8:25 9:3

determining
15:5

development
27:7

Diana
2:8

didn't
4:8 14:25
20:12 25:5
47:18

different
13:20 21:25
40:3 42:2
45:9

difficult
40:7

difficulty
19:6

directed
3:17

directly
3:20 39:19

disagree
39:25

disclose
9:20 11:11

discloses
9:24 17:2

39:3,5 41:4

disclosing
39:19

disclosure
2:2 3:16,23
4:2,7,10,12
5:10,23 6:6,7,
13,22 7:1,6,
17 8:17,18
10:18 23:25
25:14 28:1
29:16 35:20
36:3 37:12,14
38:20,21
39:9,11
41:15,23
45:13,16

discovery
7:8 8:6 9:7
12:25 23:14,
23 24:8,17,18
25:17,19,23
26:1,18 27:19
30:14 37:18
43:4,24 44:9
46:12,15,19

discrete
3:18 5:18

discuss
3:20 25:24

discussed
4:5 6:2 38:17,
21 39:2 45:12

discussion
23:9 35:7
46:15 47:14

discussions
31:20

distributions
17:25 20:7,13

21:11

dividing
17:9

do
4:23 18:2,3,8,
13,25 19:5,9
20:23 21:16
23:14 24:8
26:15,23
27:17 29:11
30:14 31:6,10
34:2,19,24
35:1,11,25
36:6,8 37:19
40:11 41:17
44:15

do-over
36:5

docket
5:24 42:13,15
48:7

document
4:13 5:25
42:2

documents
3:19,21 4:3
23:5 26:6,9,
10,13 48:1,6

does
15:12 19:24
23:9 24:3
26:1 27:22
33:5 34:5
43:11

doesn't
15:12 24:6
31:11 39:7
40:21

doing
3:13 17:14

18:2 20:18
24:19 32:18
37:20

dollars
19:10

don't
4:15 7:22
9:21 12:16
14:2,23 20:11
21:1,10,17
26:22 27:19
30:18,19 34:6
35:16 36:2,24
40:23 41:16
42:20 43:14,
20 44:20
46:18 48:3,8

done
18:20 19:7,14
27:20 34:13,
16 40:2,4,7
43:17 47:20

door
31:2

draft
4:9 5:13

drafted
29:11 33:24

drafting
28:12 29:10
32:17 42:3

dropping
15:3

DS
37:22

Dyer
2:16,17

Dylan
3:6

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 196 of
335

## E

**each**
7:24 8:2,7
13:7 18:18
27:2,14 29:7

**earlier**
35:25

**easy**
19:19 23:7

**ECF**
14:10 42:13,
14

**edits**
41:22

**effect**
9:21,25
14:13,22
16:7,11 26:25
39:4 43:11

**effective**
12:11 14:1

**effectuate**
8:22 29:15
30:13 32:19

**effectuated**
9:1 13:9

**efficient**
7:10 17:13
28:18

**efforts**
47:25 48:13

**either**
8:9 21:18
23:15 31:10

**elaborate**
8:8 13:16

**elected**
25:14

**element**
22:15,18

**elements**
22:23 23:13,
22,23 24:9

**eliminates**
30:1

**else**
3:8 38:6
47:23

**email**
43:2

**emailed**
25:20 33:16
45:19

**emails**
5:11

**encapsulate**
4:4

**end**
5:6 16:17
19:14 20:2
42:18

**enormously**
34:17

**enter**
45:18

**Enterprise**
15:5

**Enterprises**
2:3

**entire**
47:4

**entities**
24:22,23 25:1

32:10

**entitled**
12:16

**entity**
24:21

**entity's**
15:2

**entity-by-
entity**
34:19

**EPD**
15:16 16:1
22:13 23:8

**equitable**
12:1

**equity**
2:19

**especially**
12:17 28:17

**essential**
22:23

**essentially**
11:13 28:20
30:11 31:1
36:2

**establish**
23:7

**estate**
6:14 17:11
18:18 27:3,12
30:24

**estate-by-
estate**
10:19 11:2

**estates**
10:21 28:20

**estimate**

11:13

**et al**
3:6

**evening**
3:22 7:15

**everyone**
3:12 14:24
19:3,11 39:8
44:16,22
47:24 48:12,
14

**everyone's**
20:18

**exactly**
13:9,22 14:2
31:5 35:5

**examples**
26:20

**excluded**
28:10 30:22,
23

**exclusion**
38:16

**excuse**
6:4 34:21

**exercise**
18:24 19:1,6

**exist**
39:7

**exists**
23:1

**expand**
38:6

**expanding**
8:9

**expect**
26:10

**expected**
27:19

**expecting**
26:7,8

**expediency**
27:22

**expense**
34:18,25

**experienced**
47:8,20

**expert**
23:25 27:9,10

**explicitly**
11:14

**express**
16:17

**expressly**
11:11 14:3
30:3 39:19
45:6

**extend**
42:25

**extension**
43:12

**extensions**
43:5

**extent**
8:1

**extremely**
19:1 40:7

## F

**fact**
22:16,20
26:11 27:12
33:15

23-01243-WLH11   Doc 1704-1   Filed 01/16/26   Entered 01/16/26 15:05:28   Pg 197 of 335

factor
23:7

factors
22:21 26:23

fair
14:6,7 19:21

faith
47:14

favor
10:7 16:16

feasible
40:8

fees
6:14 40:11

figure
17:23

file
14:10 28:24
30:13

filed
3:21,25 4:1,6
5:22 8:5
24:12 35:24
48:6

filing
8:23 9:10
12:14 42:1
43:12

filings
11:25 25:5

filled
7:5

final
9:12 42:2,17
48:1

finally
22:11 35:4
37:4 41:6

find
23:13 40:20

finder
22:16,20

finding
6:4 30:11
33:10,22

findings
9:15,21 10:4,
8 14:13 15:7
16:16 33:9
38:25 42:4

fine
34:14

first
8:16,18 10:17
14:12 38:15

fit
41:19

fits
20:25

fleshed
43:24

flexibility
34:2 41:16
43:8 44:2

flip
31:1 32:8

floor
17:8 18:6

flow
24:23

fly
32:18

focused
5:18

focusing

14:11

follow
23:20

following
5:4 7:2 17:4

forcibly
32:4

forensic
19:3

forest
4:23

form
4:7 7:2

forward
44:22

found
36:19

founder
22:19

fourth
11:20

fraudulent
10:14 15:14

free
18:24

freeze
43:7

Friday
15:9,16 22:13
44:14

Friday's
39:13

front
19:14 21:1
26:22

fully
5:16 14:18

16:8

Fund
2:25 3:25
4:18 8:14
30:9

Funding
24:19

funneling
22:24 23:5

future
14:13

---

**G**

Gary
2:15

generally
4:16 8:7 24:2

get
4:24 5:14,16
7:10 13:16
37:13,21
40:17 42:9
43:14,17
44:12 45:8

gets
20:4 45:19

getting
15:17 30:11
43:15

give
24:6

go
22:8 30:7
45:7

goes
11:20 36:3
48:13

going
13:11,18
15:22 19:1
33:21,25 34:3
37:1,22 38:24
40:12,25
41:14 42:23
43:10 46:9
47:3

gone
47:1

good
2:7,9,12,14,
17,20,23 3:1,
4,7,12 7:21
10:15 32:6
41:13 47:14

grant
37:22 45:15

granted
42:12,16

granting
44:23

great
48:14

guess
13:11 15:21
17:6 26:20
31:25 32:4
36:5 46:2

Gurule
2:6,7 4:16,22
5:1,2 7:21
25:6,11,18
28:5,6,7 29:5,
8,20,23 30:4,
18,21 31:5,
16,17 32:9,14
33:5,6,10
34:5,7,9

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 198 of 335

35:22 36:13, 16 37:1,7 38:1,11,17 39:5 43:20 44:7 45:2,7, 20,21 47:7 48:3,10

**Gurule's**
40:4

**H**

**had**
3:16,21 4:4,8, 21 25:7 26:23 30:2 37:19 38:11 40:2 41:22 46:5,6, 19

**handful**
3:18 45:11,14

**happen**
15:24 36:10

**happening**
39:23,24

**happens**
17:24

**happy**
4:23 8:10 25:8 38:6

**hasn't**
40:6 47:3

**have**
2:5 3:19 4:1, 6,21 6:9 7:24 9:5 11:7,20 12:24 13:19 14:13 15:10 16:13,14,22 18:15 19:7

20:4,6,14,17, 23 21:1 23:3, 4,9,20 24:4 25:7,17 26:22 27:16,17 28:8 29:13 30:14, 20,25 32:10 34:6,16 36:14 37:11,19 38:9,14 40:22 41:16 42:12, 20 43:8,24 44:1,5,13 46:14 47:1, 11,14 48:1

**haven't**
13:21,22 17:15 21:21 25:7 46:5,6 47:19

**head**
23:17

**hear**
4:15,17 7:22 8:10 19:21 22:3 25:8 30:21 36:7 37:17 38:6 46:22 47:8

**heard**
28:1 29:25 30:21 34:11 46:3

**hearing**
2:2 3:10,14, 17,20,23 5:5, 8,15,17,20,22 6:2,19 7:3,4, 11 13:2 14:17 30:15 37:10, 15,21 41:8,20

44:13 48:8,16

**help**
30:20

**helpful**
16:18,20 17:3 43:21 44:18 47:17

**highlight**
6:3

**hold**
12:14

**holders**
12:2 32:23,24

**holds**
22:14,20

**Honor**
2:7,9,12,14, 17,20,23 3:1, 4,7 5:2,3,4, 11,14,17,21, 25 6:10,11, 20,25 7:2,12, 16 8:12 14:7 21:23 25:2,10 26:21 28:6,9, 11,20 29:1,3, 23 30:6 31:14,16,17, 18,24 32:9, 11,15 33:3,6, 10,13,18,19, 23 34:4,9,10, 15,17,23,25 35:4,8,14,19 36:16,17,22 37:7,10,11, 16,17,21 38:8 44:7 45:10, 21,23,25 46:2 47:16 48:10

**hope**
3:12 47:19 48:13,14

**hoping**
46:14 47:1

**hour**
37:20

**hundreds**
19:10 26:9

**hypothetical**
16:13 18:11, 12

**I**

**icap**
2:3,19 8:22 9:10 15:5 27:14

**idea**
18:5 41:13

**identify**
3:9

**ill**
22:18

**impact**
6:3

**impaired**
12:21 22:8 36:4,11,20 37:2 40:20,22

**impairing**
20:10,17

**impairment**
11:21,23 12:1,18,20 19:22 20:15, 16,20,23 21:3,12 22:2

35:4,6,15,19 40:14

**important**
10:8 21:23 23:13,19 24:11

**impossible**
43:17

**impracticable**
26:16

**in-person**
7:4

**inappropriate**
22:6

**inaudible**
31:16 32:12, 14

**inclined**
46:8

**include**
10:15 19:19 25:14 26:9 34:12

**included**
5:11 9:13,14, 22 11:10,24 16:18,19,21 22:5 40:12

**includes**
6:3

**including**
5:12

**inconsistent**
17:6 18:4

**incorporates**
6:1

**indicate**
23:5

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 199 of 335

indicated
3:19 46:8

indicating
42:24

individual
24:5,7 41:17 47:15

individually
27:2

information
11:3,6 18:10, 16 24:21 27:5,6,15

informed
10:25 11:21 18:11 25:18

informing
11:15

initial
3:16

input
5:7

insert
4:9 6:22 25:7, 13,14 29:12, 15 42:15

instead
12:12 22:19 24:16

insufficient
15:18

intend
16:11 19:24 38:18 41:18 47:19

intended
9:25 11:22

intending
47:4

intent
9:20,22,24 10:14 14:3,20 16:6 22:18,19 27:17 28:13, 23 29:11,18 33:12 43:6

intention
28:11 31:18 39:6,7

intentions
41:4

intercompany
17:22,23,25 18:19

interested
28:12

interesting
21:13 40:15

interests
28:16

intermingling
17:17

interruption
30:8

intertwining
17:10

investment
15:16 16:1 23:9 27:2,3, 12

investments
22:14

investor
18:11,13

investors
10:6,7,10,11, 23 11:2,15 16:9,13 22:24,25 23:1,6,11 26:24 34:24

isn't
17:6 18:23,24

issue
8:6,16 9:15 10:16 11:20 16:24 19:22, 25 20:1 21:19 22:11 24:13 25:15,16 28:14 35:20, 24 39:3,15 40:17,18 41:2

issues
3:20 4:17 5:18 7:23 8:1, 2 9:6,9 12:24 24:15 25:9 27:11,12,16 28:18,25 32:1 37:5,18,24 38:7,14

**J**

Jason
3:2

Jay
2:10 38:8

John
2:13

joint
3:15

judgment

18:12

Judicial
42:7

Julian
2:6 5:2 28:7 31:17

jump
8:15

jurisdiction
42:4,18,19

**K**

kind
13:12 14:4,11 15:23 16:3 17:6,14 18:1 20:18 24:5,19 36:6,12 44:22 46:14

knew
27:14

know
13:24 14:2,23 16:20 17:12, 20 18:13,18 19:18 20:11, 20 21:2,6,17, 18 24:9,16 27:18 28:21 29:9 30:18 32:3 35:12,16 36:18 43:5,20 44:14,15 46:18 48:3

Kornfeld
2:10,12 36:8 38:3,8,9,12 45:22,23 47:7

**L**

L&j
21:6

laborious
19:2

Lam
3:5,7

language
5:13 8:19,21 9:2,8,12,16, 18,19,22,23 10:2,5,15 11:22,24,25 13:23 14:1 16:7,10,17,19 19:23,24 25:12 29:1,14 33:5,15,19 35:18 38:16, 17 41:14

largely
6:17

larger
10:23

last
3:17,21 4:20 5:4 6:2,18,21 7:3 25:21 27:21 37:10 39:2

late
7:14

later
13:2 30:13,25 40:19 46:13

latest
33:14

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 200 of 335

law
  12:18 15:25
  20:19

lay
  37:13

least
  26:10 42:5
  43:24

leave
  31:19 43:18

legal
  10:12 12:1
  14:19 15:8
  39:10

legitimate
  22:25 23:10
  24:25

Lesnick
  2:21,23 4:19,
  21 6:19,23
  7:13,23 25:5,
  10,11 27:24
  37:6,17 43:14
  44:21,24
  46:1,2,5,23
  47:16

less
  5:14

let
  41:18

letter
  4:10

level
  25:1

liens
  6:9

light
  15:16 26:19
  37:8 39:12

like
  4:17,22 7:8
  8:5,8 13:3
  14:22 15:12,
  24 19:1,3,25
  20:15 21:13,
  17,23 23:2,3
  25:9,24 27:25
  29:6,10 31:5,
  23 32:17 33:1
  34:18 37:16
  38:6 39:18
  40:20 41:13,
  22 42:5,20
  43:24 45:5
  46:13

limit
  20:12

line-by-line
  47:3

liquidating
  34:21,22
  35:11 39:6

liquidation
  10:16,19 11:9
  15:1 16:24,25
  17:5 18:3
  30:24 34:10,
  20,21 35:3
  39:17,20
  40:1,12

list
  28:8

literally
  19:8

litigate
  9:7 28:22

litigated
  8:25 13:18
  32:1

litigating
  30:22

litigation
  10:1 14:16,19

locked
  37:23

long
  48:5

longer
  25:6,15

losers
  10:23

loses
  19:3

loss
  15:23 16:3

lot
  11:6 20:16
  23:9 24:3,4,6,
  7 33:1 35:16

lots
  17:22

love
  19:17

low
  20:20

lumps
  24:2,5

---

**M**

---

made
  10:13 14:3
  20:7 35:7
  40:24 41:23
  45:13

maintenance
  43:21

major
  40:8

make
  3:18 11:18
  12:15 13:1
  18:11 38:20

makes
  7:10 10:5
  29:8 31:24
  34:4,11 35:25

making
  10:7 16:16
  22:25 23:11
  24:25 26:24
  27:4 34:12
  39:20

Man
  3:5

matter
  2:3 38:19,20
  40:21

matters
  28:3

Matthew
  2:21 25:10

may
  7:23 9:25
  14:13,15
  15:8,12 17:20
  19:8 26:10
  31:17 40:16
  43:5,6 46:2,3,
  4

maybe
  7:14 13:19
  17:2 20:1,19
  21:17 26:10
  30:3 32:22
  36:12 43:25
  44:14

mean
  13:15 15:8,
  20,21,24
  18:24 19:17
  21:14 23:2,
  19,21 36:10,
  11

meaningful
  16:12

means
  23:10

mechanic
  31:11 38:18

mechanism
  40:15

meet
  20:9 25:21,23
  36:20 37:18,
  25 41:11,18
  43:25 44:13,
  16 45:8 46:6,
  9,20 47:3
  48:13

meeting
  41:11

mens
  22:17

mentioned
  37:20 43:22

met
  17:17

Michael
  2:18,24 8:13
  30:9

might
  10:23 13:1,21
  19:23 30:1
  41:15 42:1

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 201 of
335

mile
41:12

mileposts
47:15

minor
41:22 42:3
47:25

minute
5:3

misleading
11:17

missing
15:20

Mo
3:5

modifications
12:24

modified
9:17

modify
42:25 43:9
46:13

money
22:24 23:3,5
24:22

more
4:24 5:14
9:24 16:3
17:13 26:11
35:1 41:24
42:21 46:10

motion
3:15 9:11
13:17 29:17
32:20 42:12,
14 43:12,14
45:16

move

41:7 44:21
45:3

moved
23:4

moves
23:3

moving
44:18,20
46:25 47:13

Myers
5:2

_____

**N**

names
17:21

nature
27:8

necessarily
10:22

necessity
43:3

needed
16:4

needing
45:1

Ninth
15:10 17:12
20:19,25 21:2
22:13,22
23:12 24:24
26:19,21
39:13

no
16:20 19:2
20:3 22:14,
17,18,25
23:10 25:6,15
36:25 45:21,

23,25

non-
substance
42:17

note
7:12 21:23
24:11

noted
5:21

noteholders
2:19

nothing
27:16 38:9

notice
5:24 8:23
13:17 14:25
28:21,24
30:13 39:9

noticed
9:11

notion
17:4

notwithstandi
ng
12:6

nuance
21:24

number
2:3 5:24
14:10,16
27:16 42:13,
15 44:8

_____

**O**

O'MELVENY
5:2

object

29:19,21

objecting
5:9

objection
3:25 4:19 7:8
8:5 9:23
12:14 16:18
20:5 22:6
31:22 33:14
35:13 37:15
38:23,24
39:15 45:17

objective
22:21 23:7

obtained
23:23

occurs
21:12

October
7:3 37:9 41:7,
13,20 47:13

off
23:17 41:25
44:12 46:17

often
22:4

only
10:20 20:7
25:16 32:5,10
33:12,23

onto
12:14

open
7:23 8:1
31:19 40:17

operated
15:5

opinion

15:16 22:22
23:9 26:19,21
40:16

opportunity
4:9 13:4 23:1,
11 24:25
25:24 37:18
46:6,20

opposes
31:9

order
4:7 7:1,2,6
9:6,12 19:14
27:1 28:2
37:12,22,25
38:14 41:23
43:4 44:6
45:15,18
46:19

Ordering
42:10

ordinary
35:11

original
8:17

other
6:20,25 25:16
27:25 28:22
36:18 40:24
44:4 46:11

otherwise
32:2

outline
7:7

outlined
7:11

outstanding
5:9 34:24

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 202 of
335

overlooking
38:4

overly
34:23

overreading
19:23

overriding
28:13

overrule
38:24

overruled
39:16

**P**

Pacific
33:17

pages
26:10

pagination
42:1

paid
6:16 12:11
19:5 20:4

panel
22:14

papers
8:10 35:24

paragraph
15:18 16:4
38:25 39:14
41:14 42:4,
11,17,22

paragraphs
42:10

Pardon
30:8

part
9:3 15:22
18:25 19:5,8
33:24 40:6

particular
14:24 16:4
17:21 20:9
25:1 43:1

particularly
10:8 15:15
20:11 26:5
29:7 47:2

parties
4:5 5:9,13
26:4 41:11,17
43:18 44:2,
19,24 45:9
46:11

party
43:12

party's
44:4

pay
22:24 23:6

payment
12:15

pedals
15:25

people
27:13

percent
21:15 35:12

Perez
2:8,9 33:16

Perfect
29:23

performed
11:8 18:16,17

period
10:3 20:5
26:15 27:20

phone
27:25 47:23

picture
46:14 47:12

pin
22:11

plan
3:15,17 4:1,3,
6 5:5,19,22,
23,25 6:5
7:12,16 8:21
9:17,19 10:6,
9 11:21 12:4,
5,7,8,10,12,
22 13:15
14:18,25
15:6,23 16:5,
11,15,22
18:14 20:3,8,
10 21:13,15,
25 22:9 25:24
29:10,12,16
30:11,12,19
33:12 34:18,
21,22 35:2,10
36:8 38:5,21
39:18,22 41:3
42:24 43:8
44:23 45:13
46:16 48:1

planned
25:13

plans
20:17 21:15
22:5 36:18

plate
17:8 18:6

play
41:18

point
6:19 7:25 8:1
9:18 15:21
16:25 19:21,
22 23:2 33:8
35:6,22 40:5
41:5,7 46:12

point's
39:23

pointed
25:18

points
8:6,7 13:7

Ponzi
6:4 9:15 10:8
14:8,12 15:6,
7 16:16
22:15,17
23:13 24:14
33:9,10,21
38:25

position
4:11 14:19
16:8 17:16
28:15 29:2
39:10

possibility
26:24

possible
12:19 26:13
39:4 40:8

possibly
22:20 27:11

post
30:24

post-effective
12:13

posters
41:12

posture
47:19

potential
11:1 25:12
31:19

potentially
28:22

practical
27:22

practice
29:17 32:20

precedential
15:10

precise
4:14 17:9

preclude
43:11

preclusion
16:2

preclusive
9:20,25
14:13,22
16:7,11 39:4

predicate
17:7

predicated
17:1

prefer
42:12

prejudge
37:11

prepared
39:20 41:7
44:6 45:15

presumption

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 203 of
335

10:12 15:8,25
34:4 39:12

**presumptively**
30:22

**pretty**
33:20

**previously**
10:10 24:1

**prior**
14:17

**probably**
14:23 19:25
23:8 26:7
27:9,10

**problem**
44:5

**problematic**
13:12

**procedures**
45:17

**proceed**
3:11 4:24
36:9 46:16

**proceeding**
24:16 32:2

**proceedings**
14:14

**proceeds**
12:11,14

**process**
9:5 22:6
41:18 43:5,22
46:9

**processes**
35:13

**produces**

22:23

**production**
26:6

**productive**
46:8

**professional**
40:10

**professionals**
6:14,15,16

**profit**
22:25 23:10
24:25 26:24
27:4

**project**
27:3,4,8

**projected**
27:7

**projections**
27:17

**projects**
27:14

**property**
17:21

**proponent**
25:13 38:5

**proponent's**
29:10 30:19

**proponents**
3:18 4:1,6
5:5,19,22,25
6:5 7:12,17
8:21 9:17,19
10:10 11:22
13:16 14:18
15:1 16:5,11,
22 25:19,25
29:13 30:11
33:12 34:19

36:8 39:18
42:24 43:8
44:23 46:16
48:1

**proponents'**
3:15

**proposal**
30:10,19,20

**propose**
41:14

**proposed**
3:16 4:6 6:4
7:6 9:8,17,23
10:2 16:22
25:19 26:3
29:1,12 41:8,
23

**proposes**
15:6 39:22

**prospect**
27:3

**provide**
6:24 33:15

**provided**
4:9 9:8 12:3,5
13:22 23:12
24:1

**provides**
8:21 12:1,18
33:20

**providing**
9:9

**proving**
22:18

**provisions**
22:4

**proviso**
13:10

**put**
22:11 47:4

**puts**
24:13 39:8

**Q**

**question**
17:15 26:17
34:16 36:6,17

**questions**
7:24 13:7
34:6

**quote**
22:23

**R**

**raised**
4:18 38:14

**rea**
22:17

**reach**
9:16

**read**
8:4,10 25:8
33:19

**ready**
7:18

**real**
5:9 27:3,11

**realistic**
26:24 27:18

**reason**
10:15 16:20
18:25 19:8
33:24 40:6

**reasonable**

47:9,11

**receive**
10:23 14:25

**received**
10:13

**receiving**
39:8

**recent**
11:24

**recently**
24:12

**recognize**
43:4

**reconcile**
18:8 35:17

**reconciliation**
35:12

**record**
5:2 8:13 28:7
31:17 33:19
37:16 44:11
45:13

**recorded**
3:10

**records**
23:3

**recover**
11:14

**recovered**
15:14

**recoveries**
10:20,24 11:1
19:11

**recovery**
35:2

**red**
14:9

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 204 of
335

redline
4:7 7:2 39:1
41:25 42:6,
11,23 44:8

redlines
4:3 5:24

Redmond
24:19

reference
42:7,13,15

referenced
39:1

refine
44:25

regarding
9:17 16:6
38:7

regularly
9:11

related
2:2 3:20 24:9
28:2 45:18

relates
8:16 9:15
10:16 28:10
38:25 39:17
40:14 41:6

relating
3:14 4:8,13
24:22 28:1
38:15

relative
8:17

relevant
27:5

relied
15:7

relief
24:13 45:18

relitigating
31:2

rely
22:21

remaining
5:18

remains
40:17

remarkable
21:16

reopening
31:2

repeatedly
15:13

report
24:1

REPORTER
2:1,8,10,13,
15,18,21,24
3:2,5,8

representatio
n
40:4

request
6:12,22 7:19
24:20 37:12

requested
6:1,14 9:18

requesting
6:5

require
40:12

required
27:9,10 40:11

requirement

22:18

requirements
36:21

requires
17:17

requiring
20:8,21

reservation
39:5,8

reserve
13:3 14:18
16:8 29:14
32:19

reserves
16:2

reserving
14:21 32:4
44:4

resolicit
40:23

resolution
32:6,11,14
36:4,24

resolve
9:9 31:18,21

resolved
8:24 9:12
28:19,25
32:1,21,22,23

resolves
38:23

respect
8:15 11:18
12:24 17:24
18:19 28:15,
19 29:2 33:21
34:9,15 36:21
41:4

response
6:12,18 28:8

responsive
36:22

rest
34:15 48:14

restriction
21:11

result
32:3

retain
42:18

retains
42:19

review
26:13

reviewed
3:24 23:16

revise
9:19

revised
4:7 10:18
11:10,18
45:18 48:5

revisions
45:15

rights
12:2,4,8,20
21:3 22:2,7
39:5,8 44:4

risk
36:9,10 39:3
40:19

road
13:18 39:10
43:16 44:24
47:15

room
26:8

rule
8:2

ruled
47:11

rules
46:7

run
20:5

___

**S**

said
5:12 6:23
26:21 30:18
39:5 45:3
46:25

sails
46:24

sale
12:11

satisfied
20:23

satisfies
41:5

satisfy
40:23

Saturday
44:15

Savings
2:25 3:25
4:18 8:14
30:9

scale
47:5

scenario
11:1 32:7

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 205 of 335

34:13

**schedule**
7:9 13:1
24:17 25:17,
19,23 26:2,4
28:2 37:8
42:22 43:11,
24 44:5,9,25
46:19

**schedules**
43:6

**scheduling**
7:13 37:24,25
46:3

**scheme**
15:6 22:15,17
23:14

**scope**
9:6

**Section**
7:6,7 37:13
42:7

**secured**
6:8 11:23
12:2

**seek**
9:10 32:10
39:21

**seeking**
17:1 24:20

**sense**
7:10 13:2
29:8 31:23,24
34:4,11

**sentence**
14:12 17:2
34:8,12 39:19
42:21,24
43:11 45:5

**sentences**
44:1

**separate**
46:19

**September**
26:6 44:14

**session**
48:13

**set**
2:1 5:4 21:5
25:22

**setting**
4:11 37:9

**seven-day**
26:15

**shall**
42:18,20

**share**
25:25

**shared**
7:13

**shifted**
46:21

**shoot**
32:7

**shop**
14:9

**shortly**
5:21

**should**
9:4,13 10:14,
18,25 11:6,7,
10,18 12:21
13:15,17
17:24 19:7,19
22:8 23:18
29:18,21
32:16,25 43:8

**sentences**
44:1

46:15 47:10,
14

**shouldn't**
13:15

**shown**
43:13

**shows**
7:2

**side**
21:18

**sidestep**
19:11 28:14

**sign**
44:6

**signed**
46:17

**similar**
24:19

**Simon**
2:24 3:1 4:17,
21 7:14,22
8:4,12,13
13:6,21 14:7
15:19 16:5,24
18:9,22 19:13
20:25 21:8,21
23:16,21
25:2,4 29:11
30:2,6,7,8,9
31:8,13
32:16,25
33:2,16 37:5
43:14 44:25
45:24,25

**Simon's**
40:14

**since**
22:12 46:5,6,
9

**single**
12:15

**sizeable**
20:12

**slightly**
39:11 41:24
42:2 46:13

**slip**
43:6

**Society**
3:25 4:18

**soft**
15:9,25 16:9
39:11

**softer**
23:8

**solicitation**
45:17 48:6

**soliciting**
7:20 37:13,23
48:2

**some**
4:11 5:12,15
7:24 10:10
12:25 16:13,
17 17:17,20
23:12 25:12,
25 26:20 34:2
41:14,15,22
42:6,8 44:1,2
46:12 47:25

**somehow**
22:6

**someone's**
21:11

**something**
19:16 26:8,
23,25 45:9

**sort**
18:7 23:14
26:8,18 28:12
31:22 37:13

**sounds**
29:10 40:20
41:11,13
46:13

**sources**
18:20

**space**
18:6

**spaces**
42:6,8

**spaghetti**
17:8 18:6

**Special**
2:13

**specific**
23:24 24:20,
21 41:12
42:13 44:24
47:10

**specifically**
9:20 10:3
14:11 16:6
21:20,22

**specifics**
7:23 24:3,6
41:16

**Sperry**
2:18,20

**stage**
41:3

**stakeholders**
40:9

**standard**
18:9

23-01243-WLH11    Doc 1704-1    Filed 01/16/26    Entered 01/16/26 15:05:28    Pg 206 of 335

standards
17:16 41:5

start
4:22 7:20
18:9 36:14
37:23 43:15

starting
41:20

state-
17:18 39:25

state-by-state
17:5,9,22
18:3

statement
2:2 3:16,23
4:2,7,12 5:23
6:6,7,13,22
7:1,6,18 8:17
10:18 23:25
25:15 28:2
29:16 33:20
35:20 36:3
37:12,14
39:9,11
41:15,23
45:14,16

statements
4:10,11 5:10
8:18 35:8
38:22

states
24:2 29:1

status
4:14,16

stays
44:10

step
22:3 24:10

still

5:9 32:4

stone
43:7

stop
18:23 29:6

story
40:3

stray
42:6,8

strip
43:23

strong
16:10

stronger
16:10

structural
46:15

struggling
35:5

stuff
24:13

sub-
13:9 17:1

sub-con
17:7,16 18:5,
14,25 19:5,8

subcon
28:9,15,21

subjective
22:15

submit
5:25 7:17
33:11 34:17
35:1,14 37:8
46:18

subsequent
10:1 14:19

substance
32:20 33:18
35:18 39:22
40:9

substantive
8:16,19,22
9:10 10:24
19:16,25
30:12 38:19
41:24

substantively
10:21 11:12,
16 13:25
31:11

sufficient
43:13 48:8

sufficiently
38:22 39:15

suggest
42:23 43:10

suggested
25:21

suggesting
22:5

suggestion
32:18 39:25

suggestions
28:13

summarizes
6:14,17 12:23

Sunday
7:14 25:20

supplemental
3:24

supplementin
g
8:9

support
38:10

suspect
13:11

switch
32:8

**T**

table
5:4

take
5:19 11:6
22:3 24:10
34:3

takeaways
6:21

taken
39:10,14,23

takes
30:24

taking
40:19

talk
37:5

term
20:10

terms
6:20 12:19
17:18,24
33:18 34:3
39:12 43:21

testify
27:13

testimony
27:9,10

theoretically
12:13

thing
32:7 33:12
41:24

things
17:18 18:8
21:16 27:8
28:3,22 31:25
33:13 44:21

think
4:15 5:14,17
6:17 7:9 8:6
9:23 10:2,8,
15 11:17
12:17,23
13:8,17
14:15,16,25
15:8,15 16:1,
7,17,19 18:20
20:25 21:10,
15 23:14,19
25:16,20
29:15,24
30:17 31:3,4,
10,16 32:17
33:1,18
34:10,16,23,
25 35:6,9,18,
20,23 36:10,
20 37:9,10,24
38:16 39:3,4,
7,10,14,22
40:11,17
41:1,3 43:8,
15 48:7

thinking
36:17

thought
14:1 16:5
19:13 29:9
42:22

thousands

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 207 of 335

19:10 26:9

**threshold**
20:20

**thumb**
47:4

**tick**
28:8

**time**
2:1 10:3 11:6
25:22 27:20
33:17 47:24

**timeline**
7:11

**timing**
8:6 9:5 22:11
37:5 41:6

**title**
17:21

**today**
3:13 7:19
8:11 11:25
25:9 31:3
35:25 37:22
38:7 40:25
41:13 45:13,
20 47:24

**today's**
5:15,17 42:1

**toggle**
31:23 32:5

**tomorrow**
43:15

**top**
4:15 23:17

**topic**
6:25 35:3

**topics**
6:18

**traded**
5:12

**transactions**
18:19

**transfer**
15:13,14

**transferred**
6:10

**transfers**
10:13

**treated**
12:10,21

**tremendous**
27:15,16

**trial**
7:5

**trouble**
35:16

**true**
14:15 15:15

**truncated**
24:16

**trust**
6:10 9:10
12:12 30:24
33:25 41:9
47:7,20

**trustee**
2:15 15:1
17:1 39:21

**trustee's**
39:6

**trustees**
8:22 34:1
35:11

**try**
5:7 7:10

46:12

**trying**
30:20

**turn**
28:3

**tweak**
43:25 44:3

**two-one**
22:14

**type**
27:19,20

**types**
22:4 27:4
34:1

---

**U**

**U.S.**
2:15

**ultimately**
33:25 40:18
41:1

**Umpqua**
3:2

**unable**
19:9

**understand**
8:7 9:6 11:4
13:8 15:22
16:10,15,23,
25 22:10 25:3
35:25 36:7,8,
16 37:4 38:2
40:19 47:21

**understanding**
6:20 9:5 40:5

**Understood**

23:21 31:8,13

**unduly**
17:10

**unfortunately**
5:13 41:25

**unless**
45:8

**unresolved**
8:2

**Unsecured**
2:11

**unsophisticated**
10:11 16:14

**until**
20:4 21:12

**updating**
15:11

**uphill**
46:10

**uploaded**
45:19

**uses**
18:20

---

**V**

**vague**
9:2 10:2

**valuation**
27:9

**value**
27:7

**valve**
43:18

**various**
7:7 17:11

**venture**
26:25

**Venue**
42:5

**versions**
48:6

**versus**
18:14

**view**
40:5

**views**
34:3

**vote**
11:3 12:16,21
15:22 36:1,25

**votes**
7:20

**voting**
10:6,7,11
15:21 16:15,
16 37:16
45:17

---

**W**

**wait**
12:13

**waivable**
14:23

**walked**
33:11

**want**
13:23 18:11,
13 22:12 24:8
37:4 43:14,18
44:20

**wants**
13:14 25:7

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 208 of 335

**wasn't**
12:4 14:3

**Wednesday's**
5:8,20

**weeds**
4:24 15:17

**week**
3:17,21 5:6
6:21 25:22
27:21 37:10
39:2 48:14

**week's**
5:4 6:2,18 7:3

**weekend**
5:7,12 7:14
25:20

**whether**
9:3 11:4
18:13 22:16
26:23 31:3
36:1 41:1
43:22

**which**
3:17 4:3 8:10,
16 10:8 16:18
17:17,23,25
18:5,24 19:16
21:7,24 26:22
31:1 32:6
35:25 38:5
41:5,13 43:2
47:13

**whomever**
44:25

**will**
5:17 6:5,9 8:2
10:22 12:3
26:7 27:12,13
37:11 38:13,
18 39:15

40:21 41:11
47:9,20,21

**Wilmington**
2:25 3:25
4:18 5:10,16
8:14,20 26:1
28:11,18,25
29:18 30:9
31:20 35:24
36:4 41:9

**Wilmington's**
8:23 9:11
12:9 26:1,18
28:14 31:21
32:1 33:14
35:5 38:15

**wind**
46:24

**winners**
10:22

**wins**
36:4

**with**
4:5 5:8,13,16,
24 7:13,16
8:15 9:7,16,
20 10:13,17
12:24 13:4,8,
22 14:2 16:10
17:7 18:4,9,
19 21:4,20,22
22:15 24:15
25:13,24
26:23 27:17
28:15,19 29:2
30:5 31:20
32:11,22,23
33:21 34:9,15
35:2,5,7,8
36:9,21 37:14
38:16 39:1,25

41:4 43:2,4
44:5,10,13,24
45:7,11,19
46:16 47:9,
12,14

**withdrawn**
6:21

**within**
26:15 41:19

**without**
10:24 11:1,3,
14 12:13 14:5
28:21 29:16
31:2 32:19
43:3 45:1

**witnesses**
26:13 27:13

**word**
4:20 42:20

**work**
5:8 13:10,17
29:13,22
31:12 33:5
38:19 40:2,4,
6 47:12

**worked**
5:6

**working**
41:25

**works**
31:3 35:18
37:9 41:1
45:9

**worse**
16:21

**worth**
40:16

**would**
6:19 7:18

8:25 9:3,9,13
10:4 11:2,14
12:5,6 13:3
16:3,9,18,19,
21 17:3,10,23
18:11,13,19
19:1,9,10,13,
15,17 21:4,23
23:22,23
24:8,14 26:6,
9,12,19,20
27:5,25
29:13,21
30:11,14,23,
25 32:5,9,18,
25 33:13,22,
23 34:17
36:17,24
39:6,18,21
40:3,7 43:22,
23 44:20

**would've**
18:16,17,20

**wouldn't**
16:21

**writing**
20:2

**written**
43:1

**wrong**
20:18 36:12

---

**X**

**XI**
20:12

---

**Y**

**years**
12:13 20:17

**Yen**
3:5

**Yesterday**
11:21

**you're**
3:13 19:7
35:23 36:12
46:22

**you've**
13:17 21:19
25:9

23-01243-WLH11     Doc 1704-1     Filed 01/16/26     Entered 01/16/26 15:05:28     Pg 209 of
335

# EXHIBIT 3

Dakota Pearce (WSBA #57011)
BUCHALTER
1420 5th Avenue, Suite 3100
Seattle, Washington 98101
Telephone: (206) 319-7052
Email: dpearce@buchalter.com

Bernard D. Bollinger, Jr. (CA SBN: 132817)*
Julian I. Gurule (CA SBN: 251260)*
Khaled Tarazi (AZ SBN: 032446)*
BUCHALTER
1000 Wilshire Blvd., Suite 1500
Los Angeles, California 90017
Telephone: (213) 891-0700
Email: bbollinger@buchalter.com
        jgurule@buchalter.com
        ktarazi@buchalter.com

*Admitted *Pro Hac Vice*

*Counsel to Debtors and Debtors in Possession*

HONORABLE WHITMAN L. HOLT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re:

VH 1121 14TH ST, LLC,

                              Debtor.

Chapter 11

Case No. 23-01264-WLH11

Jointly Administered With
Case No. 23-01243-WLH11

**SCHEDULES OF ASSETS AND LIABILITIES**

**VH 1121 14TH ST, LLC, SCHEDULES OF ASSETS AND LIABILITIES- 1**

BUCHALTER
1420 FIFTH AVENUE, SUITE 3100
SEATTLE, WA 98101-1337
TELEPHONE: 206.319.7052

BN 79548681v1

23-01264-WLH11    Doc 764-1    Filed 05/28/26    Entered 05/28/26 15:55:28    Pg 211 of 335

Debtor name **VH 1121 14th, LLC**

United States Bankruptcy Court for the: **Eastern** District of **Washington**

(State)

Case number (If known): **23-01264**

Official Form 206D

☐ Check if this is an
amended filing

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
| --- | --- |

**2. List in alphabetical order all creditors who have secured claims.**

If a creditor has more than one secured claim, list the creditor separately for each claim.

|  | | Column A | Column B |
| --- | --- | --- | --- |
|  | | **Amount of Claim** | **Value of collateral that supports this claim** |
|  | | Do not deduct the value | |

| 2.1 | **Creditor's name** | Describe debtor's property that is subject to a lien | $3,000,000.00 | UNKNOWN |
| --- | --- | --- | --- | --- |
| s1106 | **LIMA ONE CAPITAL** | | | |

**Creditor's Mailing Address**

**3960 HOWARD HUGHES PKWY, #500
LAS VEGAS, NV  89119**

**Creditor's email address, if known**

**Date debt was incurred**

**Last 4 digts of account number**

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Have you already specified the relative priority?

    ☑ No. Specify each creditor, including this creditor and its relative priority.

    ☐ Yes. The relative priority of creditors is specified on lines

**Describe the lien**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☐ No.
☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**

Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

23-01264-WLH11 Doc 754 Filed 10/16/25 Entered 10/16/25 15:28 Pg 212 of 335

## Part 2: List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digts of account number for this entity |
|---|---|---|

| Part 3: | Total Amounts of the Claims Secured by Property |

|  | **Total of Claim Amounts** |
|---|---|
| **3a. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**  **3a.** | **$3,000,000.00** |

23-01264-WLH11   Doc 754-1   Filed 10/16/25   Entered 10/16/25 15:28   Pg 214 of 335

**Fill in this information to identify the case:**

Debtor name **VH 1121 14th, LLC**

United States Bankruptcy Court for the: **Eastern** District of **Washington**
(State)

Case number (If known): **23-01264**

☐ Check if this is an amended filing

Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims

12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:    All Creditors with PRIORITY Unsecured Claims**

1. **Do any creditors have priority unsecured claims?**

☑ No. Go to Part 2
☐ Yes

| | Total Claim | Priority Amount |

2. | **Priority creditor's name and mailing address**

**As of the petition filing date, the claim is:**

Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date or dates debt was incurred**

**Basis for the claim:**

**Last 4 digts of account number**

**Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (_____)**

**Is the claim subject to offset?**

☐ No
☐ Yes

| Part 2: | All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

**3. Do any creditors have nonpriority unsecured claims?**

☑ No.
☐ Yes

**Amount of Claim**

**3.1** Nonpriority creditor's name and mailing address

As of the petition filing date, the claim is:

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

**Basis for the claim:**

Last 4 digts of account number

**Is the claim subject to offset?**
☐ No
☐ Yes

## Part 3: List Others to Be Notified About Unsecured Claims

List in alphabetical order any others who must be notified for claims already listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 or Part 2 did you enter the related creditor? | Last 4 digts of account number for this entity |
|---|---|---|

23-01264-WLH11 Doc 754 Filed 10/16/25 Entered 10/16/25 15:28 Pg 217 of 335

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | Total of Claim Amounts |
|---|---|

**5a. Total Claims from Part 1**

5a.  $0.00

**5b. Total Claims from Part 2**

5b. +  $0.00

**5c. Total of Parts 1 and 2**
     Lines 5a + 5b = 5c.

5c.  $0.00

23-01264-WLH11 Doc 754 Filed 10/16/25 Entered 10/16/25 15:28:28 Pg 218 of 335

Debtor name     VH 1121 14th, LLC

United States Bankruptcy Court for the:     Eastern          District of     Washington
                                                                            (State of)
Case Number (if known):     23-01264          Chapter     11

☐ Check if this is an
  amended filing

## Official Form 206G

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property
   (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2. 1 | **State what the contract or lease is for and the nature of the debtor's interest**  PROPERTY MANAGEMENT | JMW GROUP \| WINDERMERE PROPERTY MANAGEMENT 210 SUMMIT AVE E SEATTLE, WA  98102 |
| | **State the term remaining** | |
| | **List the contract number of any government contract** | |

| | |
|---|---|
| Debtor 1 | VH 1121 14th, LLC |
| United States Bankruptcy Court for the: | Eastern          District of   Washington |
| | (State of) |
| Case Number (if known): | 23-01264          Chapter   11 |

☐ **Check if this is an amended filing**

**Official Form 206H**

# SCHEDULE H - CODEBTORS

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No   Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.**

| | Column 1: Codebtor Name and Mailing Address | Column 2: Creditor Name | Check all schedules that apply: |
|---|---|---|---|
| 2.1 | CHRISTOPHER J CHRISTENSEN 27112 SE GRAND RIDGE DRIVE ISSAQUAH, WA 98029 | LIMA ONE CAPITAL | ☑ D<br>☐ E/F<br>☐ G |

Official Form 206H                    **Schedule H: Codebtors**                    Page 1 of 1

Debtor Name    VH 1121 14th St, LLC

United States Bankruptcy Court for the:    Eastern _____ District of    Washington
                                                                              (State)

Case number (*If known*):    23-01264

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* _____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    11/15/2023          ✗  /s/ Lance Miller
                 MM / DD / YYYY                  Signature of individual signing on behalf of debtor

                                        Lance Miller
                                        Printed name

                                        Manager
                                        Position or relationship to debtor

# EXHIBIT 4

1   Dakota Pearce (WSBA #57011)               HONORABLE WHITMAN L. HOLT
    BUCHALTER
2   1420 5th Avenue, Suite 3100
    Seattle, Washington 98101
3   Telephone: (206) 319-7052
    Email: dpearce@buchalter.com
4
    Bernard D. Bollinger, Jr. (CA SBN:
5   132817)*
    Julian I. Gurule (CA SBN: 251260)*
6   Khaled Tarazi (AZ SBN: 032446)*
    BUCHALTER
7   1000 Wilshire Blvd., Suite 1500
    Los Angeles, California 90017
8   Telephone: (213) 891-0700
    Email: bbollinger@buchalter.com
9       jgurule@buchalter.com
        ktarazi@buchalter.com
10
    *Admitted *Pro Hac Vice*
11
    *Counsel to Debtors and Debtors in*
12  *Possession*

13              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF WASHINGTON
14
15  In re:                              Chapter 11

16  VH WILLOWS TOWNHOMES, LLC,          Case No. 23-01262-WLH11

17                         Debtor.      Jointly Administered With
                                        Case No. 23-01243-WLH11
18
19                                      **SCHEDULES OF ASSETS AND
                                        LIABILITIES**
20
21
22
23
24
25
26

**VH WILLOWS TOWNHOMES, LLC, SCHEDULES OF**               BUCHALTER
**ASSETS AND LIABILITIES- 1**                      1420 FIFTH AVENUE, SUITE 3100
                                                      SEATTLE, WA 98101-1337
                                                      TELEPHONE: 206.319.7052

BN 79548681v1

Debtor name  **VH Willows Townhomes, LLC**

United States Bankruptcy Court for the:  **Eastern**  District of  **Washington**
(State)

Case number (If known):  **23-01262**

<u>Official Form 206D</u>

☐ Check if this is an
amended filing

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

**Be as complete and accurate as possible.**

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
☑ Yes. Fill in all of the information below.

**Part 1:   List Creditors Who Have Secured Claims**

**2. List in alphabetical order all creditors who have secured claims.**
If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of Claim**<br>Do not deduct<br>the value | Column B<br>**Value of collateral**<br>**that supports this**<br>**claim** |
|---|---|---|---|

**2.1**

**s1124**

**Creditor's name**

**LIMA ONE CAPITAL**

**Creditor's Mailing Address**

**3960 HOWARD HUGHES PKWY, #500**
**LAS VEGAS, NV 89119**

**Creditor's email address, if known**

**Date debt was incurred**

**Last 4 digts of account number**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Have you already specified the relative priority?

   ☑ No. Specify each creditor, including this creditor and its relative priority.

   ☐ Yes. The relative priority of creditors is specified on lines

**Describe debtor's property that is subject to a lien**

**REAL PROPERTY**

Amount of Claim: $2,389,627.00    Value of collateral: UNKNOWN

**Describe the lien**

**REAL PROPERTY**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No.
☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**

Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digts of account number for this entity |
| --- | --- | --- |

23-01262-WLH11 Doc 754 Filed 10/16/25 Entered 10/16/25 16:35:28 Pg 175 of 335

| Debtor | VH Willows Townhomes, LLC | 23-01262 |
|---|---|---|
| | Name | Case Number (if known) |

<div style="background:black; color:white">**Part 3:** Total Amounts of the Claims Secured by Property</div>

| | **Total of Claim Amounts** |
|---|---|
| **3a. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**    **3a.** | $2,389,627.00 |

Debtor name **VH Willows Townhomes, LLC**

United States Bankruptcy Court for the: **Eastern** District of **Washington**

(State)

Case number (If known): **23-01262**

Official Form 206E/F

☐ Check if this is an
amended filing

# Schedule E/F: Creditors Who Have Unsecured Claims

**12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| Part 1: | All Creditors with PRIORITY Unsecured Claims |
| --- | --- |

**1. Do any creditors have priority unsecured claims?**

☑ No. Go to Part 2

☐ Yes

| | | **Total Claim** | **Priority Amount** |
| --- | --- | --- | --- |

**2.1** **Priority creditor's name and mailing address**

**As of the petition filing date, the claim is:**

Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date or dates debt was incurred**

**Basis for the claim:**

**Last 4 digts of account number**

**Specify Code subsection of PRIORITY unsecured**

**claim: 11 U.S.C. § 507(a) (_____)**

**Is the claim subject to offset?**

☐ No
☐ Yes

**VH Willows Townhomes, LLC**

Debtor Name

| Part 2: | All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page. If no additional PRIORITY creditors exist, do not fill out or submit this page.

**Amount of Claim**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $165.00 |
|---|---|---|---|
| s1228 | HEB BUSINESS SOLUTIONS<br>375 SOUTH 300 WEST<br>SALT LAKE CITY, UT 84101 | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: TRADE PAYABLE | |
| | Last 4 digts of account number | Is the claim subject to offset?<br>☑ No<br>☐ Yes | |

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $776.69 |
|---|---|---|---|
| s1229 | HULTQUIST HOMES INC<br>12570 OLD SEWARD HWY<br>ANCHORAGE, AL 99515 | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: TRADE PAYABLE | |
| | Last 4 digts of account number | Is the claim subject to offset?<br>☑ No<br>☐ Yes | |

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,730.57 |
|---|---|---|---|
| s1230 | KING COUNTY FINANCE<br>201 S JACKSON ST STE 710<br>SEATTLE, WA 98104 | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: TRADE PAYABLE | |
| | Last 4 digts of account number | Is the claim subject to offset?<br>☑ No<br>☐ Yes | |

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $275.63 |
|---|---|---|---|
| s1231 | PROVIDENT ELECTRIC, INC.<br>PO BOX 7087<br>COVINGTON, WA 98042 | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: TRADE PAYABLE | |
| | Last 4 digts of account number | Is the claim subject to offset?<br>☑ No<br>☐ Yes | |

23-01262-WLH11 Doc 504 Filed 10/25/26 Entered 10/25/26 16:05:28 Pg 228 of 335

| Part 2: | All Creditors with NONPRIORITY Unsecured Claims |
|---------|--------------------------------------------------|

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.  If no additional PRIORITY creditors exist, do not fill out or submit this page.

**Amount of Claim**

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $496.12 |
|-----|--------------------------------------------------|-----------------------------------------------|---------|

**s1232**   **RAFAEL URREA O (HAPPYHANDYMAN)**
**3836 RENTON AVE S**
**SEATTLE, WA  98108**

Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date or dates debt was incurred**

**Last 4 digts of account number**

Basis for the claim:   **TRADE PAYABLE**

**Is the claim subject to offset?**

☑ No
☐ Yes

## Part 3: List Others to Be Notified About Unsecured Claims

List in alphabetical order any others who must be notified for claims already listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 or Part 2 did you enter the related creditor? | Last 4 digts of account number for this entity |
|---|---|---|

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | **Total of Claim Amounts** |
|---|---|---|

**5a. Total Claims from Part 1**       5a.    _____ $0.00

**5b. Total Claims from Part 2**       5b.    + _____ $3,444.01

**5c. Total of Parts 1 and 2**       5c.    _____ $3,444.01
    Lines 5a + 5b = 5c.

23-01262-WLH11 Doc 704-Filed 10/15/26 Entered 10/15/26 23:35:28 Pg 231 of 335

| | |
|---|---|
| Debtor name | VH Willows Townhomes, LLC |
| United States Bankruptcy Court for the: | Eastern **District of** Washington<br>(State of) |
| Case Number (if known): | 23-01262 **Chapter** 11 |

☐ Check if this is an amended filing

## Official Form 206G

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| 2. 1 | **State what the contract or lease is for and the nature of the debtor's interest** | PROPERTY MANAGEMENT |
| | | JMW GROUP \| WINDERMERE PROPERTY MANAGEMENT<br>210 SUMMIT AVE E<br>SEATTLE, WA 98102 |
| | **State the term remaining** | |
| | **List the contract number of any government contract** | |

| | |
|---|---|
| Debtor 1 | **VH Willows Townhomes, LLC** |
| United States Bankruptcy Court for the: | **Eastern** District of **Washington** |
| | (State of) |
| Case Number (if known): **23-01262** | Chapter **11** |

☐ **Check if this is an amended filing**

## Official Form 206H

## SCHEDULE H - CODEBTORS                                        12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No   Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.**

| | Column 1: Codebtor<br>Name and Mailing Address | Column 2: Creditor<br>Name | Check all schedules that apply: |
|---|---|---|---|
| 2.1 | CHRISTOPHER J CHRISTENSEN<br>27112 SE GRAND RIDGE DRIVE<br>ISSAQUAH, WA  98029 | LIMA ONE CAPITAL | ☑ D<br>☐ E/F<br>☐ G |

Debtor Name    VH Willows Townhomes, LLC

United States Bankruptcy Court for the:   Eastern     District of   Washington
                                                       (State)

Case number (If known):    23-01262

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule _____*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   11/15/2023       ✗ /s/ Lance Miller
        MM / DD / YYYY                Signature of individual signing on behalf of debtor

                                    Lance Miller
                                    Printed name

                                    Manager
                                    Position or relationship to debtor

# EXHIBIT 5

BORDE LAW PLLC
Manish Borde, WSBA #39503
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone:  (206) 531-2722

RAINES FELDMAN LITTRELL LLP
Michael L. Simon, CA State Bar No. 300822
*msimon@raineslaw.com*
*Admitted Pro Hac Vice*
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
Telephone:  (310) 440-4100
Facsimile:  (310) 499-4877

The Honorable Whitman L. Holt
Chapter 11
Hearing Date: August 21, 2024
Hearing Time: 10:30 AM
Hearing Location:  Telephonic
Response Date: August 16, 2024

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

In re:

ICAP ENTERPRISES, INC., et al.,

Debtors.[1]

Lead Bankruptcy Case No. 23-01243-WLH11

Jointly Administered

---

[1] The Debtors, along with their case numbers, are as follows: iCap Enterprises, Inc. (Case No. 23- 01243-11); iCap Pacific NW Management, LLC (Case No. 23-01261-11); iCap Vault Management, LLC (Case No. 23-01258-11); iCap Vault, LLC (Case No. 23-01256- 11); iCap Vault 1, LLC (Case No. 23-01257-11); Vault Holding 1, LLC (Case No. 23-01265-11); iCap Investments, LLC (Case No. 23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (Case No. 23-01253-11); iCap Equity, LLC (Case No. 23-01247-11); iCap Pacific Income 4 Fund, LLC (Case No. 23-01251- 11); iCap Pacific Income 5 Fund, LLC (Case No. 23- 01249-11); iCap Northwest Opportunity Fund, LLC (Case No. 23-01253-11); 725 Broadway, LLC (Case No. 23- 01245-11); Senza Kenmore, LLC (Case No. 23-01254- 11); iCap Campbell Way, LLC (Case No. 23-01250-11); UW 17th Ave, LLC (Case No. 23-01267-11); iCap Broadway, LLC (Case No. 23-01252- 11); VH 1121 14th LLC (Case No. 23-01264-11); VH Senior Care LLC (Case No. 23-01266-11); VH Willows Townhomes (Case No. 23-01262-11); iCap @ UW, LLC (Case No. 23- 01244-11); VH 2nd Street Office, LLC (Case No. 23- 01259-11); VH Pioneer Village LLC (Case No. 23-01263- 11); iCap Funding LLC (Case No. 23-01246-11); iCap Management LLC (Case No. 23-01268-11); iCap Realty, LLC (Case No. 23-01260-11) Vault Holding, LLC (23- 01270-11); iCap Pacific Development LLC (23-01271- 11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap

Opposition to Motion for an Order Approving Proposed Disclosure
Statement- 1
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

**OPPOSITION TO MOTION FOR AN ORDER APPROVING (I) PROPOSED DISCLOSURE STATEMENT; (II) SOLICITATION AND VOTING PROCEDURES; (III) NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF JOINT PLAN OF LIQUIDATION; AND (IV) GRANTING RELATED RELIEF**

Secured creditor Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner of MFA 2022-RTL1 Trust ("Wilmington") and Lima One Capital ("Lima"), hereby submit this opposition to the Debtors' *Motion for an Order Approving (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Liquidation; and (IV) Granting Related Relief* [ECF No. 1142] (the "Motion"). Capitalized terms not otherwise defined herein shall have the meanings set forth in the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of ICap Enterprises, Inc. and Its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1088] (the "Disclosure Statement").

## I.   <u>INTRODUCTION</u>

The Disclosure Statement should not be approved in its current form. The Debtors expect creditors to vote on extraordinary relief without the most

---

Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 2
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

fundamental information. The Disclosure Statement fails to provide typical financial data and information crucial to the terms of the Plan and the extraordinary relief that the Debtors seek. The Disclosure Statement contains several material omissions that make it impossible for creditors and investors to make informed judgments about the Plan. The key deficiencies in the Disclosure Statement can be summarized as follows:[2]

- First, the Disclosure Statement omits basic financial information concerning the Debtors, such as, the identity of the Debtors' assets, their values, and the amounts of the various claims in each estate.
- Second, the Disclosure Statement does not include a liquidation analysis (another basic disclosure statement necessity).
- Third, the Disclosure Statement fails to provide crucial information concerning the liens of Wilmington and other secured creditors, including whether the liens will continue to attach to the particular secured creditor's collateral and proceeds upon the Effective Date.
- Fourth, the Disclosure Statement omits necessary information regarding the iCap Trust that the Plan creates, such as, the agreement governing the iCap Trust—the "iCap Trust Agreement."
- Fifth, the Debtors fail to explain the intended impact on creditors and investors of the extraordinary relief the Debtors seek through the Plan—the substantive consolidation of 34 estates and the Ponzi Findings.

---

[2]  Wilmington reserves all rights and arguments regarding whether the Plan should be confirmed.

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 3
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

In addition to the foregoing, the Plan limits Wilmington's contractual rights and yet classifies Wilmington as unimpaired. VH Willows Townhomes LLC ("VH Willows") and VH 1121 14th LLC ("VH 1121") are supposed to be holding at least $5,151,019.80 in sale proceeds from the sale of Wilmington's real property collateral. The Plan does not preserve Wilmington's contractual right to exercise any and all rights and remedies available under its loan documents and at law, in equity, or by statute. Moreover, Wilmington was entitled to be paid in full by the June 1, 2023, maturity date on account of the loans made to VH Willows and VH 1121. However, under the Plan, Wilmington will not receive its proceeds upon the Effective Date. Accordingly, the Plan alters the contractual rights of Wilmington rendering it impaired.

If the Disclosure Statement is approved, the Voting and Objection Deadline should be extended to allow creditors and investors sufficient time to evaluate and accommodate discovery on the Plan. The three weeks requested by the Debtors is not consistent with the time required by the Bankruptcy Rules and is not reasonable or sufficient based on the circumstances of these cases. The Debtors request extreme relief, including by seeking to substantively consolidate 34 estates. This is a fact specific inquiry, necessitating discovery, which Wilmington intends to conduct and Wilmington and others should be afforded a sufficient opportunity to do so.

## II.     **BACKGROUND**

Pre-petition, Lima made a loan to Debtor VH 1121 14th in the principal sum of $3,000,000 (the "VH 1121 Loan") and a loan to Debtor VH Willows Townhomes in the principal sum of $2,985,000 (the "VH Willows Loan" and

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 4
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

together with the VH 1121 Loan, the "Loans").  The Loans were evidenced by certain promissory notes and secured by certain deeds of trust as set forth in the proofs of claim filed by Wilmington.  (*See* Ex. 1, POC 1-1, Case No. 23-01264-WLH11, and Ex. 2, POC 1-1, Case No. 23-01262-WLH11.)  Pre-petition, all of Lima's interests in the Loans and the liens securing the Loans were assigned to Wilmington.

Both Loans matured on June 1, 2023, and defaults were noticed for the failures of VH 1121 and VH Willows to pay their respective outstanding balances by the maturity dates.  As of the Petition Date, the total indebtedness owed to Wilmington on the VH 1121 Note was $3,211,693.75 and the total indebtedness owed to Wilmington on the VH Willows Note was $1,962,518.58.  (*See* Exs. 1 and 2.)

During the cases, the Debtors sold the real properties securing the Loans. Wilmington is informed that VH 1121 received sale proceeds of $2,974,905.65 and VH Willows received sale proceeds of $2,176,114.15.  Based on the amounts of sale proceeds received by VH 1121 and VH Willows, Wilmington is undersecured.

Pursuant to the *Order Granting Debtors' Motion for Order Establishing Procedures for Sale of Property of the Estates* [ECF No. 611] (the "Sale Procedures Order"), the Debtors were to hold the sale proceeds in a segregated account pending further order from the Court.  (*See* Sale Procedures Order at 7:9-11, "The Wilmington Segregated Proceeds will be kept in such separate bank account and will not be used for any purpose without further court order.")  The Sale Procedures Order also provided that the liens held by Wilmington attached to such sale proceeds.  (*See id.* at 7:14-18.)  Unfortunately, Wilmington recently

Opposition to Motion for an Order Approving Proposed Disclosure
Statement- 5
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

learned that, following VH Willows' receipt of the sale proceeds, VH Willows made at least five transfers of the sale proceeds totaling at least $53,464.49 in violation of the Sale Procedures Order and without Wilmington's consent. This included an unauthorized transfer of $13,600 in apparent exchange for a tenant to move out. (*See* VH Willows April 2024 Monthly Operating Report, Docket No. 966, at 16.)

## III.   **LEGAL STANDARD**

In order for a disclosure statement to be approved, a court must find that it contains "adequate information," which requires that it contain:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

In evaluating the adequacy of a disclosure statement, courts have considered whether the following information is included:

> (1) the events which led to the filing of a bankruptcy petition;
> (2) a description of the available assets and their value;
> (3) the anticipated future of the company;
> (4) the source of information stated in the disclosure statement;
> (5) a disclaimer;

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 6
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

(6) the present condition of the debtor while in Chapter 11;
(7) the scheduled claims;
(8) the estimated return to creditors under a Chapter 7 liquidation;
(9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
(10) the future management of the debtor;
(11) the Chapter 11 plan or a summary thereof;
(12) the estimated administrative expenses, including attorneys' and accountants' fees;
(13) the collectability of accounts receivable;
(14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
(15) information relevant to the risks posed to creditors under the plan;
(16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
(17) litigation likely to arise in a nonbankruptcy context;
(18) tax attributes of the debtor; and
(19) the relationship of the debtor with affiliates.

*In re Metrocraft Publishing*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).


## IV.   THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION

### a.  The Disclosure Statement Lacks Basic Financial Information

Certain basic financial information regarding a debtor must be provided in a disclosure statement.  *See, e.g.*, *In re Metrocraft Publishing*, 39 B.R. at 568 (evaluating the adequacy of a disclosure statement based on "(2) a description of the available assets and their value . . . (7) the scheduled claims . . . (12) the

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 7
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

estimated administrative expenses, including attorneys' and accountants' fees . . .

(14) financial information, data, valuations or projections relevant to the

creditors' decision to accept or reject the Chapter 11 plan . . . ."); *see also In re*

*Adana Mortg. Bankers, Inc.*, 14 B.R. 29, 30-31 (Bankr. N.D. Ga.) (stating that

"financial information, data, valuations, or projections relevant to the

determination by the Creditors" is the "basic financial information" that must be

provided).

The Debtors have failed to provide the type of basic financial information

that a disclosure statement must include.  The Disclosure Statement does not

provide the following as to each Debtor: (1) the assets currently held by the

Debtors and their estimated values, including any unsold real properties; (2) the

Debtors' current cash on hand; (3) the amount of priority claims; (4) the amount

of administrative claims; (5) the amount of secured claims; (6) the amount of

investor claims; and (7) the amount of general unsecured claims.  The Disclosure

Statement should quantify the values of each Debtors' assets and the claims

asserted against each estate to help creditors.  This information should be readily

available.  Moreover, this information is relevant to the expected recoveries and,

ultimately, the decision of creditors and investors to vote to accept or reject the

Plan.  Asset and claim information is especially important here because the

Debtors seek substantive consolidation through the Plan.

### b.  <u>The Disclosure Statement Lacks Adequate Information Concerning the Liens held by Wilmington and Other Secured Creditors</u>

The Disclosure Statement fails to provide adequate information concerning

the liens held by Wilmington and other secured creditors.  The Disclosure

Statement (and the Plan) fail to provide that, post-Effective Date, Wilmington's

Opposition to Motion for an Order Approving Proposed Disclosure
Statement- 8
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

liens will continue to attach to the sale proceeds with the same validity, priority, force, and effect as provided by the Sale Procedures Order and Wilmington's deeds of trust. In fact, it appears that, under the Disclosure Statement (and the Plan), Wilmington's liens will not attach to the sale proceeds:

> *Vesting of iCap Trust Assets.* On the Effective Date, the iCap Trust will be automatically vested with all the Debtors' and the Estates' respective rights, title, and interest in and to all iCap Trust Assets. Except as specifically provided in the Plan or the Confirmation Order, ***the iCap Trust Assets shall automatically vest in the iCap Trust free and clear of all Claims, Liens, or interests*** subject only to the iCap Trust Interests and the iCap Trust Expenses, as provided for in the iCap Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.

(*See* Disclosure Statement at 66:7-12.) (emphasis added.)

The Disclosure Statement also fails to provide adequate information concerning the Debtors' post-petition sales. The Debtors should disclose whether the sales approved by the Court have closed, the amount of sale proceeds held by the Debtors, where the proceeds are currently held, where they will be held post-Effective Date, and what liens attach to the proceeds. This is especially so as to secured creditors such as Wilmington. Following the sales of Wilmington's real property collateral, Wilmington learned that the Debtors improperly transferred at least $53,464.49 of the sale proceeds secured by Wilmington's liens in violation of the Sale Procedures Order and without Wilmington's consent. (*See* VH Willows April 2024 Monthly Operating Report, ECF No. 966-2, at 15.)

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 9
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Moreover, the Debtors have not filed any reports of sale as required by Bankruptcy Rule 6004(f)-(1). Secured creditors should be informed of the exact value of any cash held by the Debtors to which secured creditors' liens attach.

### c. **The Disclosure Statement Fails to Include a Liquidation Analysis**

The Disclosure Statement does not include a liquidation analysis. "Case law holds that in order to provide adequate information, the disclosure statement must contain a liquidation analysis which compares the proposed plan of reorganization with a Chapter 7 liquidation." *In re Diversified Invs. Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988). While the Plan is a liquidating plan, it is not a Chapter 7 liquidation and it is important that creditors and investors understand the differences between the Plan and a Chapter 7 liquidation. *See also* 11 U.S.C. § 1129(a)(7). Here, the Plan provides for the iCap Trustees to receive 5% of the iCap Trust's *gross* recoveries. (*See* Plan at 32:14-16.) This is substantially higher than the 3% maximum percentage that chapter 7 trustees are allowed for *distributions* made in a Chapter 7 case in excess of $1,000,000. *See* 11 U.S.C. § 326(a). Moreover, the Plan provides for compensation to the iCap Trust Supervisory Board as set forth in the iCap Trust Agreement (which has not yet been filed). The Disclosure Statement must include a liquidation analysis.

The Debtors acknowledge this deficiency in the Motion. (*See* Mot. at 9, ¶ 16.) While the Debtors seem to suggest that a liquidation analysis is being prepared, with less than a week before hearing, it has yet to materialize. For this reason alone, the Disclosure Statement hearing should not proceed as scheduled. Creditors should be given a reasonable opportunity to review any proposed liquidation analysis *prior* to the deadline to object.

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 10
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

**d.** **The Disclosure Statement Fails to Include the iCap Trust Agreement**

The Plan provides for the creation of the iCap Trust pursuant to the iCap Trust Agreement. However, the Disclosure Statement and Plan both fail to include a copy of the proposed iCap Trust Agreement. As a result, the terms of the iCap Trust and, thus, the post-confirmation management of the iCap Trust, are unclear. To provide adequate information, the Debtors should provide a copy of the proposed iCap Trust Agreement with the Disclosure Statement (with sufficient time for interested parties to review before approval of the Disclosure Statement).

Similarly, the Plan provides for the appointment of an iCap Trust Supervisory Board to oversee the performance of the iCap Trustees' duties. While the individuals proposed to serve on the board are identified in the Disclosure Statement, it is not clear why they were selected to serve on the board, what their relationship is to these cases, and what their duties will be post-confirmation. This information should be provided so that creditors and investors have more insight into the management of the iCap Trust.

**e.** **The Disclosure Statement Fails to Adequately Describe the Extraordinary Relief the Plan Seeks**

By the Plan, the Debtors request the substantive consolidation of 34 estates. However, the Disclosure Statement provides no analysis of how such consolidation will impact the creditors and investors on an estate-by-estate basis. In fact, as discussed above, the Disclosure Statement is so deficient—lacking the value of assets and liabilities of each estate—that it deprives creditors and investors of determining such impact on their own. The Disclosure Statement

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 11
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

must provide asset and liability information and, further, should explain to creditors and investors how the proposed substantive consolidation will impact them and their recoveries.

The Disclosure Statement does not adequately describe the implications of the Ponzi Findings sought through the Plan. The Disclosure Statement should identify clearly the Debtors intended legal impact of the finding(s) and how the iCap Trust (to be managed by the Debtors' CRO) intends to use the finding(s) post-confirmation. A Ponzi scheme finding can have material implications for creditors and investors. For example, with respect to actual fraudulent transfer claims, actual intent to defraud is *presumed* when a transfer was made from an entity operating a Ponzi scheme. *See In re Cohen*, 199 B.R. 709, 717 (B.A.P. 9th Cir. 1996). The Disclosure Statement omits that the Ponzi Finding could create a legal presumption that transfers received during the operation of the Ponzi scheme were made with the actual intent to defraud. As a matter of due process, the Debtors should be required to make their intentions with this proposed finding clear. Surely, creditors and investors should be unequivocally informed, *before they cast a vote on the Plan and the Ponzi Finding*, of the potential repercussions of that vote. That is, if they received any transfers from the Debtors during the operation of the Ponzi Scheme, it could be legally presumed that such transfers were made with actual fraudulent intent. The Disclosure Statement should be revised to make this clear.

Similarly, the Disclosure Statement should specify the "Ponzi Start Date." (*See* Plan at 15, line 4, "Ponzi Start Date: [_____].")[3] The implications of the

---

[3] The Defined Terms and Rules of Interpretation included with the Plan should also be included in the Disclosure Statement.

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 12
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

proposed Ponzi Finding cannot be understood without setting forth the dates of the alleged Ponzi scheme.

## V.   WILMINGTON AND OTHER SECURED CREDITORS SHOULD BE CLASSIFIED AS IMPAIRED

Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). In relevant part, section 1124 provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan . . . leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. " 11 U.S.C. § 1124(1).

It is well established that, with this language, "Congress define[d] impairment in the broadest possible terms. " *In re Madison Hotel Associates,* 749 F.2d 410, 418 (7th Cir.1984) (quoting *In re Taddeo,* 685 F.2d 24, 28 (2d Cir.1982)). The Ninth Circuit has suggested that under this broad definition, "any alteration of the rights constitutes impairment even if the value of the rights is enhanced." *See In re L & J Anaheim Asscs.,* 995 F.2d 940, 942 (9th Cir. 1993) quoting *In re Acequia,* 787 F.2d at 1363 (dictum) (quoting 5 *Collier on Bankruptcy* ¶ 1124.03, at 1124-13 (15th ed. 1985)); *see also In re Club Associates,* 107 B.R. 385, 401 (Bankr.N.D.Ga.1989) ("Any alteration in a creditor's legal rights or privileges constitutes impairment."); *In re Elijah,* 41 B.R. 348, 350 (Bankr.W.D.Mo.1984) ("Alteration is synonymous with impairment.").

According to the Ninth Circuit, the alteration of a secured creditor's contractual rights constitutes impairment. *See In re L & J Anaheim Asscs.*, 995 F.2d 940, 943 (9th Cir. 1993) (Determining that the plan did away the secured

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 13
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

creditor's ability to exercise all rights and remedies available under the California Uniform Commercial Code as set forth in the loan documents and "thus altered Kawasaki's prepetition contract rights, leaving it impaired within the meaning of the Code.").

The Plan alters Wilmington's rights. First, under its deeds of trust, Wilmington is entitled to exercise any and all rights and remedies available thereunder and at law, in equity, or by statute. (*See* Ex. 1 at 23 of 55, Art. III; Ex. 2 at 24 of 54, Art. III.) This includes because it is undisputed that the Debtors defaulted pre-petition. The Plan does not preserve these rights and remedies as to Wilmington and the other secured creditors. (*See* Plan at 23.) Moreover, nowhere in the Plan does it state that Wilmington is retaining all its legal and equitable rights. For this simple reason, under *L & J Anaheim Asscs.*, the Plan alters Wilmington's contractual rights, rendering Wilmington impaired. 995 F.2d at 943. The Plan should provide that "The legal, equitable, and contractual rights of Wilmington are unaltered by the Plan."

Second, Wilmington was entitled to be paid in full on both Loans by the June 1, 2023, maturity dates. (*See* Ex. 1 at 52 of 55, Loan Extension Agreement reflecting maturity date of June 1, 2023; Ex. 1 at 51 of 54, Loan Extension Agreement reflecting maturity date of June 1, 2023.) However, Wilmington will not receive its proceeds on the Effective Date. Rather, the Plan provides that Wilmington will not receive its sale proceeds until a final order is entered post-Effective Date allowing its claim.[4] Accordingly, the Plan alters Wilmington's contractual rights, rendering it impaired.

---

[4] Under the Plan, the Claim Objection Deadline can be extended an unlimited number of times. (*See* Plan at 50:21.). Given that the Plan provides for claim objections to be filed post-Effective Date and requires entry of a Final Order allowing the secured claim at issue before distributions to secured

Opposition to Motion for an Order Approving Proposed Disclosure Statement- 14
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Because impairment determines whether a creditor is entitled to vote, Wilmington submits that the issue of impairment is appropriate for adjudication at this stage.

## VI. THE VOTING AND OBJECTION DEADLINE SHOULD BE EXTENDED

The Motion proposes a September 13, 2024, deadline to submit ballots and object to confirmation of the Plan. (*See* Mot. at 10.) These deadlines are about three weeks past the August 21, 2024, Disclosure Statement hearing.

The Voting and Objection Deadline should be extended to allow creditors and investors sufficient time to evaluate how to vote and whether to object. Bankruptcy Rule 2002(b) requires 28 days' notice for filing objections to and the hearing on confirmation of a plan. *See* Bankruptcy Rule 2002(b). Three weeks is not consistent with the Bankruptcy Rules and, in addition, is not reasonable on the facts of these cases. As discussed above, by the Plan, the Debtors seek extraordinary relief while omitting basic and necessary information. Three weeks is not a sufficient and reasonable amount of time for creditors and investors to evaluate how to vote and whether to object on *this Plan*. Creditors will not receive the solicitation packages immediately because the Debtors propose to mail the packages. The Disclosure Statement and Plan are voluminous and the Plan, if confirmed, will have significant consequences for creditors and investors. Creditors and investors should have an appropriate amount of time to make informed decisions regarding the Plan.

---

creditors are made, the Plan effectively provides that Wilmington will not receive a distribution of its collateral on the Effective Date. (*See* Plan at 2:19-3:11, definition of "Allowed Claim.")

Opposition to Motion for an Order Approving Proposed Disclosure
Statement- 15
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

1      In addition, the Objection Deadline should be set to accommodate

2  discovery on the Plan.  The Debtors seek relief that is not only extraordinary, but

3  is highly dependent on the facts of these cases—facts that require discovery.

4  Wilmington is the sole creditor in the VH 1121 estate and one of six creditors in

5  the VH Willows[5] estate, both of which are subject to the Debtors' request for

6  substantive consolidation.  Wilmington intends to conduct discovery on this issue

7  and Wilmington and others should be afforded a sufficient opportunity to do so.

8  Wilmington respectfully submits that six weeks from the date of service is an

9  appropriate amount of time to submit ballots and object to confirmation.

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

## VII.  <u>CONCLUSION</u>

Based on the foregoing, Wilmington respectfully requests that the Court

deny approval of the Disclosure Statement.

---

[5]  Wilmington understands that five other creditors submitted claims against VH Willows totaling $3,444.01.

Opposition to Motion for an Order Approving Proposed Disclosure
Statement- 16
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

Dated this 16th day of August, 2024.

BORDE LAW PLLC


By: /s/ Manish Borde

MANISH BORDE (WSBA # 39503)
1700 7th Ave., Suite 2100
Seattle, WA 98101-1360
*mborde@bordelaw.com*


RAINES FELDMAN LITTRELL LLP


By: /s/ Michael L. Simon

MICHAEL L. SIMON (CA SBN 244256)
*Admitted Pro Hac Vice*
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
*msimon@raineslaw.com*

Opposition to Motion for an Order Approving Proposed Disclosure
Statement- 17
(23-01243-WLH11)

CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys who have appeared in the case.

DATED this 16th day of August, 2024.

/s/ Manish Borde

Manish Borde, WSBA #39503
BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722
E-mail: mborde@bordelaw.com
*Counsel for Wilmington and Lima*

Opposition to Motion for an Order Approving Proposed Disclosure
Statement- 18
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

23-01243-WLH11    Doc 1704-1  Filed 08/16/24  Entered 08/16/24 13:05:28   Pg 253 of 335

# EXHIBIT 6

Julian I. Gurule (CA SBN: 252160)*
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 430-6067
Email: jgurule@omm.com

*Co-Counsel to Debtors and Debtors in Possession*

Oren B. Haker (WSBA No. 48725)
BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: (503) 224-5560
Email: oren.haker@bhlaw.com

*Admitted Pro Hac Vice*

*Co-Counsel to Debtors and Debtors in Possession*

HONORABLE WHITMAN L. HOLT

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re:

ICAP ENTERPRISES, INC., *et al.,*

Debtors.[1]

Chapter 11

Lead Case No. 23-01243-WLH11
Jointly Administered

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01256-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01253-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

iCap Enterprises, Inc. and its affiliated debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 bankruptcy cases (the "Chapter 11 Cases") and the Official Committee of Unsecured Creditors (the "UCC" and together with the Debtors, the "Plan Proponents") hereby file this omnibus reply (the "Reply") to the objections filed by Redmond Funding Group, LLC ("Redmond") [ECF No. 1173], iCap Equity Noteholders (the "Noteholders") [ECF No. 1181], Wilmington Savings Fund Society, FSB ("Wilmington") [ECF No. 1182], and Christopher Christensen ("Christensen") [ECF No. 1184] (collectively, the "Objections") to the *Motion for an Order Approving: (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Liquidation; and (IV) Granting Related Relief* [ECF No. 1142] (the "Disclosure Statement Motion"),[2] and in support of the Disclosure Statement Motion, respectfully state as follows:

## INTRODUCTION

After months of negotiations between the Debtors and the UCC, on July 16, 2024, the Plan Proponents filed the *Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1089] (the "Plan") and the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1088] (the "Disclosure Statement"). On July 19, 2024, the Plan Proponents filed the Disclosure Statement Motion, seeking, among other things, approval of the Disclosure Statement.

---

[2] Capitalized terms used, but not defined herein shall have the meanings ascribed to them in the Disclosure Statement Motion or the Amended Plan, as applicable.

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

2

Four parties filed Objections to the Disclosure Statement Motion: (i) two of the Debtors' prepetition mortgage lenders who assert Secured Claims against the Debtors, Redmond and Wilmington, (ii) an ad hoc group of Investors, and (iii) the founder and former CEO of the Debtors. To reflect any changes during the Chapter 11 Cases since filing the Disclosure Statement and in response to the Objections (and in resolution of certain other informal comments to the Plan and Disclosure Statement), the Plan Proponents have contemporaneously filed the *First Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* (as may be further amended, modified, or supplemented, the "Amended Plan") and the *First Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* (as may be further amended, modified, or supplemented, the "Amended Disclosure Statement").[3]

Prior to the filing of this Reply, the Plan Proponents were able to reach an agreement with the Noteholders regarding their Objection, which is reflected in the language added to the Amended Disclosure Statement as noted below and in the chart attached hereto as **Exhibit A**. The Plan Proponents understand that the inclusion of this language in the Amended Disclosure Statement fully resolves the Noteholders' Objection. The Plan Proponents sought to resolve the remaining Objections but were unable to do so in advance of filing this Reply. As to these remaining Objections, the Plan Proponents (a) have added language to the Amended Plan and Amended Disclosure Statement, as reflected in the chart attached hereto as **Exhibit A** that they believe addresses the relevant Objections, or (b) believe that the Objections address

---

[3] Redlines of the original Plan and Disclosure Statement against the Amended Plan and Amended Disclosure Statement are filed contemporaneously herewith.

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560

1 issues that are related to confirmation of the Amended Plan and, therefore, are
2 inappropriate to consider in connection with approval of the Amended Disclosure
3 Statement.

4      For the reasons set forth herein and in the Disclosure Statement Motion, the
5 Amended Disclosure Statement provides adequate information for those creditors
6 entitled to vote to make an informed judgment to accept or reject the Amended Plan in
7 satisfaction of the statutory requirements of section 1125 of the Bankruptcy Code.

8                                                    **REPLY**

9      "The primary purpose of a disclosure statement is to give creditors and interest
10 holders the information they need to decide whether to accept the plan." *Captain*
11 *Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 537 (B.A.P.
12 9th Cir. 2004). Accordingly, section 1125 of the Bankruptcy Code requires that a
13 disclosure statement provide "adequate information . . . of a kind, and in sufficient
14 detail, as far as is reasonably practicable in light of the nature and history of the debtor
15 and the condition of the debtor's books and records, that would enable a hypothetical
16 reasonable investor typical of holders of claims or interests of the relevant class to make
17 an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1). "Precisely what
18 constitutes adequate information in any particular instance will develop on a case-by-
19 case basis. Courts will take a practical approach as to what is necessary under the
20 circumstances of each case . . . . There will be a balancing of interests in each case." *In*
21 *re 3dfx Interactive, Inc.*, No. 02-55795 JRG, 2006 Bankr. LEXIS 1498, at *20 (Bankr.
22 N.D. Cal. June 29, 2006) (quoting *Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329
23 B.R. 491, 507 (D.N.J. 2005)). "The definition of 'adequate information' accommodates
24 the possibility that adequate information about a liquidation plan may be different than
25 such information about a proposed restructuring of the business." *In re Michelson*, 141
26 B.R. 715, 720 n.13 (Bankr. E.D. Cal. 1992).

**PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT**
4

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Generally, "confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012) (quoting *In re Larsen*, No. 09-02630, 2011 Bankr. LEXIS 1621, 2011 WL 1671538, at *2 n.7 (Bankr. D. Idaho May 3, 2011)). The only exception is when a plan is so fundamentally flawed that it is patently nonconfirmable as a matter of law. *See In re Silberkraus*, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000).

Here, while the majority of the Objections actually raise confirmation issues, not Disclosure Statement issues, none of the Objections support the conclusion that the Plan is unconfirmable.

### A. The Amended Disclosure Statement Provides Adequate Information Under 11 U.S.C. § 1125

As demonstrated below, the Amended Disclosure Statement includes extensive detail regarding the Debtors' prepetition businesses, the reasons for commencing these Chapter 11 Cases, key events that occurred during the course of these Chapter 11 Cases, the facts supporting the determination that the Debtors' business operated as a Ponzi scheme prepetition, the terms of the Amended Plan, and the potential recoveries to creditors, all of which constitutes "adequate information" to enable holders of claims in the Voting Classes to make an informed judgment about the Amended Plan.

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtors' Background | An overview of the Debtors' corporate history, organizational structure, capital structure, and indebtedness. | Article II |
| Key Events Leading to these Chapter 11 Cases | An overview of the events leading to the Debtors' filing of these Chapter 11 Cases. | Article II.D |
| Events During the Chapter 11 Cases | An overview of significant events that occurred during the Chapter 11 Cases. | Article III |

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

5

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Ponzi Findings | A description of the Plan Proponents' determination that Christensen operated the prepetition Debtors as a Ponzi scheme and the requested Ponzi Findings in connection therewith. | Article IV |
| Description of the Plan | A description of the Amended Plan, including a summary of the treatment of all Claims and Equity Interests under the Amended Plan. | Article V |
| Plan Implementation | A description of how the Amended Plan is to be implemented, including information concerning the iCap Trust. **Specifically, Article V F.4 clarifies that the substantive consolidation of the Debtors will not impact Wilmington's Claims. And Article V.F.5 of the Amended Disclosure Statement includes additional language addressing the iCap Trust Actions in response to Redmond's objection.** | Article V.F |
| Risk Factors | A description of certain risks affecting the Amended Plan and the Debtors, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information set forth in the Amended Disclosure Statement. | Article VI |
| Securities Law Consequences | A description of certain securities law consequences of the Amended Plan. | Article VIII |
| Income Tax Consequences | A description of certain U.S. federal income tax consequences of the Amended Plan. | Article IX |
| Solicitation and Voting Procedures | A description of the procedures for voting on the Amended Plan. | Article VII.B |

**PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT**

6

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Confirmation of the Plan | A description of the confirmation procedures and statutory requirements for confirmation of the Amended Plan. | Article VII.B |
| Exculpation, Release, and Injunction Provisions | A description of the exculpation, release, and injunction provisions of the Amended Plan. | Articles V.I.8, 9, 10 |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. **The Plan Proponents have attached the Liquidation Analysis as Exhibit B to the Amended Disclosure Statement.** | Exhibit B |
| Recovery Analysis | An analysis of the projected recoveries for creditors under the Amended Plan. **The Plan Proponents have attached the Recovery Analysis as Exhibit C to the Amended Disclosure Statement.** | Exhibit C |

The Amended Disclosure Statement contains adequate information for voting creditors to make an informed judgment to accept or reject the Amended Plan. Nevertheless, the Plan Proponents have revised the Disclosure Statement to address certain concerns raised in the Objections and have been in contact with the objecting parties concerning potential additional language to resolve the pending Objections. The changes to the originally filed Plan and Disclosure Statement are reflected in the chart attached hereto as **Exhibit A**.

### 1. The Amended Disclosure Statement Adequately Describes the Causes of Action Being Retained

Redmond objects to the Disclosure Statement Motion on the grounds that the Disclosure Statement does not specifically identify the intended targets of potential Avoidance Actions and that supplementing the Disclosure Statement with a non-

PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT

Black Helterline LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560

7

exhaustive list of Causes of Action being preserved under the Plan seven days prior to the Voting Deadline provides insufficient notice to creditors.

In response to Redmond's Objection and in lieu of the list of Causes of Action originally proposed by the Debtors to be included in the Plan Supplement, the Plan Proponents supplemented the already fulsome disclosures contained in Articles V.A.,V.F.5, and VI.E of the Amended Disclosure Statement by adding the following language to Article V.F.5.c of the Amended Disclosure Statement (which is also incorporated into the Amended Plan) to explicitly describe the types of Claims and Causes of Action that the iCap Trustees may pursue post-Effective Date:

> Categories of Preserved Claims. The Plan specifically preserves the right for the iCap Trust and iCap Trustees to pursue any and all claims that the Debtors and/or their Estates have the right to pursue, including all Causes of Action and Avoidance Actions, as defined in the Plan. Without in any way limiting the iCap Trust's and the iCap Trustees' rights to pursue claims against third parties, the following are illustrative categories of claims that the iCap Trust will have the right pursue:
>
> 1. Insider and non-Insider preference actions arising under bankruptcy and/or state law;
>
> 2. Fraudulent transfer actions arising under bankruptcy and/or state law;
>
> 3. Turnover actions under bankruptcy law;
>
> 4. Any and all other rights and/or claims arising under the bankruptcy laws;
>
> 5. Claims against third parties that aided and abetted the Debtors' conduct;
>
> 6. Intentional and unintentional tort claims against third parties, including professional firms and former iCap principals and employees;
>
> 7. Claims against third parties that may arise out of or relate to the conduct of an alleged Ponzi scheme;

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

8

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

8. Breach of contract claims;

9. Employment claims against former iCap employees, including breach of duties and breach of non-compete agreements and/or other agreements;

10. Claims against third parties for return of commissions paid;

11. Claims against former principals, directors, and officers for breach of fiduciary duties, breach of duty of loyalty, and similar claims; and

12. All other claims not included in these categories that are Causes of Action and Avoidance Actions, as defined in the Plan.

The Debtors do not need to list all possible defendants and causes of action to preserve such causes of action under the Amended Plan. *See The Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.)*, 283 B.R. 549, 563–64 (9th Cir. B.A.P. 2002) ("A plan, as here, may provide that particular causes of action, or categories of causes of action, are preserved and not affected by confirmation and may, likewise, prescribe terms for conducting post-confirmation litigation over specific matters or categories of matters. . . . We agree with the other courts that regard it as impractical and unnecessary to expect that a disclosure statement and plan must list each and every possible defendant and each and every possible theory.").

The Amended Disclosure Statement provides more than adequate information to creditors of the Causes of Action and Avoidance Actions being reserved in the Amended Plan and their rights or risks with respect to those Causes of Action and Avoidance Actions.

**2.   The Amended Disclosure Statement Provides Adequate Information About the Effect of the Amended Plan on Investors and Creditors**

The Noteholders argue that the Disclosure Statement lacks specific information necessary for all Investors to understand the impact confirmation of the Plan imposes

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

9

on Investors, including that the Disclosure Statement does not provide a sufficient or consistent definition of Individual Investor-Specific Claims and does not provide sufficient warning of risks Investors face due to inaction.

The Plan Proponents and the Noteholders agreed on the inclusion of additional language in the Amended Disclosure Statement as reflected in **Exhibit A** to address the Noteholders' concerns. The introduction of the Amended Disclosure Statement now explains that (1) Investors have the right to pursue recoveries that they may own directly against third parties (*i.e.,* the Individual Investor-Specific Claims); (2) an Investor should seek independent legal advice about whether a claim is an Individual Investor-Specific Claim that the Investor can pursue directly; (3) the iCap Trustees will provide a quarterly report summarizing the recovery actions the iCap Trust has engaged in during the quarter and any Causes of Action the iCap Trustees have decided not to pursue; and (4) the Amended Plan requires an Investor to respond and report to the iCap Trustees within a specific period to avoid disallowance of such Investor's claim at the discretion of the iCap Trustees. *See* Amended Disclosure Statement, pp. 2–3. The Noteholders' counsel has confirmed that the addition of this language to the Amended Disclosure Statement resolves the Noteholders' Objection.

In addition, Wilmington argues that the Debtors fail to explain the intended impact on creditors and Investors of the substantive consolidation of 34 estates and the Ponzi Findings. The Plan Proponents believe the Amended Disclosure Statement adequately addresses both of these points. The Amended Disclosure Statement explicitly states: "The Plan Proponents are not seeking Ponzi Findings that would be binding on any other court or governmental or regulatory authority." Amended Disclosure Statement, § V.B.2. And, while the Amended Plan's substantive consolidation of the Debtors on the Effective Date is a confirmation issue, *see In re Stone & Webster, Inc.*, 286 B.R. 532, 544 (Bankr. D. Del. 2002) (holding substantive

**PLAN PROPONENTS' OMNIBUS REPLY**
**TO OBJECTIONS TO JOINT MOTION FOR**
**APPROVAL OF DISCLOSURE STATEMENT**
10

Black Helterline llp
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560

23-01243-WLH11    Doc 1705-1 Filed 08/20/26 Entered 08/20/26 15:06:28    Pg 264 of 335

consolidation was a confirmation issue and not ripe for determination at the disclosure statement stage), the Plan Proponents believe the disclosures regarding substantive consolidation provide creditors with adequate information. The introduction of the Amended Disclosure Statement succinctly lays out what substantive consolidation means and the impact on creditors, including how substantive consolidation will affect the treatment of Claims and distributions under the Amended Plan. *See* Amended Disclosure Statement, pp. 2–3 (General Overview and Summary). Further, in response to Wilmington's Objection, the Plan Proponents have modified the provisions governing substantive consolidation of the Debtors under the Amended Plan to exclude Debtors VH 1121 14th LLC and VH Willows Townhomes, LLC. Thus, Wilmington's Claims will not be subject to the substantive consolidation provisions in the Amended Plan.

### 3. The Amended Disclosure Statement Adequately Describes the Abandonment of Noteholder Claims

The Noteholders argue that the Disclosure Statement fails to detail how the iCap Trust will abandon claims Investors could pursue if the iCap Trust opts to not pursue such claim. The Plan Proponents have amended the Plan to provide the following (which is also disclosed in the Amended Disclosure Statement):

> In order to keep Investors informed of the iCap Trust's pursuit of Avoidance Actions and Causes of Action, the iCap Trustees will provide a quarterly report to Investors summarizing the recovery actions the iCap Trust has engaged in during the quarter and whether the iCap Trust is abandoning any specific Avoidance Actions or Causes of Action that it has determined it will not pursue, thus allowing Investors to pursue such actions, at their option.

Amended Plan, § V.C.2.c; *see also* Amended Disclosure Statement, § V.D.4.c. The iCap Trustees will provide notice of claims that the iCap Trust will not pursue to the Investors on a quarterly basis, thereby giving the Noteholders and other Investors the

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

11

opportunity to pursue those claims on their own. The Noteholders' counsel has confirmed that the addition of this language to the Amended Plan and Amended Disclosure Statement resolves the Noteholders' Objection.

**4.** **The Amended Disclosure Statement Contains Adequate Information About the Debtors' Financial Assets and Claims Against the Estates**

Wilmington argues that the Disclosure Statement omits basic financial information concerning the Debtors, such as, the identity of the Debtors' assets, their values, and the amounts of the various claims in each estate and fails to provide crucial information concerning the liens of Wilmington and other secured creditors, including whether the liens will continue to attach to the particular secured creditor's collateral and proceeds upon the Effective Date, and does not include a liquidation analysis. Similarly, Christensen argues that the Disclosure Statement omits important facts and documents, including financial statements, projections, or useful information regarding anticipated returns to creditors, and information about professional and management fees and economics of the proposed Ponzi litigation.

Each of these points are adequately addressed in the Amended Disclosure Statement. Article II of the Amended Disclosure Statement provides a financial overview for the Debtors. Article V.D.2.b of the Amended Disclosure Statement states that the proceeds from the sale of collateral subject to a secured creditor's lien are held in segregated accounts pending allowance of the creditor's Secured Claim. Article V.F.4 of the Amended Disclosure Statement explains that the Debtors (other than the Excluded Debtors) will be substantively consolidated and Investor Claims will recover from a single pot. Because of the substantive consolidation under the Plan, separate projections for each Debtor are unnecessary and an inefficient use of the Debtors' limited resources. *See Lisanti Foods, Inc.*, 329 B.R. at 506–08 (finding it appropriate

PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

12

for a disclosure statement to provide the collective assets and liabilities of the estates where the entities would be consolidated into a single entity under substantive consolidation). Article I.A.3 of the Amended Disclosure Statement has been updated to reflect the projected recoveries for each Class of Claims.

Contemporaneously with this Reply, the Plan Proponents are filing the Amended Disclosure Statement that includes the Liquidation Analysis and Recovery Analysis attached thereto as Exhibit B and Exhibit C, respectively. The Liquidation Analysis includes information useful for creditors to understand the value available to the Debtors and that the Amended Plan represents the best outcome for these Chapter 11 Cases. The Recovery Analysis contains, among other things, projections regarding the liquidation proceeds of the iCap Trust, the expenses and fees of the iCap Trust, the amount of Allowed Claims in each Class under the Amended Plan, and estimated recoveries for such Claims. In light of this being a plan of liquidation, the financial information provided in the Amended Disclosure Statement, including the Liquidation Analysis and Recovery Analysis is sufficient. Upon filing the Amended Disclosure Statement with the Liquidation Analysis and Recovery Analysis, these objections are moot.

### 5. The Amended Disclosure Statement Contains Adequate Information About the iCap Trust

Wilmington argues that by failing to include the agreement governing the iCap Trust with the Disclosure Statement, the Disclosure Statement omits necessary information regarding the iCap Trust. The Plan Proponents are working diligently on the terms of the iCap Trust Agreement, which will be filed as part of the Plan Supplement at least 11 days in advance of the deadline to object and/or vote on the Amended Plan. To provide creditors with additional time to review the Plan Supplement, the Plan Proponents have modified the proposed schedule to allow for an

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**
13

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

23-01243-WLH11    Doc 1705-1 Filed 08/20/26 Entered 08/20/26 15:26:28    Pg 267 of 335

additional four days before the Voting and Objection Deadlines. The Plan Proponents' proposed timeline, while expeditious, is achievable and consistent with the timeline for similar cases. *See, e.g.*, *In re Professional Financial Advisors, Inc.*, Case No. 3:20-bk-30604 (Bankr. N.D. Cal.), ECF No. 575 (approving a six-week confirmation schedule). Moreover, both the Amended Plan and the Amended Disclosure Statement identify the purpose of the iCap Trust and the material terms regarding the governance and powers of the iCap Trust. *See* Amended Disclosure Statement, § V.F.3; Amended Plan, § V.D.

**B.    This Court Should Deny Christensen's Request to Stay the Ponzi Litigation**

Christensen argues that any Ponzi determination is premature and should be stayed and that Ponzi issues cannot be litigated within the suggested confirmation timeframe. His objections, however, are without merit. The Plan Proponents' proposed timeframe is consistent with other recent, substantially larger, and more complex Ponzi cases. For example, in *Professional Financial Advisors, Inc.* ("PFI"), the Bankruptcy Court for the Northern District of California approved a similar schedule for confirmation of PFI's plan, which included a Ponzi finding. The confirmation hearing was scheduled less than two months after filing the motion requesting approval of PFI's disclosure statement. *See In re Professional Financial Advisors, Inc.*, Case No. 3:20-bk-30604 (Bankr. N.D. Cal.), ECF Nos. 513, 575 (approving a six-week period between filing the motion for approval of the disclosure statement and the confirmation hearing). Likewise, in *In re Woodbridge Group of Companies*, the bankruptcy court approved a confirmation timeline that provided for a two-month period between filing the motion for approval of the disclosure statement and the confirmation hearing. *In re Woodbridge Group of Companies, LLC*, Case No. 17-12560 (KJC) (Bankr. D. Del.), ECF Nos. 2249, 2396.

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

14

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Here, parties in interest have had even more time to address concerns with the Ponzi Findings and resulting litigation. The Debtors first made it clear that they would be seeking Ponzi Findings in these Chapter 11 Cases in February when they filed numerous documents and declarations in support of the Ponzi Findings. Since that time, only one creditor, Redmond, has made any discovery requests on the Debtors with respect to the Ponzi Findings. Not only is the Plan Proponents' proposed confirmation schedule similar to *PFI* and *Woodbridge* but here creditors have known about the Plan Proponents' Ponzi conclusions for over five months. If parties in interest were interested in seeking discovery and addressing issues related to the Plan Proponents' determination that iCap operated as a Ponzi scheme prepetition, they have had five months to start that process. They have failed to do so.

Moreover, Christensen's request to stay the Ponzi litigation contained in his Objection to the Disclosure Statement is procedurally improper and requires the filing of a motion before this court. *See* Fed. R. Bankr. P. 9013 ("A request for an order, except when an application is authorized by these rules, shall be by written motion, unless made during a hearing."); Fed. R. Bankr. P. 9014(a) ("In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."); *see also Smith v. Premiere Valet Servs., Inc.*, Case No. 2:19-cv-09888-CJC-MAA, 2020 WL 7034346, at *14 (C.D. Cal. Aug. 4, 2020) ("Courts in this and other districts have concluded that a request for affirmative relief is not proper when raised for the first time in an opposition."); *Tower Metal Alloy Co. v. Kossoff*, 188 B.R. 954, 956 (Bankr. S.D. Ohio 1995) (finding that where the defendant "has not filed a motion requesting a stay . . . there is no basis to impose a stay in this adversary proceeding as to him"). Simply put, the burden for a stay request rests with Christensen and,

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560

15

regardless, a disclosure statement hearing is not the appropriate context for such a stay dispute.

To the extent this court is inclined to consider the merits of Christensen's request to stay the Ponzi litigation, it should deny such request because Christensen has failed to satisfy his burden for obtaining a stay. The Objection fails to acknowledge that "a stay of a civil case to permit conclusion of a related criminal [proceeding]" is "an ***extraordinary remedy***." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (as modified) (internal quotation marks and citations omitted) (emphasis added).

"While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution." *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). "Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Id.* (internal citation omitted). In particular where—as is the case here—the defendant is not under indictment, the case for staying civil proceedings is "far weaker." *See Molinaro*, 889 F.2d at 903 ("The case for staying civil proceedings is a far weaker one when no indictment has been returned and no Fifth Amendment privilege is threatened.") (internal quotation marks omitted).

The Ninth Circuit in *Keating* held that, "[i]n the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560

16

are unobjectionable under our jurisprudence." 45 F.3d at 324 (affirming administrative law judge's decision not to stay hearing pending completion of criminal trial despite risk that the defendant's rights against self-incrimination were implicated).

In affirming an administrative judge's denial of a stay request by a defendant in concurrent civil and criminal proceedings, the *Keating* court held that Fifth Amendment considerations are not the only factor to be considered by the court. *See id.* "In addition, the decisionmaker should generally consider the following factors: (1) the interests of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Id.* at 324–25. The trial court is granted substantial deference in weighing these factors – and any appeal is reviewed under an abuse of discretion standard. *See Molinaro*, 889 F.2d at 902.

Here, the *Keating* factors overwhelmingly favor the denial of any stay.

1. **The Plan Proponents will Suffer Substantial and Irreparable Prejudice if the Confirmation Schedule is Delayed**

Christensen argues for an apparently indefinite delay of the Plan Proponents' confirmation process and Ponzi determination. The court should reject this argument. The Amended Plan must be confirmed on the timeframe proposed by the Plan Proponents. These Chapter 11 Cases have been pending for nearly a year. While the Debtors and UCC have worked as efficiently and expeditiously as possible to file and prosecute an Investor-supported plan of liquidation, it is clear that these Chapter 11

PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

17

Cases—from an administrative expense perspective, if nothing else—cannot remain in chapter 11 for the duration proposed by Christensen.

Moreover, here, the Plan Proponents are estate fiduciaries charged with maximizing recoveries for the thousands of Investors owed hundreds of millions of dollars. A Ponzi Finding will support the ability for iCap Investors, who have been victimized here, to seek significant tax benefits provided for in the Internal Revenue Code. Following the Madoff Ponzi scheme, the Internal Revenue Service enacted special rules that address the possibility for victims of Ponzi schemes to deduct losses for income tax purposes pursuant to 26 U.S.C. § 165 that may allow Ponzi victims to deduct unlimited losses as a theft loss, instead of capital losses from an investment. Capital losses are normally limited to a maximum of $3,000 per year. IRC § 165(a) allows taxpayers to deduct theft losses sustained during the tax year in which the theft loss is discovered, to the extent not compensated by insurance or otherwise.[4]

Here, iCap Investors are owed an estimated $250,000,000. While deductions for losses will not begin to make these Investors whole, the ability to deduct losses suffered in a Ponzi scheme, to the extent available, will likely provide a substantial and important benefit to the investor community in the tens of millions of dollars. These tax benefits would be delayed indefinitely under Christensen's proposed timing.

In addition, the stay would jeopardize the Debtors' ability to bring Avoidance Actions within the applicable two-year statute of limitations, which expires in September 2025 (the second anniversary of the Debtors' chapter 11 filing). *See* 11 U.S.C. §§ 108(a)(2); 546(a).

---

[4] Of course, Investors will need to consult their tax advisors to determine each of their specific rights under IRS § 165, if any.

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

18

### 2. The Plan Proponents Confirmation Timeline Would Not Unduly Burden Christensen

The second *Keating* factor likewise does not favor a delay. To the Plan Proponents' knowledge, in fact, Christensen has not been indicted in connection with iCap's failure. Therefore, unlike the defendant in *Keating*, Christensen cannot even argue that concurrent civil and criminal proceedings would unduly burden him. Indeed, "the strongest case for deferring civil proceedings until after completion of criminal proceedings ***is where a party under indictment*** for a serious offense is required to defend a civil or administrative action involving the same matter." *S.E.C. v. Dresser Indust., Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir. 1980) (emphasis added). In *Dresser*, the Court of Appeals found that the case for staying a civil proceeding is "far weaker" where "no indictment has been returned [and] no Fifth Amendment privilege threatened." *Id.* The Ninth Circuit adopted this reasoning in *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, where it held that the district court did not abuse its discretion by deciding that the burden on the defendant's Fifth Amendment privilege was negligible because no related criminal indictments were pending against him at the time of its ruling. 889 F.2d at 903. Here, there is no pending indictment against Christensen and Christensen's Fifth Amendment privilege is not threatened. In fact, the court and the parties to this bankruptcy proceeding have no way of knowing whether Christensen will *ever* face criminal indictment—or when any such indictment might materialize. The court should therefore not indefinitely delay these Chapter 11 Cases for a criminal case that may never even occur.

Moreover, Christensen—as the Debtors' founder and prepetition CEO—is the individual most familiar with the Debtors' prepetition operations and books and records. Of all of the parties in interest in these Chapter 11 Cases, Christensen is best-position

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

19

to move forward under the proposed confirmation schedule. Indeed, in seeking confirmation of the Amended Plan, the Debtors are acting solely to fulfill their fiduciary obligations to the bankruptcy estates and their creditors. The Debtors are not seeking to establish Christensen's criminal liability, rather the Debtors' focus is on maximizing recoveries for their creditors.

### 3. The Efficient Use of Judicial Resources Would be Furthered by Approving the Plan Proponents' Confirmation Timeline

The third *Keating* factor plainly favors rejecting Christensen's argument. A bankruptcy court, like any court, has a "well-recognized interest in disposing 'of the cases on its docket with economy of time and effort for itself.'" *Louis Vuitton*, 676 F.3d at 104 (*quoting Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Simply put, however much Christensen may wish that it is not the case, Christensen cannot avoid reckoning with the demise of iCap. Even assuming *arguendo* that the court determines that a lengthy stay is warranted in these Chapter 11 Cases—which it is not—Christensen will only succeed in likely forcing the Debtors to convert these Chapter 11 Cases to chapter 7. A chapter 7 trustee would be appointed and charged with conducting the very same investigation of prepetition facts and circumstances and potential litigation claims that the Plan Proponents have already largely conducted. There would plainly be duplicative and unnecessary costs placed upon these estates—and result only in Investors being pushed farther from any potential recovery. Judicial resources would similarly be wasted. This court has overseen these Chapter 11 Cases for nearly a year. If confirmation cannot be prosecuted on the proposed timeframe and these Chapter 11 Cases convert, this court will be forced to oversee those converted cases with all the attendant delays and expense. The efficient use of judicial resources strongly favors proceeding to confirmation now.

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

20

### 4. The Interests of Persons Not Party to the Confirmation Process Plainly Favor Rejecting Any Delay

The ultimate stakeholders in these Chapter 11 Cases are the prepetition Investors. Many of these Investors are not sophisticated and have participated minimally, if at all, in the Chapter 11 Cases. The Investors' interests strongly favor moving forward on the Plan Proponents' proposed timeframe—and rejecting any stay or delay. Not only are there substantial potential tax benefits that would be obtained by proceeding to confirmation, addressed *supra*, but it is clear from the Plan Proponents' discussions with Investors that the investor community overwhelmingly desires to have these Chapter 11 Cases concluded as quickly and efficiently as possible. Needless to say, the Investors' economic interests also align with this demand for closure. The longer these cases remain suspended in chapter 11, the greater the administrative expenses that must be paid prior to any Investor recoveries.

### 5. The Interests of the Public Favor Proceeding to Confirmation Now

In *Keating*, the court considered the fact that public confidence in the effective prosecution of the administrative proceeding at issue in that case favored the lower court's determination to deny the defendant's stay request. *See Keating*, 45 F.3d at 326. Similarly, the efficient and timely conclusion of these Chapter 11 Cases is critical to sustaining the public's confidence in the bankruptcy system's ability to administer high-dollar, high-profile, and complex Ponzi cases. Given that these Chapter 11 Cases involve thousands of creditors owed approximately $250 million, it is unsurprising that their administration has attracted substantial media attention.[5] The court should deny

---

[5] https://www.investmentnews.com/alternatives/news/real-estate-firm-that-raised-money-through-ibds-blows-up-245178
https://www.seattletimes.com/business/real-estate/bellevue-real-estate-firm-ran-a-ponzi-scheme-say-bankruptcy-filings/

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

21

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

any stay request in furtherance of, *inter alia*, maintaining public confidence in chapter 11 and its unique capacity to effectuate an Investor-supported plan of liquidation.

### C.  Secured Creditors are Not Impaired Under the Plan

Wilmington and Redmond argue that the Plan improperly treats Secured Claims as unimpaired. According to Redmond, the Debtors will possibly include Redmond and all other holders of Secured Claims in the list of preserved Causes of Action. If that is true, Redmond asserts, then the holders of Secured Claims will not be left "unaltered" and thus are impaired. Similarly, Wilmington argues that the Plan alters Wilmington's contractual rights by failing to preserve their prepetition right and remedies. While both of these arguments are confirmation issues, the Plan Proponents believe that the Amended Plan does not impair Secured Claims.

Under section 1124(1) of the Bankruptcy Code, "any alteration" of a creditor's legal, equitable, and contractual rights by a debtor's plan constitutes impairment. *In re PG&E Corp.*, 46 F.4th 1047, 1055 (9th Cir. 2022). The unaltered rights test deals with impairment by a plan, and not impairment by the Bankruptcy Code. *See id.* at 1063 n.11 ("[A]n alteration of pre-bankruptcy rights that occurs by operation of the Code does not result in impairment."); *see also In re Ultra Petroleum Corp.*, 943 F.3d 758, 763 (5th Cir. 2019) (holding impairment does not occur when the Bankruptcy Code limits a creditor's rights). In fact, this is what the court in *L&J Anaheim* focused on when finding the alteration of a secured creditor's contractual rights constitutes impairment—the *plan* altered those pre-bankruptcy rights. *See In re L & J Anaheim Assocs.*, 995 F.2d 940, 943 (9th Cir. 1993) (concluding that the secured creditor's rights "were altered under the Plan").

Under the Amended Plan, Wilmington and Redmond will receive the net proceeds from the sale of the Collateral securing their Secured Claims if and when such claims are Allowed. *See* Amended Plan, § 3.B.2 (Class 2: Secured Claims); *see also*

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

22

Amended Disclosure Statement, § V.D.2.b. The Debtors have completed (or are in the process of completing) the sale of Wilmington's and Redmond's Collateral. In accordance with this court's prior orders and the Amended Plan, the proceeds from those sales are being held in segregated accounts for the benefit of Wilmington and Redmond, subject to allowance of Wilmington's and/or Redmond's Secured Claims. The Amended Disclosure Statement and the Amended Plan are clear on this point— "Pending allowance of a Secured Claim, the Debtors or the iCap Trust, as applicable, will segregate the proceeds from the sale of the Collateral securing such Secured Claim in the individual Secured Claims Reserve for the Holder of such Claim." Amended Plan, § 3.B.2 (Class 2: Secured Claims); *see also* Amended Disclosure Statement, § V.D.2.b.

Section 502(a) of the Bankruptcy Code specifically provides that claims are only deemed allowed absent an objection to such claim by a party in interest. And, in accordance with section 502(a), under the Amended Plan, Claims against the Debtors are not considered an "Allowed Claim" if such Claim has been objected to before the Claim Objection Deadline. *See* Amended Plan, §§ I.A.2, I.A.16, VII.B. The Amended Plan treats all Secured Claims in accordance with the provisions of the Bankruptcy Code. To the extent that Wilmington and Redmond are arguing that their Claims are impaired because they will not be Allowed Claims as of the Effective Date of the Amended Plan, that is not impairment under the Amended Plan but rather impairment by operation of section 502(a) of the Bankruptcy Code. *See PG&E*, 46 F.4th at 1063.

Before satisfying Redmond's and Wilmington's Claims, the Bankruptcy Code provides the Debtors (and the iCap Trust) with the ability to analyze and, if necessary, object to such claims under section 502(a). The Debtors are not required to conduct an analysis of Redmond's and Wilmington's Claims, object to such Claims, or reach any conclusion with respect to such Claims at this point—that is beyond the scope of what

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560

23

is required to determine whether the Amended Disclosure Statement provides adequate information.

Moreover, there is no risk that the value of Wilmington's or Redmond's Secured Claims will decrease in value. Because the sales have closed (or are in the process of closing), Wilmington's and Redmond's Secured Claims are capped by the value of the Collateral at the time of the sale. *See* 11 U.S.C. § 506(a); *see also Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)*, 151 B.R. 931, 935–36 (9th Cir. B.A.P. 1993) ("[T]he value of the collateral at the time of sale, subject to credit for the costs of improvements made by [the debtor], is the appropriate benchmark for determining [the creditor's] secured status."). A creditor is not entitled to recover more than the value of the collateral. *In re Age Ref., Inc.*, 801 F.3d 530, 536 (5th Cir. 2015) ("An oversecured creditor is entitled to post-petition interest on its claim only 'to the extent that such interest, when added to the principal amount of the claim, [does] not exceed the value of the collateral.'"); *In re SW Bos. Hotel Venture, LLC*, 748 F.3d 393, 404 (1st Cir. 2014) ("[I]f the collateral is worth more than the amount of the secured claim, the creditor is entitled to post-petition interest on its claim up to the amount of the difference in values . . . ."). Holders of Secured Claims, like Wilmington and Redmond, are not impaired under the Amended Plan because they will receive the full amount of their Allowed Secured Claim from the segregated proceeds of the sale of the Collateral securing their Claims in accordance with the Bankruptcy Code and the Amended Plan.

### D.    Pending Discovery Requests Should Not Delay Confirmation

Redmond argues that the Confirmation Hearing should not proceed until the Debtors have responded to their pending 2004 orders. The Debtors have been timely responding, and will continue to timely respond, to any pending 2004 requests. In accordance with the Ex Parte *Order Directing the Production of Documents* [ECF No. 1083], the Debtors produced all responsive documents on behalf of Debtor VH Senior

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

24

Care, LLC on August 1, 2024, and August 15, 2024. The Ex Parte *Order Directing the Production of Documents* [ECF No. 1172] (the "Colpitts 2004 Order") requires the Debtors to produce responsive documents on behalf of Debtor Colpitts Sunset, LLC by September 11, 2024. The Debtors are working to respond to the 2004 requests approved pursuant to the Colpitts 2004 Order and intend to make productions prior to the September 11, 2024 deadline, which is in advance of the date requested for the Confirmation Hearing. To the extent Redmond is not satisfied that the documents produced by the Debtors support a Ponzi Finding, the time to raise such objection is at confirmation or in a pre-confirmation discovery-related motion.

In the same vein, Wilmington argues that the Voting and Objection Deadlines should be extended to allow sufficient time to evaluate and accommodate discovery on the Plan.[6] To date, Redmond is the only creditor that has sought Ponzi-related discovery. The Debtors first disclosed their intention to seek Ponzi Findings in February of 2024, which included the filing of expert declarations in support of such Ponzi Findings. If Wilmington wanted to seek discovery regarding the Debtors' proposed Ponzi Findings, it had plenty of time to do so. Indeed, even since filing the Plan and Disclosure Statement over a month ago, which made abundantly clear the Debtors' intention to seek Ponzi Findings at Confirmation, Wilmington has still failed to seek any Ponzi-related discovery. Wilmington cannot now claim that it needs additional time to seek discovery from the Debtors when any delay is of their own making.

---

[6] Wilmington incorrectly states that the Debtors will be mailing Solicitation Packages to all creditors. Nearly all parties will receive the requisite notice via email. In accordance with the *Order Granting Debtors' Ex Parte Motion for Entry of Order: (I) Limiting Scope of Notice; (II) Authorizing Service to Investors by Email; and (III) Granting Related Relief* [ECF No. 63], the Debtors will send Solicitation Packages to holders of Class 3 (Investor Claims) via email.

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

25

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

**E.    The Requested Timing for Filing of the Plan Supplement is Appropriate**

Christensen argues that the anticipated filing date for the Plan Supplement is too late for creditors to consider the information contained therein. In response to the Objections, the Plan Proponents have agreed to file the Plan Supplement no later than September 2, 2024—nearly two weeks prior to the Voting Deadline requested in the Disclosure Statement Motion. *See* Amended Disclosure Statement, § I.B.2. Moreover, the material terms regarding the governance and powers of the iCap Trust are already set forth in the Amended Plan and the Amended Disclosure Statement. *See* Amended Disclosure Statement, § V.F.3; Amended Plan, § V.D. The proposed schedule provides sufficient time for parties in interest to evaluate any documents contained in the Plan Supplement and conduct any necessary discovery on the Amended Plan.

## CONCLUSION

For the reasons discussed above and in the Disclosure Statement Motion, the Plan Proponents believe that the Amended Disclosure Statement satisfies the adequate information requirement under section 1125 of the Bankruptcy Code and respectfully request that this court overrule the Objections, enter an order approving the Amended Disclosure Statement, and grant such other and further relief as the court may deem just and proper under the circumstances.

**PLAN PROPONENTS' OMNIBUS REPLY TO OBJECTIONS TO JOINT MOTION FOR APPROVAL OF DISCLOSURE STATEMENT**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

26

DATED this 20th day of August, 2024.

BLACK HELTERLINE LLP

By _____ */s/ Oren B. Haker* _____
OREN B. HAKER, WSBA No. 48725
BLACK HELTERLINE LLP

*Co-Counsel to Debtors and Debtors in Possession*

And

JULIAN I. GURULE (Admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP

*Co-Counsel to Debtors and Debtors in Possession*

By _____ */s/ Armand J. Kornfeld* _____
ARMAND J. KORNFELD (WSBA 17214)

AIMEE S. WILLIG (WSBA 22859)
JASON WAX (WSBA 41944)
BUSH KORNFELD LLP

*Attorney for the Official Committee of Unsecured Creditors*

And

By _____ */s/ John T. Bender* _____
JOHN T. BENDER (WSBA 49658)
CORR CRONIN LLP

*Special Counsel for the Official Committee of Unsecured Creditors*

**PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT**

27

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

**Exhibit A**

**Summary of Modifications to the Disclosure Statement and Plan**

PLAN PROPONENTS' OMNIBUS REPLY
TO OBJECTIONS TO JOINT MOTION FOR
APPROVAL OF DISCLOSURE STATEMENT

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

**In re iCap Enterprises, Inc.,** *et al.*
**Chapter 11 Case No. 23-01243-WLH11**
**Summary of Modifications to the Disclosure Statement and Plan**

| OBJECTION TO THE DISCLOSURE STATEMENT | DEBTORS' RESPONSE |
|---|---|
| REDMOND FUNDING GROUP LLC'S OBJECTION TO DEBTORS' DISCLOSURE STATEMENT [ECF No. 1173] | |
| 1. The Disclosure Statement fails to disclose known iCap Trust Actions. | The Plan Proponents revised the Plan and Disclosure Statement to specify the specific types of claims and Causes of Action that the iCap Trust will be pursuing, consistent with prevailing Ninth Circuit law.<br><br>Article V.F.5.C of the Amended Disclosure Statement and Article V.F.3 of the Amended Plan include a new section titled "Categories of Preserved Claims," which states:<br><br>The Plan specifically preserves the right for the iCap Trust and iCap Trustees to pursue any and all claims that the Debtors and/or their Estates have the right to pursue, including all Causes of Action and Avoidance Actions. Without in any way limiting the iCap Trust's and the iCap Trustees' rights to pursue claims against third parties, the following are illustrative categories of claims that the iCap Trust will have the right to pursue:<br>1. Insider and non-Insider preference actions arising under bankruptcy and/or state law;<br>2. Fraudulent transfer actions arising under bankruptcy and/or state law;<br>3. Turnover actions under bankruptcy law;<br>4. Any and all other rights and/or claims arising under the bankruptcy laws;<br>5. Claims against third parties that aided and abetted the Debtors' conduct;<br>6. Intentional and unintentional tort claims against third parties, including professional firms and former iCap principals and employees;<br>7. Claims against third parties that may arise out of or relate to the conduct of an alleged Ponzi scheme;<br>8. Breach of contract claims;<br>9. Employment claims against former iCap employees, including breach of duties and breach of non-compete agreements and/or other agreements;<br>10. Claims against third parties for return of commissions paid;<br>11. Claims against former principals, directors, and officers for breach of fiduciary duties, breach of duty of loyalty, and similar claims; and<br>12. All other claims not included in these categories that are Causes of Action and Avoidance Actions. |

| OBJECTION TO THE DISCLOSURE STATEMENT | DEBTORS' RESPONSE |
|---|---|
| iCAP EQUITY NOTEHOLDER'S OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT [ECF NO. 1181] | |

| | | |
|---|---|---|
| 4. | The Disclosure Statement lacks specific information necessary for all investors to understand the impact confirmation of the Plan imposes on investors. | The Plan Proponents revised the introduction to the Disclosure Statement to add the following specific language for Investors: |

Significantly, the proposed Plan is a "single pot" plan, meaning that under the Plan, generally, all of the assets and liabilities of all the Debtors will be pooled and consolidated for distribution purposes. This is legally referred to under the Plan as "substantive consolidation." As a result of such substantive consolidation, among other things:
- Creditors of any Debtor entity are treated as if they have a Claim against the entire iCap enterprise, rather than a particular Debtor.
- Any and all purported equity interests of an Investor in any Debtor shall be automatically cancelled and extinguished as of the Effective Date, and deemed and treated as Investor Claims pursuant to the Plan, regardless of the prepetition designations or labels used by the Debtors and/or Investors.
- Investors will not receive a "premium" or other benefit based on the type of investment they held. Rather, all Investor Claims will be calculated in the same manner, and each Investor will receive a proportional recovery from the iCap Trust based on such Investor's Allowed Claim amount.

**The following disclosure and information is not intended in any way to provide tax advice to any Investor or third party. It is provided to identify what is reasonably believed to be a substantial benefit to the iCap Investors.**

Following the Madoff Ponzi scheme, the Internal Revenue Service (the "IRS") enacted special rules that address the possibility for victims of Ponzi schemes to deduct losses for income tax purposes pursuant to 26 U.S.C. § 165 that may allow Ponzi victims to deduct unlimited losses as a theft loss, instead of capital losses from an investment. Capital losses are normally limited to a maximum of $3,000 per year. Section 165(a) of the Internal Revenue Code of 1986, as amended (the "IRC") allows taxpayers to deduct theft losses sustained during the tax year in which the theft loss is discovered, to the extent not compensated by insurance or otherwise. Investors will need to consult their tax advisors to

23-01243-WLH11    Doc 1705-1  Filed 08/20/26  Entered 08/20/26 15:06:28  Pg 284 of 335

| OBJECTION TO THE DISCLOSURE STATEMENT | DEBTORS' RESPONSE |
|---|---|
| | determine each of their specific rights under IRC section 165, if any.<br><br>In this case, Investors in iCap are owed an estimated $250,000,000. While deductions for losses will not begin to make these Investors whole, the ability to deduct losses suffered in a Ponzi scheme, to the extent available, will likely provide a substantial and important benefit to the investor community.<br><br>Amended Disclosure Statement, pp. 2–4. |
| 5. The Disclosure Statement does not provide a sufficient or consistent definition of an Individual Investor-Specific Claim. | The Plan Proponents revised the introduction to the Disclosure Statement to include the following language that describes Individual Investor-Specific Claims and encourages Investors to seek independent counsel to further understand how the Plan may impact claims held by Investors against non-Debtor entities:<br><br>Under the Plan, Investors are free to pursue recoveries that they may own directly against third parties. A couple of examples would be claims against an Investor's professional advisors or retirement servicers. These claims are defined in the Plan as Individual Investor-Specific Claims. Individual Investor-Specific Claims are those owned by an Investor that are **not** owned by the Debtors and, in turn, the iCap Trust under bankruptcy law. The Plan defines the claims that will be exclusively owned by the iCap Trust with the exclusive right to pursue those claims. Specifically, the Plan defines these claims as Avoidance Actions and Causes of Action.<br><br>If an Investor has questions about whether a claim is an Individual Investor-Specific Claim that the Investor can pursue directly, or an Avoidance Action or Cause of Action that only the iCap Trust can pursue, the Investor is encouraged to seek legal advice on the issue.<br><br>Amended Disclosure Statement, pp. 2–3. |
| 6. The Disclosure Statement does not provide sufficient warning of risks Investors face due to inaction and without notice and an opportunity to be heard. | The Plan Proponents revised the Plan to remove the automatic disallowance provisions regarding inaction by Investors. *See* Plan, Article III.C.2.b.; Article III.C.1.e. In addition, the Plan Proponents revised the introduction to the Disclosure Statement to include the following language to address the risk that an Investor's Claim may be subject to disallowance in the iCap Trustees' discretion if such Investor fails to respond or report certain actions within a specified time: |

3

| OBJECTION TO THE DISCLOSURE STATEMENT | DEBTORS' RESPONSE |
|---|---|
| | If an Investor does successfully recover from third parties, the Plan obligates the Investor to report that information within thirty (30) days of the recovery to the iCap Trustees. (*See* Plan, Article III.C.2.b.) The Plan also obligates Investors to respond within twenty-one (21) days to requests for information from the iCap Trustees. (*See* Plan, Article III.C.1.e.) If an Investor fails to comply with these requirements, the Plan provides that that Investor's Claim may be disallowed, in the iCap Trustees' discretion.

Amended Disclosure Statement, p. 3. |
| 7. The Disclosure Statement fails to detail how the iCap Trust will abandon claims the Noteholders could pursue if the iCap Trust opts to not pursue said claim. | The Plan Proponents revised the Plan to provide that the iCap Trustees will provide quarterly notice of the abandonment of claims to Investors. *See* Plan, §§ III.C.1.e., III.C.2.b. In addition, the Plan Proponents revised the introduction to the Disclosure Statement to include the following language regarding such notices:

In order to keep Investors informed of the iCap Trust's pursuit of Avoidance Actions and Causes of Action, the iCap Trustees will provide a quarterly report to Investors summarizing the recovery actions the iCap Trust has engaged in during the quarter and whether the iCap Trust is abandoning any specific Avoidance Actions or Causes of Action that it has determined it will not pursue, thus allowing Investors to pursue such actions, at their option.

Amended Disclosure Statement, p. 3. |
| **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS OWNER OF MFA 2022-RTL1 TRUST AND LIMA ONE CAPITAL'S OPPOSITION TO MOTION FOR AN ORDER APPROVING (I) PROPOSED DISCLOSURE STATEMENT; (II) SOLICITATION AND VOTING PROCEDURES; (III) NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF JOINT PLAN OF LIQUIDATION; AND (IV) GRANTING RELATED RELIEF [ECF NO. 1182]** | |
| 8. The Disclosure Statement omits basic financial information concerning the Debtors, such as, the identity of the Debtors' assets, their values, and the amounts of the various claims in each estate. | Article II of the Disclosure Statement includes an overview of the Debtors' financial information. The Amended Disclosure Statement also attaches the Recovery Analysis, which contains, among other things, projections regarding the liquidation proceeds of the iCap Trust, the expenses and fees of the iCap Trust, the amount of Allowed Claims in each Class under the Amended Plan, and estimated recoveries for such Claims, as Exhibit C. |
| 9. The Disclosure Statement does not include a liquidation analysis. | The Amended Disclosure Statement attaches the Liquidation Analysis as Exhibit B. |
| 10. The Disclosure Statement fails to provide crucial information concerning the liens of Wilmington and other secured | The Plan Proponents revised the Plan to provide that they will not effectuate substantive consolidation of the Debtors that Wilmington holds their liens against, subject to the ability to effectuate substantive consolidation after |

4

| OBJECTION TO THE DISCLOSURE STATEMENT | | DEBTORS' RESPONSE |
|---|---|---|
| | creditors, including whether the liens will continue to attach to the particular secured creditor's collateral and proceeds upon the Effective Date. | Wilmington's Claims are resolved (upon filing a notice with the court). *See* Plan, § V.E.<br><br>Article V.E of the Amended Plan excludes certain Debtors from substantive consolidation: "On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, will be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court." "Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their lien from the sale proceeds for their Collateral." |
| 11. | The Disclosure Statement omits necessary information regarding the iCap Trust that the Plan creates, such as, the agreement governing the iCap Trust. | The Plan Proponents have proposed to change the filing deadline of the Plan Supplement to September 2, 2024, which is 11 days before the deadline to object and/or vote on the Plan. *See* Amended Disclosure Statement, § I.B.2; Plan, § I.A.89. |
| 12. | The Debtors fail to explain the intended impact on creditors and investors of the extraordinary relief the Debtors seek through the Plan—the substantive consolidation of 34 estates and the Ponzi Findings. | As reflected in Article V.B.2 of the Amended Disclosure Statement, the Ponzi Findings are not binding and have no preclusive effect: "The Plan Proponents are not seeking Ponzi Findings that would be binding on any other court or governmental or regulatory authority." |
| CHRISTOPHER CHRISTENSEN'S OBJECTION TO APPROVAL OF DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF iCAP ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS [ECF NO. 1184] | | |
| 15. | The Disclosure Statement omits important facts and documents. | As reflected in Article II of the Amended Disclosure Statement, the information in the Amended Disclosure Statement is derived from the Debtors' books and records and the Debtors' investigation into the facts and circumstances surrounding the failure of the iCap business and potential causes of action related to such failure.<br><br>In addition, the Plan Proponents have added a statement to the introduction of the Amended Disclosure Statement noting that: "Christensen disagrees with the Debtors' and Unsecured Creditors' Committee's conclusions set forth herein, including any allegations of wrongdoing on his part, which he believes will be subject to further dispute." *See* Amended Disclosure Statement, p. 1. |
| 16. | The anticipated filing date for the Plan Supplement is too late for | The Plan Proponents have proposed to change the filing deadline of the Plan Supplement to September 2, 2024, which is 11 days before the deadline to object and/or vote on the |

| | OBJECTION TO THE DISCLOSURE STATEMENT | DEBTORS' RESPONSE |
|---|---|---|
| | creditors to consider the information therein. | Plan. *See* Amended Disclosure Statement, § I.B.2; Plan, § I.A.89. |
| 17. | The Disclosure Statement is missing financial statements, projections, or useful information regarding anticipated return to Creditors. | The Amended Disclosure Statement attaches the Liquidation Analysis as Exhibit B and the Recovery Analysis, which contains, among other things, projections regarding the liquidation proceeds of the iCap Trust, the expenses and fees of the iCap Trust, the amount of Allowed Claims in each Class under the Amended Plan, and estimated recoveries for such Claims. as Exhibit C. |
| 18. | The Disclosure Statement includes inadequate information about professional and management fees and economics of the proposed Ponzi litigation. | As reflected in the Article V.F.3 of the Amended Disclosure Statement, the iCap Trustees' compensation will be a percentage of the iCap Trust's gross recoveries.<br><br>In addition, the Amended Disclosure Statement attaches the Recovery Analysis as Exhibit C, which addresses this information. |

# EXHIBIT 7

Julian I. Gurule (CA SBN: 252160)*
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 430-6067
Email: jgurule@omm.com

*Co-Counsel to Debtors and Debtors in Possession*

OREN B. HAKER (WSBA No. 48725)
BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560
Email: oren.haker@bhlaw.com

*Admitted Pro Hac Vice*

*Co-Counsel to Debtors and Debtors in Possession*

HONORABLE WHITMAN L. HOLT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ICAP ENTERPRISES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Lead Case No. 23-01243-WLH11<br>Jointly Administered<br><br>**FIRST AMENDED DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF ICAP ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS** |

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

**FIRST AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

# GENERAL OVERVIEW AND SUMMARY

This disclosure statement (the "<u>Disclosure Statement</u>") describes in detail the historical background that led to the chapter 11 cases of iCap Enterprises, Inc. and its affiliated debtors and debtors in possession (collectively, "<u>iCap</u>" or the "<u>Debtors</u>"), explains what has happened in the months since the Debtors commenced their bankruptcy cases, and sets forth the treatment of creditors in the *First Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* (as amended, modified, or supplemented from time to time pursuant to its terms, the "<u>Plan</u>"). This overview and summary highlights the main points discussed in the Disclosure Statement, and should be read in conjunction with the remainder of the Disclosure Statement and Plan. A copy of the Plan is attached hereto as **<u>Exhibit A</u>**.[2] This general overview and summary is qualified by the express terms of the Plan.

**Provided herewith as a separate document is a statement of the Unsecured Creditors' Committee in support of the Plan, which should be reviewed by all Investors, Creditors, and other parties in interest.**

The Debtors were founded in 2007 by Chris Christensen ("<u>Christensen</u>") to invest in real estate opportunities in the Pacific Northwest. The Debtors, working collaboratively with the unsecured creditors' committee (the "<u>Unsecured Creditors' Committee</u>") appointed in these chapter 11 cases (the "<u>Chapter 11 Cases</u>"), expended significant efforts to analyze the facts and circumstances surrounding the failure of the iCap business and potential causes of action related to such failure, both have independently determined that the iCap business enterprise operated as a "Ponzi scheme" during the prepetition period.[3] Christensen disagrees with the Debtors' and Unsecured Creditors' Committee's conclusions set forth herein, including any allegations of wrongdoing on his part, which he believes will be subject to further dispute.

---

[2] All capitalized terms used but not defined herein shall have the meanings provided to such terms in the Plan. To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan will control and govern. The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence, except as otherwise expressly stated in the Plan; *provided, however,* that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

[3] The Debtors' history, prepetition operations, and circumstances leading to the Debtors' Chapter 11 Cases, including further facts relating to the Ponzi scheme perpetuated by Christensen, are discussed further below in Article II and Article IV.

**FIRST AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

Among those many disputed issues that will be resolved through the Plan are the following complex matters, any one of which could be the subject of years of expensive, complicated, and uncertain litigation.

### 1. Substantive Consolidation Issues

Substantive consolidation is a construct of federal common law, emanating from equity, which treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities, save for inter-entity liabilities, which are erased. *See, e.g.*, *In re Mihranian*, 937 F.3d 1214, 1216 (9th Cir. 2019) (quoting *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000)); *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005). Bankrupt entities can be substantively consolidated either on a consensual basis under a chapter 11 plan, or on a non-consensual basis if (i) prepetition they disregarded entity separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and harms all creditors. *See id.* at 210.

In these Chapter 11 Cases, a compelling argument could be made for complete substantive consolidation of all the Debtors. Although Creditors generally may not have treated all of the Debtors as one legal entity, there is substantial commingling of assets and liabilities among the Debtors. *See In re Bonham*, 229 F.3d 750, 764-65 (9th Cir. 2000). The Debtors believe it is impossible to trace the flow of funds with respect to the Debtors' prepetition transactions since the majority of the proceeds received were commingled and distributed without regard to corporate formalities, which entanglement warrants substantive consolidation of all the Debtors. Moreover, the Chapter 11 Cases are unique—the perpetration of a fraudulent scheme by a common corporate enterprise, one that in the process did not keep accurate records of the multitude of intercompany transactions that have occurred, making an unscrambling of the enterprise's accounts impossible—but that has justified substantive consolidation in other cases. *See, e.g.*, *In re Bonham*, 229 F.3d at 764-65 (consolidating entities in Ponzi scheme case); *In re DBSI, Inc.*, Case No. 08-12687, ECF No. 5924 (Bankr. D. Del. Jan. 19, 2010) (same); *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789, ECF No. 252 (Bankr. S.D.N.Y. June 10, 2009) (same). Put differently, the particular facts and circumstances of these Chapter 11 Cases present unique arguments about whether and to what extent substantive consolidation is warranted.

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, will be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however,* that

**FIRST AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**
52

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) will be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all Claims between and among the Debtors will be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable will be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their lien from the sale proceeds for their Collateral.

Entry of the Confirmation Order will constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in the Plan; *provided*, *however*, that while the Debtors will be substantively consolidated for purposes of distribution to creditors, such that all Investors shall have Claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, will be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 will be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan will not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided*, *however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien.

**FIRST AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**
53

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

# EXHIBIT 8

HONORABLE WHITMAN L. HOLT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re

iCap ENTERPRISES, INC., *et al.*,

Debtors.[1]

Chapter 11

Lead Case No. 23-01243-WLH11
Jointly Administered

FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF iCap ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

FIRST AMENDED
JOINT PLAN OF LIQUIDATION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### E.  Substantive Consolidation

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in this Article; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

FIRST AMENDED
JOINT PLAN OF LIQUIDATION – Page 41

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT 9

Julian I. Gurule (CA SBN: 252160)*
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 430-6067
Email: jgurule@omm.com

*Co-Counsel to Debtors and Debtors in Possession*

OREN B. HAKER (WSBA No. 48725)
BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: 503 224-5560
Email: oren.haker@bhlaw.com

*Admitted Pro Hac Vice*

*Co-Counsel to Debtors and Debtors in Possession*

HONORABLE WHITMAN L. HOLT

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>ICAP ENTERPRISES, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Lead Case No. 23-01243-WLH11<br>Jointly Administered<br><br>**NOTICE OF FILING OF REDLINES OF THE FIRST AMENDED DISCLOSURE STATEMENT AND FIRST AMENDED CHAPTER 11 PLAN** |

**PLEASE TAKE NOTICE** that on July 16, 2024, iCap Enterprises, Inc. and its affiliated

debtors and debtors in possession (the "Debtors") and the Official Committee of Unsecured

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

NOTICE OF FILING OF REDLINES OF THE FIRST AMENDED
DISCLOSURE STATEMENT AND FIRST AMENDED
CHAPTER 11 PLAN

Cases present unique arguments about whether and to what extent substantive consolidation is warranted.

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, will be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however,* that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) will be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all Claims between and among the Debtors will be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable will be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their lien from the sale proceeds for their Collateral.

Entry of the Confirmation Order will constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in the Plan; *provided, however*, that while the Debtors will be substantively consolidated for purposes of distribution to creditors, such that all Investors shall have Claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, will be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 will be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan will not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided,*

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

q. *Interpretation*. To the extent there is any inconsistency between the Plan and the iCap Trust Agreement, the Plan shall control.

4. <u>Substantive Consolidation</u>

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however,* that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in Article V.E of the Plan; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of ~~Distribution~~Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

# EXHIBIT 10

BORDE LAW PLLC
Manish Borde
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone:  (206) 531-2722
mborde@bordelaw.com

RAINES FELDMAN LITTRELL LLP
Michael L. Simon, CA State Bar No.
  300822
*msimon@raineslaw.com*
*Admitted Pro Hac Vice*
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
Telephone:  (310) 440-4100
Facsimile:  (310) 499-4877

The Honorable Whitman L. Holt
Chapter: 11
Hearing Date: August 26, 2024
Hearing Time: 2:30 p.m.
Hearing Location: Telephonic
Response Date: August 26, 2024

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

In re:

ICAP ENTERPRISES, INC., et al.,

Debtors.[1]

Lead Bankruptcy Case No. 23-01243-WLH11

Jointly Administered

---

[1] The Debtors, along with their case numbers, are as follows: iCap Enterprises, Inc. (Case No. 23- 01243-11); iCap Pacific NW Management, LLC (Case No. 23-01261-11); iCap Vault Management, LLC (Case No. 23-01258-11); iCap Vault, LLC (Case No. 23-01256- 11); iCap Vault 1, LLC (Case No. 23-01257-11); Vault Holding 1, LLC (Case No. 23-01265-11); iCap Investments, LLC (Case No. 23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (Case No. 23-01253-11); iCap Equity, LLC (Case No. 23-01247-11); iCap Pacific Income 4 Fund, LLC (Case No. 23-01251- 11); iCap Pacific Income 5 Fund, LLC (Case No. 23- 01249-11); iCap Northwest Opportunity Fund, LLC (Case No. 23-01253-11); 725 Broadway, LLC (Case No. 23- 01245-11); Senza Kenmore, LLC (Case No. 23-01254- 11); iCap Campbell Way, LLC (Case No. 23-01250-11); UW 17th Ave, LLC (Case No. 23-01267-11); iCap Broadway, LLC (Case No. 23-01252- 11); VH 1121 14th LLC (Case No. 23-01264-11); VH Senior Care LLC (Case No. 23-01266-11); VH Willows Townhomes LLC (Case No. 23-01262-11); iCap @ UW, LLC (Case No. 23- 01244-11); VH 2nd Street Office, LLC (Case No. 23- 01259-11); VH Pioneer Village LLC (Case No. 23-01263- 11); iCap Funding LLC (Case No. 23-01246-11); iCap Management LLC (Case No. 23-01268-11); iCap Realty, LLC (Case No. 23-01260-11) Vault Holding, LLC (23- 01270-11); iCap Pacific Development LLC

Objection to First Amended Disclosure Statement- 1
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

**OBJECTION TO FIRST
AMENDED DISCLOSURE
STATEMENT FOR THE JOINT
CHAPTER 11 PLAN OF
LIQUIDTION OF ICAP
ENTERPRISES, INC. AND ITS
AFFILIATED DEBTORS
PROPOSED BY THE DEBTORS
AND OFFICIAL COMMITTEE
OF UNSECURED CREDITORS**

**TO THE HONORABLE WHITMAN L. HOLT, UNITED STATES
BANKRUPTCY JUDGE:**

Secured creditor Wilmington Savings Fund Society, FSB, not in its
individual capacity, but solely as Owner of MFA 2022-RTL1 Trust
("Wilmington") and Lima One Capital LLC ("Lima"), hereby submit this
objection to the *First Amended Disclosure Statement for the Joint Chapter 11
Plan of Liquidation of ICap Enterprises, Inc. and Its Affiliated Debtors Proposed
by the Debtors and Official Committee of Unsecured Creditors* [ECF No. 1221]
(the "FADS"). Capitalized terms not otherwise defined herein shall have the
meanings set forth in the FADS.

## I. <u>INTRODUCTION</u>

The Plan Proponents' recent proposed amendments create further
ambiguities (it appears intentionally so). Additional information is necessary to
enable creditors and investors to make an informed decision on the Plan and to

---

(23-01271- 11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap
Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate
Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

Objection to First Amended Disclosure Statement- 2
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

clarify the scope of issues that must be adjudicated by this Court in connection with any confirmation of the Plan.

The Court continued the hearing on the original disclosure statement to (1) provide parties an opportunity to vet, clarify, and address issues created by the modifications contained in the FADS, including the Liquidation Analysis, and (2) allow the Plan Proponents to make certain additional modifications. Wilmington and the Plan Proponents have not resolved the issues created by the modifications contained in the FADS, nor have the Plan Proponents provided Wilmington with proposed language that appropriately describes the Ponzi Findings sought through the Plan.

The modifications in the FADS do not provide adequate information in three material respects that can be summarized as follows:[2]

• First, the FADS contains a new substantive consolidation provision that is vague and creates ambiguity as to how and when substantive consolidation of the Debtors would be litigated, determined, and "effectuated" under the Plan. Wilmington needs to know whether it needs to conduct discovery on and litigate substantive consolidation in connection with confirmation.

• Second, the Plan Proponents failed to provide Wilmington with proposed language that adequately describes the Plan Proponents' intent regarding the preclusive effect of the Ponzi Findings and the legal implications thereof—something the Plan Proponents attempted to suggest was not intended until pressed by this Court.

---

[2] Wilmington reserves all rights and objections with respect to the confirmation of the Plan, including with respect to the Ponzi Findings, whether the Ponzi Findings can be used as intended by the Plan Proponents, and whether such findings would be binding on and relevant to Wilmington.

Objection to First Amended Disclosure Statement- 3
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

- Third, the Liquidation Analysis, included for the first time with the FADS, only analyzes creditors' and investors' recoveries in a chapter 7 assuming the debtors are substantively consolidated *without disclosing that assumption*. Moreover, the Liquidation Analysis should be revised to include a liquidation analysis for each estate. Creditors and investors should have this information to understand how the proposed substantive consolidation will impact their recoveries.

In addition to the foregoing, Wilmington is informed that the Plan Proponents intend to add language detailed below concerning the impairment of Holders of Allowed Secured Claims. This further proposed language proves Wilmington's point—the Plan is intended to alter the rights of Wilmington, rendering it impaired. Wilmington proposed language to resolve the issues related to substantive consolidation, Ponzi Findings, and impairment, and that language is included below.

Without these modifications, the FADS should not be approved.

Finally, on August 25, 2024, the Plan Proponents proposed a discovery schedule in connection with confirmation that is detailed below. The discovery is too truncated given the factual issues. For example, under the proposed schedule, Wilmington's rebuttal experts would only have 12 days to prepare expert reports after receiving document productions and all discovery would have to completed in a mere three weeks. This is insufficient time to complete discovery on Ponzi Scheme and substantive consolidation issues and warrants a modified schedule.

Objection to First Amended Disclosure Statement- 4
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

23-01243-WLH11    Doc 1735    Filed 08/26/24    Entered 08/26/24 10:45:28    Pg 305 of 335

## II. THE MODIFIED SUBSTANTIVE CONSOLIDATION LANGUAGE DOES NOT CONTAIN ADEQUATE INFORMATION

The FADS contains the following modified language concerning substantive consolidation of the Debtors subject to Wilmington's claims, VH Willows Townhomes LLC and VH 1121 14th LLC (with the FADS' proposed modifications relative to the original disclosure statement in blue):

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, will be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; provided, however, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court.

(*See Notice of Filing of Redlines of the First Amended Disclosure Statement and First Amended Plan* [ECF No. 1223] (the "Redlines") at Ex. 2, 56, lines 3-7.)

Wilmington should have a clear understanding of how and when, under the Plan, substantive consolidation of the Excluded Debtors would be litigated, determined, and "effectuated." It is unclear whether the Plan Proponents are seeking a determination of substantive consolidation (1) after the Effective Date, or (2) upon confirmation of the Plan that can be "effectuated" through the mere filing of a notice post-Effective Date. That is, a Plan provision that enables the Debtors or the iCAP Trustees to "effectuate" substantive consolidation post-Effective Date by a mere notice (and without any opportunity to be heard in response) presumes that a determination that substantive consolidation is proper is being made in connection with confirmation. The Plan Proponents' intent

Objection to First Amended Disclosure Statement- 5
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

should be clear, not confusing.  This issue not only impacts Wilmington's vote, but, also, prevents Wilmington from being clearly informed of the scope of issues that it must conduct discovery on and litigate in connection with the Plan. Moreover, it is unclear when Wilmington's claims would be considered "resolved" as contemplated by the Plan Proponents.  "Resolved" is vague, nor is it "resolved" as defined or based on a final order of the Court.  In these respects, the language above is vague and should be revised.  Wilmington submits that the following proposed language is reasonable and appropriate:

> On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the rights to seek substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved by entry of a Final Order by this Bankruptcy Court by filing and serving a regularly noticed motion with the Bankruptcy Court and all rights of the Holders of Claims in Classes 2B and 2C to oppose such motion are reserved.

As revised, the above language makes clear that any substantive consolidation as to Wilmington's Debtors will be addressed, if at all, after confirmation by a separate motion with all rights reserved.

## III.   THE MODIFIED LANGUAGE CONCERNING THE PONZI FINDINGS DOES NOT CONTAIN ADEQUATE INFORMATION

The Court continued the hearing, in part, to allow the Plan Proponents to add modified language describing their intent regarding the preclusive effect of

Objection to First Amended Disclosure Statement- 6
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

the Ponzi Findings and the implications thereof, including the legal presumption that may result. The Plan Proponents have not done so. The original disclosure statement was silent on these points and Wilmington raised this issue in its original objection. In their reply [ECF 1185], the Plan Proponents asserted that they were not seeking Ponzi Findings that would be binding on any other court (while conveniently omitting any reference to the Bankruptcy Court). (*See* Reply at 10:18-11:12.) This language seemed to be intentionally misleading. The reply specifically provided as follows:

| OBJECTION TO THE DISCLOSURE STATEMENT | | DEBTORS' RESPONSE |
|---|---|---|
| 12. | The Debtors fail to explain the intended impact on creditors and investors of the extraordinary relief the Debtors seek through the Plan—the substantive consolidation of 34 estates and the Ponzi Findings. | As reflected in Article V.B.2 of the Amended Disclosure Statement, the Ponzi Findings are not binding and have no preclusive effect: "The Plan Proponents are not seeking Ponzi Findings that would be binding on any other court or governmental or regulatory authority." |

(*See* Reply, ECF 1185, at Ex. A, page 5.) At the August 21st hearing, the Debtors finally admitted that they intended for the Ponzi Findings to have preclusive effect against third parties in subsequent litigation in the Bankruptcy Court.

Wilmington has not received proposed language from the Plan Proponents that addresses the deficiencies noted above. It is critical that creditors and investors understand the following: (1) that the Ponzi Findings could create a legal presumption that transfers received by investors and creditors during the

Objection to First Amended Disclosure Statement- 7
(23-01243-WLH11)

BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

operation of the Ponzi scheme were made with actual intent to hinder, delay, or defraud creditors; (2) that the Plan Proponents intend for the Ponzi Findings to have such preclusive effect against creditors and investors in future litigation in the Bankruptcy Court; (3) that the Ponzi Findings could be used in litigation commenced by the iCAP Trustees against third parties to recover payments they received; and (4) that by voting to accept the Plan, creditors and investors are voting in favor of this Court making the Ponzi Findings. Put simply, creditors and investors should know that a vote on the Plan could seal their fate.

Wilmington proposed the following language to resolve these issues and submits that such language is reasonable, appropriate, and should be included in the revised FADS:

> The Plan Proponents' legal position is that entry of the Confirmation Order and the making of the Ponzi Findings therein may have preclusive effect in future proceedings, including those commenced by the iCap Trust against third parties, such as investors and creditors of any of the Debtors, before the Bankruptcy Court. The Plan Proponents intend such preclusive effect and fully reserve the ability to advance that legal position in subsequent litigation in the Bankruptcy Court. Moreover, if the Bankruptcy Court enters the Confirmation Order and makes the Ponzi Findings, then the Bankruptcy Court is determining that the iCap enterprise operated as a Ponzi Scheme from the Ponzi Start Date of _____ through _____ (the "Ponzi Scheme Time Period"). Therefore, the Ponzi Findings, if made by this Court in confirming the Plan and asserted and relied on in proceedings in the Bankruptcy Court by the iCap Trust against third parties, including investors and creditors, could create a legal presumption against such third parties that any payments made to such third parties during the Ponzi

Objection to First Amended Disclosure Statement- 8
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

Scheme Time Period, were done with actual intent to hinder, delay, or defraud creditors. Accordingly, due to the Ponzi Findings, any such payment or transfer received by such third parties could be avoided and recovered from such third parties as an "actual" fraudulent transfer. **By voting to accept the Plan, you are voting in favor of this Court making the Ponzi Findings in connection with confirming the Plan.**

## IV.  THE LIQUIDATION ANALYSIS DOES NOT CONTAIN ADEQUATE INFORMATION

The Court continued the hearing, in part, to allow the parties to vet and raise issues resulting from the Liquidation Analysis that was filed for the first time with the FADS. The Liquidation Analysis does not contain adequate information and is misleading.

The Liquidation Analysis assumes that the Debtors' cases are converted to chapter 7 and substantively consolidated *without disclosing such.* (*See* FADS at Ex. B.) The Liquidation Analysis should be revised to disclose that it assumes the Debtors' cases are substantively consolidated post-conversion.

The Liquidation Analysis should be revised to add liquidation analyses on an estate-by-estate basis. Creditors and investors might receive larger recoveries in a chapter 7 liquidation where the Debtors are not substantively consolidated and should be informed of their potential recoveries in that scenario. The Debtors should have already performed this analysis and it should be easy to include with the FADS. Moreover, the information needed to perform such an analysis is not available to creditors and investors. Similar to the issues concerning the Ponzi Findings, creditors and investors should be unequivocally

Objection to First Amended Disclosure Statement- 9
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

informed of the consequences of the extraordinary relief that they are voting on. Without estate-by-estate liquidation analyses, creditors and investors would be asked to vote on substantive consolidation without the information to understand and analyze whether substantive consolidation is beneficial to them.

## V. WILMINGTON AND OTHER SECURED CREDITORS SHOULD BE CLASSIFIED AS IMPAIRED

Section 1124 provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan . . . leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. " 11 U.S.C. § 1124(1).   It is well established that, with this language, "Congress define[d] impairment in the broadest possible terms. " *In re Madison Hotel Associates,* 749 F.2d 410, 418 (7th Cir.1984) (quoting *In re Taddeo,* 685 F.2d 24, 28 (2d Cir.1982)).  The Ninth Circuit has suggested that under this broad definition, "any alteration of the rights constitutes impairment even if the value of the rights is enhanced." *See In re L & J Anaheim Asscs.,* 995 F.2d 940, 942 (9th Cir. 1993) quoting *In re Acequia,* 787 F.2d at 1363 (dictum) (quoting 5 *Collier on Bankruptcy* ¶ 1124.03, at 1124-13 (15th ed. 1985)); *see also In re Club Associates,* 107 B.R. 385, 401 (Bankr.N.D.Ga.1989) ("Any alteration in a creditor's legal rights or privileges constitutes impairment."); *In re Elijah,* 41 B.R. 348, 350 (Bankr.W.D.Mo.1984) ("Alteration is synonymous with impairment.").

Wilmington is informed that the Plan Proponents intend to add the following language to the Plan:

> ***Except as explicitly provided for in the Plan***, the legal, equitable, and contractual rights of Holders of Allowed

Objection to First Amended Disclosure Statement- 10
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

> Secured Claims are unaltered by the Plan, and, notwithstanding substantive consolidation of the Debtors and vesting of the iCap Trust Assets in the iCap Trust, the Liens of the Holders of Allowed Secured Claims will continue to attach to their respective Collateral, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto.

(emphasis added.)

"Except as explicitly provided for in the Plan" confirms that the Plan contains provisions that alters Wilmington's rights. Otherwise, the language chosen by the Plan Proponents would be meaningless. If the Plan Proponents truly intended than the Plan left Wilmington unimpaired, then the first clause of the paragraph should be "Notwithstanding anything contrary in the Plan. . . ."

The Plan alters Wilmington's rights. The Plan does not leave all of Wilmington's rights under contract or applicable rights unfettered. As the language above makes clear, such rights are subject to the terms of the Plan.

Moreover, Wilmington filed claims that have not been objected to and thus, are deemed allowed under the Code. *See* 11 U.S.C. § 502(a). If Wilmington's claims were allowed as under the Code, Wilmington would be paid the sale proceeds on the Effective Date. However, the Plan goes beyond the Code, seemingly treating Wilmington's claim as "disputed" until determined otherwise and imposing an extended process on Wilmington before it can be paid on its claims. Under the Plan, the Claim Objection Deadline as to Wilmington is 180 days after the Effective Date. (*See* Plan at 5, definition of "Claim Objection Deadline.") This deadline can be automatically extended by 60 days without a court order and further extended by motion. (*See* Plan at 52, lines 15-21.) This

Objection to First Amended Disclosure Statement- 11
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

process is not identical to the Code and therefore, constitutes an alteration of Wilmington's rights. This is especially so given that "Congress define[d] impairment in the broadest possible terms" *Madison Hotel Associates,* 749 F.2d at 418, and "any alteration of the rights constitutes impairment" *L & J Anaheim Asscs.,* 995 F.2d at 942. Accordingly, the Plan alters Wilmington's contractual rights, rendering it impaired.

For the claims of Wilmington and other secured creditors to be unimpaired under the Plan, the Plan should provide as follows:

> Notwithstanding anything to the contrary in the Plan or the Confirmation Order or any findings or determinations in connection therewith, the legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan and the Confirmation Order, and, notwithstanding substantive consolidation of the Debtors and vesting of the iCap Trust Assets in the iCap Trust, the Liens of the Holders of Allowed Secured Claims will continue to attach to their respective Collateral (including, without limitation, the proceeds thereof) in the same validity, priority, force, extent, and effect as of the Petition Date, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto.

Because impairment determines whether a creditor is entitled to vote, Wilmington submits that the issue of impairment is appropriate for adjudication at this stage.

## VI. THE PROPOSED DISCOVERY SCHEDULE AND CONFIRMATION HEARING SHOULD BE MODIFIED

Objection to First Amended Disclosure Statement- 12
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

At the last hearing, Wilmington was under the impression that it would not need to litigate substantive consolidation in connection with confirmation. Further, Wilmington was optimistic that any discovery related to the alleged Ponzi scheme would be conducted in connection with the adversary proceeding recently commenced by Wilmington. Unfortunately, the Plan Proponents have not definitively committed to such, necessitating additional time for discovery and a later confirmation hearing.

On August 25, 2024, the Debtors proposed the following confirmation discovery schedule to Wilmington:

| CONFIRMATION DISCOVERY SCHEDULE | |
|---|---|
| Deadline for parties to disclose experts, serve written discovery, and notice fact depositions | Tuesday, September 3, 2024 |
| Deadline for responses to written discovery | Tuesday, September 10, 2024 |
| Deadline to complete document productions | Friday, September 13, 2024 |
| Deadline to complete fact depositions | Friday, September 20, 2024 |
| Deadline to file rebuttal expert reports to Kinrich report | Wednesday, September 25, 2024 |
| Hearing to address discovery issues, if any | Wednesday, September 25, 2024 at 10:30 a.m. (PT) |
| Deadline to exchange hearing witness lists | Wednesday, October 2, 2024 |
| Deadline to complete expert depositions | Friday, October 4, 2024 |
| Deadline to file declarations of direct witnesses | Wednesday, October 9, 2024 |
| Deadline to file joint exhibits and lodge objections, if any | Friday, October 11, 2024 |

Objection to First Amended Disclosure Statement- 13
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

This proposed schedule is prejudicial to Wilmington and other opposing parties. This schedule provides for the completion of discovery in less than one month and only affords rebuttal experts 12 days to prepare expert reports after receiving document productions. More time is appropriate. The Debtors are not operating and there is no reason to constrain opposing parties ability to conduct discovery on the extraordinary relief sought through the Plan. Through the FADS, the Debtors disclosed that they will seek Ponzi Findings covering the time period beginning in 2018. This necessitates broad and voluminous factual discovery. Wilmington believes the best solution is to set the confirmation hearing three weeks further out, on or about November 6th, and continue the Plan Proponents' proposed discovery deadlines approximately three weeks to allow more time to complete discovery and expert reports as follows:

| WILMINGTON'S CONFIRMATION DISCOVERY SCHEDULE | |
|---|---|
| Deadline for parties to disclose experts, serve written discovery, and notice fact depositions | Tuesday, September 10, 2024 |
| Deadline for responses to written discovery | Tuesday, September 17, 2024 |
| Deadline to complete document productions | Friday, September 20, 2024 |
| Deadline to complete fact depositions | Friday, September 27, 2024 |
| Hearing to address discovery issues, if any | Wednesday, October 16, 2024 at 10:30 a.m. (PT) |
| Deadline to file rebuttal expert reports to Kinrich report | Wednesday, October 23, 2024 |
| Deadline to exchange hearing witness lists | Monday, October 28, 2024 |
| Deadline to complete expert depositions | Wednesday, October 30, 2024 |

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

| Deadline to file declarations of direct witnesses | Friday, November 1, 2024 |
|---|---|
| Deadline to file joint exhibits and lodge objections, if any | Friday, November 1, 2024 |

## VII. **CONCLUSION**

Based on the foregoing, Wilmington respectfully requests that the Court deny approval of the FADS.


Dated this 26th day of August, 2024.

BORDE LAW PLLC


By:  /s/ Manish Borde

MANISH BORDE (WSBA # 39503)
1700 7th Ave., Suite 2100
Seattle, WA 98101-1360
*mborde@bordelaw.com*

RAINES FELDMAN LITTRELL LLP


By:  /s/ Michael L. Simon

MICHAEL L. SIMON (CA SBN 300822)
*Admitted Pro Hac Vice*
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
*msimon@raineslaw.com*

Objection to First Amended Disclosure Statement- 15
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys who have appeared in the case.

DATED this 26th day of August, 2024.

/s/ Manish Borde

Manish Borde, WSBA #39503
BORDE LAW PLLC
1700 7th Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 531-2722
E-mail: mborde@bordelaw.com
*Counsel for Wilmington and Lima*

Objection to First Amended Disclosure Statement- 16
(23-01243-WLH11)

**BORDE LAW PLLC**
1700 7th Ave., Suite 2100
Seattle, Washington 98101
(206) 531-2722

10354562.1

# EXHIBIT 11

Julian I. Gurule (CA SBN: 252160)*
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 430-6067
Email: jgurule@omm.com

*Co-Counsel to Debtors and Debtors in
Possession*

Oren B. Haker (WSBA No. 48725)
BLACK HELTERLINE LLP
805 SW Broadway
Suite 1900
Portland, OR 97205
Telephone: (503) 224-5560
Email: oren.haker@bhlaw.com

*Admitted Pro Hac Vice

*Co-Counsel to Debtors and Debtors in
Possession*

HONORABLE WHITMAN L. HOLT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter 11 |
| ICAP ENTERPRISES, INC., *et al.*, | Lead Case No. 23-01243-WLH11 Jointly Administered |
| Debtors.[1] | **MODIFIED SECOND AMENDED DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF ICAP ENTERPRISES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS** |

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

**MODIFIED SECOND AMENDED DISCLOSURE STATEMENT
FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

23-01243-WLH11    Doc 1204-1   Filed 08/30/24   Entered 08/30/24 11:40:28   Pg 61 of 90
335

Among those many disputed issues that will be resolved through the Plan are the following complex matters, any one of which could be the subject of years of expensive, complicated, and uncertain litigation.

### 1. Substantive Consolidation Issues

Substantive consolidation is a construct of federal common law, emanating from equity, which treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities, save for inter-entity liabilities, which are erased. *See, e.g.*, *In re Mihranian*, 937 F.3d 1214, 1216 (9th Cir. 2019) (quoting *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000)); *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005). Bankrupt entities can be substantively consolidated either on a consensual basis under a chapter 11 plan, or on a non-consensual basis if (i) prepetition they disregarded entity separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and harms all creditors. *See id.* at 210.

In these Chapter 11 Cases, a compelling argument could be made for complete substantive consolidation of all the Debtors. Although Creditors generally may not have treated all of the Debtors as one legal entity, there is substantial commingling of assets and liabilities among the Debtors. *See In re Bonham*, 229 F.3d 750, 764-65 (9th Cir. 2000). The Debtors believe it is impossible to trace the flow of funds with respect to the Debtors' prepetition transactions since the majority of the proceeds received were commingled and distributed without regard to corporate formalities, which entanglement warrants substantive consolidation of all the Debtors. Moreover, the Chapter 11 Cases are unique—the perpetration of a fraudulent scheme by a common corporate enterprise, one that in the process did not keep accurate records of the multitude of intercompany transactions that have occurred, making an unscrambling of the enterprise's accounts impossible—but that has justified substantive consolidation in other cases. *See, e.g.*, *In re Bonham*, 229 F.3d at 764-65 (consolidating entities in Ponzi scheme case); *In re DBSI, Inc.*, Case No. 08-12687, ECF No. 5924 (Bankr. D. Del. Jan. 19, 2010) (same); *In re Bernard L. Madoff Investment Securities LLC*, No. 08-01789, ECF No. 252 (Bankr. S.D.N.Y. June 10, 2009) (same). Put differently, the particular facts and circumstances of these Chapter 11 Cases present unique arguments about whether and to what extent substantive consolidation is warranted.

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, will be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however,* that

**MODIFIED SECOND AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**
53

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

23-01243-WLH11    Doc 1274-1    Filed 08/30/26    Entered 08/30/26 15:40:28    Pg 321 of 209
335

the Debtors or iCap Trustees, as applicable, reserve the right to effectuate substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are resolved upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) will be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all Claims between and among the Debtors will be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable will be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order will constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in the Plan; *provided*, *however*, that while the Debtors will be substantively consolidated for purposes of Distribution to creditors, such that all Investors shall have Claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, will be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 will be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan will not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided*, *however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as to retain the relative priority and seniority of such Intercompany Claim and associated Intercompany Lien.

**MODIFIED SECOND AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**
54

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

(E) Class 2I.5Rexel USA, Inc. dba Platt Electric Supply Claim

(x) **Class 2J: Secured Real Property Tax Claims**

Class 2 is unimpaired and deemed to accept the Plan.

Except as explicitly provided for in the Plan, the legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan, and, notwithstanding substantive consolidation of the Debtors and vesting of the iCap Trust Assets in the iCap Trust, the Liens of the Holders of Allowed Secured Claims will continue to attach to their respective Collateral, *provided* that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Secured Claim becomes an Allowed Secured Claim, the Holder of such Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Secured Claim, at the option of the Debtors or the iCap Trust, either (a) the net proceeds from the sale of the Collateral securing such Allowed Secured Claim; *provided, however,* that if the sale of the Collateral securing an Allowed Secured Claim closes after the occurrence of the Effective Date, the payment of the net proceeds shall be delivered to the Holder of the Allowed Secured Claim within thirty (30) calendar days of the closing of such sale, (b) the surrender of the Collateral securing such Allowed Secured Claim, or (c) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing. Pending allowance of a Secured Claim, the Debtors or the iCap Trust, as applicable, will segregate the proceeds from the sale of the Collateral securing such Secured Claim in the individual Secured Claims Reserve for the Holder of such Claim.

c. *Class 3: Investor Claims*

Class 3 consists of Investor Claims, as more particularly described below. Class 3 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Investor Claims will receive (i) on the later of the Effective Date and thirty (30) calendar days following the date on which such Investor Claim becomes an Allowed Investor Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed Investor Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed Investor Class B Claims held by the applicable Investor (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of such iCap Trust Interest), and (ii) the other consideration provided for in the

**MODIFIED SECOND AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**
63

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

## F.    Implementation of the Plan

As detailed below, the Plan will be implemented through, among other things, the establishment of the iCap Trust and the appointment of the iCap Trustees and the iCap Trust Supervisory Board. The iCap Trust will make Distributions in accordance with the Plan.

### 1.    Streamlining the Debtors' Structure and Governance

a.    *Corporate Action.* On the Effective Date, all matters under the Plan involving or requiring action of the directors, members, managers, or officers of the Debtors, including, but not limited to, actions requiring a vote or other approval of the board of directors or any of the members or officers of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date, without any further action by the Bankruptcy Court or the directors, members, managers, or officers of the Debtors.

b.    *Debtors' Existing Directors and Officers.* On the Effective Date, each of the Debtors' existing directors and officers including, without limitation, the CRO, shall be terminated automatically without the need for any further action and without the need for any corporate or limited liability company filings, and they shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated); *provided, however*, that the Debtors' indemnification and defense obligations under any such agreements shall survive the foregoing termination and remain unaltered by the Plan. On the Effective Date, the iCap Trustees shall succeed to all such powers as would have been applicable to the Debtors' officers and directors in respect of all iCap Trust Assets.

c.    *Dissolution of the Debtors.* On and as of the earlier of the Case Closing Date and the date on which the iCap Trustees file with the Bankruptcy Court a notice of dissolution as to a Debtor, such Debtor will be dissolved automatically without the need for any further action, including the filing of any corporate or limited liability company filings; *provided, however*, that the iCap Trust may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of any Debtor. All applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of any certificates.

**MODIFIED SECOND AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**
69

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

23-01243-WLH11    Doc 1274-1    Filed 08/30/24    Entered 08/30/24 15:40:28    Pg 78 of 209
335

41. <u>Distribution Record Date</u>: The Effective Date.

42. <u>Distribution Reserve</u>: One or more reserves related to Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for iCap Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved iCap Trust Interests.

43. <u>Document Destruction Notice Parties</u>: As defined in Article X.M of the Plan.

44. <u>Effective Date</u>: The first Business Day upon which all provisions, terms, and conditions to the Effective Date set forth in Article IX have been satisfied or waived pursuant to the terms set forth therein.

45. <u>Equity Interest</u>: An equity interest in the Debtor.

46. <u>Estate Assets</u>: Any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including, but not limited to, all Avoidance Actions and Causes of Action as of the Effective Date, and any assets contributed to or recovered by or for the iCap Trust on or after the Effective Date, unless such interest is later disclaimed by the iCap Trustees after consultation with the iCap Trust Supervisory Board.

47. <u>Estates</u>: The Estates created for the Debtors pursuant to Bankruptcy Code section 541(a).

48. <u>Excluded Debtors</u>: VH 1121 14th LLC and VH Willows Townhomes, LLC.

49. <u>Excluded Parties</u>: Any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any

MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT 12

HONORABLE WHITMAN L. HOLT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re

iCap ENTERPRISES, INC., *et al.*,

Debtors.[1]

Chapter 11

Lead Case No. 23-01243-WLH11
Jointly Administered

MODIFIED SECOND AMENDED
JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF iCap
ENTERPRISES, INC. AND ITS
AFFILIATED DEBTORS
PROPOSED BY THE DEBTORS
AND OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

---

[1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund, LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore, LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-01252-11); VH 1121 14th LLC (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11); iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and iCap International Investments, LLC (23-01464-11).

MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

41.     Distribution Record Date: The Effective Date.

42.     Distribution Reserve: One or more reserves related to Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for iCap Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved iCap Trust Interests.

43.     Document Destruction Notice Parties: As defined in Article X.M of the Plan.

44.     Effective Date:  The first Business Day upon which all provisions, terms, and conditions to the Effective Date set forth in Article IX have been satisfied or waived pursuant to the terms set forth therein.

45.     Equity Interest:  An equity interest in the Debtor.

46.     Estate Assets: Any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including, but not limited to, all Avoidance Actions and Causes of Action as of the Effective Date, and any assets contributed to or recovered by or for the iCap Trust on or after the Effective Date, unless such interest is later disclaimed by the iCap Trustees after consultation with the iCap Trust Supervisory Board.

47.     Estates: The Estates created for the Debtors pursuant to Bankruptcy Code section 541(a).

48.     Excluded Debtors: VH 1121 14th LLC and VH Willows Townhomes, LLC.

49.     Excluded Parties: Any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any

MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Class 2 is unimpaired and deemed to accept the Plan.

Except as explicitly provided for in the Plan, the legal, equitable, and contractual rights of Holders of Allowed Secured Claims are unaltered by the Plan, and, notwithstanding substantive consolidation of the Debtors and vesting of the iCap Trust Assets in the iCap Trust, the Liens of the Holders of Allowed Secured Claims will continue to attach to their respective Collateral, *provided* that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. On the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which a Secured Claim becomes an Allowed Secured Claim, the Holder of such Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Secured Claim, at the option of the Debtors or the iCap Trust, either (a) the net proceeds from the sale of the Collateral securing such Allowed Secured Claim; *provided, however*, that if the sale of the Collateral securing an Allowed Secured Claim closes after the occurrence of the Effective Date, the payment of the net proceeds shall be delivered to the Holder of the Allowed Secured Claim within thirty (30) calendar days of the closing of such sale, (b) the surrender of the Collateral securing such Allowed Secured Claim, or (c) such other less favorable treatment from the iCap Trust to which such Holder and the iCap Trust shall have agreed upon in writing. Pending allowance of a Secured Claim, the Debtors or the iCap Trust, as applicable, will segregate the proceeds from the sale of the Collateral securing such Secured Claim in the individual Secured Claims Reserve for the Holder of such Claim.

### 3. Class 3: Investor Claims

Class 3 consists of Investor Claims, as more particularly described below. Class 3 is impaired under the Plan and entitled to vote on the Plan.

In full satisfaction, settlement, and release of and in exchange for such Claims, the Holders of Allowed Investor Claims will receive (i) on the later of the Effective Date and thirty (30) calendar days following the date on which such Investor Claim becomes an Allowed Investor Claim, one (1) Class A iCap Trust Interest for each dollar of Allowed Investor Class A Claims and one (1) Class B iCap Trust Interest for each dollar of Allowed Investor Class B Claims held by the applicable Investor (any resulting fractional iCap Trust Interests will be rounded to the nearest hundredth of

MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

proceeds to justify further pursuit of such iCap Trust Actions and (b) all Distributions required to be made by the iCap Trust to Holders of Allowed Claims and to the iCap Trust Beneficiaries under the Plan and the iCap Trust Agreement have been made, but in no event shall the iCap Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the iCap Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the iCap Trust Assets. Upon termination of the iCap Trust, any remaining iCap Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the iCap Trustees to a non-profit organization of their choice.

   17.  **Interpretation.** To the extent there is any inconsistency between the Plan and the iCap Trust Agreement, the Plan shall control.

## E. Substantive Consolidation

   On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes

MODIFIED SECOND AMENDED
JOINT PLAN OF LIQUIDATION – Page 41

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT 13

1  Julian I. Gurule (CA SBN: 252160)*     HONORABLE WHITMAN L. HOLT
   O'MELVENY & MYERS LLP
2  400 South Hope Street, Suite 1900
   Los Angeles, California 90071
3  Telephone: (213) 430-6067
   Email: jgurule@omm.com
4
   *Co-Counsel to Debtors and Debtors in*
5  *Possession*

6  Oren B. Haker (WSBA No. 48725)
   BLACK HELTERLINE LLP
7  805 SW Broadway
   Suite 1900
8  Portland, OR 97205
   Telephone: (503) 224-5560
9  Email: oren.haker@bhlaw.com

10 *Admitted Pro Hac Vice*

11 *Co-Counsel to Debtors and Debtors in*
   *Possession*
12
               **UNITED STATES BANKRUPTCY COURT**
13              **EASTERN DISTRICT OF WASHINGTON**

14 In re:                                  Chapter 11

15 ICAP ENTERPRISES, INC., et al.,         Lead Case No. 23-01243-WLH11
                                           Jointly Administered
16            Debtors.[1]
                                           **NOTICE OF FILING OF**
17                                         **REDLINES OF THE MODIFIED**
                                           **SECOND AMENDED**
18                                         **DISCLOSURE STATEMENT AND**
                                           **MODIFIED SECOND AMENDED**
19                                         **CHAPTER 11 PLAN**

20

21

22 [1] The Debtors (along with their case numbers) are iCap Enterprises, Inc. (23-01243-11); iCap Pacific NW Management, LLC (23-
   01261-11); iCap Vault Management, LLC (23-01258-11); iCap Vault, LLC (23-01256-11); iCap Vault 1, LLC (23-01257-11); Vault
23 Holding 1, LLC (23-01265-11); iCap Investments, LLC (23-01255-11); iCap Pacific Northwest Opportunity and Income Fund, LLC
   (23-01248-11); iCap Equity, LLC (23-01247-11); iCap Pacific Income 4 Fund, LLC (23-01251-11); iCap Pacific Income 5 Fund,
24 LLC (23-01249-11); iCap Northwest Opportunity Fund, LLC (23-01253-11); 725 Broadway, LLC (23-01245-11); Senza Kenmore,
   LLC (23-01254-11); iCap Campbell Way, LLC (23-01250-11); UW 17th Ave, LLC (23-01267-11); iCap Broadway, LLC (23-
25 01252-11); VH 1121 14th St (23-01264-11); VH Senior Care LLC (23-01266-11); VH Willows Townhomes LLC (23-01262-
   11); iCap @ UW, LLC (23-01244-11); VH 2nd Street Office, LLC (23-01259-11); VH Pioneer Village LLC (23-01263-11); iCap
26 Funding LLC (23-01246-11); iCap Management LLC (23-01268-11); iCap Realty, LLC (23-01260-11); Vault Holding, LLC (23-
   01270-11); iCap Pacific Development LLC (23-01271-11); iCap Holding LLC (23-01272-11); iCap Holding 5 LLC (23-01273-11);
27 iCap Holding 6 LLC (23-01274-11); Colpitts Sunset, LLC (23-01432-11); CS2 Real Estate Development LLC (23-01434-11); and
   iCap International Investments, LLC (23-01464-11).
28
   **NOTICE OF FILING OF REDLINES OF THE MODIFIED**          BLACK HELTERLINE LLP
   **SECOND AMENDED DISCLOSURE STATEMENT AND**                   805 SW BROADWAY
                                                                    SUITE 1900
   **MODIFIED SECOND AMENDED CHAPTER 11 PLAN**                PORTLAND, OR 97205
                                                            TELEPHONE: 503 224-5560

41.     <u>Distribution Record Date</u>: The Effective Date.

42.     <u>Distribution Reserve</u>: One or more reserves related to Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for iCap Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved iCap Trust Interests.

43.     <u>Document Destruction Notice Parties</u>: As defined in Article X.M of the Plan.

44.     <u>Effective Date</u>:  The first Business Day upon which all provisions, terms, and conditions to the Effective Date set forth in Article IX have been satisfied or waived pursuant to the terms set forth therein.

45.     <u>Equity Interest</u>:  An equity interest in the Debtor.

46.     <u>Estate Assets</u>: Any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including, but not limited to, all Avoidance Actions and Causes of Action as of the Effective Date, and any assets contributed to or recovered by or for the iCap Trust on or after the Effective Date, unless such interest is later disclaimed by the iCap Trustees after consultation with the iCap Trust Supervisory Board.

47.     <u>Estates</u>: The Estates created for the Debtors pursuant to Bankruptcy Code section 541(a).

48.     <u>Excluded Debtors</u>: VH 1121 14th LLC and VH Willows Townhomes, LLC.

49.     <u>Excluded Parties</u>: Any prepetition insider of any of the Debtors, any non-debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the Plan may be transferred by the iCap Trustees to a non-profit organization of their choice.

**17.    Interpretation.** To the extent there is any inconsistency between the Plan and the iCap Trust Agreement, the Plan shall control.

## E.    Substantive Consolidation

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided, however*, that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees′ discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in this Article; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors′   consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

Bᴜsʜ Kᴏʀɴꜰᴇʟᴅ ʟʟᴘ
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Claimants will have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, and the Contributing Claimants to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all iCap Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the iCap Trust Agreement. From and after the Effective Date, the iCap Trust, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as a representative of the Estates with respect to any and all iCap Trust Actions that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all iCap Trust Actions in any court or other tribunal.

p.    *Termination*. The iCap Trustees and the iCap Trust shall be discharged or terminated, as the case may be, at such time as: (i) the iCap Trustees determine that the pursuit of additional iCap Trust Actions is not likely to yield sufficient additional proceeds to justify further pursuit of such iCap Trust Actions and (ii) all Distributions required to be made by the iCap Trust to Holders of Allowed Claims and to the iCap Trust Beneficiaries under the Plan and the iCap Trust Agreement have been made, but in no event shall the iCap Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the iCap Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the iCap Trust Assets. Upon termination of the iCap Trust, any remaining iCap Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the iCap Trustees to a non-profit organization of their choice.

q.    *Interpretation*. To the extent there is any inconsistency between the Plan and the iCap Trust Agreement, the Plan shall control.

4.    <u>Substantive Consolidation</u>

On the Effective Date, the Debtors, other than the Excluded Debtors with respect to Claims in Classes 2B and 2C, shall be substantively consolidated pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129; *provided,*

**<u>MODIFIED</u> SECOND AMENDED DISCLOSURE STATEMENT FOR**
**JOINT CHAPTER 11 PLAN OF LIQUIDATION**
82

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

*however,* that the Debtors or iCap Trustees, as applicable, reserve the right to effectuate, without further motion practice, substantive consolidation of the Excluded Debtors after the Claims in Classes 2B and 2C are consensually resolved with the Holders of such Claims upon filing notice with the Bankruptcy Court. As a result of the substantive consolidation, on the Effective Date, all property, rights, and claims of the Debtors and all Claims against the Debtors (other than Claims in Classes 2B and 2C) shall be deemed to be pooled for purposes of Distributions under the Plan and, in the iCap Trustees' discretion, other purposes. Further, as a result of this substantive consolidation, all claims between and among the Debtors shall be cancelled. Holders of Allowed Claims shall be entitled to only one satisfaction on account of such Claims, and any contingent or otherwise duplicative Claims against one or more of the Debtors based upon claims for which one or more of the Debtors are also liable shall be disallowed. Holders of Claims in Classes 2B and 2C shall be entitled to recover up to the full amount of their Allowed Secured Claim from the sale proceeds for their Collateral.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the substantive consolidation of the Debtors in the manner set forth in Article V.E of the Plan; *provided, however*, that while the Debtors shall be substantively consolidated for purposes of Distributions to Creditors, such that all Investors shall have claims against a single pool of the Debtors' consolidated assets, the actual substantive consolidation of entities, particularly for tax purposes, shall be at the option of the Debtors or the iCap Trust, as applicable. Notwithstanding such substantive consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

Substantive consolidation under the Plan shall not affect, without limitation, any defenses or rights the Debtors or the iCap Trust may have to any Claim, Cause of Action, or Avoidance Action, including the ability to assert a counterclaim.

Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims and any Intercompany Liens that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date; *provided, however*, that solely with respect to any Secured Claim of a non-debtor as to which the associated Lien would be junior to any Intercompany Lien, the otherwise released Intercompany Claim and associated Intercompany Lien will be preserved for the benefit of, and may be asserted by the iCap Trust as to any Collateral so as

**MODIFIED SECOND AMENDED DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION**

BLACK HELTERLINE LLP
805 SW BROADWAY
SUITE 1900
PORTLAND, OR 97205
TELEPHONE: 503 224-5560

83